**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**    ) | |
|                      ) | |
|        **Respondent,**     ) | |
|                      ) | |
|      **v.**                ) | No.     1:07-cv-00511 |
|                      ) | |
| **SHANNON WAYNE AGOFSKY,**    ) | |
|                      ) | |
|       **Movant.**       ) | |
| _____ ) | |

**OPPOSITION TO GOVERNMENT'S MOTION**
**FOR COURT-ORDERED AFFIDAVITS OF FORMER COUNSEL**
**AND**
**CROSS-MOTION TO CONDUCT DEPOSITIONS OF FORMER COUNSEL,**
**INVESTIGATOR, AND MENTAL HEALTH EXPERT**

Shannon Agofsky opposes the Government's motion for court-ordered affidavits of defense trial and appellate counsel, and moves, instead, for court-ordered depositions of his trial counsel, G. Patrick Black and Douglas Barlow; his appellate counsel, Brent Newton; his trial investigator, Jay Bennett; and the defense mental health expert, Dr. Dan Roberts. Ordering prior counsel to prepare affidavits would constitute an unfair and one-sided exercise of the Court's discretion under the circumstances of this case, in which trial counsel have declined to meet with current counsel and have simultaneously offered their cooperation to the government. Depositions are the only even-handed way to develop facts known by the enumerated witnesses. Further, as indicated in the attached declaration of Professor Robert P. Schuwerk, depositions are the "only entirely ethical course to follow," because they would enable Mr. Agofsky's current counsel to protect potentially privileged or confidential information in the course of former counsel's testimony. In support of this request, Mr. Agofsky states the following:

1.  On October 9, 2007, Judge Heartfield granted Mr. Agofsky's application to file his projected § 2255 motion on or before January 22, 2008, to hold it in abeyance, and to stay further proceedings until the resolution of his pending appeal in the Fifth Circuit and any petition for *certiorari* in that appeal.

2.  Mr. Agofsky's §2255 motion was filed on January 17, 2008.  (Doc. 38).  An amended petition was filed on October 6, 2008 (Doc. 51).

3.  The §2255 motion asserted numerous claims of ineffective assistance of counsel at the guilt phase, in that trial counsel failed to:

- interview any Government witnesses or attempt to neutralize their testimony (M19);[1]
- investigate and present available evidence (through eyewitnesses and background witnesses) to support the justification and "heat of passion" defenses (M25);
- present witnesses, interviewed by investigator Bennett, who could have provided supporting testimony for the justification or "heat of passion" defenses (M25);
- elicit helpful information available from witnesses who were called at trial (M43);
- obtain or present expert testimony on prison violence at the guilt phase despite its availability and relevance to the self-defense and "heat of passion" defenses (M48);
- undertake independent efforts to obtain documentary information (M50);
- conduct an adequate voir dire as to publicity, death penalty bias, current incarceration, and prior convictions (M52);
- conduct appropriate examinations of prosecution and defense witnesses, supported by reasonable investigation and familiarity with the record (M74);
- object to erroneous prosecutorial arguments and other errors (M80, 87).

4.  The §2255 motion asserted multiple additional claims of ineffective assistance of counsel at the penalty phase, in that counsel failed to:

- conduct an independent investigation of the Government's alleged aggravating factors or present evidence to counter and lessen their weight (M94);
- properly compile and present a pre-incarceration social history (M122);
- investigate and present readily available post-incarceration mitigation (M152);
- obtain and present appropriate mental health evaluations (M161);
- present a properly prepared case on future dangerousness (M164); and
- advocate for the introduction of admissible mitigating evidence, object to misleading cross-examination and summation arguments, or object to the submission of factually unsupported or inadmissible non-statutory aggravating factors to the jury (M168).

---

[1]   Citations preceded by "M" refer to the amended § 2255 motion.

5.    As part of their investigation of Mr. Agofsky's claims, current counsel sought to obtain files from trial counsel.  As described in the §2255 motion, lead trial counsel, G. Patrick Black, sent current counsel what he indicated was his complete file. The defense-generated documents consisted of correspondence, some general information, and witness interview reports authored by investigator Bennett. Current counsel repeatedly contacted Mr. Black's co-counsel, Douglas Barlow, who responded on July 15, 2007, that Mr. Agofsky's file had been destroyed.   Counsel received no documents from Mr. Barlow.

