UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | No.    1:07-cv-00511 |
| | ) | |
| SHANNON WAYNE AGOFSKY, | ) | |
| | ) | |
| Movant. | ) | |
| | ) | |

**Declaration of Professor Robert P. Schuwerk**

I, Robert P. Schuwerk, under penalty of perjury, hereby declare as follows:

1.  I offer this declaration on behalf of Shannon Wayne Agofsky in connection with issues that have arisen in this habeas proceeding, namely (1) the extent of any waiver of the attorney-client privilege that is implicit in Mr. Agofsky's various claims of ineffective assistance of counsel on the part of the trial and appellate attorneys involved in his underlying criminal conviction (hereafter frequently referred to collectively as "defense counsel"), and (2) the manner in which those attorneys should be permitted to provide to the government whatever information that they might have and are free to disclose that is relevant to those claims

**Qualifications For Rendering Requested Expert Opinions**

2.  My principal qualifications for rendering these opinions are set out in my vita, which is attached as an appendix to this report. In brief, they are that I am a professor of law at the University of Houston Law Center, where I have taught for more than twenty-five years. Throughout that period, I have specialized in attorney tort and disciplinary liability

1

Exhibit 1
January 26, 2009

issues. I have served for more than twenty years on various bodies charged by the State Bar of Texas with writing and revising the disciplinary standards governing Texas attorneys, and have received several awards from the Bar for those activities, including its highest award, the President's Award, for the 1999-2000 bar year. In particular, from 1984-1990, I served as a member of and assistant reporter to the Model Rules of Professional Conduct Committee of the State Bar of Texas, a blue ribbon committee that developed the current Texas Disciplinary Rules of Professional Conduct. In 1991, I became a member of the Texas Disciplinary Rules of Professional Conduct Committee of the State Bar of Texas, which is responsible for either initiating or reviewing all proposed amendments to Texas's attorney disciplinary rules, and served continuously on that Committee thereafter through December of 2006. From 1991-2004 I was chair of the drafting subcommittee of that Committee, and from 1994-2004 I was chair of the full Committee as well. During the latter part of my tenure, the Committee completed a review of the current Texas Disciplinary Rules of Professional Conduct, as well as the work of the Supreme Court Task Force discussed immediately below, to determine whether any of those disciplinary rules should be amended in light of amendments to the American Bar Association's Model Rules of Professional Conduct that have been made since the TDRPC first went into effect and the report and recommendations of the Supreme Court Task Force on that same topic.

3. In addition, in 2003, I was appointed to the Supreme Court Task Force, which was charged by the supreme court with reviewing the current Texas Disciplinary Rules of Professional Conduct and determining whether any of those disciplinary rules should be amended in light of amendments to the American Bar Association's Model Rules of

2

Professional Conduct that have been made since the TDRPC first went into effect. The Task Report completed that work and submitted it to the supreme court in 2005. However, the court asked the Task Force to continue to meet for the purposes of preparing comments on the work product of the Texas Disciplinary Rules of Professional Conduct Committee referred to above. I participated in that work as well.

4. Thereafter the supreme court directed the TDRPC Committee and the Task Force to appoint three representatives to a conference committee that would endeavor to develop a single set of recommendations for the court to consider presenting to the State Bar of Texas for adoption. This was done, and I was selected as a representative of the Task Force. The conference committee met several times in late 2007 and early 2008 before completing its work. I served on it throughout that period.

5. In addition to these Bar-related activities, I am the co-author (with Lillian B. Hardwick) of a leading treatise on attorney disciplinary and tort-liability issues entitled HANDBOOK OF TEXAS LAWYER AND JUDICIAL ETHICS: ATTORNEY TORT STANDARDS, ATTORNEY DISCIPLINARY STANDARDS, JUDICIAL ETHICS STANDARDS, RECUSAL AND DISQUALIFICATION OF JUDGES 2007-2008 (Thomson*West 2007), as well as the five prior editions of that work. My responsibilities in connection with those six editions (as well as a 2009 edition that is about to be released) have included preparation of Part I of each, dealing with attorney tort liability, as well as Part II of each, discussing the substantive disciplinary standards applicable to Texas attorneys. I have been qualified as an expert on such matters many times.

3

## Background Facts

6. My understanding of the facts pertinent to this declaration is as follows. Mr. Agofsky was tried for a capital offense, convicted, and sentenced to death. Messrs. G. Patrick Black and Douglas Barlow served as his counsel in the trial leading to his conviction. Mr. Jay Bennett served as an investigator working with Messrs. Black and Barlow in connection with that trial, and Mrs. Denise Caillier served as an administrative assistant in Mr. Black's office while the case was being tried. Mr. Brent Newton served as Mr. Agofsky's appellate counsel in the direct appeal of his conviction.

