**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent,** | ) | |
| | ) | |
| v. | ) | No.  1:07-cv-00511 |
| | ) | |
| **SHANNON WAYNE AGOFSKY,** | ) | |
| | ) | |
| **Movant.** | ) | |
| _____ | ) | |

**OPPOSITION TO GOVERNMENT'S MOTION TO STRIKE**
**AND**
**CROSS-MOTION TO AMEND**

On May 29, 2009, this Court granted Shannon Agofsky permission to submit a post-deposition Supplement, which he filed on September 9, 2009.  The government had agreed that Mr. Agofsky could supplement his Motion for Relief from Judgment pursuant to 28 U.S.C. § 2255, but had reserved the right to identify and object to any allegations that, in the government's view, constituted amendments rather than supplements to the motion.  Docs. 90, 105.  The government now moves to strike many of the allegations in the Supplement as improper amendments.  Its only objection to these allegations is that, as amendments, they are untimely.  *See* Government's Motion to Strike, Doc. 112.

Mr. Agofsky opposes the government's motion.  All of the claims to which the government objects are appropriate as supplements, as amendments, or both, and all are timely because he filed the Supplement within a year after direct review ended, with the denial of *certiorari* on his resentencing appeal, on October 6, 2008.  The claims are also timely because they relate back to

claims asserted in the Amended § 2255 Motion, benefit from equitable tolling, or were raised within a year after Mr. Agofsky's defense discovered the underlying facts.

The claims to which the government objects fall in eleven categories. As elaborated below, adjudicating the government's objections to each category will require the Court to review the claims themselves to compare the allegations in the Amended § 2255 Motion to those in the Supplement, to consider the assertions in the court-authorized affidavits of trial and appellate counsel, and to apply between two and six legal tests, depending on the category of claim under consideration. Resolving the government's motion at this early stage will accordingly require the Court to engage in a detailed review of the facts and legal arguments involved in each category of claim. Mr. Agofsky therefore moves to defer resolution of the government's motion to strike until briefing is complete. Alternatively, Mr. Agofsky requests that the Court deny the government's motion to strike as to any claims the Court views as supplements, and, as to any claims more properly considered amendments, he cross-moves to amend. *See Poullard v. Federal Bureau of Prisons*, 535 F. Supp. 2d 146, 148-49 (D.D.C. 2008) (where facts alleged in proposed supplemental pleading did not take place after date of original complaint, court treated motion as motion to amend to provide alternative bases of relief); *Pearl Brewing Co. v. Jos. Schliz Brewing Co.*, 415 F. Supp. 1122, 1125 (S.D. Tex. 1976) (vigorously contested factual questions not to be inquired into at stage of requested amendment of complaints, and amendment allowed).

Mr. Agofsky summarizes below his position on each of the eleven categories of claim to which the government objects. He elaborates his arguments in the sections that follow.

1. *Trial Errors at the Guilt-Innocence and Penalty Phases*

   a.  The *additional murder instruction claims* are appropriately treated as either supplements or amendments.  They were filed within a year of *certiorari* denial on the resentencing appeal, and relate back.
   b.  The *additional penalty phase instruction claim* is appropriately treated as either a supplement or an amendment.  It was filed within a year of *certiorari* denial on the resentencing appeal, and relates back.
   c.  The *prosecutorial misconduct claims* are appropriately treated as either supplements or amendments.  They were filed within a year of *certiorari* denial on the resentencing appeal, and relate back.
   d.  The claim concerning *counsel's failure to cross-examine on specific instances of violent conduct* is appropriately treated as either a supplement or an amendment. It was filed within a year of *certiorari* denial on the resentencing appeal, and relates back.
   e.  The claim concerning *counsel's failure to seek severance* is appropriately treated as either a supplement or an amendment.  It was filed within a year of *certiorari* denial on the resentencing appeal.

2. *New forensic science evidence concerning the Noel State Bank robbery*: This claim is appropriately treated as either a supplement or an amendment.  It was filed within a year of *certiorari* denial on the resentencing appeal, was filed within a year from the time when it could have been discovered through due diligence, benefits from equitable tolling, and relates back.

3. *Further development of appellate ineffective assistance claim:* This claim is appropriately treated as either a supplement or an amendment.  It was filed within a year of *certiorari* denial on the resentencing appeal, and relates back.

4. *Newly discovered exculpatory evidence suppressed by the prosecution*: This claim is appropriately treated as either a supplement or an amendment.  It was filed within a year of *certiorari* denial on the resentencing appeal, was filed within a year from the time when it could have been discovered through due diligence, benefits from equitable tolling, and relates back.

5. *Speedy trial claim*: This claim is an appropriate candidate for amendment, and was timely filed within a year of *certiorari* denial on the resentencing appeal.

6. *NAS report claim*: This claim is appropriately treated as either a supplement or an amendment.  It was filed within a year of *certiorari* denial on the resentencing appeal, was filed within a year from the time when it could have been discovered through due diligence, and relates back.

7. *Actual innocence claim:* This claim is appropriately treated as either a supplement

or an amendment.  It was filed within a year of *certiorari* denial on the resentencing appeal, was filed within a year from the time when it could have been discovered through due diligence, benefits from equitable tolling, and relates back.

## A.      Procedural Background

On Mr. Agofsky's initial direct appeal, the Court of Appeals denied relief on all grounds except one, vacating and remanding with directions to the district court to correct a double jeopardy violation by providing the government an opportunity to elect one of the two capital counts, and then reconvicting and resentencing Mr. Agofsky to death on the remaining count.  *United States v. Agofsky*, 458 F.3d 369 (5th Cir. 2006).  Mr. Agofsky's appellate counsel did not seek *en banc* review, but did seek *certiorari*, which was denied on January 22, 2007.  *Agofsky v. United States*, 549 U.S. 1182 (2007).  On March, 30, 2007, the government elected Count Two, and the Honorable Thad Heartfield, U.S.D.J., dismissed Count One, reimposed the conviction on Count Two, and resentenced Mr. Agofsky to death on that count.  Criminal Docket, No. 1:03-cr-00173, Docs. 243-46.  Mr. Agofsky appealed the reconviction and resentencing.  *Id.*, Doc. 247.

Meanwhile, Judge Heartfield had assigned new counsel to investigate and represent Mr. Agofsky on a contemplated motion for relief from judgment pursuant to 28 U.S.C. § 2255.  Civil Docket, No. 1:07-cv-00511, Doc. 3.  On October 9, 2007, the court granted Mr. Agofsky's unopposed motion to file his projected § 2255 motion and then stay it and hold proceedings in abeyance until the conclusion of the resentencing appeal.  The court ordered that postconviction counsel, their investigator, and their mitigation specialist could continue investigation until the § 2255 motion was filed, but that no further investigation or mitigation specialist expenses would be "preallowed" during the abeyance period.  Doc. 24.  Mr. Agofsky filed his initial § 2255 Motion on

January 16, 2008.  Doc. 38.  His case was then transferred from Judge Heartfield to this Court, which denied his *ex parte* motion for expert funding, filed on or about March 25, 2008.

Direct review ended with the denial of *certiorari* on the resentencing appeal on October 6, 2008.  Criminal Docket, Doc. 263; *Agofsky v. United States*, ___ U.S. ___, 129 S.Ct. 64 (2008).  Mr. Agofsky filed an Amended § 2255 Motion the same day.  Civil Docket, Doc. 51.

