UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | No.  1:07-cv-00511 |
| | ) | |
| SHANNON WAYNE AGOFSKY, | ) | |
| | ) | |
| Movant. | ) | |
| _____ | ) | |

SHANNON AGOFSKY'S REPLY IN SUPPORT OF
CROSS-MOTION TO AMEND

On September 9, 2009, Shannon Agofsky filed a Supplement to his Amended Motion for Relief From Judgment pursuant to 28 U.S.C. § 2255.  Doc. 105.  The government moved to strike a number of the allegations in the Supplement, arguing that they did not qualify as supplements under Rule 15(d) of the Federal Rules of Civil Procedure and, if viewed as amendments, were untimely filed.  Doc. 112.  Mr. Agofsky opposed the motion to strike and cross-moved to amend on the ground that the allegations were properly pled whether they were viewed as supplements or amendments.  Docs. 113, 115.  On November 23, 2009, the government filed its reply in support of its motion to strike and opposition to the cross-motion to amend.  Doc. 117.  Mr. Agofsky submits this reply in support of his cross-motion to amend.

The primary point of contention between the parties is whether the statute of limitations in 28 U.S.C. § 2255(f)(1) began to run when the Supreme Court denied *certiorari* on Mr. Agofsky's initial appeal, on January 22, 2007, or when it denied *certiorari* on his resentencing appeal, on October 6, 2008.  The government acknowledges the Supreme Court holding in *Burton v. Stewart*,

549 U.S. 147, 156-57 (2007), that the limitations period for a state habeas petitioner does not begin to run until both conviction and the sentence become final.  It acknowledges that a Fifth Circuit panel has held that *Burton* applies in § 2255 cases.  It nevertheless attempts to distinguish *Burton* on the ground that  Mr. Agofsky's conviction and sentence "became final at the same time – on January 22, 2007."  Doc. 117 at 7.  In fact, both the convictions and the sentences were *vacated* by the Court of Appeals on July 28, 2006. *United States v. Agofsky*, 458 F.3d 369 (5th Cir. 2006).  When the Supreme Court denied *certiorari* on January 22, 2007, the initial convictions and sentences were no longer in effect, much less "final."  The surviving conviction and sentence did not become final until after Judge Heartfield had resentenced Mr. Agofsky on March 30, 2007, and after Mr. Agofsky had sought review of the resentencing through direct appeal, petition for rehearing en banc, and petition for certiorari.  *See United States v. Colvin*, 204 F.3d 1221 (9th Cir. 2000) (without amended judgment following remand from Court of Appeals, conviction not final for statute of limitations purposes); *accord Maharaj v. Sec'y, DOC*, 304 F.3d 1345, 1349 (11th Cir. 2002) (following *Colvin*).

The government reiterates its argument that the resentencing appeal did not delay finality because it was merely "ministerial" (Doc. 117 at 7), without acknowledging that the resentencing appeal advanced different arguments than the initial appeal, and then pressed those arguments in different forums (in petitions for rehearing en banc and certiorari) than on the first appeal.  *See* Doc. 113 at 16.  The resentencing appeal was therefore not the empty formality the government portrays, but a substantive effort to obtain relief, containing new legal arguments based upon the resentencing itself.

The government contests the additional reasons Mr. Agofsky advances in support of the timeliness of the individual challenged allegations.  Doc. 117 at 7-11.  Some of the claims arise from

newly discovered facts, making them timely under 28 U.S.C. § 2255(f)(4), which resets the statute of limitations clock so that it begins to run, not from the date the conviction and sentence became final, but from the date the facts could have been discovered "through the exercise of due diligence." According to the government, none of the facts qualifies as "newly discovered." Doc. 117 at 8.

*Declarations from fingerprint experts Eng and Cole* (Supplement Point II.B.2). The Supplement includes declarations from a fingerprint examiner (who compared Mr. Agofsky's known prints to the latent prints introduced at his Missouri and Oklahoma trials, and found the match inconclusive), and an expert in the validity of the science of print analysis (who explained why print analysis lacks scientific validity and is, therefore, unreliable). The government asserts that, even "before filing his amended motion" on October 6, 2008, Mr. Agofsky "knew or should have been aware of similar information." Doc. 117 at 8. In fact, Mr. Agofsky's Amended § 2255 Motion does specifically question the reliability of the fingerprint "match." Thus, these expert opinions are indeed supplements to his existing claim. *See* Amended § 2255 Motion at 105-06. Moreover, Mr. Agofsky could not obtain funds to retain these experts until after the appointment of the Federal Community Defender on September 9, 2008, because his earlier requests for expert funding were denied. Docs. 33, 48. Therefore, their expert opinions could not have been discovered through due diligence until after that date.

*2009 NAS Report* (Supplement Point VII). The government argues that Mr. Agofsky did not need the report to establish the questionable scientific validity of fingerprint evidence. Doc. 117 at 9. But he could not have marshaled similar information through an expert such as Dr. Cole because, as indicated above, he could not obtain expert funding until the Federal Community Defender joined the defense team in September 2008. And he could not have elicited the authority of the National

Academy of Sciences for his attack until that body – an unbiased agency of the federal government – issued its report on February 18, 2009.

