No. 09-____

09 - 1 5 8 AUG 4 - 2009

IN THE

# Supreme Court of the United States

BILLY JOE MAGWOOD,

*Petitioner,*

v.

GRANTT CULLIVER,

*Respondent.*

On Petition for a Writ of Certiorari
to the United States Court of Appeals
for the Eleventh Circuit

## PETITION FOR A WRIT OF CERTIORARI

James A. Power Jr.
Marguerite Del Valle
POWER DEL VALLE LLP
233 West 72nd Street
New York, NY 10023

Thomas C. Goldstein
AKIN, GUMP, STRAUSS,
  HAUER & FELD LLP
1333 New Hampshire
  Ave., NW
Washington, DC 20036
(202) 887-4000

Jeffrey L. Fisher
  *Counsel of Record*
Pamela S. Karlan
STANFORD LAW SCHOOL
  SUPREME COURT
  LITIGATION CLINIC
559 Nathan Abbott Way
Stanford, CA 94305
(650) 724-7081

Amy Howe
Kevin K. Russell
HOWE & RUSSELL, P.C.
7272 Wisconsin Ave.
Bethesda, MD 20814

WILSON-EPES PRINTING CO., INC. – (202) 789-0096 – WASHINGTON, D. C. 20002

Blank Page

## CAPITAL CASE

## QUESTIONS PRESENTED

1. When a person is resentenced after having obtained federal habeas relief from an earlier sentence, is a claim in a federal habeas petition challenging that new sentencing judgment a "second or successive" claim under 28 U.S.C. § 2244(b) if the petitioner could have challenged his previously imposed (but now vacated) sentence on the same constitutional grounds?

2. Did petitioner's attorney provide ineffective assistance of counsel warranting federal habeas relief by failing to raise an argument at petitioner's resentencing proceedings that would have made clear that petitioner was constitutionally ineligible for the death penalty?

Blank Page

ii

# TABLE OF CONTENTS

QUESTIONS PRESENTED............................................i

TABLE OF AUTHORITIES........................................iii

PETITION FOR A WRIT OF CERTIORARI.............. 1

OPINIONS BELOW .................................................. 1

JURISDICTION........................................................ 1

RELEVANT CONSTITUTIONAL AND
STATUTORY PROVISIONS....................................... 1

STATEMENT OF THE CASE....................................3

REASONS FOR GRANTING THE WRIT ................ 10

I.   The Eleventh Circuit's Construction of What
     Constitutes a "Second or Successive" Habeas
     Petition Holding Warrants Review .................... 11

     A.   The Holding is Erroneous............................ 11

     B.   The Holding Creates a Circuit Split ............ 14

     C.   The Holding Has Pernicious Consequences
          for the General Administration of Habeas
          Corpus ........................................................ 17

II.  The Eleventh Circuit's Ineffective Assistance
     Holding Warrants Review.................................. 20

CONCLUSION ........................................................ 22

APPENDIX A, Opinion of the Eleventh Circuit....... 1a

APPENDIX B, Opinion of the District Court ......... 23a

APPENDIX C, Order of Eleventh Circuit Denying
Rehearing En Banc.............................................. 100a

APPENDIX D, Order of Circuit Court of Coffee
County, Alabama Sentencing Petitioner to
Death.................................................................. 102a

iii

## TABLE OF AUTHORITIES

### Cases

*Artuz v. Bennett,* 531 U.S. 4 (2000) .......................... 17

*Bouie v. City of Columbia,* 378 U.S. 347 (1964) ......... 9

*Burton v. Stewart,* 549 U.S. 147 (2007)........ 12, 13, 18

*Crawford v. Washington,* 541 U.S. 36 (2004) ........... 20

*Esposito v. United States,* 135 F.3d 111
   (2d Cir. 1997)............................................. 15, 16, 17

*Ex parte Kyzer,* 399 So.2d 330 (Ala. 1981) ....... passim

*Ex parte Magwood,* 548 So.2d 516 (Ala. 1988)........... 8

*Felker v. Turpin,* 518 U.S. 651 (1996) ..................... 12

*Femia v. United States,* 47 F.3d 519
   (2d Cir. 1995)........................................................ 14

*G. & C. Merriam Co. v. Saalfield,* 241 U.S. 22
   (1916) .................................................................... 12

*In re Taylor,* 171 F.3d 185 (4th Cir. 1999)................ 18

*Jones v. Estelle,* 692 F.2d 380 (5th Cir. 1982).......... 14

*Kimmelman v. Morrison,* 477 U.S. 365
   (1986) .................................................................... 21

*Magwood v. Jones,* 472 F. Supp. 2d 1333
   (M.D. Ala. 2007). ..................................................... 4

