Supreme Court, U.S.
FILED

OCT 8 - 2009

OFFICE OF THE CLERK

No. 09-158

======

**In the SUPREME COURT of the UNITED STATES**

———————◆———————

**BILLY JOE MAGWOOD,**
Petitioner,

v.

**GRANTT CULLIVER,**
Respondent.

———————◆———————

On Petition for a Writ of Certiorari
to the United States Court of Appeals
for the Eleventh Circuit

======

**BRIEF OF RESPONDENT IN OPPOSITION
TO THE PETITION FOR WRIT OF CERTIORARI**

======

Troy King
*Attorney General*

Corey L. Maze
*Solicitor General*

Beth Jackson Hughes*
*Assistant Attorney General*

*Counsel of Record
STATE OF ALABAMA
Office of Attorney General
500 Dexter Avenue
Montgomery, AL 36130-0152
Tel: (334) 242-7300
Fax: (334) 353-3637

October 8, 2009

Blank Page

i

## CAPITAL CASE

## QUESTIONS PRESENTED FOR REVIEW
### (Rephrased)

1. Should this Court grant certiorari to review Magwood's splitless and meritless claim that the Eleventh Circuit's construction of what constitutes a "second or successive" habeas petition is erroneous?

2. Should this Court grant certiorari to review Magwood's splitless and meritless claim that his attorney was constitutionally ineffective during the resentencing because he failed to argue to the resentencing court that the retroactive application of *Ex parte Kyzer*, 399 So. 2d 330 (Ala. 1981), to his case was a violation of the due process clause?

———————◆———————

ii

## PARTIES TO THE PROCEEDINGS

The caption contains the names of all parties in the courts below.

iii

# TABLE OF CONTENTS

QUESTIONS PRESENTED FOR REVIEW ..............i

PARTIES TO THE PROCEEDINGS........................ii

TABLE OF AUTHORITIES.........................................v

OPINIONS BELOW......................................................1

STATEMENT OF JURISDICTION............................3

CONSTITUTIONAL AND STATUTORY
 PROVISIONS INVOLVED....................................3

STATEMENT OF THE CASE ....................................3

 A. The Proceedings Below ......................................4

 B. Statement of the Facts.......................................7

REASONS FOR DENYING THE PETITION............8

I. THIS COURT SHOULD DECLINE TO
 REVIEW MAGWOOD'S SPLITLESS AND
 MERITLESS CLAIM THAT THE
 ELEVENTH CIRCUIT'S CONSTRUCTION
 OF WHAT CONSTITUTES A "SECOND OR
 SUCCESSIVE" HABEAS PETITION
 HOLDING WARRANTS REVIEW.........................9

 A. Certiorari Should Be Denied Because The
  Underlying Issue Is Not Worthy Of
  Certiorari Review. ...............................................9

 B. The Holding Of The Eleventh Circuit That
  Magwood's Fair Warning Claim Is
  Successive Under 28 U.S.C. §2244(b) Is
  Correct. ...........................................................10

 C. The Holding Of The Eleventh Circuit Does
  Not Create A Circuit Split. ................................14

iv

D. The Holding Of The Eleventh Circuit Does Not Have Pernicious Consequences For The General Administration Of Habeas Corpus, As Magwood Argues. ...........................17

E. There Are Other Compelling Reasons Why Certiorari Should Not Be Granted In This Case...............................................................19

   1. This claim is procedurally defaulted...........19

   2. Magwood's fair-warning claim is without merit. .............................................21

II. THIS COURT SHOULD DECLINE TO REVIEW MAGWOOD'S SPLITLESS AND MERITLESS CLAIM THAT HIS ATTORNEY WAS CONSTITUTION-ALLY INEFFECTIVE DURING THE RE-ENTENCING BECAUSE HE FAILED TO ARGUE TO THE RESENTENCING COURT THAT THE RETROACTIVE APPLICATION OF *KYZER* TO HIS CASE WAS A VIOLATION OF THE DUE PROCESS CLAUSE. .............................................................29

A. Certiorari Should Be Denied Because The Underlying Issue Is Not Worthy Of Certiorari Review. ............................................29

B. Certiorari Should Be Denied Because This Claim Is Without Merit.....................................30

CONCLUSION .........................................................34

v

# TABLE OF AUTHORITIES

CASES

*Atkins v. Singletary*, 965 F. 2d 952 (11th Cir. 1992) ............................................... 30

*Bottoson v. Moore*, 234 F. 3d 526 (11th Cir. 2000) ................................................... 31

*Bouie v. City of Columbia*, 378 U.S. 347 (1964) .............................................. 22, 23

*Burton v. Stewart*, 549 U.S. 147 (2007) .................... 13

*Chandler v. United States*, 218 F. 3d 1305 (11th Cir. 2000) ..................................... 31

*Day v. McDonough*, 547 U.S. 198 (2006) .................. 18

*Esposito v. United States*, 135 F.3d 111 (2nd Cir. 1997) ................................... 15, 16

*Ex parte Green*, 215 F. 3d 1195 (11th Cir. 2000) ................................................... 10

*Ex parte Kyzer*, 399 So. 2d 330 (Ala. 1981)....... passim

*Ex parte Magwood*, 453 So. 2d 1349 (Ala. 1984) ............................................... 1, 4

*Faye v. Noia*, 372 U.S. 391 (1963) ............................ 17

*Galteiri v. United States*, 128 F. 3d 33 (2nd Cir. 1997) ............................ 10, 12, 15, 16

*Grayson v. Thompson*, 257 F. 3d 1194 (11th Cir. 2001) ................................................ 31

*In re: Magwood*, 113 F. 3d 1544 (11th Cir. 1997) ................................................... 10

vi

*Jones v. Campbell*, 436 F. 3d 1285 (11th
    Cir. 2006) ................................................ 20

*Kelley v. Sec. for the Dept. of Corr.*, 377 F.
    3d 1317 (11th Cir. 2004) ......................... 20

*Magwood v. Alabama*, 462 U.S. 1124 (1983) .......... 1, 4

*Magwood v. Alabama*, 483 U.S. 923 (1989) ............ 2, 5

*Magwood v. Culliver*, 481 F. Supp. 2d 1262
    (M.D. Ala. 2007) ..................................... 10

*Magwood v. Culliver*, 555 F. 3d 968 (11th
    Cir. 2009) ............................... 2, 10, 11, 32

*Magwood v. Smith*, 608 F. Supp. 218 (M.D.
    Ala. 1985) ........................................ 1, 4, 10

*Magwood v. Smith*, 791 F. 2d 1438 (11th
    Cir. 1986) ............................................. 1, 4

