Westlaw.

Page 1

--- S.Ct. ----, 2010 WL 2346549 (U.S.), 78 USLW 4555, 10 Cal. Daily Op. Serv. 7396, 2010 Daily Journal D.A.R. 8838
**(Cite as: 2010 WL 2346549 (U.S.))**

**H**Only the Westlaw citation is currently available.

Supreme Court of the United States
Albert **HOLLAND**, Petitioner,
v.
FLORIDA.
**No. 09-5327.**

Argued March 1, 2010.
Decided June 14, 2010.

**Background:** Following affirmance of his first-degree murder conviction and death sentence, 773 So.2d 1065, affirmance of the denial of his motion for state post-conviction relief, and denial of his state habeas petition, Florida death row inmate sought federal habeas relief. The United States District Court for the Southern District of Florida, No. 06-20182-CV-PAS,Patricia A. Seitz, J., dismissed petition as untimely, and certificate of appealability (COA) was granted. The Eleventh Circuit Court of Appeals, 539 F.3d 1334, affirmed. Certiorari was granted.

**Holdings:**The Supreme Court, Justice Breyer, held that:
(1) one-year statute of limitations on petitions for federal habeas relief by state prisoners is subject to equitable tolling, and
(2) habeas corpus proceeding had to be remanded to the Court of Appeals to determine whether conduct on part of state prisoner's attorney, in not filing federal habeas petition in timely fashion despite prisoner's many admonitions on importance of doing so, in apparently not doing the research necessary to ascertain filing deadline despite fact that prisoner's letters went so far as to identify applicable legal rules, in failing to provide prisoner with information that he had requested so that he could monitor case, and in failing to communicate with prisoner over period of years, rose to level of "extraordinary circumstance," of kind sufficient to permit equitable tolling of one-year statute.

Reversed and remanded.

Justice Alito, concurred in part and concurred in judgment and filed opinion.

Justice Scalia dissented and filed opinion, in which Justice Thomas joined in part.

West Headnotes

**[1] Habeas Corpus 197 ⚷603.13**

197 Habeas Corpus
   197III Jurisdiction, Proceedings, and Relief
     197III(A) In General
      197k603 Limitations, Laches or Delay
       197k603.13 k. Equitable Tolling in General. Most Cited Cases
One-year statute of limitations on petitions for federal habeas relief by state prisoners is subject to equitable tolling in appropriate cases. 28 U.S.C.A. § 2244(d).

**[2] Habeas Corpus 197 ⚷603.4**

197 Habeas Corpus
   197III Jurisdiction, Proceedings, and Relief
     197III(A) In General
      197k603 Limitations, Laches or Delay
       197k603.4 k. Bar of Limitations in General. Most Cited Cases
One-year statute of limitations on petitions for federal habeas relief by state prisoners is not jurisdictional, and does not set forth an inflexible rule requiring dismissal whenever the one-year clock has run. 28 U.S.C.A. § 2244(d).

**[3] Limitation of Actions 241 ⚷104.5**

241 Limitation of Actions
   241II Computation of Period of Limitation
     241II(G) Pendency of Legal Proceedings, Injunction, Stay, or War
      241k104.5 k. Suspension or Stay in General; Equitable Tolling. Most Cited Cases

**Limitation of Actions 241 ⚷195(1)**

241 Limitation of Actions
   241V Pleading, Evidence, Trial, and Review
     241k194 Evidence

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2010 WL 2346549 (U.S.), 78 USLW 4555, 10 Cal. Daily Op. Serv. 7396, 2010 Daily Journal D.A.R. 8838
**(Cite as: 2010 WL 2346549 (U.S.))**

241k195 Presumptions and Burden of Proof
241k195(1) k. Presumptions in General.
Most Cited Cases
Nonjurisdictional federal statute of limitations is normally subject to rebuttable presumption in favor of equitable tolling.

**[4] Habeas Corpus 197 ⚷204**

197 Habeas Corpus
197I In General
197I(A) In General
197I(A)1 Nature of Remedy in General
197k204 k. Equitable Considerations.
Most Cited Cases
Equitable principles have traditionally governed the substantive law of habeas corpus, and statute will not be construed to displace courts' traditional equitable authority absent the clearest command.

**[5] Habeas Corpus 197 ⚷603.9**

197 Habeas Corpus
197III Jurisdiction, Proceedings, and Relief
197III(A) In General
197k603 Limitations, Laches or Delay
197k603.9 k. Pursuit of Other Remedies.
Most Cited Cases

**Habeas Corpus 197 ⚷603.13**

197 Habeas Corpus
197III Jurisdiction, Proceedings, and Relief
197III(A) In General
197k603 Limitations, Laches or Delay
197k603.13 k. Equitable Tolling in General. Most Cited Cases
It was not unusual, given that state prisoner cannot bring federal habeas claim without first exhausting state remedies, that Congress would expressly provide, in connection with one-year statute of limitations upon petitions for federal habeas relief, for tolling during state collateral review proceedings, without addressing whether one-year period might be tolled for other reasons, and mere fact that Congress expressly provided for tolling during state collateral review proceedings did not, under interpretive maxim of inclusio unius est exclusio alterius, suggest that Congress meant to preclude other, unnamed types of tolling, such as equitable tolling, of one-year limita-

tions period. 28 U.S.C.A. § 2244(d).

**[6] Habeas Corpus 197 ⚷603.2**

197 Habeas Corpus
197III Jurisdiction, Proceedings, and Relief
197III(A) In General
197k603 Limitations, Laches or Delay
197k603.2 k. Laches or Delay in General. Most Cited Cases
While Antiterrorism and Effective Death Penalty Act (AEDPA) seeks to eliminate delays in federal habeas review process, it does not seek to eliminate every possible delay at all costs. 28 U.S.C.A. § 2244(d).

**[7] Habeas Corpus 197 ⚷603.2**

197 Habeas Corpus
197III Jurisdiction, Proceedings, and Relief
197III(A) In General
197k603 Limitations, Laches or Delay
197k603.2 k. Laches or Delay in General. Most Cited Cases

**Habeas Corpus 197 ⚷603.13**

197 Habeas Corpus
197III Jurisdiction, Proceedings, and Relief
197III(A) In General
197k603 Limitations, Laches or Delay
197k603.13 k. Equitable Tolling in General. Most Cited Cases
While Antiterrorism and Effective Death Penalty Act (AEDPA) seeks to eliminate delays in federal habeas review process, it seeks to do so without undermining basic habeas corpus principles, and while seeking to harmonize new statute with prior law, under which petition's timeliness was always determined under equitable principles. 28 U.S.C.A. § 2244(d).

**[8] Habeas Corpus 197 ⚷603.13**

197 Habeas Corpus
197III Jurisdiction, Proceedings, and Relief
197III(A) In General
197k603 Limitations, Laches or Delay
197k603.13 k. Equitable Tolling in General. Most Cited Cases
State prisoner is entitled to equitable tolling of one-year statute of limitations on petitions for federal

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2010 WL 2346549 (U.S.), 78 USLW 4555, 10 Cal. Daily Op. Serv. 7396, 2010 Daily Journal D.A.R. 8838
**(Cite as: 2010 WL 2346549 (U.S.))**

habeas relief only if he shows: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing of petition. 28 U.S.C.A. § 2244(d).

**[9] Courts 106 ⚷89**

106 Courts
    106II Establishment, Organization, and Procedure
       106II(G) Rules of Decision
         106k88 Previous Decisions as Controlling or as Precedents
           106k89 k. In General. Most Cited Cases

**Equity 150 ⚷1**

150 Equity
    150I Jurisdiction, Principles, and Maxims
       150I(A) Nature, Grounds, Subjects, and Extent of Jurisdiction in General
         150k1 k. Nature and Source of Jurisdiction. Most Cited Cases
While courts of equity must be governed by rules and precedents no less than courts of law, the exercise of court's equity powers must often be done on case-by-case basis.

**[10] Equity 150 ⚷3**

150 Equity
    150I Jurisdiction, Principles, and Maxims
       150I(A) Nature, Grounds, Subjects, and Extent of Jurisdiction in General
         150k3 k. Grounds of Jurisdiction in General. Most Cited Cases
Flexibility inherent in equitable procedure enables courts to meet new situations that demand equitable intervention, and to accord all relief necessary to correct particular injustices.

**[11] Equity 150 ⚷1**

150 Equity
    150I Jurisdiction, Principles, and Maxims
       150I(A) Nature, Grounds, Subjects, and Extent of Jurisdiction in General
         150k1 k. Nature and Source of Jurisdiction. Most Cited Cases

**Equity 150 ⚷62**

150 Equity
    150I Jurisdiction, Principles, and Maxims
       150I(C) Principles and Maxims of Equity
         150k62 k. Equity Follows the Law. Most Cited Cases
While courts of equity exercise judgment in light of prior precedent, they do so with awareness of fact that specific circumstances, often hard to predict in advance, may warrant special treatment in appropriate case.

**[12] Habeas Corpus 197 ⚷603.16**

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
       197III(A) In General
         197k603 Limitations, Laches or Delay
           197k603.16 k. Access and Assistance. Most Cited Cases
While circumstances of case must be "extraordinary" in order to warrant equitable tolling of one-year statute of limitations on petition for federal habeas relief by state prisoner, state prisoner's attorney need not exhibit any bad faith, dishonesty, divided loyalty, mental impairment or the like in order for attorney's unprofessional conduct to rise to level of such an "extraordinary circumstance." 28 U.S.C.A. § 2244(d).

**[13] Habeas Corpus 197 ⚷863**

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
       197III(D) Review
         197III(D)3 Determination and Disposition
           197k862 Remand
             197k863 k. Particular Issues and Problems. Most Cited Cases
Habeas corpus proceeding had to be remanded to the Court of Appeals to determine whether conduct on part of state prisoner's attorney, in not filing federal habeas petition in timely fashion despite prisoner's many admonitions on importance of doing so, in apparently not doing the research necessary to ascertain filing deadline despite fact that prisoner's letters went so far as to identify applicable legal rules, in failing to provide prisoner with information that he had requested so that he could monitor case, and in failing to communicate with prisoner over period of years, rose to level of "extraordinary circumstance," of kind suf-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2010 WL 2346549 (U.S.), 78 USLW 4555, 10 Cal. Daily Op. Serv. 7396, 2010 Daily Journal D.A.R. 8838
**(Cite as: 2010 WL 2346549 (U.S.))**

ficient to permit equitable tolling of one-year period of limitations; as result of the Court of Appeals' application of overly rigid per se approach and district court's decision of case on lack of due diligence theory no longer supported by state, no court had yet conducted detailed examination of facts of state prisoner's case to determine whether attorney's conduct rose to level of "extraordinary circumstance." 28 U.S.C.A. § 2244(d).

**[14] Habeas Corpus 197 🔑603.17**

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
        197III(A) In General
            197k603 Limitations, Laches or Delay
                197k603.17 k. Diligence. Most Cited Cases
Diligence required for equitable tolling of one-year statute of limitations on petition for federal habeas relief by state prisoner is reasonable diligence, not maximum feasible diligence. 28 U.S.C.A. § 2244(d).