6.    Current counsel also sought to interview trial counsel.  Although initially Mr. Black told Mr. Agofsky's current counsel that he would meet with them to discuss the motion (A24),[2] he later declined.  Current counsel sent Mr. Black a release from Mr. Agofsky, expressly giving permission for current counsel to meet with trial counsel, to correspond with them, and to speak with them by telephone "about all matters arising from their representation of me," including any matters protected by the attorney-client privilege. (A29).  Current counsel also sent Mr. Black the ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases (2003), Guideline 10.3, The Duty to Facilitate the Work of Successor Counsel.  Mr. Black nevertheless declined to speak with current counsel outside the context of an evidentiary hearing, stating that it was his "decision to not meet with you, or the Government, to discuss this case prior to any testimony from me at a 28 USC 2255 hearing."  (A32).  Trial attorney Barlow offered no response at all to current counsel's request for a meeting. Mr. Black also conveyed the "individual decision" of Jay Bennett, the Federal Defender investigator who had worked on the case, not to meet with current counsel.  (A26).

7.    Prior counsel's recollections are important to the development of the ineffective assistance claims in this case.  Whether prior counsel made strategic decisions, and if so, what

---

[2]    Citations preceded by "A" refer to the appendix to the amended § 2255 motion.

factual basis they may have had, are relevant to the reasonableness of counsel's conduct. *See Wiggins v. Smith*, 539 U.S. 510 (2003); *Strickland v. Washington,* 466 U.S. 668 (1984). Further, trial counsel, their investigator (Bennett), their mental health expert (Roberts), and appellate counsel all may possess factual information that is not reflected in the documentary evidence obtained by current counsel. Current counsel have had no means of learning and addressing trial counsel's strategic reasoning or other facts not reflected in the documents that trial counsel have provided, because trial counsel and their investigator have declined to speak to them.

8. The Government's affidavit motion and other submissions suggest that, in contrast, prior counsel will work with the Government to craft a response to Mr. Agofsky's petition, furthering the Government's efforts to secure the execution of their former client. On October 17, 2008, Assistant United States Attorney Traci Kenner wrote a letter advising the Court that, in violation of a previous order sealing the § 2255 motion,[3] she had given a copy of the motion to Mr. Black. She stated that Mr. Black "correctly pointed out that, to the extent the motion is based upon ineffective assistance of counsel, the Government must be able to provide copies to trial counsel in order to respond to Mr. Agofsky's claims." Ms. Kenner and Mr. Black thus apparently anticipated holding future discussions of the Government's responses to each of Mr. Agofsky's claims. The Government later moved to unseal the § 2255 motion, stating that it "intended to attempt interviews" of former counsel and needed to share the motion with them in order to do so. (Doc 60, p. 4).

---

[3]
     The § 2255 motion had been filed under seal, pursuant to court order, because it referred to sealed juror information. (Doc. 36). This Court later granted the Government's unsealing motion in part, authorizing the disclosure of the petition to potential witnesses but directing that if either party files any pleading referring to the confidential juror information, that pleading shall be filed under seal. (Docs. 62, 63).

9.   On January 13, 2009, one of Mr. Agofsky's current counsel, Claudia Van Wyk, received a call from AUSA Joseph Batte, who sought her consent to the Government's present motion for court-ordered affidavits of prior counsel.  Mr. Batte stated that all three prior counsel (Mr. Black, Mr. Barlow, and Mr. Newton) had "agreed" to provide affidavits, but that Federal Defender policy forbade their doing so without a court order.  Ms. Van Wyk responded that Mr. Agofsky's current defense would not consent and that depositions would be preferable.

10.   The Government filed its motion on January 14, 2009 (Doc. 65), arguing that "the most practical way" for it to learn "the position of trial and appellate counsel" as to each of Mr. Agofsky's claims is to secure their affidavits.  *Id.* at 2.  The Government maintains that the attorney-client privilege "should be waived" because communications between Mr. Agofsky and his attorneys are "relevant" to his ineffective assistance claims.  *Id.* at 2-3.