7. Ms. Claudia Van Wyk and Ms. Jennifer Merrigan were appointed as habeas counsel to Mr. Agofsky. As part of their effort to determine what claims, if any, to assert on Mr. Agofsky's behalf, habeas counsel wrote Messrs. Black and Barlow and asked to speak with them concerning their defense of Mr. Agofsky in the underlying matter. Mr. Barlow never responded to that letter, nor to several phone calls trying to arrange such a meeting. Mr. Black did respond, but stated that he was unwilling to speak to habeas counsel unless Mr. Agofsky explicitly waived his attorney-client privilege with respect to any communications between the two of them.[1] Habeas counsel secured such a waiver and provided it to Mr. Black. However, Mr. Black still refused to meet with them to discuss his defense of Mr. Agofsky "for the reasons stated in [his earlier] letter," even though the only objection to him doing so made in that letter had been met.

8. These responses are noteworthy in that Guideline 10.13 of the ABA's Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases specifically requires defense counsel in death penalty cases to undertake reasonable efforts to cooperate with

---

[1] In this same letter, Mr. Black also advised habeas counsel that "Mrs. Denise Caillier and Mr. Jay Bennett have both advised me that it is their individual decision not to speak with you, Mrs. Merrigan, or the post-conviction investigator in regard to Mr. Agofsky's case."

4

habeas counsel, even where, as here, habeas counsel might assert claims of ineffective assistance of counsel with respect to defense counsel's representation of their client. *See* Guideline 10.13 Commentary. In his correspondence with habeas counsel, Mr. Black took the position that he would not meet with either habeas counsel or counsel for the government except "at a 28 U.S.C. § 2255 hearing." This position, while less than required of him under the ABA standard referred to above, at least held out the prospect of minimizing the likelihood of a breach of Mr. Agofsky's attorney-client privilege by Mr. Black, whether inadvertent or intentional, in the course of these proceedings, as habeas counsel would be present at any such hearing to lodge objections to questions calling for any such disclosures.[2]

9. With defense counsel taking these positions and the deadline for filing Mr. Agofsky's habeas petition looming, habeas counsel felt compelled to present his ineffective assistance claims without first obtaining any input from his defense counsel. They did so. That habeas action, however, was stayed pending resolution of Mr. Agofsky's appeal, which concluded unsuccessfully in October 2008 when the Supreme Court denied certiorari. That event apparently stimulated the motion recently filed by the government seeking to obtain by way of affidavit from Mr. Agofsky's defense counsel the information that it claims it needs to respond to Mr. Agofsky's ineffective assistance claims. In its motion, the government appears to take the position that the ineffective-assistance claims in Mr. Agofsky's habeas petition completely waive any right to assert the attorney-client privilege with respect to his communications with defense counsel. Thus, the government apparently contemplates that it is entirely free to  ask, and Mr.

---

[2] Of course, this undertaking said nothing about any possible future contacts between Mr. Barlow or Mr. Newton and the government concerning Mr. Agofsky's ineffective-assistance claims.

Agofsky's defense counsel are entirely free to answer, any and all questions that the government might have concerning defense counsel's defense of Mr. Agofsky and, as yet, defense counsel has not indicated that they disagree with that position. Moreover, the government has informed habeas counsel that all three defense counsel (Messrs. Black, Barlow and Newton) have agreed to provide such affidavits, but that it is the policy of the Federal Defender Office, Messrs. Black and Newton's employer, to do so only pursuant to court order.[3] Thus, the very real possibility exists of a voluntary, unlimited collaboration between Mr. Agofsky's defense counsel and the government aimed at defeating the ineffective-assistance claims of defense counsel's former client, Mr. Agofsky.

**Opinions**

10. The present situation calls for a careful balancing of the rights of the government and those of Mr. Agofsky. It is common ground that if Mr. Agofsky raises claims of ineffective assistance of counsel against defense counsel, the government is entitled to obtain unprivileged information from those attorneys pertinent in assessing the merits of those claims. It is also common ground that, by asserting such claims, Mr. Agofsky has implicitly made a limited waiver of his attorney-client privilege with defense counsel, one that entitles the government to discover what would otherwise be privileged communications (1) between defense counsel and Mr. Agofsky, (2) among those attorneys, or (3) between those attorneys and their staff, provided those communications are directly relevant to the merits of Mr. Agofsky's ineffective-assistance claims.