Beginning shortly before the amendment, several significant events occurred.  On September 9, 2008, the Court appointed the Capital Habeas Unit of the Federal Community Defender in Philadelphia as additional counsel, thus providing him with a funding source to continue his investigation and consult experts.  Doc. 50.  On October 21, the Court lifted the order holding proceedings in abeyance.  Doc. 57.  In January 2009, the government moved to authorize trial and appellate counsel to submit affidavits responding to Mr. Agofsky's allegations, and Mr. Agofsky cross-moved to depose all three attorneys, the trial investigator, and the trial mental health expert.  Docs. 65, 66, 68.  On February 10, the Court granted the government's motion for attorney affidavits and denied the defense motion for attorney depositions, but granted the defense motion to depose the investigator and mental health expert.  Doc. 70.  All three prior counsel served their affidavits upon current counsel for both sides in March 2009.  Because trial counsel had declined to submit to prefiling interviews, their affidavits provided their first and only responses to the allegations in the § 2255 Motion.

The parties received several agreed extensions of the deposition dates.  In the course of seeking them, they also agreed to extend the post-deposition briefing schedule.  Mr. Agofsky's counsel indicated, at first tentatively and then with certainty as the investigation continued, that a

supplement to the Amended § 2255 Motion would be necessary after the depositions.[1]   The

government agreed that Mr. Agofsky should be permitted to supplement, but reserved the right to

object to any allegations it thought constituted amendments.  In his motion to the Court, Mr. Agofsky

proposed in the alternative, again with the government's consent, that the parties be permitted to

propose a post-deposition briefing schedule.  Doc. 88.  The Court did not accept that proposal, but

granted Mr. Agofsky's motion for an opportunity to supplement his Amended § 2255 Motion after

the depositions.  Doc. 90.  In subsequent unopposed extension motions, the government continued

to reserve the right to identify which claims it considered amendments (which would therefore

require a motion) and which were supplements (which would not require a motion, now that the

Court had granted Mr. Agofsky's initial request).  Docs. 97, 100.

In its motion to strike, the government advances no objection to about three-fourths of the

allegations in Mr. Agofsky's Supplement.[2]  It does not move to strike any assertions concerning trial

counsel's inadequate investigation and preparation for the guilt-innocence phase (Point I, sections

A, B, C, D, E, F, and G), counsel's failure to object to burden-shifting murder and manslaughter

instructions reflected in dueling "malice" instructions (Point I.I.2.a.i), or the cumulative effect of

---

[1]   The government argues at some length that the inclusion of claims it views as
amendments exceeded the scope of the parties' agreement providing for a defense Supplement in
the post-deposition briefing schedule.  Doc. 112 at 3-5.  The defense sought and obtained the
government's agreement that a Supplement was going to be necessary following the depositions,
but the defense could not and did not ask the government to agree in advance that claims it had
not seen (and which had not even been drafted) were or were not amendments.  The government
reserved  its right, with the consent of Mr. Agofsky's defense, to make that call after it reviewed
Mr. Agosky's submission, and has now done so.  The defense regrets any misunderstanding but
does not believe that the inclusion of some clams that might not constitute supplements violated
the agreement.

[2]   The government does not object to 210 of the Supplement's 283 pages.  It objects to the
form, but not the content, of the last 33 pages, which comprise Point IX.  Doc. 112 at 5 n.3.

counsel's deficient performance at that phase (Point I.J).  Except for the allegations concerning counsel's failure to investigate the Noel State Bank robbery-murder (Point II.B.2), the government has no objection to any of the Supplement's allegations concerning counsel's deficient mitigation investigation (Point II, sections A, C, and D), their failure to conduct an independent investigation of the government's case in aggravation (Point II.B), their failure to obtain and present readily available prison mitigation (Point II.D), their presentation of a poorly investigated and prepared case on future dangerousness (Point II.F), their failure to advocate for clearly admissible mitigating evidence (Point II.G.1), their failure to object to unfounded cross-examination (Point II.G.2), or the cumulative effect of the penalty phase deficiencies (Point II.H).  Nor does the government challenge the Supplement's allegations concerning legal claims that appellate counsel failed to raise before the Fifth Circuit (Point III.5).   Respecting the Supplement's Point IX, the government objects to form but not substance; it notes that the attorney affidavits were not mentioned in the parties' agreement concerning the Supplement and argues that the discussion of the affidavits should have been folded into the other points, but does not object to Mr. Agofsky's supplementing his Amended § 2255 Motion with responses to the attorney affidavits (Doc. 112 at 3 n. 1, 5 n. 3).[3]

Nevertheless, the government identifies certain claims that, it states, the Court cannot properly treat as supplements and should view as amendments.  As set forth below, the Supplement appropriately included these claims because they either respond to the broad general assertions in the attorneys' affidavits or set forth the results of new investigation and discovery.  Alternatively,

---

[3]   Mr. Agofsky has requested an evidentiary hearing, which he proposes to seek by formal motion after the completion of discovery.  *See* Amended § 2255 Motion, Doc. 50, at 204; Supplement, Doc. 105, at 280.  Point IX of the Supplement was designed to assist the Court in assessing the need for a hearing by highlighting disputed questions of fact.

the Court may, equally appropriately, treat them as amendments, either because they expand on claims in the Amended § 2255 Motion concerning failure to object to instructions, errors in trial presentation, and appellate representation deficiencies, or because they present claims arising from new evidence or scientific developments.  Even viewed as amendments, all of the claims are timely because they were filed before the statute of limitations expired on October 6, 2009, a year after the Supreme Court denied *certiorari* on Mr. Agofsky's resentencing appeal.  Furthermore, even under the government's view that the statute of limitations expired on January 22, 2008 (a year after *certiorari* was denied on the initial appeal), all but one of the claims either relate back to the Amended § 2255 Motion, benefit from equitable tolling, and/or arise from newly available evidence.

For the reasons detailed below, the Court should deny the government's motion to strike and, if appropriate, grant Mr. Agofsky's cross-motion to amend, each of the claims to which the government objects.

## C.    Legal Standards

Rule 15 of the Federal Rules of Civil Procedure governs amended and supplemental pleadings, and applies in § 2255 proceedings.  *See United States v. Hicks*, 283 F.3d 380, 385-89 (D.C. Cir. 2002) (citing Rule 12 of Rules Governing § 2255 Cases); *United States v. Saenz*, 282 F.3d 354, 355-57 (5th Cir. 2002) .  Rule 15(d) provides:

> **(d) *Supplemental Pleadings.***  On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.  The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order the opposing party to plead to the supplemental pleading within a specified time.

While an amended pleading may include matters that occurred before the filing of the original

pleading and entirely replaces it, a supplemental pleading addresses events that occurred after the

initial pleading and adds to it. *See Habitat Educ. Center, Inc. v. Kimbell*, 250 F.R.D. 397 (E.D. Wis.

2008) (citing 6A Charles A. Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice &*

*Procedure* § 1504, at 183-84 (2d ed.1990)).

> A supplemental pleading promotes as complete an adjudication of the dispute between the parties as possible. 6A Wright et al., *supra,* § 1504, at 177. It is a tool of "judicial economy and convenience," *Keith v. Volpe,* 858 F.2d 467, 473 (9th Cir.1988), which serves to "avoid the cost, delay and waste of separate actions which must be separately tried and prosecuted,"*New Amsterdam Cas. Co. v. Waller,* 323 F.2d 20, 28-29 (4th Cir.1963). Thus, when a supplemental pleading facilitates the efficient administration of justice, a court should allow it. *Griffin v. County Sch. Bd. of Prince Edward County,* 377 U.S. 218, 226-27, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964).
>
> A court should permit a supplemental pleading when a party wishes to bring up events occurring subsequent to the original pleading that relate to a claim or defense presented in the original pleading. 3 James Wm. Moore, *Moore's Federal Practice* § 15.30 (3d ed.2008). Such events need not arise out of the same transaction or occurrence as the original claim, so long as they bear "some relationship" to the original pleading. *Id.*

*Kimbell* 250 F.R.D. at 401-02 (granting leave to supplement following judgment). Accordingly,

supplemental pleadings are liberally allowed.[4]

---

[4]    *See Griffin v. County School Bd. of Prince Edward County*, 377 U.S. 218 (1964) (where original complaint challenged racial discrimination in public schools, supplementary complaint alleging that county was using state funds to assist private schools while closing down public schools was authorized); *Hall v. C.I.A.*, 437 F.3d 94, 101 (D.C. Cir. 2006) (supplementary pleadings should be freely permitted where they will promote economical, speedy disposition, will not cause undue delay or trial inconvenience, and will not prejudice rights of other parties); *Franks v. Ross*, 313 F.3d 184, 198 & n.15 (4th Cir. 2002) (standards for motion to amend and motion to supplement nearly identical; in either situation, leave should be freely granted, and should be denied only where good reason exists, such as prejudice to defendants); *Walker v. United Parcel Service, Inc.*, 240 F.3d 1268, 1278-79 (10th Cir. 2001) (supplemental pleadings should be liberally granted unless good reason exists for denying leave, such as prejudice to defendants); *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995) (absent undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility, motion to serve supplemental pleading should be freely granted).