*The government's failure to disclose its promises to its only eyewitness, Richard Ward, and Ward's recantation* (Supplement Points V, VIII). The government argues that Mr. Agofsky "could have" obtained Ward's declaration before the Federal Community Defender's assignment on September 9, 2008, noting that the initial § 2255 Motion included the declarations of other inmates. Doc. 117 at 9-10. However, Mr. Agofsky received only curtailed investigation funding during the eighteen months preceding September 9, 2008.[1] Furthermore, the government, having concealed the exculpatory impeachment information that Mr. Agofsky's defense team later learned from Ward, should not be heard to complain about the delay in uncovering it. The government represented before trial that it would disclose all exculpatory and impeachment information that pertained to its witnesses (Criminal Docket, Doc. 37, at 2-3), and represented at trial that "nothing has been

_____

[1]  Judge Heartfield granted Mr. Agofsky's funding motion for an investigator and mitigation specialist on April 19, 2007. Mr. Agofsky initially requested only enough funds for a preliminary investigation and advised the court that he would then file a second, more detailed motion for additional funds. He filed that second funding motion on July 3, 2007, but Judge Heartfield did not rule until August 22, 2007, denying the motion and suspending investigation funding, without prejudice, until the parties could brief and he could decide whether "extraordinary circumstances" justified his entertaining the § 2255 motion while the resentencing appeal was pending. *See* Defendant's *Ex Parte* Motion to Permit Continued Investigation, filed September 28, 2007. Judge Heartfield resolved that question on October 9, 2007, granting Mr. Agofsky's unopposed motion to file the § 2255 Motion, stay proceedings, and hold them in abeyance, and also granting funding for the investigator and mitigation specialist to resume their investigation. *See* Docs. 23, 23.1. Both Judge Heartfield (on December 17, 2007) and this Court (on April 21, 2008) denied Mr. Agofsky's motions for expert funding and indicated that no investigation funding would be allowed until abeyance was lifted. Docs. 33, 48. Thus, for the entire eighteen and one-half month period from postconviction counsel's appointment on February 23, 2007 (Doc. 3) until the Federal Community Defender's appointment on September 9, 2008, Mr. Agofsky was authorized to expend investigation funds for less than six months - from April 19, 2007 through July 3, 2007, and again from October 19, 2007, through the filing of the § 2255 Motion on January 19, 2008.

guaranteed [to Ward] except for the information that has been provided in the 302's." Tr. Vol. 20, 341. The lead attorney for the government stated that Ward had been told only that the government would make his cooperation known to his own prosecutor, who might "unilaterally" recommend a downward departure, and that the government would attempt to protect him. Tr. Vol. 20, 339-41. The government's lead attorney asserted a "concern" to "ensure everything is aboveboard and that there is nothing being hidden." *Id.* at 342.[2] Mr. Agofsky was entitled to rely on these representations. *See Douglas v. Workman*, 560 F.3d 1156, 1181 (10th Cir. 2009) (where prosecutor concealed deal to "help" only prosecution eyewitness with his pending criminal matters, "we are not persuaded by the State's contention that Mr. Douglas could have uncovered the [information] prior to Smith's recantation. Therefore, we conclude Mr. Douglas, exercising due diligence, could not have discovered this *Brady* claim any sooner," and thus satisfied one-year statute of limitations); *cf. Banks v. Dretke*, 540 U.S. 668, 692 (2004) (prosecution's concealment of exculpatory impeachment evidence was cause for failure to develop it in state court).

The government argues that Mr. Agofsky "should have been aware of at least part of the factual basis for his claim before he filed his amended motion," because Ward had previously stated that he did not see the incident and "Ward's declaration does not establish that the government prevented Agofsky from contacting Ward." Doc. 117 at 9-10. But the government's assertion that it had disclosed all impeachment information pertaining to Ward gave Mr. Agofsky no reason to suspect that an interview would disclose that the government's representation was false.

_____

[2] According to Ward, "the defense came to Coleman, but I was told not to talk or work with them by the prosecution." SA 2134. As the government presumably knew, Ward heeded these instructions and refused to talk to the defense before trial, making the defense entirely dependent on the government's representations to learn about any promises Ward had received, either during trial or in the future.

Finally, while the government maintains that the challenged allegations "place a heavy burden on the Government to lodge objections and respond to claims" (Doc. 117 at 11), it does not identify any particular "burden" except the work entailed in drafting its responses.  Aside from its timeliness arguments, it does not point to any prejudice or other factor that would justify striking the claims or denying Mr. Agofsky's cross-motion to amend.  For these reasons, and those in Mr. Agofsky's cross-motion to amend, the cross-motion should be granted.

## CONCLUSION

For all the reasons above and in Mr. Agofsky's cross-motion to amend, that motion should be granted.

Respectfully submitted,

/s/ Jennifer Merrigan
JENNIFER MERRIGAN
MO Bar #56733
Public Interest Litigation Clinic
305 E. 63rd Street
Kansas City, MO  64113
Telephone (816) 363-2795
Facsimile (816) 363-2799

/s/ Claudia Van Wyk
CLAUDIA VAN WYK
NJ Bar #012401981
Assistant Federal Defender
Federal Community Defender Office
Capital Habeas Unit
601 Walnut Street, Suite 545W
Philadelphia, PA 19081
Telephone (215) 928-0520
Facsimile (215) 928-0826

Dated: November 24, 2009

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following: **Traci Lynne Kenner**, U.S. Attorney's Office, 110 North College, Suite 700, Tyler, TX 75702; **Joseph Robert Batte,** U.S. Attorney's Office- Beaumont, 350 Magnolia, Suite 150, Beaumont, TX 77701; and **Libra Joy Lange**, U.S. Department of Justice - Criminal Division, 1331 F. Street, N.W., 3rd Floor, Washington , DC 20004.

/s/  Claudia Van Wyk

CLAUDIA VAN WYK

*Counsel for Movant*