*Magwood v. Smith,* 608 F. Supp. 218
   (M.D. Ala. 1985) .............................................. 5, 6, 7

*Magwood v. Smith,* 791 F.2d 1438, 1450
   (11th Cir. 1986). ...................................................... 7

*Magwood v. State,* 426 So. 2d 918
   (Ala. Crim. App. 1982) ......................................... 5, 6

*Magwood v. State,* 548 So.2d 512
   (Ala. Crim. App. 1988) ............................................. 8

*Magwood v. State,* 689 So.2d 959
   (Ala. Crim. App. 1996) ............................................. 8

*Munoz v. United States,* 331 F.3d 151
   (1st Cir. 2003)........................................................ 15

iv

*Panetti v. Quarterman,* 551 U.S. 930
(2007) .................................................. 12, 13, 15
*Richmond v. Lewis,* 506 U.S. 40 (1992) .............. 13, 15
*Richmond v. Lewis,* 948 F.2d 1473
(9th Cir. 1992) ................................................ 14, 15
*Richmond v. Ricketts,* 774 F.2d 957
(9th Cir. 1985) ................................................ 14, 15
*Sanders v. United States,* 373 U.S. 1
(1963) .................................................................... 12
*Slack v. McDaniel,* 529 U.S. 473 (2000) .................... 15
*United States v. Galtieri,* 128 F.3d 33
(2d Cir. 1997) ................................................ 16, 17
*United States v. Pedrazza,* 466 F.3d 932
(10th Cir. 2006) ....................................................... 15
*Vasquez v. Parrott,* 318 F.3d 387
(2d Cir. 2003) ........................................................... 16
*Whorton v. Bockting,* 549 U.S. 406 (2007) ................ 20

## Constitutional Provisions

U.S. Const., art I, § 9, cl. 2 ........................................ 19
U.S. Const., amend. VI ................................................ 1
U.S. Const., amend. XIV ........................................... 1, 8

## Statutes

28 U.S.C. § 2244 ................................................ passim
28 U.S.C. § 2244(b) ........................................... i, 2, 18
28 U.S.C. § 2244(b)(1) ............................................... 19
28 U.S.C. § 2244(b)(2) ......................................... 18, 20
28 U.S.C. § 2254 ............................................ 2, 13, 15
28 U.S.C. § 1254(1) ...................................................... 1
28 U.S.C. § 2255 ........................................................ 15
28 U.S.C. § 2255(h) .................................................... 15
Ala. Code § 13-11-2 ................................................... 21
Ala. Code § 13-11-2(a) ................................................ 4
Ala. Code § 13-11-2(a)(5) ............................................ 5

v

Ala. Code § 13-11-4 .......................................................5
Ala. Code § 13-11-2(a)...................................................4
Ala. Code § 13-11-6............................................ passim
Ala. Code § 13A-5-45(f)................................................7
Ala. Code § 13A-5-49 ..................................................7

## Other Authorities

Liebman, James S. & Randy Hertz, Federal
    Corpus Practice and Procedure
    (5th ed. 2005)......................................................... 11
11 Moore's Federal Practice § 131.01 (2009) ............ 12

## PETITION FOR A WRIT OF CERTIORARI

Petitioner Billy Joe Magwood respectfully petitions for a writ of certiorari to review the judgment of the United States Court of Appeals for the Eleventh Circuit.

## OPINIONS BELOW

The opinion of the United States Court of Appeals for the Eleventh Circuit (Pet. App. 1a) is published at 555 F.3d 968. The pertinent opinion of the United States District Court for the Middle District of Alabama (Pet App. 23a) is published at 481 F. Supp. 2d 1262.

## JURISDICTION

The judgment of the court of appeals was entered on January 23, 2009. Pet. App. 1a. A timely petition for rehearing was denied on March 24, 2009. Pet. App. 100a-101a. On June 15, 2009, Justice Thomas extended the time within which to file a petition for a writ of certiorari to and including August 7, 2009. *See* 08-A1116. This Court has jurisdiction pursuant to 28 U.S.C. § 1254(1).

## RELEVANT CONSTITUTIONAL AND STATUTORY PROVISIONS

The Sixth Amendment to the United States Constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."

The Fourteenth Amendment to the United States Constitution provides in relevant part: "[N]or shall

2

any State deprive any person of life, liberty, or property, without due process of law."

28 U.S.C. § 2244(b) provides in relevant part:

"(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless –

(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."

Relevant provisions of Alabama's statutes governing capital punishment are reproduced at Pet. App. 91a-99a.