*Magwood v. State*, 426 So. 2d 918 (Ala.
    Crim. App. 1982), *aff'd*, 426 So. 2d 929
    (Ala. 1983) ......................................... 1, 4, 8

*Magwood v. State*, 449 So. 2d 1267 (Ala.
    Crim. App. 1984) ................................... 1, 4

*Magwood v. State*, 462 So. 2d 918 (Ala.
    Crim. App. 1982) ..................................... 32

*Magwood v. State*, 548 So. 2d 512 (Ala.
    Crim. App.), *aff'd*, 548 So. 2d 516 (Ala.
    1988) ...................................................... 2, 5

*Magwood v. State*, 689 So. 2d 959 (Ala.
    Crim. App. 1996) ..................................... 20

*Marks v. United States*, 430 U.S. 188 (1977) ........... 22

vii

*McBoyle v. United States*, 283 U.S. 25 (1931) .......................................................22

*Panetti v. Quarterman*, 551 U.S. 930 (2007) ...... 14, 18

*Picard v. Connor*, 404 U.S. 270 (1971) ..................... 21

*Richmond v. Lewis*, 506 U.S. 40 (1992) .............. 14, 17

*Rogers v. Tennessee,* 532 U.S. 451 (2001) ..... 22, 23, 25

*Rose v. Locke*, 423 U.S. 48 (1975) ............................. 21

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ...... 30, 31, 33

*Teague v. Lane*, 489 U.S. 288 (1989) ......................... 19

*Tompkins v. Moore*, 193 F. 3d 1327 (11th Cir. 1999) ................................................................ 32

*United States v. Harris*, 347 U.S. 612 (1954) ......................................................................22

*United States v. Lanier*, 520 U.S. 259 (1997) ......................................................................22

*Waters v. Thomas*, 46 F. 3d 1506 (11th Cir. 1995) ............................................................... 30, 31

*Williams v. Taylor*, 529 U.S. 362 (2000) ................... 31

**STATUTES**

United States Code
28 U.S.C. §2244 ................................................... 10, 18
28 U.S.C. §2244(b) ............................................... passim
28 U.S.C. §2244(b)(2) ......................................... passim
28 U.S.C. §2254(b)(2) ................................................. 9
28 U.S.C. §2444 ....................................................... 19

viii

Code of Alabama
§13-11-2 ................................................. 21, 26, 28, 33
§13-11-2 (a) ......................................................... 21, 26
§13-11-2 (5) ............................................................... 26
§13-11-6 ......................................................... 27, 32

**RULES**

Rule 10.................................................3, 9, 17, 29
Rule 10(c) ........................................................8

1

## OPINIONS BELOW

Billy Joe Magwood murdered Coffee County Sheriff Neil Grantham on March 1, 1979. Magwood was convicted and sentenced to death for this murder on June 2, 1981. On direct appeal, the Alabama Court of Criminal Appeals and the Alabama Supreme Court affirmed Magwood's conviction and death sentence. *Magwood v. State*, 426 So. 2d 918 (Ala. Crim. App. 1982), *aff'd*, 426 So. 2d 929 (Ala. 1983). This Court denied Magwood's petition for writ of certiorari. *Magwood v. Alabama*, 462 U.S. 1124 (1983).

Magwood subsequently filed a petition for writ of error coram nobis challenging his conviction and death sentence. This petition was denied and on March 20, 1984, the Alabama Court of Criminal Appeals affirmed the denial of the corum nobis petition. *Magwood v. State*, 449 So. 2d 1267 (Ala. Crim. App. 1984). A motion for out-of-time appeal was denied by the Alabama Supreme Court on June 5, 1984. *Ex parte Magwood*, 453 So. 2d 1349 (Ala. 1984).

Magwood then filed a petition for writ of habeas corpus in the United States District Court for the Middle District of Alabama. On March 26, 1985, the district court upheld Magwood's conviction but conditionally granted the writ as to the sentence, based on the failure of the sentencing court to find two mitigating circumstances. *Magwood v. Smith*, 608 F. Supp. 218 (M.D. Ala. 1985). The Eleventh Circuit Court of Appeals affirmed this decision. *Magwood v. Smith*, 791 F. 2d 1438 (11th Cir. 1986).

A resentencing hearing was conducted on September 17, 1986. The trial court, after

2

considering the additional mitigating circumstances as ordered by the district court, again sentenced Magwood to death. The Alabama Court of Criminal Appeals and the Alabama Supreme Court affirmed Magwood's resentencing. *Magwood v. State*, 548 So. 2d 512 (Ala. Crim. App.), *aff'd*, 548 So. 2d 516 (Ala. 1988). This Court denied Magwood's petition for writ of certioarari. *Magwood v. Alabama*, 483 U.S. 923 (1989).

Magwood filed a second habeas petition challenging his resentencing in the district court on April 23, 1997. On April 9, 2007, the district court granted Magwood's habeas petition on his fair warning claim and ineffective assistance of counsel claim based on the fair warning claim and vacated Magwood's death sentence. On January 23, 2009, the Eleventh Circuit Court of Appeals reversed the district court's holding that Magwood's fair warning claim was successive under 28 U.S.C. §2244(b)(2). The Eleventh Circuit also reversed the district court's holding that Magwood was denied the effective assistance of counsel because his attorney failed to argue to the resentencing court that the retroactive application of *Ex parte Kyzer*, 399 So. 2d 330 (Ala. 1981), to his case was a violation of the due process clause. *Magwood v. Culliver*, 555 F. 3d 968 (11th Cir. 2009). On March 24, 2009, the Eleventh Circuit Court of Appeals denied Magwood's petition for rehearing and his petition for rehearing en banc. See Pet. App. C.

————————◆————————

3

## STATEMENT OF JURISDICTION

The statement of jurisdiction contained on page 1 of Magwood's petition for writ of certiorari is correct. Magwood, however, has not articulated any basis for this Court to invoke its jurisdiction under Supreme Court Rule 10.

---◆---

## CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

The statement of constitutional provisions and statutes involved in this case, which is contained on pages 1-2 of Magwood's petition for writ of certiorari, is correct.

---◆---

## STATEMENT OF THE CASE

Billy Joe Magwood has completed two rounds of state and federal habeas litigation. The first concluded in 1986. This petition marks the culmination of the second. During this second round of litigation, Magwood raised a penalty-phase claim that unquestionably could have been, but was not, raised during his first round of litigation 20-plus years earlier. The court of appeals thus held that this claim was barred because it constituted a second or successive petition under 28 U.S.C. §2244(b)(2). Magwood fails to establish (1) that the lower court erred and (2) that good cause exists to review the court's decision.