*Syllabus* [FN*]

    FN* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States v. Detroit Timber & Lumber Co.,* 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

**\*1** Petitioner Holland was convicted of first-degree murder and sentenced to death in Florida state court. After the State Supreme Court affirmed on direct appeal and denied collateral relief, Holland filed a *pro se* federal habeas corpus petition, which was approximately five weeks late under the 1-year statute of limitations set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2244(d). The record facts reveal, *inter alia,* that Holland's court-appointed attorney, Bradley Collins, had failed to file a timely federal petition, despite Holland's many letters emphasizing the importance of doing so; that Collins apparently did not do the research necessary to find out the proper filing date, despite the fact that Holland had identified the applicable legal rules for him; that Collins failed to inform Holland in a timely manner that the State Supreme Court had decided his case, despite Holland's many pleas for that information; and that Collins failed to communicate with Holland over a period of years,

despite Holland's pleas for responses to his letters. Meanwhile, Holland repeatedly requested that the state courts and the Florida bar remove Collins from his case. Based on these and other record facts, Holland asked the Federal District Court to toll the AEDPA limitations period for equitable reasons. It refused, holding that he had not demonstrated the due diligence necessary to invoke equitable tolling. Affirming, the Eleventh Circuit held that, regardless of diligence, Holland's case did not constitute "extraordinary circumstances." Specifically, it held that when a petitioner seeks to excuse a late filing based on his attorney's unprofessional conduct, that conduct, even if grossly negligent, cannot justify equitable tolling absent proof of bad faith, dishonesty, divided loyalty, mental impairment, or the like.

*Held*:

1. Section 2244(d), the AEDPA statute of limitations, is subject to equitable tolling in appropriate cases. Pp. ---- - ----.

(a) Several considerations support the Court's holding. First, because AEDPA's "statute of limitations defense ... is not 'jurisdictional,' " *Day v. McDonough,* 547 U.S. 198, 205, 213, 126 S.Ct. 1675, 164 L.Ed.2d 376, it is subject to a "rebuttable presumption" in *favor* "of equitable tolling," *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 95-96, 111 S.Ct. 453, 112 L.Ed.2d 435. That presumption's strength is reinforced here by the fact that "equitable principles" have traditionally "governed" substantive habeas law. *Munaf v. Geren,* 553 U.S. 674, ----, 128 S.Ct. 2207, 171 L.Ed.2d 1, and the fact that Congress enacted AEDPA after *Irwin* and therefore was likely aware that courts, when interpreting AEDPA's timing provisions, would apply the presumption, see, *e.g., Merck & Co. v. Reynolds,* 559 U.S. ----, ----, 130 S.Ct. 1784. Second, § 2244(d) differs significantly from the statutes at issue in *United States v. Brockamp,* 519 U.S. 347, 350-352, 117 S.Ct. 849, 136 L.Ed.2d 818, and *United States v. Beggerly,* 524 U.S. 38, 49, 118 S.Ct. 1862, 141 L.Ed.2d 32, in which the Court held that *Irwin's* presumption had been overcome. For example, unlike the subject matters at issue in those cases-tax collection and land claims-AEDPA's subject matter, habeas corpus, pertains to an area of the law where equity finds a comfortable home. See *Munaf, supra,* at ----, 128 S.Ct. 2207. *Brockamp, supra,* at 352, 117 S.Ct. 849, distinguished. Moreover, AEDPA's limitations

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2010 WL 2346549 (U.S.), 78 USLW 4555, 10 Cal. Daily Op. Serv. 7396, 2010 Daily Journal D.A.R. 8838
**(Cite as: 2010 WL 2346549 (U.S.))**

period is neither unusually generous nor unusually complex. Finally, the Court disagrees with respondent's argument that equitable tolling undermines AEDPA's basic purpose of eliminating delays in the federal habeas review process, see, *e.g., Day, supra,* at 205-206, 126 S.Ct. 1675. AEDPA seeks to do so without undermining basic habeas corpus principles and by harmonizing the statute with prior law, under which a petition's timeliness was always determined under equitable principles. See, *e.g., Slack v. McDaniel,* 529 U.S. 473, 483, 120 S.Ct. 1595, 146 L.Ed.2d 542. Such harmonization, along with the Great Writ's importance as the only writ explicitly protected by the Constitution, counsels hesitancy before interpreting AEDPA's silence on equitable tolling as congressional intent to close courthouse doors that a strong equitable claim would keep open. Pp. ---- - ----.

(b) The Eleventh Circuit's *per se* standard is too rigid. A "petitioner" is "entitled to equitable tolling" if he shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing. *Pace v. DiGuglielmo,* 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669. Such "extraordinary circumstances" are not limited to those that satisfy the Eleventh Circuit's test. Courts must often "exercise [their] equity powers ... on a case-by-case basis," *Baggett v. Bullitt,* 377 U.S. 360, 375, 84 S.Ct. 1316, 12 L.Ed.2d 377, demonstrating "flexibility" and avoiding "mechanical rules," *Holmberg v. Armbrecht,* 327 U.S. 392, 396, 66 S.Ct. 582, 90 L.Ed. 743, in order to "relieve hardships ... aris[ing] from a hard and fast adherence" to more absolute legal rules, *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238, 248, 64 S.Ct. 997, 88 L.Ed. 1250. The Court's cases recognize that equity courts can and do draw upon decisions made in other similar cases for guidance, exercising judgment in light of precedent, but with awareness of the fact that specific circumstances, often hard to predict, could warrant special treatment in an appropriate case. *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640, distinguished. No pre-existing rule of law or precedent demands the Eleventh Circuit's rule. That rule is difficult to reconcile with more general equitable principles in that it fails to recognize that, at least sometimes, an attorney's unprofessional conduct can be so egregious as to create an extraordinary circumstance warranting equitable tolling, as several other federal courts have specifically held. Although equitable tolling is not warranted for "a garden variety claim of excusable neglect," *Irwin,*

*supra,* at 96, 111 S.Ct. 453, this case presents far more serious instances of attorney misconduct than that. Pp. ---- - ----.

**\*2** 2. While the record facts suggest that this case may well present "extraordinary" circumstances, the Court does not state its conclusion absolutely because more proceedings may be necessary. The District Court incorrectly rested its ruling not on a lack of such circumstances, but on a lack of diligence. Here, Holland diligently pursued his rights by writing Collins numerous letters seeking crucial information and providing direction, by repeatedly requesting that Collins be removed from his case, and by filing his own *pro se* habeas petition on the day he learned his AEDPA filing period had expired. Because the District Court erroneously concluded that Holland was not diligent, and because the Court of Appeals erroneously relied on an overly rigid *per se* approach, no lower court has yet considered whether the facts of this case indeed constitute extraordinary circumstances sufficient to warrant equitable tolling. The Eleventh Circuit may determine on remand whether such tolling is appropriate, or whether an evidentiary hearing and other proceedings might indicate that the State should prevail. Pp. ---- - ----.

 539 F.3d 1334, reversed and remanded.

**\*3** BREYER, J., delivered the opinion of the Court, in which ROBERTS, C.J., and STEVENS, KENNEDY, GINSBURG, and SOTOMAYOR, JJ., joined. ALITO, J., filed an opinion concurring in part and concurring in the judgment. SCALIA, J., filed a dissenting opinion, in which THOMAS, J., joined as to all but Part I.
Todd G. Scher, Miami Beach, FL, appointed by this Court, for petitioner.

Solicitor General Scott D. Makar, Tallahassee, FL, for respondent.

Carolyn M. Snurkowski, Assistant Deputy Attorney General, Candance M. Sabella, Chief, Assistant Attorney General, Sandra S. Jaggard, Lisa-Marie Lerner, Assistant Attorneys General, Tallahassee, FL, Bill McCollum, Attorney General of Florida, Scott D. Makar, Solicitor General, Louis F. Hubener, Chief Deputy Solicitor General, Counsel of Record, Craig D. Feiser, Timothy D. Osterhaus, Courtney Brewer, Ronald A. Lathan, Deputy Solicitors General, Talla-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2010 WL 2346549 (U.S.), 78 USLW 4555, 10 Cal. Daily Op. Serv. 7396, 2010 Daily Journal D.A.R. 8838
**(Cite as: 2010 WL 2346549 (U.S.))**

hassee, FL, for State of Florida.

Todd G. Scher (Counsel of Record), Law Office of Todd G. Scher, P.L., Miami Beach, FL, for Petitioner.

For U.S. Supreme Court Briefs, see:2009 WL 5133492 (Pet.Brief)2010 WL 304276 (Resp.Brief)2010 WL 636033 (Reply.Brief)

Justice BREYER delivered the opinion of the Court.

We here decide that the timeliness provision in the federal habeas corpus statute is subject to equitable tolling. See Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2244(d). We also consider its application in this case. In the Court of Appeals' view, when a petitioner seeks to excuse a late filing on the basis of his attorney's unprofessional conduct, that conduct, even if it is "negligent" or "grossly negligent," cannot "rise to the level of egregious attorney misconduct" that would warrant equitable tolling unless the petitioner offers "proof of bad faith, dishonesty, divided loyalty, mental impairment or so forth." 539 F.3d 1334, 1339 (C.A.11 2008) *(per curiam).* In our view, this standard is too rigid. See *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990); see also *Lawrence v. Florida,* 549 U.S. 327, 336, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007). We therefore reverse the judgment of the Court of Appeals and remand for further proceedings.

I

AEDPA states that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." § 2244(d)(1). It also says that "[t]he time during which a properly filed application for State post-conviction ... review" is "pending shall not be counted" against the 1-year period. § 2244(d)(2).

On January 19, 2006, Albert Holland filed a *pro se* habeas corpus petition in the Federal District Court for the Southern District of Florida. Both Holland (the petitioner) and the State of Florida (the respondent) agree that, unless equitably tolled, the statutory limitations period applicable to Holland's petition expired approximately five weeks before the petition was filed. See Brief for Respondent 9, and n. 7; Brief for

Petitioner 5, and n. 4. Holland asked the District Court to toll the limitations period for equitable reasons. We shall set forth in some detail the record facts that underlie Holland's claim.

A

**\*4** In 1997, Holland was convicted of first-degree murder and sentenced to death. The Florida Supreme Court affirmed that judgment. *Holland v. State,* 773 So.2d 1065 (Fla.2000). On *October 1, 2001,* this Court denied Holland's petition for certiorari. 534 U.S. 834, 122 S.Ct. 83, 151 L.Ed.2d 46. And on that date-the date that our denial of the petition ended further direct review of Holland's conviction-the 1-year AEDPA limitations clock began to run. See 28 U.S.C. § 2244(d)(1)(A); *Jimenez v. Quarterman,* 555 U.S. ----, ----, 129 S.Ct. 681, 687-87, 172 L.Ed.2d 475 (2009).

Thirty-seven days later, on *November 7, 2001,* Florida appointed attorney Bradley Collins to represent Holland in all state and federal postconviction proceedings. Cf. Fla. Stat. §§ 27.710, 27.711(2) (2007). By *September 19, 2002*-316 days after his appointment and 12 days before the 1-year AEDPA limitations period expired-Collins, acting on Holland's behalf, filed a motion for postconviction relief in the state trial court. Cf. Brief for Respondent 9, n. 7. That filing automatically stopped the running of the AEDPA limitations period, § 2244(d)(2), with, as we have said, 12 days left on the clock.

For the next three years, Holland's petition remained pending in the state courts. During that time, Holland wrote Collins letters asking him to make certain that all of his claims would be preserved for any subsequent federal habeas corpus review. Collins wrote back, stating, "I would like to reassure you that we are aware of state-time limitations and federal exhaustion requirements." App. 55. He also said that he would "presen[t] ... to the ... federal courts" any of Holland's claims that the state courts denied. *Ibid.* In a second letter Collins added, "should your Motion for Post-Conviction Relief be denied" by the state courts, "your state habeas corpus claims will then be ripe for presentation in a petition for writ of habeas corpus in federal court." *Id.,* at 61.