11.   Mr. Agofsky opposes the Government's request for permission to obtain affidavits from trial counsel, because the unfairly one-sided affidavit approach outlined in the Government's motion threatens to undermine the reliability of these proceedings.   His current § 2255 counsel have been forced to investigate and formulate his claims without access to interviews of prior counsel or their trial investigator.  This imbalance of information has prevented current counsel from marshaling and alleging evidence that may be relevant to prior counsel's strategic and factual assertions, either by calling the Court's attention to evidence already in current counsel's possession or by presenting the fruits of independent investigation of prior counsel's assertions.  Permitting prior counsel to prepare affidavits in consultation with the Government would seriously exacerbate the informational imbalance.[4]

---

[4]  As stated in ¶ 6, Mr. Black has indicated that he does not wish to speak with counsel for either side in an ex parte manner but would prefer a testimonial courtroom setting.  In a telephone conversation on January 16, 2009, with Assistant Federal Defender David Zuckerman, Mr. Barlow stated that he would agree to whichever approach Mr. Black prefers.

12. Further, authorizing affidavits would be an inappropriate exercise of the Court's discretion for other reasons. First, as explained in the Memorandum of Law below, consultation between the Government and prior counsel on the proposed affidavits would violate prior counsel's ethical duty of continued loyalty to their client. The Government's objective is to secure Mr. Agofsky's execution. Prior counsel may not ethically cooperate in that effort. Second, as the Memorandum of Law also explains, the implied waiver of the attorney-client privilege entailed by an ineffective assistance claim, while it may open some otherwise privileged areas to inquiry, is issue-specific. And Mr. Agofsky's written release does not authorize disclosure to anyone except his current counsel. One-sided consultation with the Government, in the course of preparing the requested affidavits, may result in the disclosure of matters as to which the privilege has not been waived, either directly or impliedly, and may also violate prior counsel's continuing duty to preserve confidential information.

13. An adversarial airing of Mr. Agofsky's claims, through depositions rather than affidavits, is the only reliable way to identify areas still protected by privilege, and protected confidential communications, by insuring an opportunity to seek redress before counsel may disclose protected information. As explained below, even if an order requiring affidavits included protective provisions – even if it required counsel to draft the affidavit without consultation with the Government or each other, limit the content to factual assertions without revealing privileged or confidential information, and reveal the contents of prior communications with the Government – it could not adequately protect Mr. Agofsky because it would require the affiants to balance their own interests against those of their former client. Accordingly, court-ordered depositions offer the only fair and appropriate mechanism for obtaining necessary information.

14. For all these reasons and those in the Memorandum of Law, Mr. Agofsky objects to the affidavit approach and moves for court-ordered depositions of prior counsel, investigator Bennett, and mental health expert Roberts. Depositions would permit efficient development of the ineffective assistance claims by recording trial counsel's account of their representation, and thus would assist the Court's review of the claims and its determination whether to order an evidentiary hearing. In addition, depositions could streamline a hearing and potentially lead to stipulations or agreements between the parties as to undisputed facts. At the same time, because depositions would be conducted in a neutral, even-handed manner, they would correct the imbalance of information that has developed in this case, enable Mr. Agofsky to develop and submit all of the relevant facts related to each claim, and provide the best protection for any matters that may still be protected from disclosure.

## MEMORANDUM OF LAW

**A. Permitting the Government to Obtain Prior Counsel's Affidavits Would Be Unfair, Potentially Unethical, and Impractical.**

A court presiding over a §2255 matter has discretion to grant discovery or order expansion of the record. *See* Rules 6 and 7 of the Rules Governing Section 2255 Proceedings for the United States District Courts. Nevertheless, affidavits by prior counsel would be the wrong form of discovery in this case. First, permitting trial counsel -- who have refused to speak to § 2255 counsel -- to prepare affidavits in close consultation with the Government, would magnify an already unjust imbalance of information. The Court should not permit the Government and counsel to develop written responses to Mr. Agofsky's claims, which his current defense was forced to craft without the benefit of counsel's input, because it would be fundamentally unfair.

Second, prior counsel's preparation of such affidavits would advance the Government's efforts to secure Mr. Agofsky's execution and could violate counsel's ethical duties to Mr.