---

[3] Mr. Barlow is not an employee of that office and so is not bound by that policy. He was appointed to represent Mr. Agofsky.

11. The government is mistaken, however, in believing that by asserting such claims, Mr. Agofsky has, in effect, made a blanket waiver of his attorney-client privilege with defense counsel. To the contrary, any such waiver is limited to those communications that are directly relevant to those specific allegations of ineffective assistance of counsel to which the communications in question directly relate. *See Jackson v. United States*, 2001 U.S. Dist. LEXIS 23013 (N.D. Tex., May 7,2001); *Ex Parte Lewis*, 2008 WL 2854805 (Ala.Crim.App., July 25. 2008) (petitioner waives the attorney-client privilege "only with respect to matters relevant to his allegations"); *Waldrip v. Head*, 532 S.E.2d 380 (Ga. 2000) ("we reject the state's contention that the filing ... is an absolute waiver that entitles it to the complete file of [defense] ... counsel").

12. It is also important to bear in mind that any waiver of the privilege that might exist here does not also constitute a waiver of defense counsel's continuing duties of loyalty to Mr. Agofsky and, apart from the scope of any such waiver, their continuing duty of confidentiality with respect to their representation of him. It is one thing for the assertion of an ineffective-assistance claim to be viewed as a basis on which the lawyer can be compelled to testify under subpoena at a deposition or hearing at which Mr. Agofsky's habeas counsel are free to (actually, obliged to) limit the scope of any waiver of the privilege. It is quite another for defense counsel to take that waiver as an opportunity to cooperate with the government by providing information, in the form of affidavits or otherwise, in a setting where those checks on what information they choose to reveal are absent. The affidavit approach requested by the government here, however, constitutes an open invitation for Mr. Agofsky's defense counsel to take part in just such an effort.

13. While I cannot say for certain that defense counsel will, whether intentionally or through inadvertence, violate Mr. Agofsky's rights in these respects, there are certainly indications that that is a very real possibility. One such indication is defense counsel's failure to cooperate with habeas counsel as called for under applicable ethical standards. That lack of cooperation originated with a professed concern over protecting Mr. Agofsky's attorney-client privilege of dubious legitimacy,[4] continued with a refusal to cooperate with habeas counsel even after that objection had been satisfied, and has been followed by an apparent willingness to accede to the government's request to provide it with information in a form that threatens Mr. Agofsky's rights.

14. From an ethical standpoint, this is of course precisely backwards. What defense counsel's ethical duties require of them are to facilitate the assertion of whatever arguably valid habeas claims Mr. Agofsky might have, including those growing out of their representation of him, while providing the government with the bare minimum of information to which it is entitled in order to respond to those claims. What appears to be about to happen, however, is that defense counsel are actively assisting the government in resisting Mr. Agofsky's ineffective assistance claims by providing it with voluntary pre-hearing discovery of uncontrolled and indefinite breadth, after having refused to even meet with habeas counsel to discuss those claims.

15. Another indication that Mr. Agofsky's rights might be at risk is defense counsel's apparent hostility to habeas counsel inclusion of ineffective-assistance-of-counsel claims among those asserted on Mr. Agofsky's behalf. This is exemplified for me by the tone taken by Mr. Black in his exchange of correspondence with habeas counsel. For

---

[4] In that regard, it seems highly doubtful that a communication between defense counsel and habeas counsel concerning Mr. Agofsky's representation by either of them would be anything but privileged.

8

example, in his November 26, 2007 letter to Ms. Van Wyk, he went out of his way to inquire into what grounds habeas counsel was going to allege on Mr. Agofsky's behalf. By his December 4, 2007 letter to Ms. Van Wyk, Mr. Black apparently had been advised that habeas counsel "intend[ed] to review my trial preparation, my trial strategies, and the witnesses interviewed on Mr. Agofsky's behalf." He then continued, in what struck me as a very defensive tone, that his office "worked extremely hard in this very difficult case" and that "[e]ffective legal representation was provided to Mr. Agofsky."

16. To me, this exchange strongly suggests two things. The first is that Mr. Black resents the assertion of the ineffective-assistance-of-counsel claims brought on behalf of Mr. Agofsky in this proceeding. The second is that he intends to mount a vigorous defense to them. Within ethical limits, Mr. Black is of course free to do so.[5] The very real danger his apparent attitudes present, however, is that in his zeal to vindicate himself and his colleagues, Mr. Black will transgress those ethical limits. While the attitudes of other defense counsel are not readily apparent, it certainly would be understandable if they were similar to those of Mr. Black, as allegations of ineffective assistance of counsel against them are unlikely to engender good will on their parts towards either Mr. Agofsky or habeas counsel.