The government acknowledges that Mr. Agofsky may properly respond to the allegations in the affidavits filed by his former attorneys, *see* Doc. 112 at 3 n.1, but does not recognize that the challenged claims form part of his response to them or that, because the affidavits followed the Amended § 2255 Motion by several months, they provided an appropriate basis for supplemental claims. The sections below explain why each challenged claim in the Supplement responds to one or more assertions in the attorneys' affidavits.

Moreover, all of the challenged claims are equally appropriate candidates for amendment. Under Rule 15, amendments are distinct from, but similar to, supplements. The rule provides for a first amendment as a matter of course, Fed. R. Civ. P. 15(a)(1),[5] and allows additional amendments:

> **(2)** *Other Amendments.* In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a)(2). While the decision whether to permit amendment falls within the district court's sound discretion, the rule requires that it exercise that discretion liberally:

> Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. See generally, 3 Moore, Federal Practice (2d ed. 1948), 15.08, 15.10. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing

---

[5] An amendment to Rule 15, effective December 1, 2009, will alter the time and circumstances governing *initial* amendments filed as a matter of course pursuant Rule 15(a)(1), but will not affect *subsequent* amendments pursuant to Rule 15(a)(2).

> for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Forman v. Davis*, 371 U.S. 178, 182 (1962).[6]    Indeed, the rule "circumscribes" a district court's discretion to deny amendment; unless a substantial reason supports it, the court's discretion "is not broad enough to permit denial." *Shipner v. Eastern Air Lines, Inc.*, 868 F.2d 401, 406-07 (11th Cir. 1989); *see also Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597-98 (5th Cir. 1981) (policy of federal rules is to permit liberal amendment to facilitate determination of claims on merits and prevent litigation from becoming "a technical exercise in fine points of pleading").

The government does not point to any substantive factor that would justify the Court's rejection of any claim it might view as an amendment.  Mr. Agofsky's Supplement was filed on September 9, 2009, and the government's response is not due, under the current schedule, until the end of January.  It accordingly cannot and does not argue that the challenged claims prejudice its ability to respond.  The challenged claims (which form only about a quarter of the Supplement) were not filed for dilatory purposes or in bad faith, but in an effort to allege with specificity all possible claims and supporting facts, in order to comply with the demanding pleading requirement of Rule 2(b) of the Rules Governing § 2255 Cases.  *See Mayle*, 545 U.S. at 655-56 (stressing need for specificity in pleading in habeas cases).

---

[6]   *See also DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir.1987) (liberality in granting leave to amend pleading not dependent on whether amendment will add causes of action or parties, unless it causes opposing party undue prejudice, evinces bad faith, or is futile); *S.S. Silberblatt, Inc. v. East Harlem Pilot Block--Building 1 Housing Development Fund Co., Inc.*, 608 F.2d 28, 42 (2d Cir. 1979) (leave to amend a complaint shall be freely given when justice so requires, and if plaintiff has at least colorable ground for relief, justice does so require unless plaintiff is guilty of undue delay or bad faith or unless permission to amend would unduly prejudice the opposing party); *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 610 F. Supp. 2d 600, 652-55 (S.D. Tex. 2009) (citing *Forman*).

The government's only objection to the claims it views as amendments is that they are untimely. Doc. 112 at 9. But the governing law provides otherwise.

*First,* § 2255 includes a one-year statute of limitations running from the conclusion of direct review, when *certiorari* is denied or the time for seeking *certiorari* expires. 28 U.S.C. § 2255(f)(1); *Clay v. United States*, 537 U.S. 522 (2003). According to the Federal Rules of Criminal Procedure, a "judgment of conviction must set forth the plea, the verdict or findings, the adjudication, and the sentence." Fed. R. Crim. P. 32(d)(1). Well-settled law recognizes that a criminal judgment includes both a conviction and the associated sentence. *See, e.g., Teague v. Lane*, 489 U.S. 288, 314 n.2 (1989); *Berman v. United States,* 302 U.S. 211, 211 (1937).

Applying these elementary principles, the Supreme Court has determined, in a § 2254 case filed by a state prisoner, that the one-year statute of limitations on a §2254 motion does not begin to run until all the elements of the judgment, including the sentence, are final. In *Burton v. Stewart*, 549 U.S. 147, 151-52 (2007), the defendant had been resentenced twice in state court and had filed two federal habeas petitions, one following his first resentencing and another following his second resentencing. The Supreme Court deemed the second habeas petition "successive" and dismissed it because the petitioner had not complied with the statutory requirements for authorizing successive petitions. *Id.* at 152. The Court rejected the defendant's argument that the two habeas petitions had challenged two different judgments. *Id.* at 798.

> Final judgment in a criminal case means sentence. The sentence is the judgment. *Berman v. United States,* 302 U.S. 211, 212 (1937). Accordingly, Burton's limitations period did not begin until both his conviction *and* sentence became final by the conclusion of direct review or the expiration of the time for seeking such review – which occurred well *after* Burton filed his [first] habeas petition.

*Id.* at 798-99 (parallel citations omitted).[7]

Applying *Burton* in a § 2255 case, a panel of the Court of Appeals has recognized that the statute of limitations does not begin to run while the defendant can appeal – or is appealing – the conviction or sentence. In *United States v. Messervey*, 269 Fed. Appx. 379 (5th Cir. 2008), the court reversed the dismissal of a § 2255 motion as untimely. On Messervey's initial appeal, the Court of Appeals had affirmed his conviction but vacated the sentence and remanded for resentencing. 269 Fed. Appx. at 380. He appealed the resentencing, unsuccessfully, and then filed his § 2255 motion. *Id.* Although the motion challenged only Messervey's conviction, not his sentencing, the Court of Appeals, relying on *Burton*, held that, when a conviction is affirmed on appeal but a case is remanded for resentencing, the conviction becomes final for limitations purposes under AEDPA "when both the conviction and sentence become final[.]" The Court held that the motion had been timely filed, reversed its dismissal, and remanded for consideration of the merits. *Id.* at 381; *accord*

---

[7]    *See also Reber v. Steele*, 570 F.3d 1206, 1209-10 (10th Cir. 2009) (following *Burton*, holds that habeas petition prematurely filed because sentence was not final at time of filing); *Phanhmixay v. Robert*, 298 Fed. Appx. 830, 830-32 (11th Cir. 2008) (district court erred by not calculating limitations period from date of resentencing, as required by *Ferreira, infra*)*; States v. Secretary for Dept. Of Corrections*, 278 Fed. Appx. 933, 934-35 (11th Cir. 2008) (same); *Ferreira v. Sec'y, DOC,* 494 F.3d 1286, 2007 WL 2239265, at *7 (11th Cir. Aug. 7, 2007) (following *Burton*, holds that §2254 statute of limitations begins to run from date both conviction and sentence the petitioner is serving at the time become final); *Tucker v. Northern State Prison*, No. Civ. A. 07-4970, 2008 WL 108805, *9 (D.N.J. 2008) (applying *Burton*, and holding that statute of limitations had not begun to run while appeal of resentencing was still pending); *Robbins v. Sec'y, DOC,* 483 F.3d 737, 738 (11th Cir. 2007) (judgment not final until time for appealing resentencing expires, even when subsequent habeas petition challenges only the conviction and not the sentence); *Chew v. Hendricks*, No. 04-5894, 2007 WL 2437830 (D.N.J. Aug. 23, 2007) (following *Burton*, holds that statute of limitations began to run on date of resentencing, five years after end of direct review on original sentence); *Lewis v. Maine*, 254 F. Supp. 2d 159, 164-65 (D.Me. 2003) (§2254 petition timely filed, because one year did not begin to run until expiration of time to seek review of restitution resentencing, ordered by state supreme court).