3

## STATEMENT OF THE CASE

Petitioner Billy Joe Magwood stands sentenced to death for an act that was not a capital offense under Alabama law when he committed it. A federal district court therefore granted habeas relief from this sentence on two independent grounds: (1) that the Alabama courts violated the Due Process Clause by unforeseeably changing Alabama law in order to retroactively render petitioner's act a capital offense; and (2) that petitioner's attorney rendered ineffective assistance of counsel by failing to raise this due process claim at petitioner's resentencing proceeding. Without disputing that the retroactive alteration of Alabama law to render petitioner death-eligible clearly violated the Due Process Clause, the Eleventh Circuit reversed the district court's decision and reinstated petitioner's death sentence. The Eleventh Circuit held that (1) petitioner's due process claim is "successive" and thus procedurally barred, even though this is his first habeas petition challenging his new sentence, because petitioner could have challenged his original sentence on the same constitutional ground; and (2) petitioner's attorney reasonably neglected to argue at petitioner's resentencing that the Due Process Clause forbade retroactively rendering petitioner's offense a capital crime.

1. Petitioner has long suffered from paranoid schizophrenia. His service in the Vietnam War and a subsequent period of detention in the Coffee County, Alabama jail, during which he was unable to obtain medication or treatment, deepened his mental illness. By the late 1970's, petitioner believed that the Army was sending him orders through surgically implanted

4

communication devices and warning him that Coffee County authorities, including Sheriff Cornelius Grantham, endangered his completing his "missions." Petitioner even sent letters while in jail to the Veterans Administration, imploring it to release him from its command by removing the implanted communication devices.[1]

On March 1, 1979, as petitioner's hallucinations persisted, petitioner approached Sheriff Grantham in front of the county jail. After exchanging greetings and in plain view of the sheriff's deputies, petitioner shot and killed the sheriff. Petitioner then exchanged fire with a deputy, got into his car, and drove home. Upon arriving there, petitioner sat unarmed on his front porch until his arresting officers arrived.

At the time of the killing, Alabama law provided that an individual was subject to the death penalty if two prerequisites were met. First, the individual had to commit one of the fourteen types of aggravated murder listed in Ala. Code § 13-11-2(a) (1975). Second, the trial judge had to determine that "[o]ne or more of the aggravating circumstances enumerated in section 13-11-6 . . . exist[ed] in the

---

[1] Internal parole and probation reports, which did not surface until after petitioner's resentencing, confirmed that, while incarcerated, petitioner "did not know his date of birth, what day of the week it was, the day of the month, or month of the year. [He] did not have any concept of what parole amounted to and his only interest was getting out of jail and to go to the Walter Reed Hospital for treatment" Habeas Pet. App. 109; *see also Magwood v. Jones,* 472 F. Supp. 2d 1333, 1335-37 (M.D. Ala. 2007).

5

case" and outweighed any mitigating circumstances. *Id.* 13-11-4; *see also* Pet. App. 51a-55a.[2] Murdering a sheriff while on duty or because of some official or job-related act constituted aggravated murder under § 13-11-2(a)(5), but petitioner did not kill Sheriff Grantham under any of the aggravating circumstances enumerated in § 13-11-6.

The State nonetheless charged petitioner with capital murder. It appointed two lawyers to represent him, a childhood friend of Sheriff Grantham and someone who had known the sheriff professionally for twenty-five years. The State also placed petitioner in Searcy State Hospital, where three state psychiatrists unanimously confirmed his paranoid schizophrenia. The psychiatrists also opined that petitioner "was insane at the time of his admission to their hospital, at the time [the doctors] issued their report, and probably at the time of the commission of the offense." Pet. App. 26a. Petitioner, one psychiatrist emphasized, was "not a borderline case"; he was "completely out of touch with reality." *Magwood v. State,* 426 So. 2d 918, 921 & 923 (Ala. Crim. App. 1982).

After receiving this report, the Alabama trial court ordered that petitioner be "restored to his right mind," Tr. Rec. 387, by means of antipsychotic drugs potent enough to "put anyone . . . totally asleep." *Magwood v. Smith,* 608 F. Supp. 218, 226 (M.D. Ala.

---

[2] Alabama law as it existed in 1979 is reproduced in the appendix to the district court's opinion, which appears at Pet. App. 91a-99a.

6

1985).    Months later, the court deemed petitioner legally competent to stand trial. *Id* at 227.

Petitioner's trial lasted a day and one-half. "[T]he State's only evidence that [petitioner] was sane came from two general practitioners who examined [petitioner] for 15 and 30 minutes, respectively, and a clinical psychologist who conceded that [petitioner] suffered from paranoid schizophrenia and that he examined [petitioner] two years after the offense conduct and while he was strongly medicated." Pet. App. 26a.  The trial court refused to compel the testimony of any of the three doctors from Searcy State Hospital or to grant petitioner funds to hire a psychiatrist as an expert witness of his own. The jury, whose members included numerous acquaintances of the sheriff, *see Magwood v. State*, 426 So.2d 918, 924 (Ala. Crim. App. 1982), rejected petitioner's insanity defense and found him guilty.