4

## A. The Proceedings Below

Billy Joe Magwood murdered Coffee County Sheriff Neil Grantham on March 1, 1979. Magwood was convicted and sentenced to death for this murder on June 2, 1981. On direct appeal, the Alabama Court of Criminal Appeals and the Alabama Supreme Court affirmed Magwood's conviction and death sentence. *Magwood v. State*, 426 So. 2d 918 (Ala. Crim. App. 1982), *aff'd*, 426 So. 2d 929 (Ala. 1983). This Court denied Magwood's petition for writ of certiorari. *Magwood v. Alabama*, 462 U.S. 1124 (1983).

On July 13, 1983, Magwood filed a petition for writ of error coram nobis in the Circuit Court of Coffee County. This petition was denied and on March 20, 1984, the Alabama Court of Criminal Appeals affirmed the denial of the coram nobis petition. *Magwood v. State*, 449 So. 2d 1267 (Ala. Crim. App. 1984). A motion for out-of-time appeal was denied by the Alabama Supreme Court on June 5, 1984. *Ex parte Magwood*, 453 So. 2d 1349 (Ala. 1984).

Magwood then filed a petition for writ of habeas corpus in the United States District Court for the Middle District of Alabama. On March 26, 1985, the district court upheld Magwood's conviction but conditionally granted the writ as to the sentence, based on the failure of the sentencing court to find two mitigating circumstances. *Magwood v. Smith*, 608 F. Supp. 218 (M.D. Ala. 1985). The Eleventh Circuit Court of Appeals affirmed this decision. *Magwood v. Smith*, 791 F. 2d 1438 (11th Cir. 1986).

A resentencing hearing was conducted on September 17, 1986. (Doc. 17, Habeas Checklist, Tab

5

#1) On October 2, 1986, the trial court, after considering the additional mitigating circumstances as ordered by the district court, again sentenced Magwood to death. (Doc. 17, Habeas Checklist, Tab #1) The Alabama Court of Criminal Appeals and the Alabama Supreme Court affirmed Magwood's resentencing. *Magwood v. State*, 548 So. 2d 512 (Ala. Crim. App.), *aff'd*, 548 So. 2d 516 (Ala. 1988). This Court denied Magwood's petition for writ of certiorari. *Magwood v. Alabama*, 483 U.S. 923 (1989).

Magwood filed a second habeas petition challenging his resentencing on April 23, 1997. (Doc. 1) On May 21, 1997, the district court ordered that the case would proceed in two stages. (Doc. 10) The district court referred the Stage I proceedings to the magistrate judge. (Doc. 10) In Stage I, the magistrate judge was to determine which claims should be dismissed on procedural default grounds and which claims required an evidentiary hearing. (Doc. 10)

The State answered the habeas petition on August 12, 1997. (Doc. 16) On May 30, 2000, the State filed its initial Stage I brief. (Doc. 35) Magwood filed his Stage I brief on July 7, 2000. (Doc. 37) The State filed its Stage I reply brief on July 28, 2000. (Doc. 40) On August 2, 2000, the State filed a motion to amend its answer with the amended answer attached. (Doc. 41) Magwood objected to the State's motion to amend. (Doc. 42) The magistrate judge granted the State's motion to amend its answer on September 20, 2000. (Doc. 45)

On February 28, 2003, the magistrate judge entered her recommendation on the Stage I issues.

6

(Doc. 59)  The State filed objections to the magistrate judge's recommendation on March 13, 2003.  (Doc. 61)  On this same date, the State filed a motion for leave to file a second amended answer, with the second amended answer attached.  (Doc. 62)  Magwood filed objections to the magistrate judge's recommendation on March 29, 2003.  (Doc. 64)  The magistrate judge denied the State's motion to file a second amended answer on May 19, 2003.  (Doc. 67)

On January 27, 2004, the district court entered an order overruling the State's objections and overruling Magwood's objections, with one exception. (Doc. 69)  In this order, the district court ordered the parties to file supplemental briefs on whether Magwood's *Brady* claims were barred by the "law of the case" doctrine.  (Doc. 69)  The parties filed supplemental briefs on February 10, 2004. (Doc. 71, 72)  After a conference call on February 23, 2004, the district court ordered further supplemental briefing on whether Magwood's *Brady* claims originated in his 1986 resentencing and whether 28 U.S.C. §2244(b) limited the district court's consideration of the *Brady* claims.  The parties filed their supplemental briefs on this issue on March 23, 2004. (Docs. 78, 79)  Magwood filed his brief on the merits of the remaining claims (Stage II brief) on June 8, 2005.  (Doc. 94)  The State filed its brief on the merits on July 13, 2005. (Doc. 95)  Magwood filed his reply brief on July 27, 2005.  (Doc. 97)

On February 2, 2007, the district court entered an opinion and order overruling Magwood's objections that the magistrate judge had improperly disallowed his *Brady* claims to proceed to Stage II.  (Doc. 112) On April 9, 2007, the district court granted Magwood's habeas petition on his fair warning claim

7

and ineffective assistance of counsel based on the fair warning claim and vacated Magwood's death sentence. (Doc. 115, pp. 36-82, 98-109)  The State filed a notice of appeal and a motion to stay the judgment of the district court on May 8, 2007. (Docs. 117, 118)  Magwood filed a notice of cross-appeal and a motion for a certificate of appealability on May 22, 2007. (Docs. 120, 121)  On May 25, 2007, the district court granted the State's motion to stay the judgment. (Doc. 124)  On June 6, 2007, the district court granted Magwood's motion for a certificate of appealability. (Doc. 128)

## B. Statement of the Facts

The Alabama Court of Criminal Appeals summarized the facts presented at Magwood's trial in its May 18, 1982 opinion, as follows:

> Thomas Weeks, a Coffee County Deputy Sheriff, testified he was employed as the county jailer on March 1, 1979, under Coffee County Sheriff Neil Grantham. The witness stated he observed appellant, whom he recognized as a former jail inmate, sitting in a car parked in Sheriff Grantham's parking space at approximately 6:45 a.m. Shortly before 7:00 a.m., he observed Sheriff Grantham drive up and park his vehicle. He got out of the automobile, walked to some garbage cans and deposited a trash bag, and then walked towards the jail door. Appellant got out of his automobile with something in his hand and met Sheriff Grantham at the rear of the car. At that point, Deputy

8

> Weeks heard three gunshots and saw Sheriff Grantham fall. The witness then turned back into the jail and obtained a gun. He observed appellant get back into his car and saw that he held a pistol in his hand. He exchanged fire with appellant as he drove away. Deputy Weeks then went over to where Sheriff Grantham lay on the ground and observed that the Sheriff's face was blue and that he appeared not to be breathing, having apparently been hit in the face and neck. Deputy Weeks stated he observed no one else in the area at the time the Sheriff was killed.