In mid-May 2003 the state trial court denied Holland relief, and Collins appealed that denial to the Florida Supreme Court. Almost two years later, in February

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2010 WL 2346549 (U.S.), 78 USLW 4555, 10 Cal. Daily Op. Serv. 7396, 2010 Daily Journal D.A.R. 8838

**(Cite as: 2010 WL 2346549 (U.S.))**

2005, the Florida Supreme Court heard oral argument in the case. See 539 F.3d, at 1337. But during that 2-year period, relations between Collins and Holland began to break down. Indeed, between April 2003 and January 2006, Collins communicated with Holland only three times-each time by letter. See No. 1:06-cv-20182-PAS (SD Fla., Apr. 27, 2007), p. 7, n. 6 (hereinafter District Court opinion), App. 91, n. 6.

Holland, unhappy with this lack of communication, twice wrote to the Florida Supreme Court, asking it to remove Collins from his case. In the second letter, filed on June 17, 2004, he said that he and Collins had experienced "a complete breakdown in communication." App. 160. Holland informed the court that Collins had "not kept [him] updated on the status of [his] capital case" and that Holland had "not seen or spoken to" Collins "since April 2003." *Id.,* at 150. He wrote, "Mr. Collins has abandoned [me]" and said, "[I have] no idea what is going on with [my] capital case on appeal." *Id.,* at 152. He added that "Collins has never made any reasonable effort to establish any relationship of trust or confidence with [me]," *id.,* at 155, and stated that he "does not trust" or have "any confidence in Mr. Collin's ability to represent [him]," *id.,* at 152. Holland concluded by asking that Collins be "dismissed (removed) off his capital case" or that he be given a hearing in order to demonstrate Collins' deficiencies. *Id.,* at 155, 161. The State responded that Holland could not file any *pro se* papers with the court while he was represented by counsel, including papers seeking new counsel. *Id.,* at 42-45. The Florida Supreme Court agreed and denied Holland's requests. *Id.,* at 46.

During this same period Holland wrote various letters to the Clerk of the Florida Supreme Court. In the last of these he wrote, "[I]f I had a competent, conflict-free, postconviction, appellate attorney representing me, I would not have to write you this letter. I'm not trying to get on your nerves. I just would like to know *exactly* what is happening with my case on appeal to the Supreme Court of Florida." *Id.,* at 147. During that same time period, Holland also filed a complaint against Collins with the Florida Bar Association, but the complaint was denied. *Id.,* at 65-67.

**\*5** Collins argued Holland's appeal before the Florida Supreme Court on February 10, 2005. 539 F.3d, at 1337. Shortly thereafter, Holland wrote to Collins emphasizing the importance of filing a timely petition for habeas corpus in federal court once the Florida Supreme Court issued its ruling. Specifically, on March 3, 2005, Holland wrote:

"Dear Mr. Collins, P. A.:

"How are you? Fine I hope.

"I write this letter to ask that you please write me back, as soon as possible to let me know what the status of my case is on appeal to the Supreme Court of Florida.

"If the Florida Supreme Court denies my [post-conviction] and State Habeas Corpus appeals, *please file my* 28 U.S.C. 2254 *writ of Habeas Corpus petition, before my deadline to file it runs out (expires).*

"Thank you very much.

"Please have a nice day." App. 210 (emphasis added).

Collins did not answer this letter.

On June 15, 2005, Holland wrote again:

"Dear Mr. Collins:

"How are you? Fine I hope.

"On March 3, 2005 I wrote you a letter, asking that you let me know the status of my case on appeal to the Supreme Court of Florida.

"Also, *have you begun preparing my* 28 U.S.C. § 2254 *writ of Habeas Corpus petition? Please let me know, as soon as possible.*

*"Thank you." Id.,* at 212 (emphasis added).

But again, Collins did not reply.

Five months later, in November 2005, the Florida Supreme Court affirmed the lower court decision denying Holland relief. *Holland v. State,* 916 So.2d 750 *(per curiam).* Three weeks after that, on *December 1, 2005,* the court issued its mandate, making its

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2010 WL 2346549 (U.S.), 78 USLW 4555, 10 Cal. Daily Op. Serv. 7396, 2010 Daily Journal D.A.R. 8838

**(Cite as: 2010 WL 2346549 (U.S.))**

decision final. 539 F.3d, at 1337. At that point, the AEDPA federal habeas clock again began to tick-with 12 days left on the 1-year meter. See *Coates v. Byrd,* 211 F.3d 1225 (C.A.11 2000) *(per curiam)* (AEDPA clock restarts when state court completes postconviction review); *Lawrence,* 549 U.S. 327, 127 S.Ct. 1079 (same). Twelve days later, on *December 13, 2005,* Holland's AEDPA time limit expired.

B

Four weeks after the AEDPA time limit expired, on January 9, 2006, Holland, still unaware of the Florida Supreme Court ruling issued in his case two months earlier, wrote Collins a third letter:

"Dear Mr. Bradley M. Collins:

**\*6** "How are you? Fine I hope.

"I write this letter to ask that you please let me know the status of my appeals before the Supreme Court of Florida. Have my appeals been decided yet?

"Please send me the [necessary information] ... so that I can determine when the deadline will be to file my 28 U.S.C. Rule 2254 Federal Habeas Corpus Petition, in accordance with all United States Supreme Court and Eleventh Circuit case law and applicable 'Antiterrorism and Effective Death Penalty Act,' if my appeals before the Supreme Court of Florida are denied.

"Please be advised that I want to preserve my privilege to federal review of all of my state convictions and sentences.

"Mr. Collins, would you please also inform me as to which United States District Court my 28 U.S.C. Rule 2254 Federal Habeas Corpus Petition will have to be timely filed in and that court's address?

"Thank you very much." App. 214.

Collins did not answer.

Nine days later, on January 18, 2006, Holland, working in the prison library, learned for the first time that the Florida Supreme Court had issued a final deter-

mination in his case and that its mandate had issued-five weeks prior. 539 F.3d, at 1337. He immediately wrote out his own *pro se* federal habeas petition and mailed it to the Federal District Court for the Southern District of Florida the next day. *Ibid.* The petition begins by stating,

"Comes now Albert R. Holland, Jr., a Florida death row inmate and states that court appointed counsel has failed to undertake timely action to seek Federal Review in my case by filing a 28 U.S.C. Rule 2254 Petition for Writ of Habeas Corpus on my behalf." App. 181.

It then describes the various constitutional claims that Holland hoped to assert in federal court.

The same day that he mailed that petition, Holland received a letter from Collins telling him that Collins intended to file a petition for certiorari in this Court from the State Supreme Court's most recent ruling. Holland answered immediately:

"Dear Mr. Bradley M. Collins:

"Since recently, the Supreme Court of Florida has denied my [postconviction] and state writ of Habeas Corpus Petition. I am left to understand that you are planning to seek certiorari on these matters.

"It's my understanding that the AEDPA time limitations is not tolled during discretionary appellate reviews, such as certiorari applications resulting from denial of state post conviction proceedings.

"Therefore, I advise you *not* to file certiorari if doing so affects or jeopardizes my one year *grace* period as prescribed by the AEDPA.

"Thank you very much." *Id.,* at 216 (some emphasis deleted).

Holland was right about the law. See *Coates, supra,* at 1226-1227 (AEDPA not tolled during pendency of petition for certiorari from judgment denying state postconviction review); accord, *Lawrence v. Florida,* 421 F.3d 1221, 1225 (C.A.11 2005), aff'd, 549 U.S. 327, at 331-336, 127 S.Ct. 1079, 166 L.Ed.2d 924.

On January 26, 2006, Holland tried to call Collins

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2010 WL 2346549 (U.S.), 78 USLW 4555, 10 Cal. Daily Op. Serv. 7396, 2010 Daily Journal D.A.R. 8838
**(Cite as: 2010 WL 2346549 (U.S.))**

from prison. But he called collect and Collins' office would not accept the call. App. 218. Five days later, Collins wrote to Holland and told him for the very first time that, as Collins understood AEDPA law, the limitations period applicable to Holland's federal habeas application had in fact expired in 2000-*before* Collins had begun to represent Holland. Specifically, Collins wrote:

**\*7** "Dear Mr. Holland:

"I am in receipt of your letter dated January 20, 2006 concerning operation of AEDPA time limitations. One hurdle in our upcoming efforts at obtaining federal habeas corpus relief will be that the one-year statutory time frame for filing such a petition began to run after the case was affirmed on October 5, 2000 [when your] Judgment and Sentence ... were affirmed by the Florida Supreme Court. However, it was not until November 7, 2001, that I received the Order appointing me to the case. As you can see, *I was appointed about a year after your case became final ....*

"[T]he AEDPA time period [thus] had run before my appointment and therefore before your [postconviction] motion was filed." *Id.*, at 78-79 (emphasis added).

Collins was wrong about the law. As we have said, Holland's 1-year limitations period did not begin to run until *this* Court denied Holland's petition for certiorari from the state courts' denial of relief on direct review, which occurred on October 1, 2001. See 28 U.S.C. § 2244(d)(1)(A); *Jimenez, 555 U.S., at ----, 129 S.Ct., at 686-87; Bond v. Moore, 309 F.3d 770, 774 (C.A.11 2002).* And when Collins was appointed (on November 7, 2001) the AEDPA clock therefore had 328 days left to go.

Holland immediately wrote back to Collins, pointing this out.

"Dear Mr. Collins:

"I received your letter dated January 31, 2006. You are incorrect in stating that 'the one-year statutory time frame for filing my 2254 petition began to run after my case was affirmed on October 5, 2000, by the Florida Supreme Court.' As stated on page three of [the recently filed] Petition for a writ of certiorari, October 1, 2001 is when the United States Supreme Court denied my initial petition for writ of certiorari and that is when my case became final. That meant that the time would be tolled once I filed my [postconviction] motion in the trial court.

"Also, Mr. Collins you never told me that my time ran out (expired). I told you to timely file my 28 U.S.C. 2254 Habeas Corpus Petition before the deadline, so that I would not be time-barred.

"You never informed me of oral arguments or of the Supreme Court of Florida's November 10, 2005 decision denying my postconviction appeals. You never kept me informed about the status of my case, although you told me that you would immediately inform me of the court's decision as soon as you heard anything.

"Mr. Collins, I filed a motion on January 19, 2006 [in federal court] to preserve my rights, because I did not want to be time-barred. Have you heard anything about the aforesaid motion? Do you know what the status of aforesaid motion is?

"Mr. Collins, please file my 2254 Habeas Petition immediately. Please do not wait any longer, even though it will be untimely filed at least it will be filed without wasting anymore time. (valuable time).

**\*8** "Again, please file my 2254 Petition at once.

"Your letter is the first time that you have ever mentioned anything to me about my time had run out, before you were appointed to represent me, and that my one-year started to run on October 5, 2000.

"Please find out the status of my motion that I filed on January 19, 2006 and let me know.

"Thank you very much." App. 222-223.

Collins did not answer this letter. Nor did he file a federal habeas petition as Holland requested.

On March 1, 2006, Holland filed another complaint against Collins with the Florida Bar Association. See Record, Doc. 41, Exh. 1, p. 8. This time the bar asked

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2010 WL 2346549 (U.S.), 78 USLW 4555, 10 Cal. Daily Op. Serv. 7396, 2010 Daily Journal D.A.R. 8838
**(Cite as: 2010 WL 2346549 (U.S.))**

Collins to respond, which he did, through his own attorney, on March 21. *Id.,* at 2. And the very next day, over three months after Holland's AEDPA statute of limitations had expired, Collins mailed a proposed federal habeas petition to Holland, asking him to re-view it. See *id.,* Doc. 20, Exh. W.

But by that point Holland had already filed a *pro se* motion in the District Court asking that Collins be dismissed as his attorney. App. 192. The State re-sponded to that request by arguing once again that Holland could not file a *pro se* motion seeking to have Collins removed while he was represented by counsel, *i.e.,* represented by Collins. See *id.,* at 47-51. But this time the court considered Holland's motion, permitted Collins to withdraw from the case, and appointed a new lawyer for Holland. See Record, Docs. 9-10, 17-18, 22. And it also received briefing on whether the circumstances of the case justified the equitable tol-ling of the AEDPA limitations period for a sufficient period of time (approximately five weeks) to make Holland's petition timely.