Agofsky, their former client.  A capital defense attorney has a continuing duty of loyalty even after the representation ends.  Guideline 10.13 of the ABA Guidelines for the Appointment and Performance of Counsel in Capital Cases provides that all defense team members have "a continuing duty to safeguard the interests of the client," requiring them to "cooperate fully with successor counsel."  31 Hofstra L. Rev. 913, 1074 (2003).  "Even after team members have been formally replaced, they must continue to safeguard the interests of the client . . .  even when (as is commonly the case) successor counsel are investigating or asserting a claim that prior counsel was ineffective."  *Id.*, Commentary at 1075 (citing David M. Siegel, *My Reputation or Your Liberty (or Your Life): The Ethical Obligations of Criminal Defense Counsel in Postconviction Proceedings*, 23 J. Legal Prof. 85, 90-91 (1999).  As a matter of ethics, prior counsel should not be permitted to offer their cooperation to their former client's adversary, in support of a death sentence, and simultaneously refuse to cooperate with successor counsel. *Cf.* Texas Disc. Rules of Prof. Conduct, Rule 1.09(a)(3) (forbidding representation adverse to former client in "the same or a substantially related matter"); *see also Reppert v. Hooks*, No. 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-cv, 1998 WL 548784, *9 (Tex. App. (Amarillo) Aug. 28, 1998) (recognizing continued duty of loyalty to former client);  *Wasserman v. Black*, 910 S.W.2d 564, 572 (Tex. App. (Waco) 1995) (same).

Third, prior counsel's collaboration with the Government would risk a breach of the attorney-client privilege and Mr. Agofsky's right to protection of confidential information. Undoubtedly, an ineffective assistance claim may constitute an implied waiver of the privilege. *Laughner v. United States*, 373 F.2d 326 (5th Cir. 1967).  However, the waiver is not a blanket waiver, but applies only to communications relevant to the specific allegations. *Jackson v. United States*, 2001 U.S. Dist. LEXIS 23013 (N.D. Tex. May 7, 2001).  Also, not all

ineffectiveness claims assert wrongdoing by counsel. Lack of resources or caseload may account for deficient performance. These factors, too, may limit the scope of the waiver.

In addition, counsel has an independent duty to preserve a client's confidential information. A waiver of the attorney-client privilege is not a waiver of confidentiality. As Rule 1.05(b) of the Texas Disciplinary Rules of Professional Conduct provides, a lawyer shall not knowingly "use confidential information of a client to the disadvantage of the client unless the client consents after consultation." While an ineffective assistance claim may make it possible to compel lawyers to testify under subpoena, that does not authorize former counsel to reveal client confidences. Further, a client should receive notice before former counsel reveals potentially privileged or confidential information, to give the client, through current counsel, an opportunity to prevent the disclosure by asserting any applicable limitations on the scope of the waiver. And any privilege or confidentiality issues could ultimately require judicial resolution.

In Mr. Agofsky's case, the Government's submissions suggest that its attorneys and prior counsel anticipate close collaboration to prepare the requested court-ordered affidavits, a prospect that would unethically violate counsel's duty of loyalty to Mr. Agofsky. Furthermore, although the specific ineffective assistance claims raised in Mr. Agofsky's § 2255 motion operated as an implied waiver as to some otherwise privileged or confidential communications, other areas may still remain protected. For example, the § 2255 motion does not challenge counsel's conduct in connection with the post-trial disclosure that the defense witness list had been leaked to the FBI, or the August 2004 hearing before Judge Heartfield following that disclosure. Similarly, while Judge Heartfield released some sealed pleadings and other materials to Mr. Agofsky's current counsel, and while he relies on some of those materials in his ineffectiveness claim, Judge Heartfield did not release some other sealed documents (e.g., CJA

vouchers). Mr. Agofsky's current counsel have not reviewed them, he has not based any claim upon them, and he has not waived any privilege respecting them. Former counsel may possess information surrounding the leak to the FBI or the still-sealed documents that remains privileged or confidential, or the status of the information may be unclear. The Court would need to rule before counsel could properly include the questionable information in their affidavits.