17. The point is that the annoyance that defense counsel might have as a result of his assertion of his ineffective assistance of counsel claims is likely to color their judgment,

---

[5] I note in passing that while Mr. Black may view himself as (unjustly) accused by some of Mr. Agofsky's allegations, the present proceeding does not present a true "self defense" claim under TDRPC Rule 1.05(c)(6) or its ABA counterpart, Model Rule 1.6. In this proceeding, the issue is whether any of the activities of defense counsel deprived Mr. Agofsky of his constitutional right to the effective assistance of counsel. However, Mr. Black is not a party to this proceeding, he is not bound by any conclusion reached by the court in assessing the quality of his representation, and he is not subject to any penalty for any lapses that the court might identify in that regard. Thus, the tolerance shown to a lawyer to reveal information pertinent to the lawyer's representation of a client to defend against charges of misconduct brought by that client is simply not available to him. *See Styles v. Mumbert,* 79 Cal.Rptr.3d 880, 884 (Cal.App. 2008) ("While ... [a former lawyer] can reveal confidences to defend against a malpractice claim or fee dispute, this is not a malpractice action.").

however conscientious and well meaning they might be, and so lead them to go further than applicable ethical limits allow in order to vindicate themselves. That problem, however, is readily solved by the measures proposed by habeas counsel: limiting the government's ability to obtain information from defense counsel to deposition or hearing testimony at which habeas counsel are present and free to protect Mr. Agofsky's rights in accordance with law. To me, that is the only entirely ethical course to follow.

18. Everything that I have said thus far proceeds on the assumption that the government has *not yet* communicated with defense counsel concerning the merits of Mr. Agofsky's habeas petition and has *not yet* obtained the affidavits that they propose having the court order defense counsel to produce. It is quite possible, however, that that assumption is incorrect, and habeas counsel are entitled to find out whether or not it is. Should it turn out that such communications already have occurred and that such affidavits have been generated, it is my further opinion that additional measures are needed to safeguard Mr. Agofsky's rights. At least four come immediately to mind.

19. The first such measure would be to enjoin any further communications between the government and defense counsel concerning Mr. Agofsky's habeas claims except those occurring through procedures authorized by the court and duly protective of Mr. Agofsky's rights—that is, through the deposition process requested by habeas counsel or some equally efficacious alternative either agreed to by the parties or ordered by the court. The second such measure would be to refuse to admit any affidavits obtained by

10

the government from trial court in this proceeding for any purpose without the consent of habeas counsel.[6]

20. The third and fourth such measures should be invoked only if it appears that the government has had communications with Mr. Agofsky's defense counsel that may have encroached on his attorney-client privilege. Under Texas law, it is clear that "without doubt" a party can be disqualified for obtaining unauthorized access to an opposing party's privileged information. *See In re Meador*, 968 S.W.2d 346, 351 (Tex. 1998). Moreover, where a party has been disqualified on that basis, Texas law also provides that the disqualified counsel is not free to simply turn its entire file over to successor counsel but instead must limit the materials it so provides to court filings and other documents unlikely to disclose the confidential information involved, with any other materials it wishes to furnish to successor counsel first being identified for the opposing party and, if an objection to furnishing it is lodged, reviewed by the court prior to any turnover. *See generally In re George*, 28 S.W. 511 (Tex. 2000). Finally, once a violation of confidences is shown, Texas law generally places the burden on the violating party to demonstrate that the action it wishes to take (continuing to represent a party or turning information over to a successor) will not prejudice the offended party. *See generally In re American Home Products*, 985 S.W.2d 68, 77-78 (Tex. 1998); *In re George, supra.*

21. Thus, under Texas law, should it turn out that the government already has had communications with Mr. Agofsky's defense counsel that have either trenched on Mr. Agofsky's attorney-client privilege, or resulted in the creation of affidavits by defense counsel that do so, such a circumstance would provide a basis for disqualifying the

---

[6] This exception is to avoid needless inconvenience to the government should it turn out that any such affidavits appear to habeas counsel to have been limited to matters as to which the government was entitled to obtain their testimony.

government's current counsel as well as a basis for restricting the information that disqualified counsel could provide to successor counsel, as outlined in paragraph 20 of this declaration and set out in greater detail in the authorities cited there.

Further declarant sayeth not.

Robert P. Schuwerk
Professor of Law