*United States v. Carbajal-Moreno*, 332 Fed. Appx. 472, 474-77 (10th Cir. 2009) (conviction did not become final for calculating § 2255 statute of limitations until after remand for resentencing, following initial appeal, was final); *see also United States v. Hayes*, No. 01-311, 2006 WL 851184, at *1(E.D. La. March 13, 2006) (ruling before *Burton*, and rejecting government's argument that defendant's §2255 motion – filed more than one year after remand following initial appeal but less than one year after resentencing – was untimely).

In a similar manner, in *United States v. LaFromboise*, 427 F.3d 680, 682 (9th Cir. 2005), the Court of Appeals remanded certain counts for a new trial, but the government instead dismissed those counts on remand. The district court did not resentence the defendant on the remaining counts or amend the judgment of conviction. The district court then dismissed the defendant's § 2255 motion, filed more than one year after the original remand, as untimely. *Id.* at 682. The Court of Appeals reversed, holding that, without an amended judgment, the conviction was not yet final and the statute of limitations had not begun to run. *Id.* at 683 (citing *United States v. Colvin*, 204 F.3d 1221 (9th Cir. 2000)). As the court observed, "the 'key inquiry' under *Colvin* is whether an amended judgment, assuming one had been entered, could have been appealed – without presupposing the merits of the appeal." *Id.* at 684; *accord Maharaj v. Sec'y, DOC,* 304 F.3d 1345, 1349 (11th Cir. 2002) (following *Colvin*).[8]

---

[8]   *See also United States v. Dodson*, 291 F.3d 268, 272 (4th Cir. 2002) (judgment of conviction not final for § 2255 purposes until both conviction and sentence final; one judgment includes all counts); *United States v. Blackstock*, 2007 WL 2309782, *2 (10th Cir. Aug. 14, 2007) (noting district court's dismissal, without prejudice, made clear that defendant could refile after disposition of direct appeal); *cf. United States v. Outen*, 286 F.3d 622, 631-32 (2d Cir. 2002) (because defendant's appeal was in abeyance, § 2255 statute of limitations never began to run).

Although the government cites *Messervey*, it argues that *Burton* only addresses a "related concern" that is "not implicated here." Doc. 112 at 11 n. 16. In fact, as the *Messervey* panel recognized, *Burton*'s holding squarely applies in the § 2255 context and provides that the statute of limitations does not begin to run until both the conviction and sentence are final, following the conclusion of direct appeal of any resentencing ordered on an initial appeal. The government, citing pre-*Burton* cases, seeks to avoid *Burton*'s result by arguing that the resentencing in Mr. Agofsky's case was a mere "ministerial" act that did not implicate finality. Doc. 112 at 11-13 (citing *Burrell v. United States*, 467 F.3d 160, 161, 164 (2d Cir. 2006); *United States v. Dodson*, 291 F.3d 268, 275 (4th Cir. 2002)).

The government's reading of these cases, even assuming they survive *Burton*, is unduly restrictive. The *Carbajal-Moreno* court, for example, rejected a similar assertion, concluding that "the remand in this case was not so clearly ministerial that we could expect Carbajal to have concluded that his conviction became final . . . .after we issued our judgment." 332 Fed. Appx. at 476-77. Similarly, the district court for the Eastern District of Louisiana found the defendant's § 2255 petition timely in *United States v. Hayes*, No. 01-311, 2006 WL 851184, at *1(E.D. La. March 13, 2006). In that case, the Court of Appeals had affirmed one count and vacated and remanded the other count for resentencing. The district court rejected the government's argument that the defendant's subsequent § 2255 motion – filed more than one year after the remand but less than one year after resentencing – was untimely. It held that the resentencing was not a mere ministerial act providing no legitimate grounds for appeal. Furthermore, it held, treating each count in a multi-count indictment as a separate final judgment would be bad policy that would subject the courts to duplicative serial habeas petitions. *Id.* at *2.

The government contends that Mr. Agofsky's resentencing was ministerial because the Fifth Circuit did not allow the district court any discretion and the appeal was not "valid" or "nonfrivolous," raising only a previously rejected inconsistent-verdict claim.  Doc. 112 at 12-13.  However, in contrast to *Dodson*, 291 F.3d at 275, and *Burrell*, 467 F.3d at 164-66, the Court of Appeals remand in Mr. Agofsky's case enabled the government to elect, with complete discretion, which count to dismiss, and the reconviction and resentencing did give rise to a new and valid appeal in which he argued that inconsistencies between the guilt and penalty phase verdicts entitled him to relief.  Fifth Circuit Docket  No. 07-40330, Appellant's Brief, filed August 30, 2007, at 10-13, 17-19.  The appeal's lack of success did not make it "invalid." *See LaFramboise, supra,* 427 F.3d at 684 (citing *Colvin, supra*) ("the 'key inquiry' under *Colvin* is whether an amended judgment, assuming one had been entered, could have been appealed – without presupposing the merits of the appeal").  Mr. Agofsky argued that the elimination of one count on remand strengthened the inconsistent verdict claim (which had been raised on the initial appeal), and called the court's attention to United States Supreme Court precedent that it had not previously considered.  Furthermore, in the resentencing appeal, Mr. Agofsky sought review of the original panel's ruling on the inconsistent verdict issue by the full Circuit, in a petition for rehearing *en banc*, and by the Supreme Court, in a petition for *certiorari*.  Fifth Circuit Docket No. 07-40330, Appellant's Petition for Rehearing En Banc, filed February 11, 2008; Petition for a Writ of Certiorari, filed May 2, 2008.  He had not sought *en banc* review at all, and had not sought *certiorari* on that ground, in the original appeal.  Until he had an opportunity to litigate his claim, from resentencing through a petition for *certiorari,* his judgment of conviction was not final.

For these reasons alone, all of the claims in Mr. Agofsky's Supplement were timely because

they were filed within a year of the conclusion of direct review on October 6, 2008, when the Supreme Court denied *certiorari* on the resentencing appeal.  Individual claims, moreover, are timely on the following additional grounds.

*Second*, § 2255 includes a separate one-year statute of limitations running from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."  28 U.S.C. § 2255(f)(4).  The statute does not operate as a tolling provision, but resets the clock so that the limitations period begins to run, not from the conclusion of direct review, but from the time the claim accrued.  *Wims v. United States*, 225 F.3d 186, 190 (2d Cir. 2000).  The accrual date is not the date when the claimant actually discovered the facts that give rise to the claim but the date on which they could have been discovered by due diligence.  *Id.* at 190-91; *see also United States v. Pollard*, 416 F.3d 48, 55 (D.C. Cir. 2005) (same).  After the accrual date, a claimant is entitled to additional delay, so long as she or he files within a year after the date the facts could have been discovered.  *See Wims*, 225 F.3d at 189; *accord Easterwood v. Champion*, 213 F.3d 1321, 1324 (10th Cir.2000).  The statute does not require a claimant to demonstrate the maximum feasible diligence, but only "due," or reasonable, diligence.  *See Wims*, 225 F.3d at 190 n.4; *Aron v. United States*, 291 F.3d 708, 712 (11th Cir. 2002).  Courts evaluating claims under this section must assess the individual circumstances; due diligence is a "fact-specific" issue.  *See Wims,* 225 F.3d at 191; *Jones v. United States*, 20 Fed. Appx. 520, 523 (7th Cir. 2001); *Aron*, 291 F.3d at 712.