Even though none of the "aggravating circumstance[s] in Section 13-11-6" accompanied petitioner's crime, the trial court sentenced petitioner to death. *Magwood*, 426 So.2d at 928 (quoting trial court sentencing order of June 30, 1981).  The trial court justified this action by referencing *Ex parte Kyzer*, 399 So.2d 330 (Ala. 1981), in which the Alabama Supreme Court had held three months earlier (but almost two years after petitioner's crime) that Alabama law no longer required a court to find an

7

aggravating circumstance under Ala. Code § 13-11-6 in order to impose the death penalty.[3]

2. After the Alabama courts upheld petitioner's conviction and sentence, petitioner filed a federal habeas petition. The U.S. District Court for the Middle District of Alabama left his conviction in place but granted habeas relief as to petitioner's death sentence. The district court held that the sentencing court had inexplicably failed to find or consider any mitigating circumstances relating to petitioner's mental illness. *Magwood v. Smith,* 608 F. Supp. 218, 228 (M.D. Ala. 1985). The Eleventh Circuit affirmed this decision and mandated "a new sentencing hearing in order to satisfy the constitutional standards for sentencing in death penalty cases." *Magwood v. Smith,* 791 F.2d 1438, 1450 (11th Cir. 1986). The State declined to seek review in this Court.

3. In 1986, "the state trial court conducted a 'complete and new' sentencing hearing, including 'a new assessment of all of the evidence, arguments of counsel, and law' and a 'new . . . opportunity for the parties to submit evidence." Pet. App. 27a (quoting portion of state court order reproduced at Pet. App. 103a). Again applying *Kyzer,* the trial court sentenced petitioner to death notwithstanding the

---

[3] The Alabama Legislature abrogated *Kyzer* the day after petitioner was sentenced, reinstating the rule for crimes committed after July 1, 1981 that "[u]nless at least one aggravating circumstance as defined in section 13A-5-49 [formerly section 13-11-6] exists, the sentence shall be life imprisonment without parole." Ala. Code § 13A-5-45(f) (1981).

8

absence of any aggravating circumstance listed in former Ala. Code § 13-11-6.  Pet. App. 102a-107a. The Alabama courts upheld this new sentence on direct appeal. *Magwood v. State*, 548 So.2d 512 (Ala. Crim. App. 1988); *Ex parte Magwood,* 548 So.2d 516 (Ala. 1988).

4. Petitioner sought post-conviction relief from his new death sentence in the Alabama courts. Among other things, he argued that "the absence of any statutory aggravating circumstance and the lack of notice given by the 1975 Act for the retroactive application of the decision in *Kyzer* rendered [his] sentence unconstitutional under the . . . 14th Amendment[]."  Pet. App. 69a (quoting petitioner's brief). The Alabama Court of Criminal Appeals rejected this "fair warning" argument without noting any preservation problems. *Magwood v. State,* 689 So.2d 959, 965-66 (Ala. Crim. App. 1996).  It also rejected petitioner's related argument that his counsel rendered ineffective assistance at resentencing by failing to raise this claim. *Id.* at 967.

5. Petitioner next filed the federal habeas petition at issue here in the U.S. District Court for the Middle District of Alabama, limited to challenging his new sentence.  Petitioner renewed, among other arguments, his fair warning and ineffective assistance claims.  The district court granted relief on both claims.

As to the fair warning claim, the district court held that applying the formulation of Alabama law announced in *Kyzer* to petitioner's sentencing violated clearly established Due Process Clause limitations on the retroactive application of new law. "[I]t seems beyond dispute," the court explained,

9

"that the judicial construction of [Alabama death penalty statutes] announced in *Kyzer* was 'unexpected and indefensible by reference to the law which had been expressed prior to' [petitioner's] offense conduct." Pet. App. 55a (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964)). The district court also explained – even though the State had not argued to the contrary – that this due process claim was not subject to AEDPA's restrictions on "second or successive" habeas petitions. Pet. App. 63a-65a. Although "the state court committed the same [due process] error" at petitioner's first sentencing, "habeas petitions challenging the constitutionality of a resentencing proceeding are not successive to petitions that challenge[d] the . . . original sentence." Pet. App. 65a.[4]

As to the ineffective assistance claim, the district court held that petitioner's attorney rendered ineffective assistance by failing to argue at resentencing that the Due Process Clause prohibited retroactively applying *Kyzer* to his case. Pet. App. 82a-89a. The district court explained that there could not have been any reasonable strategic reason to forego the claim because it was a clear winner. And counsel's deficient performance unquestionably prejudiced the defense: had counsel successfully made this argument, petitioner would have been ineligible for the death penalty.