*Magwood v. State*, 426 So. 2d 918, 920 (Ala. Crim. App. 1982).

### REASONS FOR DENYING THE PETITION

It is worth noting at the outset that Magwood does not allege – let alone prove – any traditional ground for certiorari. Magwood does not, for instance, argue that this case presents a novel and important question of federal law, *see,* Sup. Ct. R. 10(c). At bottom, Magwood requests that this Court engage in a fact-bound review of his particular case. This Court should deny his petition for writ of certiorari.

9

**I. This Court Should Decline To Review Magwood's Splitless And Meritless Claim That The Eleventh Circuit's Construction Of What Constitutes A "Second Or Successive" Habeas Petition Holding Warrants Review.**

Magwood contends that the Eleventh Circuit erred when it held that his fair warning claim, raised for the first time after his resentencing, was successive and barred from review under 28 U.S.C. §2244(b)(2).  Magwood asserts that this holding is contrary to this Court's and other circuits recognition that habeas petitions brought against new sentences are first petitions.

**A. Certiorari Should Be Denied Because The Underlying Issue Is Not Worthy Of Certiorari Review.**

Magwood's claim is simply a request for this Court to review the determination of the Eleventh Circuit that his fair-warning claim was successive and barred from review under 28 U.S.C. §2254(b)(2). While Magwood alleges there is a split in the circuits regarding this claim, this is untrue.  In addition, Magwood does not assert that this case presents a novel and important question of federal law. Instead, Magwood is asking this Court for nothing more than a review of the determination of the Eleventh Circuit. As Supreme Court Rule 10 states, "[a] petition for a writ of certiorari [will] rarely [be] granted when the asserted error consists of erroneous factual findings or the "misapplication of a properly stated rule of law."   Sup. Ct. R. 10. Because Magwood has failed to articulate a "compelling reason" under Rule 10 for this Court to

10

grant certiorari to review this claim, this Court should deny the writ.

## B. The Holding Of The Eleventh Circuit That Magwood's Fair Warning Claim Is Successive Under 28 U.S.C. §2244(b) Is Correct.

Magwood filed his first habeas petition over 25 years ago. The district court denied the petition as to Magwood's sentence but granted the petition as to the death sentence. *Magwood v. Smith*, 608 F. Supp. 2d 218 (M.D. Ala. 1985). Magwood did not raise his fair warning claim even though he could have done so. (Doc. 15, p. 68) Magwood also filed an application for leave to file a successive petition for writ of habeas corpus pursuant to 28 U.S.C. §2244 with the Eleventh Circuit Court of Appeals on April 23, 1997. *In re: Magwood*, 113 F. 3d 1544 (11th Cir. 1997). Magwood simultaneously filed the habeas petition from his resentencing in the district court. However, Magwood did not ask the Eleventh Circuit for permission to file a successive petition concerning his fair warning claim – a claim that was available to Magwood when he filed his first habeas petition.

The district court found, based on the Eleventh Circuit's opinion in *Ex parte Green*, 215 F. 3d 1195 (11th Cir. 2000), that Magwood's fair warning claim was not successive within the meaning of the AEDPA. *Magwood v. Culliver*, 481 F. Supp. 2d 1262, 1274-1287 (M.D. Ala. 2007). The Eleventh Circuit reversed this holding by the district court relying on the Second Circuit's analysis in *Galteiri v. United States*, 128 F. 3d 33, 37-38 (2nd Cir. 1997). *Magwood v. Culliver*, 555 F. 3d 968, at 975-976 (11th Cir. 2009). Applying the Second Circuit's approach to

11

Magwood's case, the Eleventh Circuit found as follows:

> [T]hose claims seeking to challenge the new, amended component of the sentence are regarded as part of a first petition, and those claims seeking to challenge any component of the original sentence that was not amended are regarded as part of a second petition. Here, the fair-warning claim was available at Magwood's original sentencing. On resentencing, the exact same aggravator-the one alleged in the indictment as allowed by -was used again. As Magwood's fair-warning claim was available at his original sentencing, Magwood's claim is successive and is governed by 28 U.S.C. § 2244(b)(2). This claim is due to be dismissed because it is successive, and Magwood does not assert it fits into one of § 2244(b)(2)'s exceptions. Thus, we reverse the district court's grant of relief on this claim, and dismiss Magwood's fair-warning claim as successive. (footnote omitted).

*Magwood v. Culliver,* 555 F. 3d at 975-976.

The Eleventh Circuit properly found that Magwood's attempt to raise this claim in his second habeas petition was precluded under 28 U.S.C. §2244(b)(2). The Eleventh Circuit correctly concluded that claims that could have been raised for the first time must be raised at the first opportunity and that claims that arise solely from a new judgment or new sentencing hearing – that could not

12

have been raised the first time around – can be raised in a second habeas petition. As the Eleventh Circuit, *quoting Galtieri,* 128 F. 3d at 37, explained:

> That approach ... would permit every defendant who succeeds in having any component of his sentence modified to bring a renewed challenge ... to the unamended components of his original sentence, raising grounds that were either available for presentation on the first petition or even specifically rejected on that petition. Congress, in enacting sections [2255 and 2254] to sharply restrict repetitive habeas petitions, could not have wanted such an indulgent result.

*Id.* at 37. The Second Circuit then concluded:

> [W]henever a first 2255 petition succeeds in having a sentence amended, a subsequent 2255 petition will be regarded as a "first" petition only to the extent that it seeks to vacate the new, amended component of the sentence, and will be regarded as a "second" petition to the extent that it challenges ... any component of the original sentence that was not amended.

*Id.* at 37-38.

None of this Court's cases cited by Magwood require a different conclusion. This Court did not hold, as Magwood asserts, that it deems applications successive only when they "contest the same

13

judgment of a state court." *Burton v. Stewart*, 549 U.S. 147, 153 (2007). In fact, this Court noted the following in *Burton*:

> There is no basis in our cases for supposing, as the Ninth Circuit did, that a petitioner with unexhausted claims who chooses the second of these options-who elects to proceed to adjudication of his exhausted claims-may later assert that a subsequent petition is not "second or successive" precisely because his new claims were unexhausted at the time he filed his first petition. This reasoning conflicts with both *Lundy* and § 2244(b) and would allow prisoners to file separate habeas petitions in the not uncommon situation where a conviction is upheld but a sentence is reversed. Such a result would be inconsistent with both the exhaustion requirement, with its purpose of reducing "piecemeal litigation," *Duncan v. Walker*, 533 U.S. 167, 180, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001), and AEDPA, with its goal of "streamlining federal habeas proceedings," *Rhines v. Weber*, 544 U.S. 269, 277, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005).