C

After considering the briefs, the Federal District Court held that the facts did not warrant equitable tolling and that consequently Holland's petition was untimely. The court, noting that Collins had prepared numerous filings on Holland's behalf in the state courts, and suggesting that Holland was a difficult client, inti-mated, but did not hold, that Collins' professional conduct in the case was at worst merely "negligent." See District Court opinion 7-8, App. 90-93. But the court rested its holding on an alternative rationale: It wrote that, even if Collins' "behavior could be cha-racterized as an 'extraordinary circumstance,' " Hol-land "did not seek any help from the court system to find out the date [the] mandate issued denying his state habeas petition, nor did he seek aid from 'outside supporters.' " *Id.,* at 8, App. 92. Hence, the court held, Holland did not "demonstrate" the "due diligence" necessary to invoke "equitable tolling." *Ibid.*

On appeal, the Eleventh Circuit agreed with the Dis-trict Court that Holland's habeas petition was un-timely. The Court of Appeals first agreed with Hol-land that " '[e]quitable tolling can be applied to ... AEDPA's statutory deadline.' " 539 F.3d, at 1338 (quoting *Helton v. Secretary for Dept. of Corrections,* 259 F.3d 1310, 1312 (C.A.11 2001)). But it also held

that equitable tolling could not be applied in a case, like Holland's, that involves no more than "[p]ure professional negligence" on the part of a petitioner's attorney because such behavior can never constitute an "extraordinary circumstance." 539 F.3d, at 1339. The court wrote:

> **\*9** "We will assume that Collins's alleged conduct is negligent, even grossly negligent. But in our view, no allegation of lawyer negligence or of failure to meet a lawyer's standard of care-in the absence of an allegation and proof of bad faith, dishonesty, di-vided loyalty, mental impairment or so forth on the lawyer's part-can rise to the level of egregious at-torney misconduct that would entitle Petitioner to equitable tolling." *Ibid.*

Holland made "no allegation" that Collins had made a "knowing or reckless factual misrepresentation," or that he exhibited "dishonesty," "divided loyalty," or "mental impairment." *Ibid.* Hence, the court held, equitable tolling was *per se* inapplicable to Holland's habeas petition. The court did not address the District Court's ruling with respect to Holland's diligence.

Holland petitioned for certiorari. Because the Court of Appeals' application of the equitable tolling doctrine to instances of professional misconduct conflicts with the approach taken by other Circuits, we granted the petition. Compare 539 F.3d 1334 (case below), with, *e.g., Baldayaque v. United States,* 338 F.3d 145, 152-153 (C.A.2 2003) (applying a less categorical approach); *Spitsyn v. Moore,* 345 F.3d 796, 801-802 (C.A.9 2003) (same).

II

[1] We have not decided whether AEDPA's statutory limitations period may be tolled for equitable reasons. See *Lawrence,* 549 U.S., at 336, 127 S.Ct. 1079; *Pace v. DiGuglielmo,* 544 U.S. 408, 418, n. 8, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005). Now, like all 11 Courts of Appeals that have considered the question, we hold that § 2244(d) is subject to equitable tolling in ap-propriate cases. See *Neverson v. Farquharson,* 366 F.3d 32, 41 (C.A.1 2004); *Smith v. McGinnis,* 208 F.3d 13, 17 (C.A.2 2000) *(per curiam); Miller v. New Jersey Dept. of Corrections,* 145 F.3d 616, 617 (C.A.3 1998); *Harris v. Hutchinson,* 209 F.3d 325, 329-330 (C.A.4 2000); *Davis v. Johnson,* 158 F.3d 806, 810 (C.A.5 1998); *McClendon v. Sherman,* 329 F.3d 490,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2010 WL 2346549 (U.S.), 78 USLW 4555, 10 Cal. Daily Op. Serv. 7396, 2010 Daily Journal D.A.R. 8838
**(Cite as: 2010 WL 2346549 (U.S.))**

492 (C.A.6 2003); *Taliani v. Chrans,* 189 F.3d 597, 598 (C.A.7 1999); *Moore v. United States,* 173 F.3d 1131, 1134 (C.A.8 1999); *Calderon v. United States Dist. Ct. for Central Dist. of Cal.,* 128 F.3d 1283, 1289 (C.A.9 1997); *Miller v. Marr,* 141 F.3d 976, 978 (C.A.10 1998); *Sandvik v. United States,* 177 F.3d 1269, 1272 (C.A.11 1999) *(per curiam).*

[2] We base our conclusion on the following considerations. First, the AEDPA "statute of limitations defense ... is not 'jurisdictional.' " *Day v. McDonough,* 547 U.S. 198, 205, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2006). It does not set forth "an inflexible rule requiring dismissal whenever" its "clock has run." *Id., at 208, 126 S.Ct. 1675.* See also *id., at 213, 126 S.Ct. 1675* (SCALIA, J., dissenting) ("We have repeatedly stated that the enactment of time-limitation periods such as that in § 2244(d), without further elaboration, produces defenses that are nonjurisdictional and thus subject to waiver and forfeiture" (citing cases)); Brief for Respondent 22 (describing AEDPA limitations period as "non-jurisdictional").

**\*10** [3] We have previously made clear that a nonjurisdictional federal statute of limitations is normally subject to a "rebuttable presumption" in *favor* "of equitable tolling." *Irwin,* 498 U.S., at 95-96, 111 S.Ct. 453; see also *Young v. United States,* 535 U.S. 43, 49, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002) ("It is hornbook law that limitations periods are 'customarily subject to "equitable tolling" ' " (quoting *Irwin, supra, at 95, 111 S.Ct. 453)).*

[4] In the case of AEDPA, the presumption's strength is reinforced by the fact that " 'equitable principles' " have traditionally " 'governed' " the substantive law of habeas corpus, *Munaf v. Geren,* 553 U.S. 674, 693, 128 S.Ct. 2207, 171 L.Ed.2d 1 (2008), for we will "not construe a statute to displace courts' traditional equitable authority absent the 'clearest command,' " *Miller v. French,* 530 U.S. 327, 340, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000) (quoting *Califano v. Yamasaki,* 442 U.S. 682, 705, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)). The presumption's strength is yet further reinforced by the fact that Congress enacted AEDPA after this Court decided *Irwin* and therefore was likely aware that courts, when interpreting AEDPA's timing provisions, would apply the presumption. See, *e.g., Merck & Co. v. Reynolds,* 559 U.S. ----, ----, 130 S.Ct. 1784, --- (2010) (slip op., at 12).

Second, the statute here differs significantly from the statutes at issue in *United States v. Brockamp,* 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997), and *United States v. Beggerly,* 524 U.S. 38, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998), two cases in which we held that *Irwin'*s presumption had been overcome. In *Brockamp,* we interpreted a statute of limitations that was silent on the question of equitable tolling as foreclosing application of that doctrine. But in doing so we emphasized that the statute at issue (1) "se[t] forth its time limitations in unusually emphatic form"; (2) used "highly detailed" and "technical" language "that, linguistically speaking, cannot easily be read as containing implicit exceptions"; (3) "reiterate[d] its limitations several times in several different ways"; (4) related to an "underlying subject matter," nationwide tax collection, with respect to which the practical consequences of permitting tolling would have been substantial; and (5) would, if tolled, "require tolling, not only procedural limitations, but also substantive limitations on the amount of recovery-a kind of tolling for which we ... found no direct precedent." 519 U.S., at 350-352, 117 S.Ct. 849. And in *Beggerly* we held that *Irwin'*s presumption was overcome where (1) the 12-year statute of limitations at issue was "unusually generous" and (2) the underlying claim "deal[t] with ownership of land" and thereby implicated landowners' need to "know with certainty what their rights are, and the period during which those rights may be subject to challenge." 524 U.S., at 48-49, 118 S.Ct. 1862.

By way of contrast, AEDPA's statute of limitations, unlike the statute at issue in *Brockamp,* does not contain language that is "unusually emphatic," nor does it "re-iterat[e]" its time limitation. Neither would application of equitable tolling here affect the "substance" of a petitioner's claim. Moreover, in contrast to the 12-year limitations period at issue in *Beggerly,* AEDPA's limitations period is not particularly long. And unlike the subject matters at issue in both *Brockamp* and *Beggerly-*tax collection and land claims-AEDPA's subject matter, habeas corpus, pertains to an area of the law where equity finds a comfortable home. See *Munaf, supra, at 693, 128 S.Ct. 2207.* In short, AEDPA's 1-year limit reads like an ordinary, run-of-the-mill statute of limitations. See *Calderon, supra, at 1288.*

**\*11** [5] Respondent, citing *Brockamp,* argues that AEDPA should be interpreted to foreclose equitable tolling because the statute sets forth "explicit excep-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2010 WL 2346549 (U.S.), 78 USLW 4555, 10 Cal. Daily Op. Serv. 7396, 2010 Daily Journal D.A.R. 8838

**(Cite as: 2010 WL 2346549 (U.S.))**

tions to its basic time limits" that do "not include 'equitable tolling.' " *519 U.S., at 351, 117 S.Ct. 849;* see Brief for Respondent 27. The statute does contain multiple provisions relating to the events that *trigger* its running. See *§ 2244(d)(1); Clay v. United States, 537 U.S. 522, 529, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003);* see also *Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450 (C.A.7 1990)* ("We must ... distinguish between the *accrual* of the plaintiff's claim and the *tolling* of the statute of limitations ..."); *Wims v. United States, 225 F.3d 186, 190 (C.A.2 2000)* (same); *Wolin v. Smith Barney Inc., 83 F.3d 847, 852 (C.A.7 1996)* (same). And we concede that it is silent as to equitable tolling while containing one provision that expressly refers to a different kind of tolling. See *§ 2244(d)(2)* (stating that "[t]he time during which" a petitioner has a pending request for state postconviction relief "shall not be counted toward" his "period of limitation" under AEDPA). But the fact that Congress *expressly* referred to tolling during state collateral review proceedings is easily explained without rebutting the presumption in favor of equitable tolling. A petitioner cannot bring a federal habeas claim without first exhausting state remedies-a process that frequently takes longer than one year. See *Rose v. Lundy, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); § 2254(b)(1)(A)*. Hence, Congress had to explain how the limitations statute accounts for the time during which such state proceedings are pending. This special need for an express provision undermines any temptation to invoke the interpretive maxim *inclusio unius est exclusio alterius* (to include one item (*i.e.,* suspension during state-court collateral review) is to exclude other similar items (*i.e.,* equitable tolling)). See *Young, supra,* at 53, 122 S.Ct. 1036 (rejecting claim that an "express tolling provision, appearing in the same subsection as the [limitations] period, demonstrates a statutory intent *not* to toll the [limitations] period").

[6][7] Third, and finally, we disagree with respondent that equitable tolling undermines AEDPA's basic purposes. We recognize that AEDPA seeks to eliminate delays in the federal habeas review process. See *Day, 547 U.S., at 205-206, 126 S.Ct. 1675; Miller-El v. Cockrell, 537 U.S. 322, 337, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003)*. But AEDPA seeks to do so without undermining basic habeas corpus principles and while seeking to harmonize the new statute with prior law, under which a petition's timeliness was always determined under equitable principles. See

*Slack v. McDaniel, 529 U.S. 473, 483, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)* ("AEDPA's present provisions ... incorporate earlier habeas corpus principles"); see also *Day, 547 U.S., at 202, n. 1, 126 S.Ct. 1675; id., at 214, 126 S.Ct. 1675* (SCALIA, J., dissenting); 2 R. Hertz & J. Liebman, Federal Habeas Corpus Practice and Procedure § 24.2, pp. 1123-1136 (5th ed.2005). When Congress codified new rules governing this previously judicially managed area of law, it did so without losing sight of the fact that the "writ of habeas corpus plays a vital role in protecting constitutional rights." *Slack, 529 U.S., at 483, 120 S.Ct. 1595.* It did not seek to end every possible delay at all costs. Cf. *id., at 483-488, 120 S.Ct. 1595.* The importance of the Great Writ, the only writ explicitly protected by the Constitution, *Art. I, § 9, cl. 2*, along with congressional efforts to harmonize the new statute with prior law, counsels hesitancy before interpreting AEDPA's statutory silence as indicating a congressional intent to close courthouse doors that a strong equitable claim would ordinarily keep open.