The attached declaration of Professor Robert Schuwerk, an expert in professional responsibility at the University of Houston Law Center, further explains the ethical risks of the proposed affidavit approach. *See* Exhibits 1 and 2. In his opinion, while the Government may discover otherwise privileged communications "directly relevant to" Mr. Agofsky's ineffective assistance claims, they do not operate as a blanket waiver of the privilege or counsel's continuing duties of loyalty and confidentiality. Exhibit 1 at ¶¶ 11, 12. Counsel are ethically obliged to "facilitate the assertion of whatever arguably valid habeas claims Mr. Agofsky might have, including those growing out of their representation of him, while providing the government with the bare minimum of information to which it is entitled in order to respond to those claims." *Id.* at ¶ 14. The affidavit approach creates an unwarranted risk that counsel will "go further than ethical limits allow in order to vindicate themselves." *Id.* at ¶ 17. The "only entirely ethical course to follow," Professor Schuwerk believes, is to limit counsel's interactions with the Government to deposition or hearing testimony at which habeas counsel can protect Mr. Agofsky's rights. *Id.* Furthermore, Mr. Agofsky is entitled to protective measures if former counsel have already provided affidavits. *Id.* at ¶¶ 18 to 21.

Thus, depositions represent the only fair means of balancing Mr. Agofsky's rights against the Government's entitlement to seek information relevant to his claims. If the Court instead follows the affidavit approach, it would at a minimum require strict limitations and court

supervision to provide appropriate protections.  The Court would have to determine if privileged or confidential information has already been disclosed and prevent any further disclosures in the process of creating the affidavits.  And it would have to insure that prior counsel did not collaborate with the Government in a way that could create an unethical conflict of interest. Therefore, any order providing for attorney affidavits would need to provide:

- • that prior counsel must draft the affidavits independently, without input from the Government's attorneys;
- • that they must not speak with each other concerning their content or preparation;
- • that they must limit their assertions strictly to factual statements or explanations of matters within their own knowledge, without legal argument or speculation;
- • that they must not reveal privileged or confidential documents;
- • that they must identify any potentially privileged or confidential communications, and seek a judicial determination whether specific claims in the § 2255 motion impliedly waived the privilege or right to confidentiality as to those claims;
- • that they must state the nature and extent of all conversations they have held with the Government's attorneys concerning the allegations in the § 2255 motion, both before and after the Court's order partially granting the Government's motion to unseal (Doc. 63), and state whether any potentially privileged or confidential communications had been disclosed;
- • that they must attach to their affidavits all correspondence they have had with the Government's attorneys concerning the allegations in the § 2255 motion.

Even these protections, however, would be inadequate, because they would force Mr. Agofsky's prior counsel to choose between their own interests and those of their former client in identifying possibly privileged or confidential information.  *See* Exhibit 1 at ¶ 17.  Thus attorney-prepared affidavits would not only be unfair and potentially unethical, but also unworkable.  Mr. Agofsky therefore opposes the Government's motion and moves for depositions as a more appropriate exercise of the Court's discovery discretion in this case.

**B.   Neutral and Even-Handed Depositions Would Offer an Efficient Means to Develop Petitioner's Claims.**

In contrast to attorney-prepared affidavits, depositions would require recorded testimony under oath, subject to examination and cross-examination pursuant to the Rules of Evidence,

with an opportunity to preserve claims of privilege and obtain immediate rulings on those claims. *See* F.R.C.P. 30*(*b)(3), (c)(1), (c)(2) . They offer the best means to redress the imbalance of access to information that has developed in this case and protect prior counsel from the conflicts of interest and ethical dilemmas set forth above.

Courts may use depositions to expand the record in § 2255 cases. *See United States v. Goodman*, 590 F.2d 705, 712 -713 (8th Cir. 1979) (stating that § 2255 Rules authorize depositions). Federal courts have routinely authorized depositions under habeas Rule 6 in § 2254 cases and the corresponding Rule in § 2255 cases.[5] Depositions are useful because they enable the court to dispose of a petitioner's claims in an efficient manner which both protects the petitioner's interests and conserves the court's resources. *See* Annotation, 18 U.S.C.A. § 2254, Rule 6 (pre-hearing discovery may include depositions, which may demonstrate whether evidentiary hearing is necessary or facilitate expansion of record under Rule 7).