Mr. Agofsky exercised due diligence in seeking funds for investigation and expert assistance to develop his claims.  He received no expert funds, and limited investigation funds, before filing his initial § 2255 motion.  He twice requested funding for expert assistance, once shortly before and

once shortly after the abeyance period began. The second motion included a request for investigation funds. Not until the Court appointed the Federal Community Defender on September 9, 2008, however, did funding become available again. The sections below explain, where relevant, when the underlying facts were discovered. In each instance, regardless of when Mr. Agofsky's defense could have discovered the facts through due diligence, thus resetting the one-year limitations clock, the claims were timely filed. Even if the clock began running on each claim the day after the Federal Community Defender's appointment, on September 10, 2008, the Supplement was filed less than a year later, on September 9, 2009.

*Third*, equitable tolling applies to the § 2255 statute of limitations. Equitable tolling requires that a § 2255 litigant show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance" stood in the way of timely filing his § 2255 motion. *United States v. Redd*, 562 F.3d 309, 314 (5th Cir. 2009) (citing *United States v. Petty,* 530 F.3d 361, 365 (5th Cir. 2008)); *see also Dunlap v. United States*, 250 F.3d 1001, 1008 (6th Cir. 2001) (applying five-prong test to equitable tolling of § 2255 limitations period, and considering (1) petitioner's lack of notice of legal requirement, (2) petitioner's constructive knowledge, (3) petitioner's diligence, (4) prejudice to respondent, and (5) reasonableness of petitioner's ignorance); *United States v. Battles*, 362 F.3d 1195, 1196 (9th Cir. 2004) (statute of limitations for § 2255 motion subject to equitable tolling). Courts have granted equitable tolling – or ordered remands for factual development – to petitioners who have demonstrated that an external impediment or deception prevented earlier presentation of their claims.[9]

---

[9]  *See United States v. Patterson*, 211 F.3d 927, 931-32 (5th Cir. 2000) (*per curiam*) (equitable tolling allowed because litigant relied to his detriment on district court's granting of dismissal of initial timely filed § 2255 motion without prejudice); *see also Prieto v. Quarterman*,

In contrast to the litigants in *Redd* and *Petty*, Mr. Agofsky has pursued his rights diligently and an extraordinary circumstance prevented him from discovering the factual basis for the claims below earlier. As indicated above, he twice sought further funds for expert assistance during the time his motion was in abeyance, also seeking investigation funds in the second motion, but both applications were denied. Once the Court assigned the Federal Community Defender as additional counsel on September 9, 2008, he diligently resumed his investigation and began seeking expert assistance. His Supplement was filed exactly a year later. The sections below explain when the facts underlying each of the claims subject to equitable tolling were discovered, and explains why Mr. Agofsky diligently pursued his rights respecting those claims.

*Fourth*, the "relation back" provision of Rule 15 provides in relevant part that an amendment relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Thus, an amendment to a § 2255 motion is timely, even if filed after the one-year statute of limitations has run, if it shares sufficient common ground with a claim in the original pleading. In *Mayle v. Felix*, 545 U.S. 644 (2005), the Supreme Court articulated the degree of factual similarity required for a habeas petition to relate back. The Court noted that, in contrast to an ordinary civil case, which requires only notice pleading, a habeas case

---

456 F.3d 511, 516 (5th Cir. 2006) (equitable tolling granted in capital case because petitioner relied to his detriment on district court order granting extension of time to file); *In re Wilson*, 442 F.3d 872, 876 (5th Cir. 2006) (equitable tolling granted because of dilemmas created by state's "two forum rule"); *Alexander v. Cockrell*, 294 F.3d 626, 630 (5th Cir. 2002) (per curiam) (granting equitable tolling in reliance on *Patterson*, *supra*); *Phillips v. Donnelly,* 216 F.3d 508, 511 (5th Cir. 2000) (equitable tolling may apply to four-month delay in notification about relevant change in law); *Adams v. Dretke*, No. V-06-6, 2006 WL 3694497, *2 (S.D. Tex. Dec. 13, 2006) (equitable tolling granted because petitioner may have been misled by district court's dismissal of claims, assertedly without prejudice, after limitations period had expired).

requires the petitioner to plead facts with particularity and comply with a strict one-year time limit. *Id.* at 655, 662. Permitting too broad a reading of "same conduct, transaction, or occurrence" under Rule 15 would frustrate those goals. The claim that a petitioner seeks to relate back, the Court held, must arise from "one episode-in-suit," *id.* at 660, or "the same core facts" as the original claim. *Id.* at 664. The Court rejected Felix's argument that, merely because his two claims arose from his trial and sentencing, a Fifth Amendment claim concerning his pretrial statement to police arose from the "same transaction or occurrence" as a Sixth Amendment claim concerning the admission of hearsay from another witness. *Id.* at 656-63. Nevertheless, that did not render the relation-back rule "meaningless in the habeas context." *Id.* at 664 (citation omitted). "So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." *Id.*[10]

As discussed further below, each of the claims the government challenges is timely, some for all four reasons. All have been filed less than a year after *certiorari* was denied on Mr. Agofsky's resentencing appeal. Additionally, all of the challenged claims except one were filed within a year of the discovery of underlying facts, benefit from equitable tolling, and/or relate back to the Amended § 2255 Motion.

**D.      The Challenged Claims**

      **1.      Trial Errors At The Guilt-Innocence and Penalty Phases**

---

[10] *See Frazier v. United States*, No. 02-186, 2009 WL 691, *8 (W.D. Pa. Jan. 22, 2009) (relation back permitted when claims arose from same decision, event, and time – counsel's strategic decision regarding impeachment of a witness); *Brumfield v. Cain*, No. 04-787-JJB-CN, 2008 WL 2600140, *16 (M.D. La. June 30, 2008) (relation back allowed because original and amended claims both related to denial of hearing on mental retardation); *Marquez v. Rawers*, No. CV-F-03-6508, 2008 WL 704298, *7 (E.D. Cal. March 14, 2008) (relation back allowed because both claims involved same decision by same actor – the denial of parole).

Mr. Agofsky argued in his Amended § 2255 Motion that trial counsel provided ineffective assistance during courtroom proceedings at both phases of trial. He alleged that, at the guilt-innocence phase, counsel's examination of witnesses and arguments to the jury demonstrated a lack of investigation, unfamiliarity with records and information in their possession, and dangerous self-contradictions; that counsel failed to object to erroneous instructions; and that counsel failed to object to the prosecutor's violation of Mr. Agofsky's Fifth Amendment rights and misleading summation remarks. Doc. 38 at 74-92. He alleged that, at the penalty phase, counsel failed to advocate for the introduction of admissible mitigating evidence, object to misleading cross-examination and summation arguments, or object to factually unsupported or inadmissible non-statutory aggravating factors. Doc. 38 at 168-84.

In response, Mr. Agofsky's lead trial counsel, G. Patrick Black, Esq., submitted an affidavit in which he asserted, broadly and without qualification, that he provided proper representation during the trial proceedings:

> Trial counsel provided effective assistance of counsel to Mr. Shannon Agofsky at all times. . . . Trial counsel was fully and adequately prepared for trial. . . . Trial counsel argued that Mr. Agofsky lacked the required intent, acted in self defense and acted in the heat of passion during a quarrel. The defense called three inmate witnesses to testify in support of Mr. Agofsky's defense during the guilt-innocence phases. The jury chose not to believe the eye witness testimony that the victim, Mr. Luther Plant, swung first and was the aggressor in the fight.