_____

[4] The district court also made clear that this claim was not subject to procedural default. Petitioner raised it in state post-conviction proceedings, and "the Alabama Court of Criminal Appeals denied it on the merits." *See* Pet. App. 68a-70a.

10

6. The Eleventh Circuit reversed the district court's grant of habeas relief.[5] The Eleventh Circuit did not question the district court's holding on the merits of petitioner's fair warning claim. But it nonetheless ruled that the claim was successive – notwithstanding the fact that it challenged a newly imposed death sentence – because it "was available at [petitioner's] original sentencing." Pet. App. 15a.

The Eleventh Circuit rejected the district court's ineffective assistance holding on the ground that "Alabama's highest court had said in *Kyzer*" that state law did not require finding an aggravating circumstance under Ala. Code § 13-11-6 to impose the death penalty. Pet. App. 19a. Even though *Kyzer* itself had not addressed whether the Due Process Clause permitted that change in Alabama law to be applied retroactively, the Eleventh Circuit reasoned: "We are not prepared to require counsel to raise an argument that has already been decided adversely to his client's position by a state's highest court in order to avoid being found ineffective." Pet. App. 19a-20a.

## REASONS FOR GRANTING THE WRIT

The Eleventh Circuit's decision rests upon two holdings that are patently erroneous. First, the Eleventh Circuit's holding that a claim challenging a new sentence imposed after a previous grant of habeas relief is "successive" if the prisoner's prior

---

[5] It also affirmed the district court's rejection of petitioner's other claims for relief. Petitioner does not advance those claims before this Court.

11

sentence could have been challenged on the same grounds contravenes this Court's and other circuits' consistent recognition that habeas petitions brought against new sentences (or convictions) are first petitions. Second, the Eleventh Circuit's holding that petitioner's counsel rendered effective assistance even though he failed to make a readily available argument that would have established that petitioner was ineligible for the death penalty disregards basic Sixth Amendment principles.

## I. The Eleventh Circuit's Construction of What Constitutes a "Second or Successive" Habeas Petition Holding Warrants Review.

### A. The Holding is Erroneous.

It has long been hornbook law that the "successive petition doctrine does not apply when . . . a habeas corpus petitioner, who succeeded in overturning a conviction (or sentence) and who is subsequently retried and reconvicted (or resentenced), files a second petition to challenge the new conviction (or sentence)." 2 James S. Liebman & Randy Hertz, Federal Habeas Corpus Practice and Procedure §28.3b, at 1412-13 (5th ed. 2005). The text of AEDPA's successive petition provisions, the purpose of those provisions, and this Court's precedent all confirm that the Eleventh Circuit erred in departing from this elementary principle.

1. 28 U.S.C. § 2244 sets forth special rules limiting the filing of "second or successive" habeas corpus applications. Although neither this statutory section nor any other in AEDPA defines the phrase "second or successive," one thing should be plain: an application cannot be "second or successive" when it

12

is the *first* one to challenge a new judgment. That being so, no claim in such an application – regardless of whether the applicant could have brought a similar claim against an earlier judgment – can be subject to AEDPA's successive petition rules.

This straightforward understanding of Section 2244 comports with its purpose. Section 2244 "constitute[s] a modified res judicata rule, a restraint on what is called in habeas corpus practice 'abuse of the writ.'" *Felker v. Turpin*, 518 U.S. 651, 664 (1996). Section 2244 "modifie[s]" traditional res judicata doctrine insofar as it *relaxes* that doctrine, owing to the historical tradition of allowing some relitigation in habeas cases that would not be permissible in other types of cases. *See, e.g., Sanders v. United States,* 373 U.S. 1, 8-15 (1963). Accordingly, any litigation that is exempted from traditional res judicata doctrine is necessarily exempted from the reach of Section 2244.

Such is the case here: res judicata exempts litigation that does not involve "the same cause of action" as previous litigation. *G. & C. Merriam Co. v. Saalfield,* 241 U.S. 22, 29 (1916); *see generally* 18 Moore's Federal Practice § 131.01 (2009). And a new claim brought against a new judgment, *see* Pet. App. 103a, 106a, is not the "same" as any claim that was or might have been brought against a previous judgment.

2. This Court's decisions are in accord. This Court deems applications successive only when they "contest[] the same custody imposed by the *same judgment* of a state court." *Burton v. Stewart,* 549 U.S. 147, 153 (2007) (per curiam) (emphasis added); *see also Panetti v. Quarterman,* 551 U.S. 930, 944

13

(2007) (application is successive when it challenges "*a state-court judgment already challenged* in a prior § 2254 application") (emphasis added); *id.* at 964 (Thomas J., dissenting) (application is successive when it challenges "*a state-court judgment that had been previously challenged* in a federal habeas application") (emphasis added). This Court has never suggested that an application filed against a *new judgment* can be deemed successive.