The holding of the Eleventh Circuit in Magwood's case reduces piecemeal litigation and is also consistent with the AEDPA's goal of "streamlining federal habeas proceedings." *Burton, supra*. The holding of the Eleventh Circuit also furthers the purpose of the AEDPA because it "furthers the

14

principles of comity, finality, and federalism." *See Panetti v. Quarterman*, 551 U.S. 930, 945 (2007)(noting that the purpose of the AEDPA is to "further the principles of comity, finality, and federalism.").

Neither does this Court's opinion in *Richmond v. Lewis*, 506 U.S. 40 (1992), reinforce the conclusion that an initial habeas petition challenging a new judgment is by definition a first petition, as Magwood argues. Pet. 13-14. In fact, the issue before this Court in *Richmond* was "whether the Supreme Court of Arizona ha[d] cured petitioner's death sentence of vagueness error." *Richmond*, at 531. There is no discussion by this Court, in this pre-AEDPA case, of the successive petition rule nor does it appear that this was an issue before this Court. Magwood's argument that this Court's holding in *Richmond* reinforces the conclusion that an initial habeas petition challenging a new judgment is by definition a first petition is without merit.

The Eleventh Circuit properly dismissed Magwood's fair-warning claim because it was successive under 28 U.S.C. §2244(b) (2). This Court should, therefore, refuse to grant certiorari on this issue.

## C. The Holding Of The Eleventh Circuit Does Not Create A Circuit Split.

Magwood contends this Court should grant certiorari review of his claim because two federal circuits have explicitly rejected the rule that the Eleventh Circuit adopted here. Magwood asserts that the second circuit and the ninth circuit have reached decisions that are contrary to the decision reached by the Eleventh Circuit in his case.

15

This Court should not grant certiorari to review the alleged split in the circuits for two reasons. First, there is no split between the holdings of the Second Circuit and the Eleventh Circuit. The Second Circuit followed it holding in *Galteiri v. United States*, 128 F.3d 33 (2nd Cir. 1997), in *Esposito v. United States*, 135 F.3d 111, 113-114 (2nd Cir. 1997). The Second Circuit stated the following in *Esposito*:

> Not every habeas petition that attacks a new and amended judgment is saved from the AEDPA's bar on "second or successive" petitions. We recently decided in *Galtieri v. United States*, 128 F.3d 33 (2d Cir.1997), that
>
> whenever a first 2255 petition succeeds in having a sentence amended, a subsequent 2255 petition will be regarded as a "first" petition only to the extent that it seeks to vacate the new, amended component of the sentence, and will be regarded as a "second" petition to the extent that it challenges the underlying conviction or seeks to vacate any component of the original sentence that was not amended.
>
> *Id.* at 37-38. Galtieri's section 2255 petition was a "second" petition even though Galtieri's first section 2255 petition succeeded in amending the supervised release component of his original sentence, because the later petition raised no challenge to the new supervised release term and concerned instead the conviction and the

16

components of his sentence that were not amended. *Id.*

Procedurally, the present case is the obverse of *Galtieri,* because Esposito's current section 2255 petition seeks to vacate his new sentence on grounds opened by the resentencing. Under *Galtieri,* therefore, Esposito's pending section 2255 petition is not a "second or successive" petition for purposes of the gatekeeping requirements of the AEDPA. Therefore, no authorization by this Court is required. We transfer the petition back to the district court for further proceedings.

The holding of the Eleventh Circuit in Magwood's case is consistent with the holding of the Second Circuit in *Galtieri* and *Esposito.* In *Magwood,* the Eleventh Circuit correctly determined that his fair-warning claim was a claim that was available when Magwood filed his first habeas petition and was not a ground opened by the resentencing. There is, therefore, no split in the decision of the Eleventh Circuit in *Magwood* and the decisions of the Second Circuit in *Galtieri* and *Esposito.*

Second, this Court should not grant Magwood's certiorari petition because there is no significant split in the circuits concerning this matter. Magwood relies on one[1] pre-AEDPA Ninth Circuit case to argue that there is a split in the circuits.

---

[1] As set forth in the paragraph above, there is no split between he holdings of the Second Circuit and the Eleventh Circuit concerning this issue.

17

This is not such a split as to warrant review under Rule 10 of the Supreme Court Rules. Moreover, Magwood fails to cite any post-AEDPA cases that follow the Ninth Circuit's holding in *Richmond v. Lewis*, 948 F. 2d 1473 (9th Cir. 1992). This case does not present, at this time, sufficient special and important reasons to grant certiorari review. *See Faye v. Noia*, 372 U.S. 391, 436 (1963); Rule 10, Rules of the Supreme Court of the United States.[2]

### D. The Holding Of The Eleventh Circuit Does Not Have Pernicious Consequences For The General Administration Of Habeas Corpus, As Magwood Argues.

Magwood contends that the Eleventh Circuit's holding in his case will have pernicious consequences for the general administration of habeas corpus. Pet. 17-20. This Court should not grant certiorari review based on this argument for several reasons. First, it is not true that the Eleventh Circuit's holding would require all claims against new judgments to be dismissed under §2244(b)(2). Nor would the holding of the Eleventh Circuit prevent habeas petitioner's from challenging the same violations that triggered habeas relief in the first place immune from challenge after retrial or resentencing or prevent prisoners from being able to seek relief against their new judgments based on intervening decisions from this Court. Instead, the holding of the Eleventh Circuit is limited to those situations where the claim was available at the original trial or sentencing but was not raised at that time. In that situation, and

---

[2] This is especially true where there are other compelling reasons, as set out in part I-E of the State's brief in opposition, why certiorari review is not appropriate in this case.

18

that situation only, the Eleventh Circuit held that the claim would be successive under 28 U.S.C. §2244.

In fact, Magwood's position would have more pernicious consequences than the holding of the Eleventh Circuit. Magwood's position would allow petitioners to sleep on their claims until the second or third round of appeals thus allowing petitioner's, like Magwood, to file new attacks on their convictions and sentences 20 to 30 years after their original trials. Magwood's position would also allow petitioner's to raise the same claims over and over again after resentencing because they would argue that they are attacking new sentences each time. Magwood's position is completely contrary to the purposes of the AEDPA to further "the principles of comity, finality, and federalism." *Panetti v. Quarterman*, 551 U.S. 930, 945 (2007). As this Court stated in *Panetti, quoting Day v. McDonough*, 547 U.S. 198, 205-206 (2006): "The AEDPA statute of limitation promotes judicial efficiency and conservation of judicial resources, safeguards the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh, and lends finality to state court judgments within a reasonable time." *Panetti*, 551 U.S. at 945. The same can be said of the successive petition rule of the AEDPA. Magwood's position that a petitioner can raise any new claim after a retrial or resentencing has more pernicious consequences than the holding of the Eleventh Circuit and should not be allowed by this Court.