**\*12** For these reasons we conclude that neither AEDPA's textual characteristics nor the statute's basic purposes "rebut" the basic presumption set forth in *Irwin.* And we therefore join the Courts of Appeals in holding that *§ 2244(d)* is subject to equitable tolling.

### III

[8] We have previously made clear that a "petitioner" is "entitled to equitable tolling" only if he shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing. *Pace, 544 U.S., at 418, 125 S.Ct. 1807* (emphasis deleted). In this case, the "extraordinary circumstances" at issue involve an attorney's failure to satisfy professional standards of care. The Court of Appeals held that, where that is so, even attorney conduct that is "grossly negligent" can never warrant tolling absent "bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer's part." *539 F.3d, at 1339.* But in our view, the Court of Appeals' standard is too rigid.

[9][10][11] We have said that courts of equity "must be governed by rules and precedents no less than the courts of law." *Lonchar v. Thomas, 517 U.S. 314, 323, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996)* (internal quotation marks omitted). But we have also made clear that often the "exercise of a court's equity powers

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2010 WL 2346549 (U.S.), 78 USLW 4555, 10 Cal. Daily Op. Serv. 7396, 2010 Daily Journal D.A.R. 8838
**(Cite as: 2010 WL 2346549 (U.S.))**

... must be made on a case-by-case basis." *Baggett v. Bullitt,* 377 U.S. 360, 375, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964). In emphasizing the need for "flexibility," for avoiding "mechanical rules," *Holmberg v. Armbrecht,* 327 U.S. 392, 396, 66 S.Ct. 582, 90 L.Ed. 743 (1946), we have followed a tradition in which courts of equity have sought to "relieve hardships which, from time to time, arise from a hard and fast adherence" to more absolute legal rules, which, if strictly applied, threaten the "evils of archaic rigidity," *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238, 248, 64 S.Ct. 997, 88 L.Ed. 1250 (1944). The "flexibility" inherent in "equitable procedure" enables courts "to meet new situations [that] demand equitable intervention, and to accord all the relief necessary to correct ... particular injustices." *Ibid.* (permitting postdeadline filing of bill of review). Taken together, these cases recognize that courts of equity can and do draw upon decisions made in other similar cases for guidance. Such courts exercise judgment in light of prior precedent, but with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case.

We recognize that, in the context of procedural default, we have previously stated, without qualification, that a petitioner "must 'bear the risk of attorney error.' " *Coleman v. Thompson,* 501 U.S. 722, 752-753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). But *Coleman* was "a case about federalism," *id.,* at 726, 111 S.Ct. 2546, in that it asked whether *federal* courts may excuse a petitioner's failure to comply with a *state court's* procedural rules, notwithstanding the state court's determination that its own rules had been violated. Equitable tolling, by contrast, asks whether federal courts may excuse a petitioner's failure to comply with *federal* timing rules, an inquiry that does not implicate a state court's interpretation of state law. Cf. *Lawrence,* 549 U.S., at 341, 127 S.Ct. 1079 (GINSBURG, J., dissenting). Holland does not argue that his attorney's misconduct provides a substantive ground for relief, cf. § 2254(i), nor is this a case that asks whether AEDPA's statute of limitations should be recognized at all, cf. *Day, supra,* at 209, 126 S.Ct. 1675. Rather, this case asks how equity should be applied once the statute is recognized. And given equity's resistance to rigid rules, we cannot read *Coleman* as requiring a *per se* approach in this context.

*\*13* In short, no pre-existing rule of law or precedent demands a rule like the one set forth by the Eleventh Circuit in this case. That rule is difficult to reconcile with more general equitable principles in that it fails to recognize that, at least sometimes, professional misconduct that fails to meet the Eleventh Circuit's standard could nonetheless amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling. And, given the long history of judicial application of equitable tolling, courts can easily find precedents that can guide their judgments. Several lower courts have specifically held that unprofessional attorney conduct may, in certain circumstances, prove "egregious" and can be "extraordinary" even though the conduct in question may not satisfy the Eleventh Circuit's rule. See, *e.g., Nara v. Frank,* 264 F.3d 310, 320 (C.A.3 2001) (ordering hearing as to whether client who was "effectively abandoned" by lawyer merited tolling); *Calderon,* 128 F.3d, at 1289 (allowing tolling where client was prejudiced by a last minute change in representation that was beyond his control); *Baldayaque,* 338 F.3d, at 152-153 (finding that where an attorney failed to perform an essential service, to communicate with the client, and to do basic legal research, tolling could, under the circumstances, be warranted); *Spitsyn,* 345 F.3d, at 800-802 (finding that "extraordinary circumstances" may warrant tolling where lawyer denied client access to files, failed to prepare a petition, and did not respond to his client's communications); *United States v. Martin,* 408 F.3d 1089, 1096 (C.A.8 2005) (client entitled to equitable tolling where his attorney retained files, made misleading statements, and engaged in similar conduct).

[12] We have previously held that "a garden variety claim of excusable neglect," *Irwin,* 498 U.S., at 96, 111 S.Ct. 453, such as a simple "miscalculation" that leads a lawyer to miss a filing deadline, *Lawrence, supra,* at 336, 127 S.Ct. 1079, does not warrant equitable tolling. But the case before us does not involve, and we are not considering, a "garden variety claim" of attorney negligence. Rather, the facts of this case present far more serious instances of attorney misconduct. And, as we have said, although the circumstances of a case must be "extraordinary" before equitable tolling can be applied, we hold that such circumstances are not limited to those that satisfy the test that the Court of Appeals used in this case.

IV

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2010 WL 2346549 (U.S.), 78 USLW 4555, 10 Cal. Daily Op. Serv. 7396, 2010 Daily Journal D.A.R. 8838
**(Cite as: 2010 WL 2346549 (U.S.))**

**\*14** [13] The record facts that we have set forth in Part I of this opinion suggest that this case may well be an "extraordinary" instance in which petitioner's attorney's conduct constituted far more than "garden variety" or "excusable neglect." To be sure, Collins failed to file Holland's petition on time and appears to have been unaware of the date on which the limitations period expired-two facts that, alone, might suggest simple negligence. But, in these circumstances, the record facts we have elucidated suggest that the failure amounted to more: Here, Collins failed to file Holland's federal petition on time despite Holland's many letters that repeatedly emphasized the importance of his doing so. Collins apparently did not do the research necessary to find out the proper filing date, despite Holland's letters that went so far as to identify the applicable legal rules. Collins failed to inform Holland in a timely manner about the crucial fact that the Florida Supreme Court had decided his case, again despite Holland's many pleas for that information. And Collins failed to communicate with his client over a period of years, despite various pleas from Holland that Collins respond to his letters.

A group of teachers of legal ethics tells us that these various failures violated fundamental canons of professional responsibility, which require attorneys to perform reasonably competent legal work, to communicate with their clients, to implement clients' reasonable requests, to keep their clients informed of key developments in their cases, and never to abandon a client. See Brief for Legal Ethics Professors et al. as *Amici Curiae* (describing ethical rules set forth in case law, the Restatements of Agency, the Restatement (Third) of the Law Governing Lawyers (1998), and in the ABA Model Rules of Professional Conduct (2009)). And in this case, the failures seriously prejudiced a client who thereby lost what was likely his single opportunity for federal habeas review of the lawfulness of his imprisonment and of his death sentence.

[14] We do not state our conclusion in absolute form, however, because more proceedings may be necessary. The District Court rested its ruling not on a lack of extraordinary circumstances, but rather on a lack of diligence-a ruling that respondent does not defend. See Brief for Respondent 38, n. 19; Tr. of Oral Arg. 43, 52. We think that the District Court's conclusion was incorrect. The diligence required for equitable

tolling purposes is " 'reasonable diligence,' " see, *e.g., Lonchar,* 517 U.S., at 326, 116 S.Ct. 1293, not " ' "maximum feasible diligence," ' " *Starns v. Andrews,* 524 F.3d 612, 618 (C.A.5 2008) (quoting *Moore v. Knight,* 368 F.3d 936, 940 (C.A.7 2004)). Here, Holland not only wrote his attorney numerous letters seeking crucial information and providing direction; he also repeatedly contacted the state courts, their clerks, and the Florida State Bar Association in an effort to have Collins-the central impediment to the pursuit of his legal remedy-removed from his case. And, the *very day* that Holland discovered that his AEDPA clock had expired due to Collins' failings, Holland prepared his own habeas petition *pro se* and promptly filed it with the District Court.

Because the District Court erroneously relied on a lack of diligence, and because the Court of Appeals erroneously relied on an overly rigid *per se* approach, no lower court has yet considered in detail the facts of this case to determine whether they indeed constitute extraordinary circumstances sufficient to warrant equitable relief. We are "[m]indful that this is a court of final review and not first view." *Adarand Constructors, Inc. v. Mineta,* 534 U.S. 103, 110, 122 S.Ct. 511, 151 L.Ed.2d 489 (2001) *(per curiam)* (internal quotation marks omitted). And we also recognize the prudence, when faced with an "equitable, often fact-intensive" inquiry, of allowing the lower courts "to undertake it in the first instance." *Gonzalez v. Crosby,* 545 U.S. 524, 540, 125 S.Ct. 2641, 162 L.Ed.2d 480 (2005) (STEVENS, J., dissenting). Thus, because we conclude that the District Court's determination must be set aside, we leave it to the Court of Appeals to determine whether the facts in this record entitle Holland to equitable tolling, or whether further proceedings, including an evidentiary hearing, might indicate that respondent should prevail.

**\*15** The judgment below is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*
Justice ALITO, concurring in part and concurring in the judgment.
This case raises two broad questions: first, whether the statute of limitations set out in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2244(d), is subject to equitable tolling; and second, assuming an affirmative answer to the first

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2010 WL 2346549 (U.S.), 78 USLW 4555, 10 Cal. Daily Op. Serv. 7396, 2010 Daily Journal D.A.R. 8838
**(Cite as: 2010 WL 2346549 (U.S.))**

question, whether petitioner in this particular case has alleged facts that are sufficient to satisfy the "extraordinary circumstances" prong of the equitable tolling test. I agree with the Court's conclusion that equitable tolling is available under AEDPA. I also agree with much of the Court's discussion concerning whether equitable tolling is available on the facts of this particular case. In particular, I agree that the Court of Appeals erred by essentially limiting the relevant inquiry to the question whether "gross negligence" of counsel may be an extraordinary circumstance warranting equitable tolling. As the Court makes clear, petitioner in this case has alleged certain facts that go well beyond any form of attorney negligence, see *ante,* at ---- - ----, ----, and the Court of Appeals does not appear to have asked whether those particular facts provide an independent basis for tolling. Accordingly, I concur in the Court's decision to reverse the judgment below and remand so that the lower courts may properly apply the correct legal standard.