---

[5] *See Graves v. Dretke*, 442 F.3d 334 (5th Cir. 2006) (granting relief based partly upon depositions of the co-defendant); *East v. Scott*, 55 F.3d 996 (5th Cir. 1995) (trial court abused discretion by denying additional discovery in support of due process claim based on private prosecutor's assumption of control over case; determination required depositions of private prosecutor, public prosecutor, and staff); *Long v. United States,* 883 F.2d 966 (11th Cir. 1989) (petitioner permitted to depose trial counsel about misstatements made by trial counsel to petitioner); *Momennia v. Estrada*, 2003 WL 21318323 (N.D. Tex. 2003) (granting depositions of FBI agents regarding knowledge of petitioner's deportation); *United States v. Anderson*, 2003 U.S. Dist. LEXIS 19213, *31-*34 (D. Kan. 2003) (granting deposition of Government's witness regarding witness's prior relationship with federal law enforcement officials, to develop Brady claim); *Lovern v. United States*, 689 F. Supp. 569, 577, 585, 589 (E.D. Va. 1988) (depositions taken in § 2255 proceedings); *United States v. Debose*, 496 F. Supp. 341 (W.D. Okla. 1980) (ordering depositions of witnesses concerning movant's waiver of direct appeal); *Kandies v. Lee*, et al., 1:99-cv-764 (M.D. N.C. December 20, 2007 ((minute entry (Doc. 71) granting motion for deposition of district attorney); *Canales v. Dretke*, 2:03-CV-069, (E.D. Tex., Marshal Div., Nov. 5, 2008) (Doc. 42) (permitting depositions of prisoners about incentives for their testimony, and of jurors about concealed convictions, viewing petitioner in shackles, and ex parte communications with judge); *Matthews v. Parker*, No. 3:99-CV-00091-H (W.D. Ky. July 19, 2006) (Doc. 238) (granting depositions of trial counsel, which were submitted as exhibits to evidentiary hearing); *Dennis v. Woodford,* No. C-98-21027-JF (N.D. Ca., San Jose Div., August 6, 2002) (Doc. 118)(authorizing depositions of trial counsel and state's experts).

In this case, Mr. Agofsky has raised multiple claims of ineffective assistance of counsel. As the Government itself has indicated in its request for court-ordered affidavits (Doc. 65 at 2), trial counsel's observations and accounts are fundamental to the disposition of these claims. Evidence regarding trial counsel's investigation, preparation, legal research, workload, resources, and strategic reasoning will assist the Court's determination whether trial counsel's representation fell below the reasonable professional standards. *See Strickland v. Washington*, 466 U.S. 668 (1984); *Wiggins v. Smith*, 539 U.S. 510 (2003). Because trial counsel have refused to speak with current counsel, current counsel have been unable to garner this information and develop Mr. Agofsky's claims. Furthermore, trial counsel's investigator possesses information regarding witnesses interviewed or not interviewed, and other aspects of the investigation, not reflected in the documents. The mental health expert, Dr. Roberts, possesses similar information regarding his evaluation and the information provided or not provided to him by trial counsel.

Thus, depositions offer an efficient means of developing these claims, without the many risks created by court-ordered attorney affidavits. They are neutral and adversarial and provide appropriate protections for privileged or confidential information. At the same time, depositions may enable the parties to narrow their factual disputes and reach stipulations or other agreements regarding relevant facts. Ordering depositions would therefore help safeguard Mr. Agofsky's right to full and fair litigation of his claims, while conserving scarce judicial time.

### C. Good Cause Exists for the Court to Authorize Discovery in This Case.

Under § 2255 Rule 6(a), a district court must order discovery upon a showing of good cause.[6] "Although discovery is permitted only by the leave of the court, the court should not

---

[6] The Supreme Court held in *Bracy v. Gramley*, 520 U.S. 899, 908-909 (1997), that a petitioner has demonstrated "good cause" requiring discovery "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" (*quoting Harris v. Nelson*, 394 U.S. 286, 300 (1969)).

hesitate to allow discovery, where it will help illuminate the issues underlying the applicant's claim." *Gaitan-Campanioni v. Thornburgh*, 777 F. Supp. 1355, 1356-1357 (E.D. Tex. 1991).

Mr. Agofsky has met this burden.  In support of Grounds I and II of his §2255 motion, discussed above at paragraphs 3 and 4, he specifically sets forth trial counsel's actions or inaction and explains why counsel's performance was deficient.  Among other claims, he asserts that his counsel were ineffective for failing to investigate his case and interview important guilt-innocence and penalty phase witnesses, including eyewitnesses, Government witnesses, and character witnesses.  The claims are not speculative but are based upon post-conviction investigation.  For example, some of the allegations derive from interviews with potential guilt-innocence phase witnesses who confirm that neither trial counsel nor their investigator ever interviewed them.  Additionally, the motion alleges that neither counsel nor any other member of the defense team compiled a complete and independent social history, and it details evidence that could have been compiled and presented at the penalty phase of Mr. Agofsky's trial.