(Doc. 105, SA 2323, aff. at 8). Regarding his penalty phase conduct, Mr. Black described the witnesses the defense had called, the extent of the defense investigation, and his interactions with Mr. Agofsky and decisions regarding which witnesses to call (SA 2323-28; Aff. at 8-13). His only statement addressed to penalty phase courtroom events is that "The trial record clearly demonstrates that trial counsel provided effective legal representation to Mr. Agofsky during both the guilt and

punishment phase." (SA 2328; Aff. at 13).

Mr. Black's co-counsel, Douglas M. Barlow, likewise responded to these detailed allegations only in the most general manner. He described why he and Mr. Black decided on a self-defense strategy at the guilt-innocence phase (SA 2337, Aff. at 8) and decided to argue at the penalty phase that "Agofsky did not need to die, because the BOP could securely house him forever" (SA 2339-40, Aff. at 10-11). He stated that they attempted to elicit testimony from government witnesses that Mr. Agofsky presented no threat to persons in authority (SA 2340, Aff. at 11). Regarding jury instructions, he stated:

> We made pointed and meritorious objections to the court's charge, some of which were based on pretrial motions filed, and protected the record on every issue believed to have merit. In fact one of the issues raised and argued by trial counsel resulted in a reversal of the convictions and sentences and remand for the exact reasons advanced at trial.

(SA 2341, Aff. at 12). Mr. Barlow said nothing, however, about the specific trial deficiencies that Mr. Agofsky had alleged. Regarding the penalty phase, Mr. Barlow described the evidence presented and the defense interactions with Mr. Agofsky, but did not respond to any specific allegations of deficient performance (SA 2342-46, Aff. at 13-17). Instead, he asserted generally:

> Notwithstanding the allegations contained in the amended motion filed by habeas counsel, I would not have conducted the investigation or trial in any substantially different manner. . . . Neither I nor Mr. Black conducted any act of malfeasance but to the contrary, provided vigorous and effective representation for Agofsky, despite overwhelming odds.

(SA 2347, Aff. at 18).

In response to these general assertions, Mr. Agofsky's Supplement sought to bolster his Amended § 2255 Motion with additional particulars of counsel's deficient performance. Moreover, as described below, some of the challenged trial conduct claims responded to assertions in the

-22-

affidavit of appellate counsel, Mr. Newton.

### a.    Additional Murder Instruction Claims

The government challenges Mr. Agofsky's inclusion of five "new" arguments concerning counsel's failure to object to jury instructions on the murder counts.  Doc. 112 at 5 & n. 4.  In his Amended § 2255 Motion, Mr. Agofsky argued that trial counsel were deficient in failing to object to burden-shifting instructions on the relationship between first-degree murder and the lesser-included offense of heat of passion manslaughter.  Doc. 38 at 80.  In response to trial counsel's general assertions that they made appropriate objections at trial, and also in response to appellate counsel's detailed legal argument, in his affidavit, that the burden-shifting claim lacked merit (Doc. 105, SA 2355, Aff. at 6), Mr. Agofsky supplemented his original arguments with a section attacking the progression instructions (which reinforced the shifting of the burden of proof), and other sections attacking the inconsistent and confusing malice instructions, the conflation of "federal murder" and "murder by a life prisoner," and the failure to seek a lesser-included offense instruction on Count Two.  Doc. 105 at 56-66.

These additional arguments concerning the murder instructions bear not just "some relationship," but a close relationship, to the original claim.  *See Kimbell, supra*, 250 F.R.D. at 401-02.  Indeed, they arise from the selfsame transaction and were prompted by the attorney affidavits filed after the Amended § 2255 Motion.  Accordingly, Mr. Agofsky appropriately included them in his Supplement.  Moreover, viewed as amendments, these claims cause neither prejudice to the government nor delay to the litigation, and appear in the Supplement not for dilatory purposes but as part of an effort to plead Mr. Agofsky's claims with particularity.

The claims were  filed within a year after the conclusion of direct review on October 6, 2008.

Even if Mr. Agofsky's direct review ended with the first denial of *certiorari* on January 22, 2007, these claims, stemming from the very same sections of the jury instructions as the one pled in Mr. Agofsky's original and Amended § 2255 Motions, arise from a common core of operative facts with the earlier claims and relate back. *See Mayle*, 545 U.S. at 664. The additional murder instruction claims were accordingly timely filed.

### b.   Additional Penalty Phase Instructional Error Claim

The government challenges Mr. Agofsky's inclusion of a section arguing that trial counsel were ineffective for failing to seek a unanimity of theory charge as to the non-statutory aggravating circumstance of future danger. Doc. 105 at 191, Doc. 138 at 6 & n.9. In his Amended § 2255 Motion, Mr. Agofsky argued that trial counsel presented a poorly investigated and prepared case on future dangerousness, presenting five experts who gave testimony about his future prison adjustment without arming them with information from a comprehensive mitigation investigation or asking them to marshal available empirical evidence to support their conclusions. Amended § 2255 Motion at 164-68. Elsewhere, he argued that trial counsel failed to investigate the government's case in aggravation – which rested heavily on proofs concerning institutional infractions – and failed to present evidence providing context for those factors. Amended § 2255 Motion at 94-122. He argued, additionally, that counsel failed to object to the submission of factually unsupported non-statutory aggravating factors, including one based on a "significant history of disciplinary violations." *Id.* at 182-84.

In response to these detailed allegations that they failed adequately to investigate, prepare, and present evidence to address the aggravating factors and to support readily available mitigating factors, trial counsel's affidavits gave the court only generalities. Mr. Agofsky accordingly

supplemented the § 2255 Motion with further particulars that detailed counsel's deficient performance in connection with the issue of future dangerousness and called the Court's attention to counsel's non-response to the allegations that they failed to advocate vigorously during the penalty phase. Doc. 105 at 191, 277.

The challenged claim, because it closely relates to matters pled in the original motion and was prompted, in part, by trial counsel's affidavits, was appropriately included in Mr. Agofsky's Supplement. It equally meets the criteria for an amendment. The underlying facts and circumstances "may be a proper subject for relief," and neither prejudice nor any other reason weighs against permitting the amendment. *See Forman, supra*, 371 U.S. at 182. The claim is within time because it was filed within a year of *certiorari* denial on the resentencing appeal, and in any event it comes from a "common core of operative facts" with, and thus relates back to, the claims pled in the original petition relating to future danger. *See Mayle*, 545 U.S. at 664

### c.    Prosecutorial Misconduct Claims

The government similarly asserts that Mr. Agofsky's Supplement raises "four new instances of ineffective assistance for failing to object to alleged prosecutorial misconduct in closing argument." Doc. 112 at 6 n. 5. This is not a new claim, as the government urges, but instead supplements claims already brought in Mr. Agofksy's Amended § 2255 Motion. *See* Amended § 2255 Motion at 87. Claim I.I.3 asserts that trial counsel "failed to object to the prosecutor's violation of Mr. Agofsky's Fifth Amendment rights or his misleading summation remarks." *Id*. In his Supplement, Mr. Agofsky points to additional, specific summation remarks to which his counsel should have objected. Those facts clearly supplement the claim advanced in the Amended § 2255 Motion.

The supplemental facts are also necessary to effectively rebut the affidavits of trial counsel. Both argue generally that they provided Mr. Agofsky with "effective legal representation" (Black Aff. at 13, SA 2328) and "vigorous and effective representation" (Barlow Aff. at 18, SA 2347). Such sweeping defenses required that Mr. Agofsky make his claims as specific as possible.