To the contrary: *Burton* strongly suggests that this Court would not do so. In *Burton*, a state prisoner filed a habeas application in 1998 that challenged his conviction but did not raise any claims against his sentence. After that petition was denied, the prisoner filed another application in 2002, this time challenging the constitutionality of his sentence. The prisoner argued that the 2002 application was not successive because the 1998 application actually challenged a different judgment – the judgment his state court had entered in 1994, before the prisoner had been resentenced. If the Eleventh Circuit's holding that an application challenging a new judgment on grounds that were previously available were correct, Burton's argument would have been irrelevant: his 2002 application would have been successive regardless of whether it challenged a new judgment. But this Court assumed that it *did* matter which judgment the 1998 petition challenged; it rejected the prisoner's argument only on the ground that his 1998 application actually had challenged the "same" judgment as his 2002 application did. *Burton,* 549 U.S. at 156.

This Court's decision in *Richmond v. Lewis,* 506 U.S. 40 (1992), reinforces the conclusion that an

14

initial habeas petition challenging a new judgment is by definition a first petition. There, a state prisoner who had previously obtained habeas relief challenged the new death sentence that had been imposed at resentencing. As the federal court of appeals' decisions in the case made clear, the prisoner's primary claim – that one of the aggravating factors supporting his sentence was unconstitutionally vague – was one that he could have, but had not, brought against his original sentence. *See Richmond v. Lewis,* 948 F.2d 1473, 1480 (9th Cir. 1992); *Richmond v. Ricketts,* 774 F.2d 957 (9th Cir. 1985); C.A. App. C (Petitioner's Specification of Claims Raised in this Petition and in *Richmond v. Cardwell*) at 11. This Court reviewed the prisoner's vagueness claim on the merits and held that he was entitled to habeas relief. Neither the majority nor the concurring or dissenting opinions suggested that the prisoner's claim should be treated as anything other than a first petition, even though contemporaneous law gave this Court the authority to inquire *sua sponte* whether the petition was successive. *E.g., Femia v. United States,* 47 F.3d 519, 524 (2d Cir. 1995); *Jones v. Estelle,* 692 F.2d 380, 384 n.5 (5th Cir. 1982).

### B.    The Holding Creates A Circuit Split.

Two federal circuits have explicitly rejected the rule that the Eleventh Circuit adopted here. In *Richmond v. Ricketts,* 774 F.2d 957 (9th Cir. 1985), the case just described, the Ninth Circuit held that even though a state prisoner could have challenged his original sentence on the same basis as his claim

15

concerning his resentencing, the claim was not successive "because the second petition was filed in response to the resentencing." *Id.* at 961.[6] The Ninth Circuit later reaffirmed this holding, confirming that a prisoner who has been resentenced to death following a new sentencing hearing "may challenge the death penalty on grounds that were available to him but that he did not raise when contesting his first sentence." *Richmond v. Lewis,* 948 F.2d 1473, 1480 (9th Cir. 1992), *rev'd on other grounds,* 506 U.S. 40 (1992).

The Second Circuit issued a similar decision in *Esposito v. United States,* 135 F.3d 111 (2d Cir. 1997). In *Esposito,* a federal prisoner pleaded guilty to various drug offenses and was sentenced to 250 months in prison. He then obtained habeas relief from his sentence on ineffective assistance grounds. Following resentencing, he brought another federal habeas petition, arguing in part that the sentencing court violated his due process rights by failing to pinpoint the particular form of methamphetamine for which he had been responsible.[7] (Different forms of

---

[6] Although the Ninth Circuit's decision predates AEDPA, nothing in AEDPA altered what constitutes a successive petition. *See Panetti,* 551 U.S. at 944 (citing *Slack v. McDaniel,* 529 U.S. 473 (2000)); *id.* at 964 (Thomas, J., dissenting) ("Before AEDPA's enactment, the phrase 'second or successive' meant the same thing it does today."). AEDPA merely codified the concept and further restricted the circumstances under which claims in successive petitions can go forward. *See* 28 U.S.C. § 2244.

[7] Although the applicant in *Esposito* was a federal prisoner and thus sought habeas relief under 28 U.S.C. § 2255 instead of

16

the drug carried different guidelines ranges.)  Even though it must have been possible for the prisoner to have challenged his first sentence on this basis, the Second Circuit held that the claim was not successive because it "s[ought] – for the first time – collateral review of the new sentence." *Id.* at 113; *see also Vasquez v. Parrott,* 318 F.3d 387, 390 (2d Cir. 2003) ("[E]ven a petition that has been finally adjudicated on the merits will not count for purposes of the successive petition rule unless the second petition attacks the *same judgment* that was attacked in the prior petition.") (internal quotation and citation omitted) (emphasis added).