19

### E. There Are Other Compelling Reasons Why Certiorari Should Not Be Granted In This Case.

There are two other reasons why this Court should not grant Magwood's petition for writ of certiorari. First, not only is this case successive under 28 U.S.C. §2444, it is also procedurally defaulted. Second, the fair-warning claim is without merit.

### 1. This claim is procedurally defaulted.

This claim was not raised at resentencing, on appeal from the resentencing, and was not fairly raised in the state post-conviction proceedings from the resentencing. Magwood's failure to raise this claim was a procedural default under state law which barred consideration of this claim by the district court. *See Teague v. Lane*, 489 U.S. 288, 297-298 (1989)(claims not raised at all in state court are procedurally barred).

Magwood argued in the district court that this claim was presented in the state post-conviction proceedings. However, a review of the Rule 20 petition and Magwood's brief on appeal in the Alabama Court of Criminal Appeals reveals that this claim was not fairly presented to the state courts. (Doc. 17, Habeas Checklist, Tab #21, paragraphs 33, 39, 41-43; Tab #25, pp. 23-29) Magwood never alleged in his Rule 20 petition (or at resentencing or on appeal from the resentencing) that sentencing him to death was a retroactive application of the holding in *Kyzer*. While Magwood does have a phrase in a one-sentence statement in his 94-page brief from the denial of the Rule 20 petition concerning the holding in *Kyzer*, this does not

20

substantially raise this as a ground for relief to be considered by the Alabama appellate courts. (Doc. 17, Habeas Checklist, Tab #25, pp. 23-29)  *Kelley v. Sec. for the Dept. of Corr.*, 377 F. 3d 1317, 1345 (11th Cir. 2004); *Jones v. Campbell*, 436 F. 3d 1285, 1313-1305 (11th Cir. 2006).   In fact, all Magwood states, after arguing for 6 pages that the murder of a law enforcement officer is not generally punished by death nor was punished capitally at the time his sentences of death were affirmed in 1982 and 1988, is the following:   "Further, the absence of any statutory aggravating circumstance <u>and</u> <u>the</u> <u>lack</u> <u>of</u> <u>notice</u> <u>given</u> <u>by</u> <u>the</u> <u>1975</u> <u>Act</u> <u>for</u> <u>the</u> <u>retroactive</u> <u>application</u> <u>of</u> <u>the</u> <u>decision</u> <u>in</u> *<u>Kyzer</u>* rendered Mr. Magwood's sentence unconstitutional under the 5th, 8th, and 14th Amendments."   (Doc. 17, Habeas Checklist, Tab #25, p. 29)(emphasis added).

In addition, contrary to Magwood's argument in the district court, the Alabama Court of Criminal Appeals did not reach the merits of this claim.  There is no discussion by the Alabama Court of Criminal Appeals concerning the retroactive application of the judicial rule in *Kyzer* to Magwood's case.  There is no discussion because, as set forth above, this claim was not fairly presented to the state courts.  A review of the decision of the Alabama Court of Criminal Appeals reveals that it was discussing Magwood's contention that the trial court considered an improper aggravating circumstance and disregarded mitigating evidence.  *Magwood v. State*, 689 So. 2d 959, 965-66 (Ala. Crim. App. 1996).   While the Alabama Court of Criminal Appeals, relying on *Kyzer*, finds that the trial court properly relied on the aggravating circumstance alleged in the indictment, there is absolutely no discussion by the Alabama

21

Court of Criminal Appeals concerning the retroactive application of *Kyzer* to Magwood's case. This claim was not considered by the Alabama courts and is, therefore, procedurally defaulted.

This claim was not presented face-up and squarely to the state courts. *See Picard v. Connor*, 404 U.S. 270, 275 (1971)(federal claim must be fairly presented to the state courts). Certiorari should, therefore, be denied because this claim is procedurally defaulted.

### 2. Magwood's fair-warning claim is without merit.

Magwood is also not entitled to relief on this claim because his fair-warning claim is without merit. Magwood was given fair notice that he could be sentenced to death for the murder of Sheriff Grantham. Ala. Code, §13-11-2 (a) provided, in pertinent part, as follows: "If the jury finds the defendant guilty, it shall fix the punishment at death when the defendant is charged by indictment with any of the following offenses and with aggravation, which must also be averred in the indictment..." It is, therefore, clear from the face of §13-11-2 that the murder of a police officer was a capital offense for which the death penalty could be imposed.

In addition, while Sheriff Grantham's murder itself occurred before the Alabama Supreme Court's holding in *Kyzer*, Magwood's trial (June 2, 1981) and his resentencing (October 2, 1986) occurred after the Alabama Supreme Court issued its March 6, 1981 opinion in *Kyzer.* Thus, Magwood was given fair warning that he could be sentenced to death for the murder of Sheriff Grantham. *See Rose v. Locke*, 423 U.S. 48, 49, (1975) (the fair-warning requirement of

22

the due process clause "prohibits the States from holding an individual 'criminally responsible for conduct which he could not reasonably understand to be proscribed,'" *quoting United States v. Harris*, 347 U.S. 612, 617, (1954)); *Rogers v. Tennessee,* 532 U.S. 451, 459, (2001) (the rationale in *Bouie* rested on "core due process concepts of notice, foreseeability, and, in particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct.[3]"); *Marks v. United States*, 430 U.S. 188, 191-192, (1977) (due process protects against judicial infringement of the "right to fair warning" that certain conduct will give rise to criminal penalties); *United States v. Lanier*, 520 U.S. 259, 267, (1997) ("the touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal."); *McBoyle v. United States*, 283 U.S. 25, 27, (1931) ("Although it is not likely that a criminal will carefully consider the text of the law before he murders or steals, it is reasonable that a fair warning should be given the world in language that the common world will understand, of what the law intends to do if a certain line is passed."). Magwood was given "fair warning" that he could be sentenced to death for the murder of Sheriff Grantham, therefore, his due process rights were not violated.

In addition, this claim is without merit because the Alabama Supreme Court's interpretation of the 1975 capital murder statute was not an

---

[3] At no time was Magwood's conduct innocent in the instant case.