Although I agree that the Court of Appeals applied the *wrong* standard, I think that the majority does not do enough to explain the *right* standard. It is of course true that equitable tolling requires "extraordinary circumstances," but that conclusory formulation does not provide much guidance to lower courts charged with reviewing the many habeas petitions filed every year. I therefore write separately to set forth my understanding of the principles governing the availability of equitable tolling in cases involving attorney misconduct.

I

**\*16** "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo,* 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005). The dispute in this case concerns whether and when attorney misconduct amounts to an "extraordinary circumstance" that stands in a petitioner's way and prevents the petitioner from filing a timely petition. I agree with the majority that it is not practical to attempt to provide an exhaustive compilation of the kinds of situations in which attorney misconduct may provide a basis for equitable tolling. In my view, however, it is useful to note that several broad principles may be distilled from this Court's precedents.

First, our prior cases make it abundantly clear that attorney negligence is not an extraordinary circumstance warranting equitable tolling. In *Lawrence v. Florida,* 549 U.S. 327, 336, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007), the Court expressly rejected the petitioner's contention that "his counsel's mistake in miscalculating the limitations period entitle[d] him to equitable tolling." "Attorney miscalculation," the Court held, "is simply not sufficient to warrant equitable tolling, *particularly in the postconviction context where prisoners have no constitutional right to counsel*." *Id.,* at 336-337, 127 S.Ct. 1079 (citing *Coleman v. Thompson,* 501 U.S. 722, 756-757, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (emphasis added)).

The basic rationale for *Lawrence's* holding is that the mistakes of counsel are constructively attributable to the client, at least in the postconviction context. The *Lawrence* Court's reliance on *Coleman* is instructive. In *Coleman,* the Court addressed whether attorney error provided cause for a procedural default based on a late filing. See 501 U.S., at 752, 111 S.Ct. 2546. Because "[t]here is no constitutional right to an attorney in state post-conviction proceedings," the Court explained, "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Ibid.* In such circumstances, the Court reasoned, there was " 'no inequity in requiring [the petitioner] to bear the risk of attorney error that results in a procedural default.' " *Ibid.* (quoting *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)); accord, *Coleman,* 501 U.S., at 753, 111 S.Ct. 2546 (" '[C]ause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him"); *ibid.* ("Attorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error' "); *id.,* at 754, 111 S.Ct. 2546 (what matters is whether "the error [of counsel] must be seen as an external factor, *i.e.,* 'imputed to the State' "); *ibid.* ("In the absence of a constitutional violation, the petitioner bears the risk in federal habeas for all attorney errors made in the course of the representation"); *id.,* at 757, 111 S.Ct. 2546 ("Because Coleman had no right to counsel to pursue his appeal in state habeas, any attorney error that led to the default of Coleman's claims in state court cannot constitute

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2010 WL 2346549 (U.S.), 78 USLW 4555, 10 Cal. Daily Op. Serv. 7396, 2010 Daily Journal D.A.R. 8838
**(Cite as: 2010 WL 2346549 (U.S.))**

cause to excuse the default in federal habeas"). As *Lawrence* makes clear, the same analysis applies when a petitioner seeks equitable tolling based on attorney error in the postconviction context. See 549 U.S., at 336-337, 127 S.Ct. 1079 (citing *Coleman).*

While *Lawrence* addressed an allegation of attorney miscalculation, its rationale fully applies to other forms of attorney negligence. Instead of miscalculating the filing deadline, for example, an attorney could compute the deadline correctly but forget to file the habeas petition on time, mail the petition to the wrong address, or fail to do the requisite research to determine the applicable deadline. In any case, however, counsel's error would be constructively attributable to the client.

**\*17** Second, the mere fact that a missed deadline involves "gross negligence" on the part of counsel does not by itself establish an extraordinary circumstance. As explained above, the principal rationale for disallowing equitable tolling based on ordinary attorney miscalculation is that the error of an attorney is constructively attributable to the client and thus is not a circumstance beyond the litigant's control. See *Lawrence, supra,* at 336-337, 127 S.Ct. 1079; *Coleman, supra,* at 752-754, 111 S.Ct. 2546; see also *Powell v. Davis,* 415 F.3d 722, 727 (C.A.7 2005); *Johnson v. McBride,* 381 F.3d 587, 589-590 (C.A.7 2004); *Harris v. Hutchinson,* 209 F.3d 325, 330 (C.A.4 2000). That rationale plainly applies regardless whether the attorney error in question involves ordinary or gross negligence. See *Coleman,* 501 U.S., at 754, 111 S.Ct. 2546 ("[I]t is not the gravity of the attorney's error that matters, but that it constitutes a violation of petitioner's right to counsel, so that the error must be seen as an external factor, *i.e.,* 'imputed to the State' "); *id., at 752, 111 S.Ct. 2546* (rejecting the contention that "[t]he late filing was ... the result of attorney error of sufficient magnitude to excuse the default in federal habeas").

Allowing equitable tolling in cases involving *gross* rather than *ordinary* attorney negligence would not only fail to make sense in light of our prior cases; it would also be impractical in the extreme. Missing the statute of limitations will generally, if not always, amount to negligence, see *Lawrence,* 549 U.S., at 336, 127 S.Ct. 1079, and it has been aptly said that gross negligence is ordinary negligence with a vituperative epithet added. Therefore, if gross negligence may be

enough for equitable tolling, there will be a basis for arguing that tolling is appropriate in almost every counseled case involving a missed deadline. See *ibid.* (argument that attorney miscalculation is an extraordinary circumstance, if credited, "would essentially equitably toll limitations periods for every person whose attorney missed a deadline"). This would not just impose a severe burden on the district courts; it would also make the availability of tolling turn on the highly artificial distinction between gross and ordinary negligence. That line would be hard to administer, would needlessly consume scarce judicial resources, and would almost certainly yield inconsistent and often unsatisfying results. See *Baldayaque v. United States,* 338 F.3d 145, 155 (C.A.2 2003) (Jacobs, J., concurring) (noting that the "distinction between ordinary and extraordinary attorney malpractice ... is elusive, hard to apply, and counterintuitive").

Finally, it is worth noting that a rule that distinguishes between ordinary and gross attorney negligence for purposes of the equitable tolling analysis would have demonstrably "inequitable" consequences. For example, it is hard to see why a habeas petitioner should be effectively penalized just because his counsel was negligent rather than grossly negligent, or why the State should be penalized just because petitioner's counsel was grossly negligent rather than moderately negligent. Regardless of how one characterizes counsel's deficient performance in such cases, the petitioner is not personally at fault for the untimely filing, attorney error is a but-for cause of the late filing, and the governmental interest in enforcing the statutory limitations period is the same.

II

**\*18** Although attorney negligence, however styled, does not provide a basis for equitable tolling, the AEDPA statute of limitations may be tolled if the missed deadline results from attorney misconduct that is not constructively attributable to the petitioner. In this case, petitioner alleges facts that amount to such misconduct. See *ante,* at ---- (acknowledging that ordinary attorney negligence does not warrant equitable tolling, but observing that "the facts of this case present far more serious instances of attorney misconduct"). In particular, he alleges that his attorney essentially "abandoned" him, as evidenced by counsel's near-total failure to communicate with petitioner or to respond to petitioner's many inquiries and re-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2010 WL 2346549 (U.S.), 78 USLW 4555, 10 Cal. Daily Op. Serv. 7396, 2010 Daily Journal D.A.R. 8838

**(Cite as: 2010 WL 2346549 (U.S.))**

quests over a period of several years. See *ante,* at ---- - ----. Petitioner also appears to allege that he made reasonable efforts to terminate counsel due to his inadequate representation and to proceed *pro se,* and that such efforts were successfully opposed by the State on the perverse ground that petitioner failed to act through appointed counsel. See *ante,* at ----; Brief for Petitioner 50-51 (stating that petitioner filed "two *pro se* motions in the Florida Supreme Court to re-move Collins as counsel (one which, if granted, would have allowed [petitioner] to proceed *pro se* )" (em-phasis deleted)).

If true, petitioner's allegations would suffice to estab-lish extraordinary circumstances beyond his control. Common sense dictates that a litigant cannot be held constructively responsible for the conduct of an at-torney who is not operating as his agent in any mea-ningful sense of that word. See *Coleman, supra,* at 752-754, 111 S.Ct. 2546 (relying on "well-settled principles of agency law" to determine whether at-torney error was attributable to client); *Baldaya-que, supra,* at 154 (Jacobs, J., concurring) ("[W]hen an 'agent acts in a manner completely adverse to the principal's interest,' the 'principal is not charged with [the] agent's misdeeds' "). That is particularly so if the litigant's reasonable efforts to terminate the attorney's representation have been thwarted by forces wholly beyond the petitioner's control. The Court of Appeals apparently did not consider petitioner's abandonment argument or assess whether the State improperly prevented petitioner from either obtaining new re-presentation or assuming the responsibility of representing himself. Accordingly, I agree with the majority that the appropriate disposition is to reverse and remand so that the lower courts may apply the correct standard to the facts alleged here.

Justice SCALIA, with whom Justice THOMAS joins as to all but Part I, dissenting.
**\*19** The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), establishes a 1-year limitations period for state prisoners to seek federal habeas relief, subject to several specific exceptions. 28 U.S.C. § 2244(d). The Court concludes that this time limit is also subject to equitable tolling, even for attorney errors that are ordinarily attributable to the client. And it rejects the Court of Appeals' conclusion that Albert Holland is not entitled to tolling, without explaining why the test that court applied was wrong or what rule it should have applied instead. In my view § 2244(d)

leaves no room for equitable exceptions, and Holland could not qualify even if it did.

I

The Court is correct, *ante,* at ----, that we ordinarily presume federal limitations periods are subject to equitable tolling unless tolling would be inconsistent with the statute. *Young v. United States,* 535 U.S. 43, 49, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002). That is especially true of limitations provisions applicable to actions that are traditionally governed by equitable principles-a category that includes habeas proceed-ings. See *id., at 50, 122 S.Ct. 1036.* If § 2244(d) merely created a limitations period for federal habeas applicants, I agree that applying equitable tolling would be appropriate.

But § 2244(d) does much more than that, establishing a detailed scheme regarding the filing deadline that addresses an array of contingencies. In an ordinary case, the clock starts when the state-court judgment becomes final on direct review. § 2244(d)(1)(A).[FN1] But the statute delays the start date-thus effectively tolling the limitations period-in cases where (1) state action unlawfully impeded the prisoner from filing his habeas application, (2) the prisoner asserts a constitu-tional right newly recognized by this Court and made retroactive to collateral cases, or (3) the factual pre-dicate for the prisoner's claim could not previously have been discovered through due diligence. § 2244(d)(1)(B)-(D). It also expressly tolls the limita-tions period during the pendency of a properly filed application for state collateral relief. § 2244(d)(2). Congress, in short, has considered and accounted for specific circumstances that in its view excuse an ap-plicant's delay.

> FN1. Title 28 U.S.C. § 2244(d) provides:
>
> "(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limita-tion period shall run from the latest of-
>
> "(A) the date on which the judgment be-came final by the conclusion of direct re-view or the expiration of the time for seeking such review;

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2010 WL 2346549 (U.S.), 78 USLW 4555, 10 Cal. Daily Op. Serv. 7396, 2010 Daily Journal D.A.R. 8838
**(Cite as: 2010 WL 2346549 (U.S.))**

"(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

"(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

"(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

"(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

The question, therefore, is not whether § 2244(d)'s time bar is subject to tolling, but whether it is consistent with § 2244(d) for federal courts to toll the time bar for *additional* reasons beyond those Congress included.