If proven, these claims will entitle Mr. Agofsky to relief.  Counsel's failure to interview key witnesses, for example, certainly falls below minimum professional standards. Had counsel provided constitutionally adequate representation in that respect and others described in the § 2255 motion, it is reasonably likely that additional or different evidence (also set forth in the §

---

*Compare Reed v. Quarterman*, 504 F.3d 465, 471-73 (5th Cir. 2007)(citing *Bracy* and *Harris* and granting certificate of appealability because petitioner had "made and supported" specific allegations that prosecutor knew about witness's lies and about promises witness had received), *rev'd and remanded on other grnds*, ___ F.3d ___, No. 05-70046, 2009 WL 58903 (5th Cir. Jan. 12, 2009), *with Murphy v. Johnson*, 205 F.3d 809, 813-15 (5th Cir. 2000) (upholding denial of discovery for "conclusory" claims "based entirely on speculation").  The "good cause" standard permits the use of discovery to establish a prima facie case for relief.  That is, "good cause" is shown even if the movant's allegations support "only a theory . . . [that] is not supported by any solid evidence" at the time of the discovery request.  *Bracy*, 520 U.S. at 908.  Specific allegations suggesting that the movant *may* be able to demonstrate a right to relief establish "good cause" and impose on the district court a "duty" to allow discovery.  *Id*. at 908-09.  Thus, under *Harris* and *Bracy*, a petitioner does not have to prove the truth of his claims to be entitled to conduct discovery; he simply has to assert claims which would entitle him to relief.

2255 motion) would have been presented at both phases of trial and a different result would have been obtained.   Thus, Mr. Agofsky has met the standard set forth by *Bracy* and its progeny.

## CONCLUSION

Mr. Agofsky has asserted multiple specific grounds for relief which individually and cumulatively satisfy the *Bracy* standard, in that they provide reason to believe that, if the facts are fully developed, Mr. Agofsky may be able to demonstrate his entitlement to relief. Authorizing current counsel to depose the specified witnesses would provide the fairest and most efficient means to facilitate the Court's review of his claims.   Thus, Mr. Agofsky respectfully requests that the Court:

1.  Hold oral argument on the Government's motion for court-ordered attorney affidavits, Mr. Agofsky's motion for depositions, and his separately filed motion to set a schedule for other discovery;

2.  Deny the Government's motion for court-ordered attorney affidavits;

3.  Authorize depositions of trial counsel, G. Patrick Black and Douglas Barlow; the defense investigator, Jay Bennett; the defense mental health expert, Dr. Dan Roberts; and appellate counsel Brent Newton;

4.  Allow a reasonable opportunity for Mr. Agofsky to amend his pleading in light of depositions and other discovery; and

5.  Order such other or further relief as justice may require.

/s/ Jennifer Merrigan
JENNIFER MERRIGAN
MO Bar #56733
Public Interest Litigation Clinic
305 E. 63rd Street
Kansas City, MO  64113
Telephone (816) 363-2795
Facsimile (816) 363-2799

/s/ Claudia Van Wyk
CLAUDIA VAN WYK
NJ Bar #012401981
Assistant Federal Defender
Federal Community Defender Office
Capital Habeas Unit
601 Walnut Street, Suite 545W
Philadelphia, PA 19081
Telephone (215) 928-0520
Facsimile (215) 928-0826

## CERTIFICATE OF CONFERENCE

I hereby certify that on January 26, 2009, I spoke by telephone to AUSA Joseph Batte and advised him of the instant opposition to the government's motion for court-ordered attorney affidavits and cross-motion for court-ordered depositions.  He stated that the Government would not consent to movant's request for court-ordered depositions.

/s/ Claudia Van Wyk

Claudia Van Wyk

*Counsel for Movant*

## CERTIFICATE OF SERVICE

I hereby certify that on Juanuary 26, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following: **Traci Lynne Kenner**, US Attorney's Office, 110 North College, Suite 700, Tyler, TX 75702;and **Joseph Robert Batte,** U S Attorney's Office- Beaumont, 350 Magnolia, Suite 150, Beaumont, TX 77701.

/s/ Claudia Van Wyk

Claudia Van Wyk

*Counsel for Movant*