Even if the allegations in the Supplement are considered amendments rather than supplements, they "may be a proper subject of relief," *see Forman, supra*, 371 U.S. at 182, their inclusion in no way prejudices the government, and no other reason weighs against permitting an amendment to include them. As amendments, the new allegations were timely filed within a year after the conclusion of direct review on October 6, 2008. Furthermore, these claims stem from counsel's failure to object to the prosecutor's closing argument – a claim advanced in Mr. Agofsky's original and Amended § 2255 Motions – arise from a common core of operative facts with the earlier claims, and relate back. *See Mayle*, 545 U.S. at 664. For both reasons, therefore, they were timely filed.

### d.    Failure To Cross-Examine On Specific Instances Of Violent Conduct

Next, the government asks the Court to dismiss Point I.I.4, in which Mr. Agofsky asserts that his trial counsel were ineffective for failing object to Officer Matt's testimony and to effectively cross-examine him. (Doc. 105 at 71). As the government acknowledges, the claim references Mr. Bennet's deposition and Mr. Black's affidavit. (Doc. 112 at 6 n.6). In fact, the claim arises directly from those post-filing submissions. Not only does the claim respond to trial counsels' broad claims of effective representation, but Mr. Black asserts for the first time in his affidavit that the defense interviewed Officer Matt. (Doc. 105 at 74; SA 2328, Black Aff. At 12). Mr. Agofsky was previously unaware of this allegation, because trial counsel refused to speak with postconviction

counsel and because trial counsel's file included no documentation of this interview.  Further, in his deposition, the trial investigator, Mr. Bennett, also maintained that he had interviewed Officer Matt, but reported that he did not remember the location or time of the interview and had not taken notes. *Id.*  This claim is an appropriate supplement because it arises from the new information from trial counsel and their investigator that they did in fact interview Officer Matt, and responds to trial counsel's broad claims of effective conduct.

Nevertheless, should the Court determine that I.I.4 is a new claim, it should deny the government's motion to strike and allow it as a proper amendment because it  "may be a proper subject of relief," *see Forman, supra*, 371 U.S. at 182, the government points to no substantive reason to deny an amendment, and no such reason would justify denial.  The claim was filed within a year after the conclusion of direct review on October 6, 2008.  In addition, Mr. Agofsky's original and Amended § 2255 Motions asserted that trial counsel's examination of witnesses demonstrated lack of investigation and preparation.  Amended § 2255 Motion at 74.  The Supplement's claims concerning counsel's failure to object to Officer Matt's testimony or effectively cross-examine him arise from a common core of operative facts with the earlier claims and relate back.  *See Mayle*, 545 U.S. at 664.  It was timely filed.

e.      **Failure To Seek Severance**

The government asks the Court to strike Point I.I.5 (Doc. 112 at 6), in which Mr. Agofsky alleges that his trial counsel failed to seek severance of the two capital murder counts, prejudicing Mr. Agofsky's defense because the jury heard improper and inflammatory evidence that it would not have otherwise heard, had the charges been severed. (Doc. 105 at 75-78).  This claim relates directly to Mr. Black's and Mr. Barlow's assertions in their affidavits that they that they were effective

because they "provided effective legal representation to Mr. Agofsky during both the guilt and punishment phase" (Black Aff. at 13, SA 2328) and "made pointed and meritorious objections to the court's charge." (Barlow Aff. at 12, SA 2341). The new claim argues that counsel should have raised the severance issue in the beginning, and protected Mr. Agofsky from the inflamatory evidence introduced because of the duplicative charges. The Court can appropriately view it as a supplement, because it responds to trial counsels' affidavits, or an amendment, because it "may be a proper subject of relief." *See Forman, supra*, 371 U.S. at 182. It neither prejudices the government nor arises from dilatory or other improper purposes, but seeks to allege with particularity every possible ground for relief. Because Mr. Agofsky filed his Supplement within the one-year limitations period after his resentencing was final, this claim is timely. Thus, the Court should deny the government's motion as to Point I.I.5.

**2.      New Forensic Science Evidence Concerning The Noel State Bank Robbery**

The Government challenges claim II.B.2 of Mr. Agofsky's Supplement, which asserted that trial counsel failed to properly rebut the aggravating factors that were based upon Mr. Agofsky's prior conviction. Doc. 112 at 7, Doc. 105 at 94-107. Specifically, the government asserts that "The Supplement adds a lengthy new argument that trial counsel should have challenged the latent print evidence." *Id*.; Doc. 105 at 91-111, 95 n. 41. The government also takes issue with Mr. Agofsky's inclusion of the declarations of fingerprint experts Kenneth Eng and Simon Cole. Doc. 112, at 7.

The supplemental claim rests on expert declarations obtained after the filing of the Amended § 2255 Motion, using funding made available after the Federal Community Defender entered the case. Additionally, it responds to trial counsels' generic attempts to defend their efforts to address the prior conviction, which served as the basis for three of the government's four statutory

aggravating factors.[11]  In their affidavits, both Mr. Black and Mr. Barlow respond only generally to Mr. Agofsky's assertions.  Mr. Barlow states, "Knowing we would face evidence of the horrendous murder of Dan Short and other acts committed by Agofsky, we attempted to minimize that testimony throughout the punishment phase."  (Barlow Aff. at 15,  SA 2341).  Mr. Black states generally that they presented all the evidence they could at the penalty phase.  (Black aff. at 9, SA 2324).  Because the supplemental claim responds to trial counsels' affidavits and incorporates expert evidence unavailable when the Amended § 2255 Motion was filed on October 6, 2008, the court may appropriately treat it as a supplement.  Alternatively, it may, equally appropriately, treat the claim as an amendment that "may be a proper subject of relief, " *see Forman, supra*, 371 U.S. at 182, and neither prejudices the government nor arises from dilatory or other improper purposes.

The claim was timely filed within a year of *certiorari* denial on October 6, 2008.  Furthermore, Claim II.B.2 of the Amended § 2255 Motion included a discussion of the physical evidence and questioned, at length, the reliability of the fingerprint evidence which tied Mr. Agofksy to the Noel State Bank case.  Amended § 2255 Motion at 101-107.   The new reports from two fingerprint experts, thus, clearly relate back to that claim.  In addition, because Mr. Agofsky was unable to obtain funds to work with experts until the Federal Community Defender was appointed on September 9, 2008, he was unable to procure the assistance of experts Eng and Cole through due diligence at an earlier time.  Regardless of when, after September 9, 2008, due diligence could have procured their declarations, the Supplement was filed less than a year later, on September 9, 2009.  *See* 28 U.S.C. § 2255(f)(4).  In addition, because Mr. Agofsky diligently sought funding for experts

---

[11] The government incorrectly states that the prior conviction the basis for two aggravating factors.  Doc. 112 at 7.

but was unable to procure such funds until the Court appointed the Federal Community Defender, he is entitled to equitable tolling from the onset of the abeyance period on January 16, 2008, until funds became available on September 9, 2009.

### 3.    Further Development of Appellate Ineffectiveness Claim

The government challenges one section of Mr. Agofsky's Supplement (elaborating on the claim that appellate counsel, Mr. Newton, ineffectively developed the issues he raised on direct appeal) although it does not challenge the next section (elaborating on the claim that he failed to raise other issues on direct appeal).  Doc. 112 at 6.  In his affidavit, Mr. Newton provides a detailed legal argument attacking the merits of the claims he did not raise.  (SA 2351, Newton Aff. at 3). Respecting the claims he did raise on appeal, however, Mr. Newton, like trial counsel, does not respond with any specificity.  He simply asserts, "I carefully reviewed the record on appeal and researched any legal issues that I identified as potentially meritorious under applicable precedent . . . I spent considerable time preparing for oral argument."  (SA 2356, Newton Aff. at 8-9).

In response, Mr. Agofsky elaborated in the Supplement on the original claims.  The Amended § 2255 Motion had alleged that Mr. Newton filed short and superficial briefs that reflected only light research, and devoted only 21 pages of argument to claims for which relief was not foreclosed.  Doc. 50 at 191-92.  It asserted that Mr. Newton's failure to raise potentially meritorious claims, or to litigate vigorously the claims he did raise, prejudiced the defense.  *Id.* at 195.  The Supplement expanded these assertions by providing a separate legal argument demonstrating how each of the claims that Newton did raise could have been more effectively presented.  Doc. 112 at 198-209.