The Eleventh Circuit claimed (Pet. App. 14a) that its holding was consistent with a different Second Circuit decision, *United States v. Galtieri,* 128 F.3d 33 (2d Cir. 1997).  But *Galtieri* addressed a materially different situation than petitioner's: there, a prisoner's original sentence had merely been amended – that is, he had been only *partially* resentenced – following habeas relief.  The Second Circuit held that a claim in his new habeas filing was successive "to the extent that it challenge[d] the underlying conviction or s[ought] to vacate any component of the original sentence *that was not amended*." *Id.* at 38 (emphasis added).  Nothing in

---

§ 2254, "the same mode of analysis applies when addressing the restriction on second or successive motions contained in § 2255." *United States v. Pedrazza,* 466 F.3d 932, 933 n.1 (10th Cir. 2006); *see also* 28 U.S.C. § 2255(h) (expressly incorporating rules set forth in Section 2244); *Munoz v. United States,* 331 F.3d 151, 152 (1st Cir. 2003).

17

this holding indicates that a claim challenging an entirely new sentence could ever be deemed second or successive. To the contrary, *Galtieri* made clear in dicta – foreshadowing the Second Circuit's later holding in *Esposito* – that a habeas petition "will be regarded as a 'first' petition . . . to the extent that it seeks to vacate the new, amended component of [a] sentence." *Galtieri,* 128 F.3d at 37-38. That is the situation here: petitioner's death sentence is entirely new; no part of the prior one remains. Pet. App. 27a.

### C. The Holding Has Pernicious Consequences For The General Administration Of Habeas Corpus.

It is important to review the Eleventh Circuit's decision not only because petitioner faces an execution that could not be carried out if he were under the jurisdiction of another circuit, but also because the decision threatens to upend settled understandings in current habeas corpus law.

A moment's reflection on the way AEDPA works reveals why this is so, and why the Eleventh Circuit's decision illegitimately insulates new judgments, following initial grants of habeas relief, from collateral attack. As this Court emphasized in *Artuz v. Bennett,* 531 U.S. 4, 9-10 (2000), courts construing AEDPA must be attentive to the difference between the words "application" and "claim." Section 2244 requires courts to decide as a threshold matter whether a habeas "application" – that is, a whole filing – is successive. If it is, then the Section provides rules for determining whether each individual "claim" in the application may go forward. If a claim in a successive petition has already been

18

litigated, it must be dismissed; if it is new, it can proceed only under limited circumstances.

The Eleventh Circuit's ruling turns this methodology on its head. Before even asking whether an *application* against a new judgment is successive, the Eleventh Circuit apparently now intends to inspect each individual *claim* in all such applications. If applicants could have challenged their original judgments on the same ground as any claim they advance against the new judgment, the Eleventh Circuit treats the claim as though raised in a successive application.

The only way for the Eleventh Circuit to render that holding consistent with the order of analysis that Section 2244 directs would be to treat all applications (that is, *all claims in all applications*) brought against reconvictions or resentencings following successful habeas attacks as successive. But this approach would raise several problems. Among them:

- It would require all claims against new judgments, even those that arise for the first time at retrials or reconvictions following successful habeas petitions, to be dismissed unless, in the words of Section 2244(b)(2), they (A) "rel[y] on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or (B) establish by clear and convincing evidence that the petitioner is innocent. This outcome, however, would contravene the universally settled understanding – accepted even by the Eleventh Circuit in this case, *see* Pet. App. 15a – that claims that arise for the first time at retrial or resentencing are not subject to rules governing

19

second or successive petitions. *See, e.g., In re Taylor,* 171 F.3d 185 (4th Cir. 1999), *cited with approval in Burton,* 549 U.S. at 156. In other words, making sense of the Eleventh Circuit's holding here would render retrials and resentencings virtually immune from collateral attack.[8]

• Indeed, treating applications challenging reconvictions or resentencings entered following successful habeas attacks as successive would render new judgments committing *the same violations that triggered habeas relief in the first place* immune from challenge. The same would be true with respect to constitutional violations that prisoners challenged but that first habeas courts did not reach the first time around because they granted relief on different grounds. In both of these scenarios defendants would have raised the constitutional objections at issue in earlier habeas applications, so Section 2244, under the Eleventh Circuit's reading, would require federal courts to dismiss the claims. 28 U.S.C. § 2244(b)(1). This result is not only starkly counterintuitive but may well violate the constitutional prohibition against suspending the writ. *See* U.S. Const. art I, § 9, cl. 2 (Suspension Clause).