23

unforeseeable construction of that statute. Nor was the Alabama Supreme Court's interpretation of that statute unexpected or indefensible. In *Rogers v. Tennessee*, 532 U.S. 451 (2001) – a case that the district court erroneously refuses to follow – this Court examined the constitutionality of the retroactive application of a judicial decision by the Supreme Court of Tennessee abolishing the common law "year and a day rule." *Id.*, 523 U.S. at 453. In addressing this claim, this Court looked to its holding in *Bouie v. City of Columbia*, 378 U.S. 347 (1964), and stated:

> In *Bouie v. City of Columbia*, we considered the South Carolina Supreme Court's retroactive application of its construction of the State's criminal trespass statute to the petitioners in that case. The statute prohibited "entry upon the lands of another ... after notice from the owner or tenant prohibiting such entry ...." 378 U.S., at 349, n. 1, 84 S.Ct. 1697 (citation and internal quotation marks omitted). The South Carolina court construed the statute to extend to patrons of a drug store who had received no notice prohibiting their entry into the store, but had refused to leave the store when asked. Prior to the court's decision, South Carolina cases construing the statute had uniformly held that conviction under the statute required proof of notice before entry. None of those cases, moreover, had given the "slightest indication that that requirement could be satisfied by proof

24

of the different act of remaining on the land after being told to leave." *Id., at 357, 84 S.Ct. 1697.*

We held that the South Carolina court's retroactive application of its construction to the store patrons violated due process. Reviewing decisions in which we had held criminal statutes "void for vagueness" under the Due Process Clause, we noted that this Court has often recognized the "basic principle that a criminal statute must give fair warning of the conduct that it makes a crime." *Id., at 350, 84 S.Ct. 1697;* see *id., at 350-352, 84 S.Ct. 1697* (discussing, *inter alia, United States v. Harriss,* 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954), *Lanzetta v. New Jersey,* 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939), and *Connally v. General Constr. Co.,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926)). Deprivation of the right to fair warning, we continued, can result both from vague statutory language and from an unforeseeable and retroactive judicial expansion of statutory language that appears narrow and precise on its face. *Bouie v. City of Columbia,* 378 U.S., at 352, 84 S.Ct. 1697. For that reason, we concluded that "[i]f a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,'

25

> [the construction] must not be given retroactive effect." *Id., at 354, 84 S.Ct. 1697* (quoting J. Hall, General Principles of Criminal Law 61 (2d ed.1960)). We found that the South Carolina court's construction of the statute violated this principle because it was so clearly at odds with the statute's plain language and had no support in prior South Carolina decisions. *378 U.S., at 356, 84 S.Ct. 1697*.

*Rogers*, 532 U.S. at 456-458.

This Court then found that the Tennessee court's abolition of the year and a day rule was not unexpected and indefensible because

> [t]here is, in short, nothing to indicate that the Tennessee court's abolition of the rule in petitioner's case represented an exercise of the sort of unfair and arbitrary judicial action against which the Due Process Clause aims to protect. Far from a marked and unpredictable departure from prior precedent, the court's decision was a routine exercise of common law decisionmaking in which the court brought the law into conformity with reason and common sense. It did so by laying to rest an archaic and outdated rule that had never been relied upon as a ground of decision in any reported Tennessee case.

*Rogers*, 532 U.S. at 466-467.

26

The same is true of §13-11-2.  That provision clearly set out that the murder of a police officer while on duty or because of some official or job-related act or performance was a capital offense which could be punished by death.  Section 13-11-2 (a) provided, in pertinent part, as follows:  "If the jury finds the defendant guilty, it shall fix the punishment at death when the defendant is charged by indictment with any of the following offenses and with aggravation, which must also be averred in the indictment...."  It is, therefore, clear from the face of §13-11-2 that the murder of a police officer was a capital offense for which the death penalty could be imposed.

This is exactly what the Alabama Supreme Court found in *Ex parte Kyzer*, 399 So. 2d 330 (Ala. 1981).  The Alabama Supreme Court's finding that the aggravation averred in the indictment was all the aggravation needed to impose the death penalty is not unexpected or indefensible.   Instead, it is completely foreseeable since the §13-11-2 (5) capital offense did not have a corresponding aggravating circumstance but was clearly a capital offense where death could be imposed.   The Alabama Supreme Court noted in *Kyzer* that an anomaly existed in the 1975 capital murder statute because it set forth fourteen offenses for which the death penalty could be imposed but failed to provide a corresponding aggravating circumstance for all fourteen offenses. *Kyzer*, 399 So. 2d at 334.   After examining the history of the 1975 capital murder statute, the Alabama Supreme Court stated:

> What if the trial judge cannot find the existence of an aggravating circumstance other than the

27

"aggravation" averred in the indictment? Must the trial judge "refuse to accept the death penalty as fixed by the jury?" A literal and technical reading of the statute would answer this inquiry in the affirmative, but to so hold would be completely illogical and would mean the legislature did a completely useless act by creating a capital offense for which the defendant could not ultimately receive the death penalty. Why would the legislature require that "aggravation" be averred in the indictment and authorize the jury to fix the punishment at death, and then not provide a corresponding "aggravating circumstance" for the judge to find, and thereby force the judge at the post conviction hearing to refuse to accept the death penalty fixed by the jury? We can think of no reason why the legislature would intend such a result.

\*\*\*

If, on review, the trial judge could not "weigh the aggravating ... circumstance" which was averred in the indictment, and which was a part of the substantive offense, but which aggravating circumstance was not included in §13-11-6, the sentencing hearing would be a complete and useless endeavor. We cannot assume that the legislature did a useless act. It is apparent that the legislature intended to permit the trial

28

> judge to find the same "aggravated circumstances enumerated in §13-11-2." Code 1975, §13-11-1. We so hold.

*Id.*, at 337-338.

After applying traditional rules of statutory construction, the Alabama Supreme Court found that the legislature intended to punish capitally defendants found guilty of offenses listed in §13-11-2 and stated: "If a defendant is convicted of a capital offense, and the trial judge is authorized to find the same 'aggravation' which was averred in the indictment and which was proved beyond a reasonable doubt before a jury, there can be no violation of any of defendant's rights." *Id.*, at 338-339. The Alabama Supreme Court's construction of the 1975 capital murder statute was not an unforeseeable construction of that statute.

Magwood was given fair warning that he could be sentenced to death for the murder of Sheriff Grantham. In addition, the Alabama Supreme Court's holding in *Kyzer* was not an unforeseeable construction of the Alabama capital murder statute. Certiorari should also be denied because this claim is without merit.

29

## II. This Court Should Decline To Review Magwood's Splitless And Meritless Claim That His Attorney Was Constitutionally Ineffective During The Resentencing Because He Failed To Argue To the Resentencing Court That The Retroactive Application Of *Kyzer* To His Case Was A Violation Of The Due Process Clause.