In my view it is not. It is fair enough to infer, when a statute of limitations says nothing about equitable tolling, that Congress did not displace the default rule. But when Congress has *codified* that default rule and specified the instances where it applies, we have no warrant to extend it to other cases. See *United States v. Beggerly,* 524 U.S. 38, 48-49, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998). Unless the Court believes § 2244(d) contains an implicit, across-the-board exception that subsumes (and thus renders unnecessary) § 2244(d)(1)(B)-(D) and (d)(2), it must rely on the untenable assumption that when Congress enumerated the events that toll the limitations period-with no indication the list is merely illustrative-it implicitly authorized courts to add others as they see fit. We should assume the opposite: that by specifying situations in which an equitable principle applies to a specific requirement, Congress has displaced courts'

discretion to develop ad hoc exceptions. Cf. *Lonchar v. Thomas,* 517 U.S. 314, 326-328, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996).

The Court's responses are unpersuasive. It brushes aside § 2244(d)(1)(B)-(D), apparently because those subdivisions merely delay the *start* of the limitations period but do not suspend a limitations period already underway. *Ante,* at ----. But the Court does not explain why that distinction makes any difference,[FN2] and we have described a rule that forestalls the start of a limitations period as "effectively allow[ing] for equitable tolling." *Beggerly, supra,* at 48, 118 S.Ct. 1862.

> FN2. The Court cites several Court of Appeals cases that support its triggering-tolling distinction, *ante,* at ----, but no case of ours that does so. *Clay v. United States,* 537 U.S. 522, 529, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003), described § 2244(d)(1)(A) as containing "triggers" for the limitations period, but it did not distinguish delaying the start of the limitations period from tolling. The Court of Appeals cases the Court cites, *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 450 (C.A.7 1990), *Wolin v. Smith Barney Inc.,* 83 F.3d 847, 852 (C.A.7 1996), and *Wims v. United States,* 225 F.3d 186, 190 (C.A.2 2000), rely on a distinction between accrual rules and tolling that we have since disregarded, see *TRW Inc. v. Andrews,* 534 U.S. 19, 27, 29, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001).

**\*20** The Court does address § 2244(d)(2), which undeniably provides for poststart tolling, but dismisses it on the basis that Congress had to resolve a contradiction between § 2244(d)'s 1-year time bar and the rule of *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), that a federal habeas application cannot be filed while state proceedings are pending. But there is no contradiction to resolve unless, in the absence of a statutory tolling provision, equitable tolling would *not* apply to a state prisoner barred from filing a federal habeas application while he exhausts his state remedies. The Court offers no reason why it would not, and our holding in *Young,* 535 U.S., at 50-51, 122 S.Ct. 1036, that tolling was justified by the Government's inability to pursue a claim because of the Bankruptcy Code's automatic stay, 11 U.S.C. §

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2010 WL 2346549 (U.S.), 78 USLW 4555, 10 Cal. Daily Op. Serv. 7396, 2010 Daily Journal D.A.R. 8838
**(Cite as: 2010 WL 2346549 (U.S.))**

362, suggests that it would.[FN3]

> FN3. The Court reads *Young* as support for disregarding the specific tolling provisions Congress included in § 2244(d). *Ante,* at ----. But in the pertinent passage, *Young* explained only that the inclusion of an express tolling rule in a *different* provision regarding a *different* limitations period, 11 U.S.C. § 507(a)(8)(A)(ii) (2000 ed.)-albeit a provision within the same subparagraph as the provision at issue, § 507(a)(8)(A)(i)-did not rebut the presumption of equitable tolling. See 535 U.S., at 53, 122 S.Ct. 1036. Moreover, *Young* stressed that § 507(a)(8)(A)(ii) authorized tolling in instances where equity would *not* have allowed it, which reinforced the presumption in favor of tolling. *Ibid.* Here, the Court does not suggest that any of § 2244(d)'s exceptions go beyond what equity would have allowed.

## II

### A

Even if § 2244(d) left room for equitable tolling in some situations, tolling surely should not excuse the delay here. Where equitable tolling is available, we have held that a litigant is entitled to it only if he has diligently pursued his rights and-the requirement relevant here-if " 'some extraordinary circumstance stood in his way.' " *Lawrence v. Florida,* 549 U.S. 327, 336, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007) (quoting *Pace v. DiGuglielmo,* 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005)). Because the attorney is the litigant's agent, the attorney's acts (or failures to act) within the scope of the representation are treated as those of his client, see *Link v. Wabash R. Co.,* 370 U.S. 626, 633-634, and n. 10, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), and thus such acts (or failures to act) are necessarily not extraordinary circumstances.

To be sure, the rule that an attorney's acts and oversights are attributable to the client is relaxed where the client has a constitutional right to effective assistance of counsel. Where a State is constitutionally obliged to provide an attorney but fails to provide an effective one, the attorney's failures that fall below the standard set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), are chargeable

to the State, not to the prisoner. See *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). But where the client has no right to counsel-which in habeas proceedings he does not-the rule holding him responsible for his attorney's acts applies with full force. See *Coleman v. Thompson,* 501 U.S. 722, 752-754, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). [FN4] Thus, when a state habeas petitioner's appeal is filed too late because of attorney error, the petitioner is out of luck-no less than if he had proceeded *pro se* and neglected to file the appeal himself.[FN5]

> FN4. The Court dismisses *Coleman* as "a case about federalism" and therefore inapposite here. *Ante,* at ---- (internal quotation marks omitted). I fail to see how federalism concerns are not implicated by ad hoc exceptions to the statute of limitations for attempts to overturn state-court convictions. In any event, *Coleman* did not invent, but merely applied, the already established principle that an attorney's acts are his client's. See 501 U.S., at 754, 111 S.Ct. 2546.

> FN5. That Holland's counsel was appointed, rather than, like counsel in *Coleman,* retained, see Brief for Respondent in *Coleman v. Thompson,* O.T.1990, No. 89-7662, pp. 33-34, 40, is irrelevant. The Sixth Amendment right to effective assistance of counsel, we have held, applies even to an attorney the defendant himself hires. See *Cuyler v. Sullivan,* 446 U.S. 335, 342-345, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). The basis for *Coleman* was not that Coleman had hired his own counsel, but that the State owed him no obligation to provide one. See 501 U.S., at 754, 111 S.Ct. 2546. It would be utterly perverse, of course, to penalize the State for *providing* habeas petitioners with representation, when the State could avoid equitable tolling by providing none at all.

Congress could, of course, have included errors by state-appointed habeas counsel as a basis for delaying the limitations period, but it did not. Nor was that an oversight: Section 2244(d)(1)(B) expressly allows tolling for state-created impediments that prevent a prisoner from filing his application, but *only if* the impediment violates the Constitution or federal law.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2010 WL 2346549 (U.S.), 78 USLW 4555, 10 Cal. Daily Op. Serv. 7396, 2010 Daily Journal D.A.R. 8838
**(Cite as: 2010 WL 2346549 (U.S.))**

**\*21** If there were any doubt that equitable tolling is unavailable under § 2244(d) to excuse attorney error, we eliminated it in *Lawrence.* The petitioner there asserted that his attorney's miscalculation of the limitations period for federal habeas applications caused him to miss the filing deadline. The attorney's error stemmed from his mistaken belief that-contrary to Circuit precedent (which we approved in *Lawrence* )-the limitations period is tolled during the pendency of a petition for certiorari from a state postconviction proceeding. 549 U.S., at 336, 127 S.Ct. 1079; see also Brief for Petition 31, 36. Assuming *arguendo* that equitable tolling could ever apply to § 2244(d), we held that such attorney error did not warrant it, especially since the petitioner was not constitutionally entitled to counsel. *Lawrence, supra,* at 336-337, 127 S.Ct. 1079.

Faithful application of *Lawrence* should make short work of Holland's claim. Although Holland alleges a wide array of misconduct by his counsel, Bradley Collins, the only pertinent part appears extremely similar, if not identical, to the attorney's error in *Lawrence.* The relevant time period extends at most from November 10, 2005-when the Florida Supreme Court affirmed the denial of Holland's state habeas petition [FN6]-to December 15, 2005, the latest date on which § 2244(d)'s limitations period could have expired.[FN7] Within that period, Collins could have alerted Holland to the Florida Supreme Court's decision, and either Collins or Holland himself could have filed a timely federal habeas application. Collins did not do so, but instead filed a petition for certiorari several months later.

> FN6. The Florida Supreme Court did not issue its mandate, and the limitations period did not resume, see *Lawrence, 549 U.S., at 331, 127 S.Ct. 1079,* until December 1, 2005. But once the Florida Supreme Court issued its decision (with the mandate still to come), Collins could have notified Holland, who in turn could have filed a *pro se* federal application.

> FN7. The parties dispute when Holland's state habeas petition was filed, and thus when the limitations period expired. Brief for Petitioner 4-5, and n. 4; Brief for Respondent 8, 9, n. 7. The discrepancy is immaterial, but I

give Holland the benefit of the doubt.

Why Collins did not notify Holland or file a timely federal application for him is unclear, but none of the plausible explanations would support equitable tolling. By far the most likely explanation is that Collins made exactly the same mistake as the attorney in *Lawrence*-*i.e.,* he assumed incorrectly that the pendency of a petition for certiorari in this Court seeking review of the denial of Holland's state habeas petition would toll AEDPA's time bar under § 2244(d)(2). In December 2002, Collins had explained to Holland by letter that if his state habeas petition was denied *and* this Court denied certiorari in that proceeding, Holland's claims "*will then be ripe* for presentation in a petition for writ of habeas corpus in federal court." App. 61 (emphasis added). Holland himself interprets that statement as proof that, at that time, "Collins was under the belief that [Holland's] time to file his federal habeas petition would continue to be tolled until this Court denied certiorari" in his state postconviction proceeding. Pet. for Cert. 12, n. 10. That misunderstanding would entirely account for Collins's conduct-filing a certiorari petition instead of a habeas application, and waiting nearly three months to do so. But it would also be insufficient, as *Lawrence* held it was, to warrant tolling.

The other conceivable explanations for Collins's failure fare no better. It may be that Collins believed-as he explained to Holland in a January 2006 letter, after Holland had informed him that a certiorari petition in a state postconviction proceeding would not stop the clock-that the certiorari petition in Holland's *direct* appeal also did not toll the time bar. Consequently, Collins wrote, Holland's time to file a federal application had expired even before Collins was appointed. App. 78-79. As the Court explains, *ante, at ----,* this view too was wrong, but it is no more a basis for equitable tolling than the attorney's misunderstanding in *Lawrence.*

**\*22** Or it may be that Collins (despite what he wrote to Holland) correctly understood the rule but simply neglected to notify Holland; perhaps he missed the state court's ruling in his mail, or perhaps it simply slipped his mind. Such an oversight is unfortunate, but it amounts to "garden variety" negligence, not a basis for equitable tolling. *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). Surely it is no more extraordinary than the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2010 WL 2346549 (U.S.), 78 USLW 4555, 10 Cal. Daily Op. Serv. 7396, 2010 Daily Journal D.A.R. 8838
**(Cite as: 2010 WL 2346549 (U.S.))**

attorney's error in *Lawrence,* which rudimentary research and arithmetic would have avoided.

The Court insists that Collins's misconduct goes beyond garden-variety neglect and mine-run miscalculation. *Ante,* at ----. But the only differences it identifies had no effect on Holland's ability to file his federal application on time. The Court highlights Collins's nonresponsiveness while Holland's state postconviction motions were still pending. *Ante,* at ---- - ----. But even taken at face value, Collins's silence *prior* to November 10, 2005, did not prevent Holland from filing a timely federal application once the Florida courts were finished with his case. The Court also appears to think significant Collins's correspondence with Holland in January 2006, *after* the limitations period had elapsed. *Ante,* at ---- - ----, ----. But unless Holland can establish that the time-bar should be tolled due to events *before* December 15, 2005, any misconduct by Collins after the limitations period elapsed is irrelevant. Even if Collins's conduct before November 10 and after December 15 was "extraordinary," Holland has not shown that it "stood in his way and prevented timely filing." *Lawrence,* 549 U.S., at 336, 127 S.Ct. 1079 (internal quotation marks omitted).