Like the claims alleging trial counsel's ineffectiveness in connection with the court's instructional errors and other events on the record, the additional arguments concerning Mr.

Newton's failure to advocate effectively in the points he raised on appeal can qualify either as supplements or amendments. They respond to Mr. Newton's affidavit; they simply develop the identical claim pled in the Amended § 2255 Motion; and they impose no prejudice on the government. They are timely because they were filed within a year after October 6, 2008, and because, arising from the very same "transaction or occurrence" set forth in the original pleading – Newton's superficial briefing on direct appeal – they relate back to the Amended § 2255 Motion. *See* Rule 15(c)(1)(B).

### 4. Newly Discovered Exculpatory Evidence Suppressed By The Prosecution

The government asks the court to strike Point V of the Supplement, a *Brady* claim based upon the newly discovered recantation of the government's only eyewitness to the Plant incident, Richard Ward. Doc. 105 at 229, Doc. 112 at 8. Ward's recantation occurred on February 4, 2009, long after the Amended § 2255 Motion was filed. Furthermore, this claim is a supplemental response to the affidavits of trial counsel and deposition of trial investigator Jay Bennett, all of whom described their efforts to interview Ward, the difficulty of determining the identity of the government witness, and Ward's evasion of them. *See* Doc. 105 at 253. For both reasons, the Court may appropriately treat it as a supplement, although it may, with equal propriety, be treated as an amendment, for the same reasons as those given in the sections above.

The government argues that the claim is untimely because Mr. Ward signed his declaration in February 2009 and that the defense should have known about a factual basis for this claim earlier, because "Ward had always claimed he did not see the incident." Doc. 112 at 8. Like the rest of the Supplement, however, the claim was timely filed within a year of *certiorari* denial on October 6, 2008. Furthermore, Mr. Agofsky filed the claim within a year of its discovery through due diligence

as required by 28 U.S.C. § 2255(f)(4). Postconviction counsel located Ward, who had been released months after Mr. Agofsky's 2004 trial, after the Court appointed the Federal Community Defender and resources became available for investigation in September 2008. Regardless of when counsel could have obtained Ward's declaration through due diligence after that date, the Supplement was filed less than a year later. In addition, Ward states in his declaration that the government pressured him to change his account of the events of January 5, 2001 in order to receive favorable judicial treatment and even told him not to speak with defense counsel. Doc. 105, SA 2128-35. Thus, the government's own misconduct kept Mr. Agofsky's counsel from speaking with Ward and discovering the truth. Mr. Agofsky is therefore entitled to equitable tolling of the time until Ward's declaration on February 4, 2009. Doc. 105, SA 2128. Finally, this claim arises from a common core of operative facts with Mr. Agofsky's earlier claim that trial counsel were ineffective for failing to interview and effectively cross examine all government witnesses, a claim advanced in Mr. Agofsky's original and Amended § 2255 Motions, and thus relates back. Amended § 2255 Motion at 19-25. *See Mayle*, 545 U.S. at 664. It was accordingly timely filed.

     **5.     Speedy Trial Claim**

This claim is an appropriate candidate for amendment because it "may be a proper subject for relief" and no reason, such as prejudice to the government's ability to respond, requires denial of Mr. Agofsky's motion to amend. *See Forman, supra*, 371 U.S. at 182. It is timely because it was filed within a year of the *certiorari* denial on the resentencing appeal on October 6, 2008.

     **6.     2009 Report Of The National Academy Of Sciences**

The government moves to strike Point VII, which argues on the basis of a National Academy of Sciences Report, released February 18, 2009, that Mr. Agofsky was convicted in the Noel State

Bank case and sentenced to death on the basis of inaccurate and unreliable fingerprint testimony. Doc. 105 at 238. This claim qualifies as either a supplement, because it is based on an event that occurred four months after the Amended § 2255 Motion's filing date, or an amendment, because it "may be a proper subject for relief" and no reason, such as prejudice to the government's ability to respond, requires denial of Mr. Agofsky's motion to amend. *See Forman, supra*, 371 U.S. at 182.

The claim was timely filed, for three reasons. It was filed less than a year after *certiorari* was denied on October 6, 2008. It was filed less than a year after its factual basis could have been discovered through due diligence on February 18, 2009. Finally, it relates back to the Amended § 2255 Motion, which challenged the reliability of the fingerprint evidence which tied Mr. Agofksy to the Noel State Bank case. Doc. 50 at 101-107.

### 7.      Actual Innocence

The government moves to strike Point VIII, which argues that Mr. Agofsky is innocent of capital murder. Doc. 105 at 247, Doc. 112 at 8. The predicate for this claim is Richard Ward's recantation on February 4, 2009. The Court may view it as a supplement, because it arises from an event that occurred after the filing date of the Amended § 2255 Motion, or an amendment. *See DCD Programs, Ltd. v. Leighton, supra*, 833 F.2d at 186 (liberality in granting leave to amend pleading not dependent on whether amendment will add causes of action or parties, unless it causes opposing party undue prejudice, evinces bad faith, or is futile). The claim is timely filed for the same reasons as the *Brady* claim concerning Ward's declaration, discussed in Section 4, *supra*: it was filed within a year of *certiorari* denial and within a year of discovery of the facts through due diligence, benefits from equitable tolling, and relates back.

## CONCLUSION

For all these reasons, Mr. Agofsky respectfully requests that the Court:

1.  Defer ruling on the government's motion to strike until discovery and briefing are complete; OR

2.  Hold oral argument on the motion; AND

    a.  Deny the government's motion to strike each of the challenged claims;

    b.  Order the government to respond to any claims the Court determines to be supplements to the Amended § 2255 Motion;

    c.  Grant Mr. Agofsky's cross-motion to amend his § 2255 Motion to include any of the challenged claims that the Court determines to be amendments, and order the government to respond to those claims; AND

3.  Grant any further relief the Court deems appropriate.

Respectfully submitted,


/s/ Jennifer Merrigan
JENNIFER MERRIGAN
MO Bar #56733
Public Interest Litigation Clinic
305 E. 63rd Street
Kansas City, MO  64113
Telephone (816) 363-2795
Facsimile (816) 363-2799

/s/ Claudia Van Wyk
CLAUDIA VAN WYK
NJ Bar #012401981
Assistant Federal Defender
Federal Community Defender Office
Capital Habeas Unit
601 Walnut Street, Suite 545W
Philadelphia, PA 19081
Telephone (215) 928-0520
Facsimile (215) 928-0826

Dated: November 17, 2009

**CERTIFICATE OF CONFERENCE**

I hereby certify that on November 17, 2009, I called Assistant United States Attorney Joseph Robert Batte, and left a message seeking his agreement to Shannon Agofsky's cross-motion to amend. I followed up with an email request to Mr. Batte and Libby Lange, Trial Counsel, U.S. Department of Justice. Ms. Lange responded on behalf of herself and Mr. Batte that the government opposes Mr. Agofsky's cross-motion to amend.

/s/  Claudia Van Wyk
CLAUDIA VAN WYK
*Counsel for Movant*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 17, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following: **Traci Lynne Kenner**, U.S. Attorney's Office, 110 North College, Suite 700, Tyler, TX 75702; **Joseph Robert Batte,** U.S. Attorney's Office- Beaumont, 350 Magnolia, Suite 150, Beaumont, TX 77701; and **Libra Joy Lange**, U.S. Department of Justice - Criminal Division, 1331 F. Street, N.W., 3rd Floor, Washington , DC 20004.

/s/  Claudia Van Wyk
CLAUDIA VAN WYK
*Counsel for Movant*