• Treating all applications challenging recon-victions or resentencings following successful habeas

---

[8] The ineffective assistance claim that arises in this case would be the rare exception to this rule, for if petitioner's attorney had performed at a constitutionally acceptable level, the attorney would have made clear that petitioner "is 'actually innocent' of the death penalty." Pet. App. 57a; *see infra* at 20-22 (laying out ineffective assistance claim).

20

attacks as successive would also prevent prisoners from being able to seek relief against their new judgments based on intervening decisions from this Court. Consider, for example, a hypothetical defendant whose conviction became final in 2003, who later received habeas relief, and who was reconvicted in 2005. Such a prisoner would be precluded from seeking habeas relief based on a flagrant violation at the 2005 trial of the Confrontation Clause as explicated in *Crawford v. Washington,* 541 U.S. 36 (2004). That decision is not – as Section 2244(b)(2) requires – retroactive, *see Whorton v. Bockting,* 549 U.S. 406 (2007), or relevant to establishing actual innocence.

## II. The Eleventh Circuit's Ineffective Assistance Holding Warrants Review.

The district court held that petitioner's attorney rendered ineffective assistance by failing to argue at petitioner's resentencing that the Due Process Clause prohibited retroactively applying the new Alabama law announced in *Ex parte Kyzer,* 399 So.2d 330 (Ala. 1981), to his case. Pet. App. 82a-89a. That new law dispensed with the prior requirement that at least one aggravating factor listed in Ala. Code. § 13-11-6 (1975) exist before sentencing someone to death; the new law provided, in other words, that petitioner's crime alone, without any of the aggravating circumstances required at the time of his crime under Section 13-11-6, rendered him death eligible. Had petitioner's attorney made this due process argument, this Court's precedent would have required the trial court to hold that petitioner could not be sentenced to death. Pet. App. 57a.

21

The Eleventh Circuit did not quibble with the well accepted premise that attorneys render ineffective assistance when they fail, without any reasonable strategic basis, to raise a readily available and winning argument. *See Kimmelman v. Morrison,* 477 U.S. 365, 374, 382 (1986). The Eleventh Circuit nonetheless reversed the district court, basing its holding on the following two sentences:

> While there was a possible objection [petitioner's attorney could have made], Alabama's highest court had said in *Kyzer* that a § 13-11-2 aggravating factor could be used as an aggravating circumstance. We are not prepared to require counsel to raise an argument that already has been decided adversely to his client's position by a state's highest court in order to avoid being found ineffective.

Pet. App. 19a-20a.

To the extent the Eleventh Circuit assumed in this passage that *Kyzer* rejected a *federal due process* challenge to applying the new law announced in *Kyzer* retroactively, the Eleventh Circuit is simply wrong. *Kyzer* never considered any such argument. Rather, the Alabama Supreme Court simply held that state law gave it the authority to rewrite Alabama law to declare that defendants could be sentenced to death even when no aggravating fact listed at Ala. Code § 13-11-6 was present. *Kyzer,* 399 So.2d at 339. This decision *gave rise* to the federal due process argument petitioner's attorney failed to raise at his resentencing; it did not address it, much less decide it adversely.

22

To the extent the Eleventh Circuit meant that it was not unreasonable for petitioner's attorney to have failed to raise the federal due process argument at resentencing because the Alabama Supreme Court in *Kyzer* asserted state-law authority to change Alabama law, the Eleventh Circuit was equally mistaken. A state court's prior rejection of state-law arguments says nothing about the merits of a theoretically different federal constitutional claim.

In short, the Eleventh Circuit had no sound reason for overturning the district court's ineffective assistance holding. Certiorari should be granted on this issue as well.

## CONCLUSION

For the foregoing reasons, the petition for a writ of certiorari should be granted.

Respectfully submitted,

James A. Power Jr.
Marguerite Del Valle
POWER DEL VALLE LLP
233 West 72nd Street
New York, NY  10023

Thomas C. Goldstein
AKIN, GUMP, STRAUSS,
  HAUER & FELD LLP
1333 New Hampshire
  Ave., NW
Washington, DC 20036
(202) 887-4000

Jeffrey L. Fisher
  *Counsel of Record*
Pamela S. Karlan
STANFORD LAW SCHOOL
  SUPREME COURT
  LITIGATION CLINIC
559 Nathan Abbott Way
Stanford, CA 94305
(650) 724-7081

Amy Howe
Kevin K. Russell
HOWE & RUSSELL, P.C.
7272 Wisconsin Ave.
Bethesda, MD 20814

August 5, 2009