Magwood contends that the Eleventh Circuit's rejection of his claim that his resentencing counsel was ineffective because he failed to argue to the resentencing court that the retroactive application of *Kyzer* to his case was a violation of due process warrants review by this Court. Certiorari should be denied as to this claim for at least two reasons.

### A. Certiorari Should Be Denied Because The Underlying Issue Is Not Worthy Of Certiorari Review.

Magwood's claim is simply a request for this Court to review the fact-bound determination of the Eleventh Circuit. Magwood does not assert that there is a split in the circuits regarding his ineffective assistance of counsel claim or that this case presents a novel and important question of federal law. Instead, Magwood is asking this Court for nothing more that a review of the factual determination of the Eleventh Circuit. As Supreme Court Rule 10 states, "[a] petition for a writ of certiorari [will] rarely [be] granted when the asserted error consists of erroneous factual findings or the misapplication of a properly stated rule of law." Sup. Ct. R. 10. Because Magwood has failed to articulate a "compelling reason" under Rule 10 for this Court to

30

grant certiorari to review this claim, this Court should deny the writ.

### B. Certiorari Should Be Denied Because This Claim Is Without Merit.

Under *Strickland v. Washington,* 466 U.S. 668 (1984), there are two components of an ineffective assistance of counsel claim. A defendant must prove deficient performance and that he was prejudiced by this deficient performance. The burden is on the habeas petitioner to establish both of these components. *Atkins v. Singletary*, 965 F. 2d 952, 958 (11th Cir. 1992). As the Eleventh Circuit stated: "[W]hether counsel's performance is constitutionally deficient depends upon the totality of the circumstances viewed through a lens shaped by the rules and presumptions set down in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and its progeny." *Waters v. Thomas*, 46 F. 3d 1506, 1511 (11th Cir. 1995).

To prove the first component a defendant must establish that counsel's performance was constitutionally deficient, which means it was "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. In making that determination, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* In addition, the court held that an attorney's strategic choices, made after reasonable investigation, are virtually beyond challenge and that whether an attorney's strategic choices were reasonable may be determined, or substantially influenced, by what he was told by the defendant.

31

*Id.* 466 U.S. at 690-91.   Given the deference that counsel's performance is due, the cases in which the writ is granted are "few and far between." *Chandler v. United States*, 218 F. 3d 1305, 1313 (11th Cir. 2000) (en banc).  The Eleventh Circuit also stated the following in *Grayson v. Thompson*, 257 F. 3d 1194, 1216 (11th Cir. 2001):

> Thus, in order to show that counsel's performance was unreasonable, the petitioner must establish that *no competent counsel would have taken the action that his counsel did take.* (emphasis in original)

"The test for ineffectiveness is not whether counsel could have done more; perfection is not required.  Nor is the test whether the best criminal defense attorneys might have done more.  Instead, the test is ... whether what they did was within the 'wide range of professional assistance.'" *Id.* at 1313 n.12, *quoting Waters*, 46 F. 3d at 1518.

A defendant must also establish the prejudice requirement, which requires that he prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.   "The appropriate analysis of the prejudice prong of *Strickland* requires an evaluation of 'the totality of the available mitigation evidence – both that adduced at trial, and the evidence adduced in the habeas proceeding – in reweighing it against the evidence in aggravation." *Bottoson v. Moore*, 234 F. 3d 526, 534 (11th Cir. 2000), *quoting Williams v. Taylor*, 529 U.S. 362, 397-398 (2000).   To establish prejudice sufficient to sustain a claim of ineffective

32

assistance of counsel at sentencing, "[i]t is not enough for the defendant to show that the error had some conceivable effect on the outcome of the proceeding." *Tompkins v. Moore*, 193 F. 3d 1327, 1336 (11th Cir. 1999). Instead, *Strickland* makes it clear that "the question is whether there is a reasonable probability that, absent the errors, the sentencer – including an appellate court, to the extent it reweighs the evidence – would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland*, 466 U.S. at 695.

The Eleventh Circuit properly determined that counsel's performance was not deficient for failing to argue to the resentencing court that the retroactive application of *Kyzer* to his case was a violation of due process. The Eleventh Circuit found as follows concerning this claim: "We are not prepared to require counsel to raise an argument that has already been decided adversely to his client's position by a state's highest court in order to avoid being found ineffective." *Magwood*, 555 F. 3d at 978. Counsel, in fact, correctly informed the resentencing court that it could resentence Magwood to death without finding an aggravating circumstance in former 1975 Ala. Code §13-11-6. This statement by counsel was, in fact, a correct statement of the law under the Alabama Supreme Court's holding in *Ex parte Kyzer*, 399 So. 2d 330 (Ala. 1981). In fact, this was the same aggravation found by the trial court when it originally sentenced Magwood to death. *Magwood v. State*, 462 So. 2d 918, 920, 928 (Ala. Crim. App. 1982). Counsel had every reason to believe that the Alabama Supreme Court meant what it said about state law – and that federal courts

33

would respect the state court's decision on a purely state law question. The Eleventh Circuit, therefore, properly determined that counsel's performance was not deficient because he accurately informed the trial court of the law.

In addition, Magwood was not prejudiced by counsel's performance at his resentencing. In order to prove prejudice, this Court made it clear in *Strickland* that "the question of whether there is a reasonable probability that, absent the errors, the sentencer – including an appellate court, to the extent, it reweighs the evidence – would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland*, 466 U.S. at 695. There is no evidence in the instant case that had resentencing counsel made an objection based on a due process claim that the sentencer in this case, including the Alabama appellate courts, would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. This is especially true where, as set forth above, there was no due process violation because Magwood was given fair notice that he could be sentenced to death for the murder of Sheriff Grantham. In addition, the Alabama Supreme Court's interpretation of the 1975 capital murder statute was not an unexpected, indefensible or unforeseeable construction of §13-11-2. There is, therefore, not a reasonable probability that if counsel had challenged the death sentence based on Magwood's current due process challenge that the resentencing court would not have resentenced him to death. This Court should, therefore, deny the writ.

34

## CONCLUSION

For the foregoing reasons, this Court should deny Magwood's petition for writ of certiorari.

Respectfully submitted,

Troy King
*Alabama Attorney General*

Corey L. Maze
*Solicitor General*

Beth Jackson Hughes*
*Assistant Attorney General*

*Counsel of Record
STATE OF ALABAMA
Office of Attorney General
500 Dexter Avenue
Montgomery, AL 36130
(334) 242-7300

October 8, 2009