For his part, Holland now asserts that Collins did not merely forget to keep his client informed, but deliberately deceived him. As the Court of Appeals concluded, however, Holland did not allege deception in seeking equitable tolling below. See 539 F.3d 1334, 1339 (C.A.11 2008) *(per curiam).*[FN8] In any event, the deception of which he complains consists only of Collins's assurance early in the representation that he would protect Holland's ability to assert his claims in federal court, see App. 55, 62, coupled with Collins's later failure to do so. That, of course, does not by itself amount to deception, and Holland offers no evidence that Collins meant to mislead him. Moreover, Holland can hardly claim to have been caught off guard. Collins's failures to respond to Holland's repeated requests for information *before* the State Supreme Court ruled gave Holland even greater reason to suspect that Collins had fallen asleep at the switch. Holland indeed was under no illusion to the contrary, as his repeated efforts to replace Collins reflect.[FN9]

FN8. Holland insists that he did allege deception below, see Brief for Petitioner 31, n. 29, but cites only a conclusory allegation in

an unrelated motion (a motion for appointment of new counsel). See App. 194. His reply to the State's response to the order to show cause, drafted by new counsel, did not allege deception. 1 Record, Doc. 35.

FN9. The concurrence argues that Holland's allegations suffice because they show, if true, that Collins "essentially 'abandoned'" Holland by failing to respond to Holland's inquiries, and therefore ceased to act as Holland's agent. *Ante,* at ---- (ALITO, J., concurring in part and concurring in judgment). But Collins's failure to communicate has no bearing unless it ended the agency relationship before the relevant window. The concurrence does not explain why it would-does not contend, for example, that Collins's conduct amounted to disloyalty or renunciation of his role, which *would* terminate Collins's authority, see Restatement (Second) of Agency §§ 112, 118 (1957). Collins's alleged nonresponsiveness did not help Holland's cause, but it was no more "adverse to [Holland's] interest" or "beyond [Holland's] control," *ante,* at ----, ---- (internal quotation marks omitted), and thus no more a basis for holding Holland harmless from the consequences of his counsel's conduct, than mine-run attorney mistakes, cf. *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). The concurrence also relies upon Holland's requests to replace Collins with new appointed counsel. But if those requests could prevent imputing Collins's acts to Holland, every habeas applicant who unsuccessfully asks for a new state-provided lawyer (but who does not seek to proceed *pro se* when that request is denied) would not be bound by his attorney's subsequent acts.

B

**\*23** Despite its insistence that *Lawrence* does not control this case, the Court does not actually hold that Holland is entitled to equitable tolling. It concludes only that the Eleventh Circuit applied the wrong rule and remands the case for a re-do. That would be appropriate if the Court identified a legal error in the Eleventh Circuit's analysis and set forth the proper

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2010 WL 2346549 (U.S.), 78 USLW 4555, 10 Cal. Daily Op. Serv. 7396, 2010 Daily Journal D.A.R. 8838

**(Cite as: 2010 WL 2346549 (U.S.))**

standard it should have applied.

The Court does neither. It rejects as "too rigid," *ante, at ----,* the Eleventh Circuit's test-which requires, beyond ordinary attorney negligence, "an allegation and proof of bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer's part," 539 F.3d, at 1339. But the Court never explains why that "or so forth" test, which explicitly leaves room for other kinds of egregious attorney error, is insufficiently elastic.

Moreover, even if the Eleventh Circuit had adopted an entirely inflexible rule, it is simply untrue that, as the Court appears to believe, *ante,* at ----, all general rules are *ipso facto* incompatible with equity. We have rejected that canard before, see, *e.g., Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308, 321-322, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999), and we have relied on the existence of general rules regarding equitable tolling in particular, see, *e.g., Young,* 535 U.S., at 53, 122 S.Ct. 1036. As we observed in rejecting ad hoc equitable *restrictions* on habeas relief, "the alternative is to use each equity chancellor's conscience as a measure of equity, which alternative would be as arbitrary and uncertain as measuring distance by the length of each chancellor's foot." *Lonchar,* 517 U.S., at 323, 116 S.Ct. 1293.

Consistent with its failure to explain the error in the Eleventh Circuit's test, the Court offers almost no clue about what test that court should have applied. The Court unhelpfully advises the Court of Appeals that its test is too narrow, with no explanation besides the assertion that its test left out cases where tolling might be warranted, and no precise indication of what those cases might be. *Ante,* at ---- ("[A]t least sometimes, professional misconduct that fails to meet the Eleventh Circuit's standard could nonetheless amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling"). The Court says that "courts can easily find precedents that can guide their judgments," *ibid.,* citing several Court of Appeals opinions that (in various contexts) permit tolling for attorney error-but notably omitting opinions that disallow it, such as the Seventh Circuit's opinion in *Powell v. Davis,* 415 F.3d 722, 727 (2005), which would have "guide[d] ... judgmen[t]" precisely where this court arrived: "[A]ttorney misconduct, whether labeled negligent, grossly negligent, or willful, is attributable to the client and thus is not a cir-

cumstance beyond a petitioner's control that might excuse an untimely petition." *Ibid.* (internal quotation marks omitted).

The only thing the Court offers that approaches substantive instruction is its implicit approval of "fundamental canons of professional responsibility," articulated by an ad hoc group of legal-ethicist *amici* consisting mainly of professors of that least analytically rigorous and hence most subjective of law-school subjects, legal ethics. *Ante,* at ----. The Court does not even try to justify importing into equity the "prevailing professional norms" we have held implicit in the right to counsel, *Strickland,* 466 U.S., at 688, 104 S.Ct. 2052. In his habeas action Holland has no right to counsel. I object to this transparent attempt to smuggle *Strickland* into a realm the Sixth Amendment does not reach.

C

**\*24** The Court's refusal to articulate an intelligible rule regarding the only issue actually before us stands in sharp contrast to its insistence on deciding an issue that is *not* before us: whether Holland satisfied the second prerequisite for equitable tolling by demonstrating that he pursued his rights diligently, see *Pace,* 544 U.S., at 418-419, 125 S.Ct. 1807. As the Court admits, only the District Court addressed that question below; the Eleventh Circuit had no need to reach it. More importantly, it is not even arguably included within the question presented, which concerns only whether an attorney's gross negligence can constitute an "extraordinary circumstance" of the kind we have held essential for equitable tolling. Pet. for Cert. i. Whether tolling is *ever* available is fairly included in that question, but whether Holland has overcome an additional, independent hurdle to tolling is not.

The Court offers no justification for deciding this distinct issue. The closest it comes is its observation that the State "does not defend" the District Court's ruling regarding diligence. *Ante,* at ----. But the State had no reason to do so-any more than it had reason to address the merits of Holland's habeas claims. Nor, contrary to the Court's implication, has the State conceded the issue. The footnote of the State's brief which the Court cites did just the opposite: After observing that only the extraordinary-circumstance prong of the equitable-tolling test is at issue, the State (perhaps astutely apprehensive that the Court might

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2010 WL 2346549 (U.S.), 78 USLW 4555, 10 Cal. Daily Op. Serv. 7396, 2010 Daily Journal D.A.R. 8838

**(Cite as: 2010 WL 2346549 (U.S.))**

ignore that fact) added that "to the extent the Court considers the matter" of Holland's diligence, "Respondent relies on the findings of the district court below." Brief for Respondent 38, n. 19. The Court also cites a statement by the State's counsel at oral argument, Tr. of Oral Arg. 43, and Holland's counsel's characterization of it as a concession, *id.,* at 52. But the remark, in context, shows only that the State does not dispute diligence *in this Court,* where the only issue is extraordinary circumstances:

> "Well, that goes to the issue ... of diligence, of course, which is not the issue we're looking at. We're looking at the extraordinary circumstances, not the diligence ....

> "[W]e'll concede diligence for the moment...." *Id.,* at 43.

**\*25** Notwithstanding the Court's confidence that the District Court was wrong, it is not even clear that Holland acted with the requisite diligence. Although Holland repeatedly contacted Collins and the state courts, there were other reasonable measures Holland could have pursued. For example, as we suggested in *Pace, supra, at 416, 125 S.Ct. 1807*-decided while Holland's state habeas petition was still pending-Holland might have filed a " 'protective' " federal habeas application and asked the District Court to stay the federal action until his state proceedings had concluded. He also presumably could have checked the court records in the prison's writ room-from which he eventually learned of the state court's decision, 539 F.3d, at 1337-on a more regular basis. And he could have sought permission from the state courts to proceed *pro se* and thus remove Collins from the equation. [FN10] This is not to say the District Court was correct to conclude Holland was not diligent; but the answer is not as obvious as the Court would make it seem.

> FN10. Holland made many *pro se* filings in state court (which were stricken because Holland was still represented), and he sought to have new counsel appointed in Collins's place, but did not seek to proceed *pro se*. The Court does not dispute this, nor does Holland. The most he asserts is that one of the *pro se* motions he filed, if granted, would have *entitled* him to proceed *pro se,* see Brief for Petitioner 50-51-an assertion he appears

not to have made in the District Court, see 1 Record, Doc. 35, at 15. The concurrence equates that assertion with an allegation that he actually sought to litigate his case on his own behalf. *Ante,* at ----. It is not the same. The filing Holland refers to, see Brief for Petitioner 12, and n. 13, like his earlier filings, requested that Collins be *replaced* by new counsel. App. 149-163. The motion also asked for a hearing pursuant to *Nelson v. State,* 274 So.2d 256, 259 (Fla.App.1973), to show Collins's poor performance, App. 149-150, but that did not amount to a request to proceed *pro se*. *Nelson* held that a defendant *facing trial* who seeks to discharge his court-appointed counsel for ineffectiveness is entitled to a hearing to determine if new counsel is required. 274 So.2d, at 259. If the defendant fails to make that showing, but "continues to demand a dismissal of his court appointed counsel," *Nelson* explained that "a trial judge may in his discretion discharge counsel and require the defendant to proceed to trial without representation by court appointed counsel." *Ibid.;* see also *Hardwick v. State,* 521 So.2d 1071, 1074-1075 (Fla.1988). There is no reason why requesting that procedure in state habeas proceedings should be construed as a request to proceed *pro se*. Holland, unlike a defendant still facing trial, did not need permission to fire Collins, since there was no right to representation to waive. Once his request for a new attorney was denied, Holland himself could have informed Collins that his services were no longer required.

\* \* \*

The Court's impulse to intervene when a litigant's lawyer has made mistakes is understandable; the temptation to tinker with technical rules to achieve what appears a just result is often strong, especially when the client faces a capital sentence. But the Constitution does not empower federal courts to rewrite, in the name of equity, rules that Congress has made. Endowing unelected judges with that power is irreconcilable with our system, for it "would literally place the whole rights and property of the community under the arbitrary will of the judge," arming him with "a despotic and sovereign authority," 1 J. Story,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2010 WL 2346549 (U.S.), 78 USLW 4555, 10 Cal. Daily Op. Serv. 7396, 2010 Daily Journal D.A.R. 8838
**(Cite as: 2010 WL 2346549 (U.S.))**

Commentaries on Equity Jurisprudence § 19, p. 19 (14th ed.1918). The danger is doubled when we disregard our own precedent, leaving only our own consciences to constrain our discretion. Because both the statute and *stare decisis* foreclose Holland's claim, I respectfully dissent.

U.S.,2010.
Holland v. Florida
--- S.Ct. ----, 2010 WL 2346549 (U.S.), 78 USLW 4555, 10 Cal. Daily Op. Serv. 7396, 2010 Daily Journal D.A.R. 8838

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.