# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Respondent, | ) | |
| v. | ) | No. 1:07-cv-00511 |
| | ) | |
| SHANNON WAYNE AGOFSKY, | ) | **CAPITAL CASE** |
| Movant. | ) | |

AMENDMENT TO PETITIONER'S
MOTION PURSUANT TO 28 U.S.C. § 2255

Petitioner, Shannon Wayne Agofsky, hereby amends his motion pursuant to 28 U.S.C. §

2255 to state the following:

**X.    MR. AGOFSKY'S PRIOR CONVICTION UNDER 18 U.S.C. § 924(C), WHICH SERVED AS AN AGGRAVATING FACTOR FOUND IN SUPPORT OF A DEATH SENTENCE, CANNOT BE SUSTAINED BECAUSE THE UNDERLYING BANK ROBBERY OFFENSE FAILS TO QUALIFY AS A "CRIME OF VIOLENCE."**

**A.    Introduction**

1.    One of the aggravating factors found by the jury in Mr. Agofsky's capital case

was his prior conviction in the Western District of Missouri under 18 U.S.C. § 924(c).  *See*

*United States v. Shannon Agofsky*, Special Verdict Form, D. Ct. No. 1:03-cr-173-01, Doc. Nos.

177, 180 (July 16, 2004) (attached as Exh. A).  Specifically, on November 23, 1992, Mr.

Agofsky was convicted of one count of using a firearm during and in relation to a "crime of

violence" in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count 3).  The count alleged that the

underlying "crime of violence" for the § 924(c) charge was bank robbery, in violation of 18

U.S.C. §§ 2113 (a), (d), and (e) (as alleged in Count 2 of the same indictment).[1]

---

[1] In 1992, 18 U.S.C. § 2113 provided, in relevant part:

2.  On June 26, 2015, the Supreme Court invalidated a provision of law directly analogous to § 924(c) on the ground that it violated due process. *Johnson v. United States*, 135 S. Ct. 2551 (2015). On April 18, 2016, in *Welch v. United States*, 136 S.Ct. 1257 (2016), the Court held that *Johnson* established a new substantive rule of constitutional law that is retroactive to cases on collateral review. In light of these decisions, Mr. Agofsky's conviction under § 924(c) is invalid because, post-*Johnson*, bank robbery categorically fails to qualify as a "crime of violence."[2]

---

(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or

Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny—

Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both….

(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

(e) Whoever, in committing any offense defined in this section, or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself from arrest or confinement for such offense, kills any person, or forces any person to accompany him without the consent of such person, shall be imprisoned not less than ten years, or punished by death if the verdict of the jury shall so direct.

[2] As explained in detail below, under the categorical approach, courts analyzing whether an offense constitutes a "crime of violence" under § 924(c)(3) or similar definitions look only to the elements of the statutory crime and not to the facts underlying a particular conviction. *See, e.g., United States v. Gonzalez-Longoria*, 813 F.3d 225, 231 (5th Cir. 2016), *reh'g en banc ordered,* 815 F.3d 186 (Feb. 26, 2016); *United States v. Fuertes,* 805 F.3d 485,498 (4th Cir. 2015); *United States v. Butler*, 496 Fed. Appx. 158, 161 n.4 (3d Cir. 2012); *Evans v. Zych*, 644 F.3d 447, 453 (6th Cir. 2011); *United States v. Serafin*, 562 F.3d 1104, 1108 (10th Cir. 2009); *United States v. Rodriguez*, 979 F.2d 138, 141 (8th Cir. 1992).

3. The relevant portion of § 924(c) defining a "crime of violence" has two clauses.[3] The first clause – § 924(c)(3)(A) – is commonly referred to as the force clause. The other – § 924(c)(3)(B) – is commonly referred to as the residual clause. The § 924(c) residual clause is materially indistinguishable from the Armed Career Criminal Act ("ACCA") residual clause (18 U.S.C. § 924(e)(2)(B)(ii)) that the Supreme Court struck down in *Johnson* as void for vagueness. It follows that the § 924(c) residual clause is likewise unconstitutionally vague. Hence, bank robbery cannot qualify as a "crime of violence" under the § 924(c) residual clause. Likewise, the form of bank robbery of which Mr. Agofsky was convicted categorically fails to qualify as a "crime of violence" under the remaining § 924(c) force clause because it does not have as a *necessary* element the *intentional* use, attempted use, or threatened use of *violent* physical force. Therefore, the "crime of violence" element of § 924(c) cannot be satisfied here, and a conviction cannot be constitutionally sustained under the statute.

4. Given the invalidity of Mr. Agofsky's prior conviction, a death sentence based in part on that conviction cannot stand. *See Johnson v. Mississippi*, 486 U.S. 578 (1988). Accordingly, Mr. Agofsky is entitled to a new capital penalty phase.

**B.     Procedural History**

5. Mr. Agofsky was convicted of two counts of murder in the United States District Court for the Eastern District of Texas under Indictment No. 1:03-cr-173 on July 8, 2004. The Superseding Indictment in the case, filed on February 19, 2004, charged, among other

---

[3] Under § 924(c)(3), "crime of violence" is defined as follows:

(3) For purposes of this subsection, the term "crime of violence" means an offense that is a felony and –
(A) has an element the use, attempted use, or threatened use of physical force against the person or property of another, or
(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

aggravating factors, that Mr. Agofsky had a previous conviction of a federal offense, punishable by more than one year, involving a firearm. *United States v. Shannon Agofsky*, Superseding Indictment, D. Ct. No. 1:03-cr-173-01 (Feb. 19, 2004) (attached as Exh. B). At the close of the penalty phase, the judge instructed the jury in relation to this charge that, as a matter of law, 18 U.S.C. § 924(c) is such an offense. Trial transcript, 7/15/04, at 300-01. The prosecutor then referred to the § 924(c) conviction multiple times in his penalty phase closing. *Id.* at 337, 369, 371. In its verdict returning a death sentence, the jury found that Mr. Agofsky's prior § 924(c) conviction constituted an aggravating circumstance. *See* Exh. A (Special Verdict Form).

6.    Mr. Agofsky appealed his conviction and sentence to the Court of Appeals for the Fifth Circuit under Docket No. 07-40330. That court denied relief, 516 F.3d 280 (5th Cir. 2008), and the Supreme Court denied certiorari on October 6, 2008. Mr. Agofsky's motion for relief from judgment, pursuant to 28 U.S.C. § 2255, is pending before this Court. Doc. Nos. 38, 50, 105. The Government's response and Mr. Agofsky's reply have been filed (Doc. Nos. 124, 133), and the parties have fully briefed a motion by the Government to strike certain claims. Doc. Nos. 112, 113, 117-20. On February 14, 2012, this Court entered an order granting Mr. Agofsky's unopposed motion to stay and hold these proceedings in abeyance to allow him to present newly available eyewitnesses and other evidence of his innocence of his prior Oklahoma murder conviction. Doc. 157.[4]

---

[4] Briefing has been completed in Oklahoma state court and the proceedings remain pending under Docket No. CRF-92-43 (Delaware Co.). The prosecutions in the Western District of Missouri and the Oklahoma state court stem from the same incident.

**C.    In Light Of *Johnson* And *Welch*, Mr. Agofsky's Conviction Cannot Be Sustained Under 18 U.S.C. § 924(c) Because The Underlying Bank Robbery Offense Fails To Qualify As A "Crime Of Violence."**

7.    Under § 924(c)(3), "crime of violence" is defined as follows:

(3) For purposes of this subsection, the term "crime of violence" means an offense that is a felony and –

(A) has an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The first clause, § 924(c)(3)(A), is the force clause. The other, § 924(c)(3)(B), is the residual clause. As discussed in the next sections, the form of bank robbery of which Mr. Agofsky was convicted categorically fails to qualify as a "crime of violence" under the residual clause because it is void for vagueness under *Johnson*. Likewise, the relevant bank robbery offense categorically fails to qualify as a "crime of violence" under the remaining force clause (§ 924(c)(3)(A)) because it does not have as a *necessary* element the *intentional* use, attempted use, or threatened use of *violent* physical force. Therefore, Mr. Agofsky's conviction under § 924(c) cannot be constitutionally sustained.

### 1.    Section 924(c)'s residual clause is unconstitutionally vague.

8.    Bank robbery cannot qualify as a "crime of violence" under § 924(c)(3)'s residual clause because the clause is void for vagueness under *Johnson*. In *Johnson*, the Supreme Court decided that the ACCA's residual clause ("otherwise involves conduct that presents a serious potential risk of physical injury to another") is unconstitutionally vague, but the decision equally applies to the parallel "crime of violence" definition in § 924(c)(3)'s residual clause. Indeed, the

5

Fifth, Seventh, and Ninth Circuits have each recently struck down an identical residual clause – 18 U.S.C. § 16(b) – as unconstitutionally vague in light of *Johnson*. *See United States v. Gonzalez-Longoria*, 813 F.3d 225 (5th Cir. 2016), *rehearing en banc ordered,* 815 F.3d 189 (Feb. 26, 2016) [5]; *United States v. Vivas-Ceja*, 808 F.3d 719 (7th Cir. 2015); *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015). Furthermore, relying on the same reasoning of these cases, a number of district courts have found that the § 924(c) residual clause is void for vagueness. *See United States v. Bell*, No. 15–00258, 2016 WL 344749, at *11-13 (N.D. Cal. Jan. 28, 2016); *United States v. Lattanaphom*, No. 99–CR–00433, 2016 WL 393545, at *3-6 (E.D. Cal. Feb. 2, 2016); *United States v. Edmundson*, No. 13–CR–15, 2015 WL 9311983, at *2-6 (D. Md. Dec. 23, 2015). This Court should do the same.

> a.   ***Johnson* expressly overruled the "ordinary case" approach to determining whether a felony qualifies as a "crime of violence."**

9.   In *Johnson*, the Supreme Court "began its analysis of the vagueness question by noting that the [ACCA] residual clause mandates the use of a two-step framework [under the categorical approach], to determine whether a crime is a violent felony." *Vivas-Ceja*, 808 F.3d at 721 (citing *Johnson,* 135 S. Ct. at 2557, 2562). "In the first step, the court must determine 'the kind of conduct that the crime involves in the ordinary case' as opposed to the facts on the ground in the defendant's prior case." *Id.* (quoting *Johnson*, 135 S. Ct. at 2557). The second step is also dependent on the ordinary case. Specifically, the "court must gauge whether that ordinary case of the crime presents a serious potential risk of physical injury." *Id.*

---

[5]  *In re Sherman Lamont Fields*, No. 16-50521 (5th Cir. June 17, 2016), rested on the petitioner's failure to satisfy the stringent procedural requirements for permission to file a successive § 2255 motion. Those requirements do not apply to this amendment.

10. The Supreme Court held that these "two features of the residual clause conspire to make it unconstitutionally vague." *Johnson*, 135 S. Ct. at 2557. To begin with, the Court held that it is impossible for a sentencing court to satisfy the first step because there is too much uncertainty about what constitutes the ordinary case of a crime. *Id.* The Court concluded that "the residual clause offers no reliable way to choose between [] competing accounts of what 'ordinary' . . . involves." *Id.* at 2558. Specifically, the Court explained that a statistical analysis of reported cases, expert evidence, Google, and gut instinct are all equally unreliable in determining the "ordinary case." *Id.* at 2557 (quoting *United States v. Mayer*, 560 F.3d 948, 952 (9th Cir. 2009) (Kozinski, C.J., dissenting from denial of rehearing en banc)). The Court then held that the second step of the residual clause is equally flawed because there is too much "'uncertainty about how much risk it takes' [*i.e.*, the quantum of risk] before a court can conclude that the 'ordinary case' of a crime is serious enough to be a violent felony." *Vivas-Ceja*, 808 F.3d at 722 (citing *Johnson,* 135 S. Ct. at 2558). The Court's reasoning on the second step did not turn on the type of risk, *i.e.* "serious potential risk of physical injury." Rather, like the first step, it turned on the doomed "ordinary case" inquiry: "It is one thing to apply an imprecise 'serious potential risk' standard to real-word facts; it is quite another to apply it to a judge imagined [ordinary case] abstraction." *Johnson*, 135 S. Ct. at 2558. The Court explained that it was not doubting the constitutionality of any statute which "require[s] gauging the riskiness of conduct in which an individual defendant engages *on a particular occasion*." *Id.* at 2561 (emphasis added). However, because under the ACCA residual clause the quantum of risk had to be assessed based on the ordinary case, the clause was constitutionally doomed. The Court held that the indeterminacy, unpredictability, and arbitrariness inherent in the "ordinary" case analysis is more than the "Due Process Clause tolerates." *Id.* at 2558.

11.     Thus, *Johnson* not only invalidated the ACCA residual clause, but it invalidated the "ordinary case" analysis and, by extension, all statutory provisions that compel such an analytical framework.  In other words, the only way to apply the residual clause is to use the "ordinary case" analysis, and the "ordinary case" analysis is impossible to apply in a constitutional manner.

### b.     *Johnson* means that § 924(c)(3)(B) is unconstitutionally vague.

12.     The statutory phrase at issue in this case is essentially the same as the ACCA residual clause.  To be sure, 18 U.S.C. § 924(e)(2)(B)(ii) and 18 U.S.C. § 924(c)(3)(B) are not identical.  In pertinent part, the ACCA residual clause defines a "violent felony" as an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another."  18 U.S.C. § 924(e)(2)(B)(ii).  Section 924(c)(3)(B) defines a crime of violence as one that "by its nature, involves a substantial risk that physical offense."  The risk at issue in the ACCA is a risk of injury, and the risk at issue in § 924(c) is a risk that force will be used.  However, this difference is immaterial to the due process problem and has no impact on the *Johnson* decision.  *Johnson* did not turn on the type of risk, but rather how a court assesses and quantifies the risk, which is the same under both the ACCA and § 924(c).  Both statutes require courts first to picture the "ordinary case" embodied by a felony, and then decide if it qualifies as a crime of violence by assessing the quantum of risk posed by the "ordinary case."  In fact, in analyzing the identically-worded 18 U.S.C. § 16(b) for purposes of determining its constitutionality post-*Johnson*, the Fifth Circuit in *Gonzalez-Longoria* noted that the parties did not dispute that the provision required the same ordinary case analysis as the ACCA.  813 F.3d at 231.  *See also Vivas-Ceja*, 808 F.3d at 722 (describing the difference between the ACCA residual clause and § 16(b) as "superficial" and finding that, like the ACCA, "§ 16(b) offers

courts no guidance to determine when the risk involved in the ordinary case of a crime qualifies as 'substantial'"); *Jimenez-Gonzales v. Mukasey*, 548 F.3d 557, 562 (7th Cir. 2008) (noting that, "[d]espite the slightly different definitions," the Supreme Court's respective analyses of the ACCA and § 16(b) "perfectly mirrored" each other); *United States v. Rodriguez*, 979 F.2d 138, 141 (8th Cir. 1992) (observing, in relation to § 16(b), that the provision requires that an offense be considered a crime of violence "by its nature" and concluding that "the term 'by its nature' would be rendered superfluous if the sentencing courts were saddled with the task of examining each individual offense committed to determine whether it actually involved substantial risk of physical force").

13.     Other courts have directly applied the "ordinary case" inquiry to the § 924(c) residual clause.  *See, e.g., Fuertes*, 805 F.3d at 500 n.6; *United States v. Naughton*, 621 Fed. App'x. 170, 178 (4th Cir. Sept. 2, 2015).  Thus, as Judge Grimm explained in *Edmundson*, the "§ 924(c) residual clause suffers from exactly the same double indeterminacy as the ACCA residual clause." *Edmundson*, 2015 WL 9311983, at *4.

14.     It is also noteworthy that in litigating *Johnson*, the Government, through the Solicitor General, agreed that the phrases at issue in *Johnson* and under §924(c)'s residual clause pose the same problem.  Specifically, upon recognizing that the definitions of a "crime of violence" in both § 924(c)(3)(B) and § 16(b) are identical, the Solicitor General stated:

> Although Section 16 refers to the risk that force will be used rather than that injury will occur, it is equally susceptible to petitioner's central objection to the residual clause: Like the ACCA, Section 16 requires a court to identify the ordinary case of the commission of the offense and to make a commonsense judgment about the risk of confrontations and other violent encounters.

*Johnson v. United States*, S. Ct. No. 13-7120, Supplemental Brief of Respondent United States at 22-23 (available at 2015 WL 1284964 at *22-*23) (March 30, 2015).  The Solicitor General was

9

right.  Section 924(c)(3)(B) and the ACCA are essentially the same and contain the same flaws. This Court should hold the Government to its sound concession.

15.    In sum, § 924(c)(3)(B) requires the "ordinary case" analysis to assess the risk involved in a predicate offense, and how risky that ordinary case is.  *Fuertes*, 805 F.3d at 500 n.6; *Edmundson*, 2015 WL 9311983, at *4.  Since these are the identical analytical steps that brought down the ACCA residual clause, § 924(c)(3)(B) cannot survive constitutional scrutiny under the due process principles reaffirmed in *Johnson*.  As a consequence, the residual clause cannot be used to support a conviction under § 924(c).

### 2.    Bank robbery categorically fails to qualify as a "crime of violence" under the force clause.

### a.    The categorical approach applies in determining whether an offense qualifies as a "crime of violence" under the force clause.

16.    In determining whether an offense qualifies as a "crime of violence" under the force clause, sentencing courts must employ the categorical approach.  *See Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013).  Although *Descamps* involved the categorical approach to the ACCA, this same categorical approach applies in determining whether an offense qualifies as a "crime of violence" under 18 U.S.C. § 924(c).  *See United States v. Villegas-Hernandez*, 468 F.3d 874, 878 (5th Cir. 2006) (applying categorical approach to determine whether an offense is a "crime of violence" under 18 U.S.C. § 16(a), which is identical to § 924(c)(3)(A)).  This approach requires that courts "look only to the statutory definitions – *i.e.*, the elements – of a defendant's [offense] and not to the particular facts underlying [the offense]" in determining whether the offense qualifies as a "crime of violence."  *Descamps*, 133 S. Ct. at 2283 (citation omitted).  *See also Villegas-Hernandez*, 468 F.3d at 878.

17. Significantly, under the categorical approach, an offense can only qualify as a "crime of violence" if all of the criminal conduct covered by a statute – "including the most innocent conduct" – matches or is narrower than the "crime of violence" definition. *United States v. Torres-Miguel*, 701 F.3d 165, 167 (4th Cir. 2012). *See also Villegas-Hernandez*, 468 F.3d at 879 ("If *any set of facts* would support a conviction without proof of [the use of force], then the component most decidedly is not an element – implicit or explicit – of the crime.'") (emphasis added); *Ortiz v. Lynch*, 796 F.3d 932, 935 (8th Cir. 2015) (holding that, to determine whether obstruction of legal process is a crime of violence under § 16, court "must presume [Ortiz's] conviction rested upon [nothing] more than the least of th[e] acts criminalized" by the statute) (quoting *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013)) (alterations in original); *United States v. Kelly*, 422 F.3d 889, 894 (9th Cir. 2005) ("[T]he question is not whether, based on the facts in 'most cases' in which convictions are obtained under the statute, the conduct was a 'violent felony' under federal law. Rather, the question is whether all conduct – including the most innocent conduct – prohibited by the state statute qualifies as a 'violent felony.'").

18. As a result, post-*Descamps*, for an offense to qualify as a "crime of violence" under the force clause, the offense must *necessarily* have as an element the use, attempted use, or threatened use of "physical force" against another person. 18 U.S.C. § 924(c)(3)(A).

### i. The force clause requires (1) an *intentional* use or threat of (2) *violent* physical force.

19. As applied, the force clause requires not only that the predicate offense have, as an element, "the use, attempted use, or threatened use of physical force." Rather, there are "two additional requirements" that must necessarily be met under the categorical approach: (i) the use of force "*must be intentional*, not just reckless or negligent;" and (ii) the "physical force" used, threatened, or attempted must be "*violent force*," or "force capable of causing physical pain or

11

injury to another person." *United States v. Dixon*, 805 F.3d 1193, 1197 (9th Cir. 2015) (emphasis added).

### ii. The use or threat of violence must be intentional.

20. A predicate offense does not constitute a crime of violence under the force clause if it can be committed without the intentional use or threat of physical force. *Id. See also United States v. Vargas-Duran*, 356 F.3d 598, 602-05 (5th Cir. 2004) (en banc).

21. Thus, for instance, in *Vargas-Duran*, the Fifth Circuit held that a statute criminalizing "intoxication assault," which may be committed by means of accidentally causing serious bodily injury to another while intoxicated, was not a crime of violence under a provision of the Sentencing Guidelines that is the material equivalent of § 924(c)(3)(a). In reaching this conclusion, the court stressed that the definition of crime of violence requires that the offense have, as an element, the "use, attempted use, or threatened use of physical force." *Id.* at 602. It then concluded that the "plain meaning of the word 'use' requires intent," and that the same is true when the word "use" is modified by "attempted" or "threatened":

> Were we to interpret "use of force" inconsistently with its plain meaning – that is, as capable of being performed without intent – we would effectively nullify the state of mind required by "attempted use" and "threatened use." For how could one intentionally attempt to unintentionally use force, or intentionally threaten to unintentionally use force? The force, so to speak, of this rhetorical question only bolsters our belief that "use" requires intent.

*Id*. at 603. The Tenth Circuit has also expressly held that the intent requirement of the force clause applies not only to the use of force, but also to the threatened use of force. *United States v. King*, 979 F.2d 801, 803 (10th Cir. 1992). There, the court determined that conspiracy does not constitute a violent felony because the "threatened use of physical force" means "both an intent to use force and a communication of that intent." *Id*. (citing Black's Law Dictionary 1480 (6th ed. 1990)).

22.    Likewise, in *Dixon*, the Ninth Circuit determined that a California robbery statute that criminalized the taking of property "by means of force or fear" did not constitute a violent felony under the ACCA's force clause because it could be committed through accidental use of force. *Dixon*, 805 F.3d at 1197. Specifically, the court cited to a prior case in which the defendant was convicted under the relevant statute after he stole an unoccupied car from a parking garage and, in the course of speeding away from the scene, unintentionally ran over the owner of the car. Notably, in reaching the conclusion that the statute was not a violent felony, the Ninth Circuit acknowledged that "the facts underlying the vast majority of convictions" under the statute would "likely" meet the test under the force clause. *Id.* However, because the "categorical approach is an 'elements-based inquiry,' not an 'evidence-based one,'" even a single example showing that the statute could "realistically" be violated in a manner not covered by the test means that the statute "is not categorically" a violent felony. *Id.* at 1197-98.

23.    Courts have taken the same approach applied in *Vargas-Duran* and *Dixon* in cases involving § 16(a). In fact, in *Vargas-Duran*, the Fifth Circuit referenced an earlier case in which it had determined, without significant discussion, that injury to a child was not a crime of violence under § 16(a) and noted that its interpretation of crime of violence in that case is "consistent with our view that 'use of force' requires intent." 356 F.3d at 605. *See also United States v. Torres-Villalobos*, 487 F.3d 607, 615 (8th Cir. 2007) ("[O]ffenses that have no *mens rea* component or require only a showing of negligence are not crimes of violence under § 16."); *Garcia v. Gonzales*, 455 F.3d 465, 468 (4th Cir. 2006) (holding that, because the definition of second-degree assault "does not contain an element that there be the intentional employment of physical force against a person or thing," it "is beyond the scope of 18 U.S.C. § 16(a)"). Thus,

13

the same approach would also be warranted in cases involving the identically-worded § 924(c)(3)(a).

### iii. The physical force used or threatened must be violent force.

24.    As to the second additional requirement of the force clause, the Supreme Court has made clear that "physical force" means "*violent* force" – that is "strong physical force," which is "capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) (emphasis in original). *Accord Villegas-Hernandez*, 468 F.3d at 879 ("[T]he term force has a specific meaning and, when used in the statutory definition of a crime of violence, is synonymous with destructive or violent force.") (internal quotations omitted). Hence, in *Villegas-Hernandez*, the Fifth Circuit held that a statute criminalizing "intentionally, knowingly, or recklessly caus[ing] bodily injury to another" was not a crime of violence under § 16(a) because a conviction could be sustained under the statute "without proof of the use of 'destructive or violent' force." *Id.* Similarly, the Fourth Circuit recently held that North Carolina common law robbery, which may be committed by "violence or fear," is not a crime of violence under the force clause of the ACCA because, even under a scenario involving commission by violence, the offense may be carried out through mere "*de minimis* contact." *United States v. Gardner*, No. 14-4533, 2016 WL 2893881, at *6 (4th Cir. May 18, 2016).

### b. Federal bank robbery under 18 U.S.C. § 2113(a) does not constitute a "crime of violence" because it does not require (1) an *intentional* threat of (2) *violent* physical force.

25.    Federal bank robbery, as defined by § 2113(a), may be committed where an individual:

> . . . by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care,

14

custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or

. . . enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny.

18 U.S.C. § 2113(a).

26.     Thus, applying the categorical approach, § 2113(a) will only constitute a crime of violence if entering a bank with the intent to commit larceny – the most innocent conduct criminalized by the statute – necessarily involves the intentional use or threatened use of violent physical force.  Larceny, "[a]s commonly used," requires simply "taking and carrying away another's property."  *Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754, 1760 (2013) (citing LaFave, Criminal Law §19.5).  Because one can easily imagine an almost endless list of scenarios under which this could be accomplished without the intentional use or threatened use of violent physical force, § 2113(a) is not categorically a violent crime.

27.     Even looking strictly to the first paragraph of § 2113(a), bank robbery may be committed by intimidation alone, which does not necessarily involve the intentional use or threatened use of violent physical force.  *See United States v. Emery*, 682 F.2d 493, 497 (5th Cir. 1982) ("A person violates 18 U.S.C. s 2113(a) when he takes money from a bank through force or intimidation.  Bank robbery under this section is a general intent and not a specific intent crime.").  Thus, for instance, the Eighth Circuit upheld a conviction under § 2113(a) even though there was no evidence that the defendant intended to put the teller in fear of *any* type of injury: the defendant did not make any sort of physical movement toward the teller and never presented her with a note demanding money, never displayed a weapon of any sort, never claimed to have

15

a weapon, and by all accounts, did not appear to possess a weapon.  *See United States v. Yockel*, 320 F.3d 818 (8th Cir. 2003).  The *Yockel* court explained:

> As intimidation is measured, in this circuit, under an objective standard, whether or not Yockel *intended* to intimidate the teller *is irrelevant* in determining his guilt.  We find. . . that "the intimidation element of section 2113(a) is satisfied if 'an ordinary person in [the teller's] position reasonably could infer a threat of bodily harm from the [Yockel's] acts,' whether or not [Yockel] actually intended the intimidation."

*Id.* at 824 (quoting *United States v. Woodrop*, 86 F.3d 359, 364 (4th Cir. 1996)) (emphasis added).  *See also United States v. Kelley*, 412 F.3d 1240, 1244 (11th Cir. 2005) ("Whether a particular act constitutes intimidation is viewed objectively, . . . and a defendant can be convicted under [federal bank robbery] even if he did not intend for an act to be intimidating."); *United States v. Foppe*, 993 F.2d 1444, 1451 (9th Cir. 1993) (same).  In other words, a defendant may be found guilty of federal bank robbery as long as the victim reasonably fears injury from the defendant's actions – whether or not the defendant actually intended to create that fear.

28.     Furthermore, in terms of the necessary level of force, intimidation requires only that the victim "infer a threat of bodily harm from the bank robber's words and actions."  *Yockel*, 320 F.3d at 824.  *See also United States v. Higdon*, 832 F.3d 312, 315 (5th Cir. 1987) (same).  In *Higdon*, the defendant challenged his conviction under § 2113(a) on the ground that the statute requires "an express threat of bodily injury during the robbery, either by display of a weapon or by verbal threats," but the Fifth Circuit disagreed.  *Higdon*, 832 F.3d at 314-15.  Instead, the court held that "intimidation results when one individual acts in a manner that is reasonably calculated to put another in fear," *id.* at 315, something that could easily be accomplished absent the use or threat of violent force.  Hence, even assuming that the act of placing another in fear of bodily harm constitutes a threat of physical injury, it still fails to qualify as a "crime of violence" under the force clause because it does not require the actual use or threatened use of "violent

16

force" against another.  *See, e.g., United States v. Cruz-Rodriguez*, 625 F.3d 274, 276-77 (5th Cir. 2010) (because California "terroristic threats" statute could be satisfied without threatened physical force against another person, conviction did not qualify as crime of violence under Sentencing Guidelines); *United States v. De La Rosa-Hernandez*, 264 F. App'x 446, 448-49 (5th Cir. 2008) (because Texas assault statute "does not . . . require that the threatened criminal act involve the use of destructive or violent force," conviction does not qualify as crime of violence under Guidelines); *United States v. Gracia-Cantu*, 302 F.3d 308, 311 (5th Cir. 2002) (statute criminalizing, *inter alia*, bodily injury to a child, not a crime of violence under § 16(a) because it "does not require that the perpetrator actually use, attempt to use, or threaten to use physical force against a child").

29.    In sum, whether committed via entry with intent to commit larceny or through intimidation, federal bank robbery under § 2113(a) does not constitute a crime of violence because it may be committed without the intentional use or threatened use of violent force.[6]

### c.    Sections 2113(d) and (e) also fail to qualify as crimes of violence.

#### i.    Because § 2113(a) is not a crime of violence, §§ 2113(d) and (e) do not apply.

30.    Subsections (d) and (e) of § 2113 provide as follows:

(d) Whoever, in committing, or in attempting to commit, *any offense defined in subsections (a) and (b) of this section*, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined under this title or imprisoned not more than twenty-five years, or both.

---

[6] It is worth noting that in a recent case before the Maryland District Court, the government conceded that Maryland common law robbery – which is very similar to § 2113(a) and can be committed through intimidation alone – does not qualify as a "violent felony" under the ACCA force clause. *See* Br. of Appellee, at 73, *United States v. Louis Martin*, No. 14-4779 (4th Cir. Sept. 14, 2015).  *See also Coles v. State*, 821 A.2d 389, 397 (Md. 2003) (finding that Maryland robbery's "intimidation" element is the same as that in federal bank robbery).

17

(e) Whoever, *in committing any offense defined in this section*, or in avoiding or attempting to avoid apprehension *for the commission of such offense*, or in freeing himself or attempting to free himself from arrest or confinement *for such offense*, kills any person, or forces any person to accompany him without the consent of such person, shall be imprisoned not less than ten years, or if death results shall be punished by death or life imprisonment.

18 U.S.C. §§ 2113(d) and (e) (emphasis added).

31.     Under these definitions, each subsection is dependent, in this case, on the commission or attempted commission of bank robbery under § 2113(a).  To be sure, the subsections are commonly referred to as "sentencing enhancements" of bank robbery.  *See, e.g., United States v. Duffey*, 456 F. App'x 434, 442 (5th Cir. 2012) (referring to § 2113(d) as a "sentencing enhancement"); *United States v. Carr*, 761 F.3d 1068, 1078 n.2 (9th Cir. 2014) (referring to § 2113(e) as a "sentencing enhancement").  As a result, the fact that § 2113(a) does not meet the definition of crime of violence means that §§ 2113(d) and (e), a priori, cannot be considered under § 924(c)(3).

### ii.     In any event, neither §§ 2113(d) nor (e) requires an intentional use or threatened use of violent force.

### (i)     Section 2113(d)

32.     As stated above, § 2213(d) is violated when the defendant "assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device."  The government may prove either that the defendant assaulted another person by the use of a dangerous weapon or device, or that he put another person's life in jeopardy by the use of a dangerous weapon or device; it need not prove both.  Modern Federal Jury Instructions, 53-14.

33.     This provision cannot constitute a crime of violence because, as an initial matter, a defendant may violate § 2113(d) without *any intent* to threaten or use physical force.  *See Morrow v. United States*, 408 F.2d 1390, 1391 (8th Cir. 1969) (holding that the test under §

18

2113(d) "is an objective one," with the only relevant inquiry being "whether [the victim's] life was put in danger by the use of a dangerous weapon"). Indeed, a defendant can violate the provision merely by carrying a gun during the bank robbery because "he feels secure with it," even though he has no intent to intimidate another. *United States v. Martinez-Jimenez*, 864 F.2d 664, 667 (9th Cir. 1989). No nexus is required between the weapon and the intimidation required under § 2113(a). He or she "need not brandish" the weapon "in a threatening manner" or "make assaultive use of the device." *Id.; see also United States v. Bennett*, 675 F.2d 596, 599 (4th Cir. 1982) ("A weapon openly exhibited by a robber during a robbery" without more is sufficient to constitute a violation under § 2113(d)). Therefore, armed robbery under § 2113(d) fails to satisfy the necessary intentional *mens rea* under the force clause.

34.     Furthermore § 2113(d) does not necessarily require the use or threatened use of *violent* force. First, "[u]se of a dangerous weapon" means "brandishing, displaying, *or even referring to the weapon*." Modern Federal Jury Instructions, 53-14 (emphasis added). Second, assaulting another person by the use of a dangerous weapon or device can be accomplished by "inflict[ing] or attempt[ing] to threaten to inflict physical harm on [a] person by the immediate use of a dangerous weapon." *Id.* "Dangerous weapon," in turn, is broadly defined as "anything capable of inflicting serious bodily harm or injury upon another person." *Id.* Nothing in these definitions requires *violent* physical force. *Cf. Fortes v. Mukasey*, 256 F. App'x 715, 717 (5th Cir. 2007) ("The 'physical force' required by § 16 is 'destructive or violent force.' It does not encompass indirect acts, such as luring a poor swimmer into a strong undertow or otherwise causing a person harm through subterfuge.") (internal citations omitted). Finally, putting lives in jeopardy is "simply a question of whether the lives of the victims are put in danger because jeopardy means danger." *United States v. Cobbs*, 481 F.2d 196, 201 (3d Cir. 1973). Notably, a

jury "may find that the jeopardy exists from the use of a deadly weapon during a robbery, even if there was no discharge of the weapon or the placing of it against the body." *Id.* Again, there is no requirement of violent physical force.

35.    For these reasons, armed bank robbery under § 2113(d) is not a "crime of violence" under the force clause.

### (ii)    Section 2113(e)

36.    The last offense incorporated in Mr. Agofsky's conviction in Count 3, 18 U.S.C. § 2113(e), requires that, in the course of committing a robbery or eluding punishment for the offense, the defendant either kill a person or force a person "to accompany him without the consent of such person." The offense contains no scienter requirement other than "'knowingly' committing the underlying bank robbery." *United States v. Jackson*, 736 F.3d 953, 958 (10th Cir. 2013). Thus, Circuit Courts of Appeal have repeatedly found that § 2113(e) does not require proof that the defendant intended to commit the act of killing or forced accompaniment criminalized by the statute. *See, e.g., United States v. Vance*, 764 F.3d 667, 675 (7th Cir. 2014) ("[It is] irrelevant that Vance appears not to have intended to kill the teller in the second bank robbery. . . . It is reasonably clear that the language we quoted from [§ 2113(e)] dispenses with any requirement of proving intent to kill."); *United States v. Walker*, 919 F.2d 501, 502 (8th Cir. 1990) (upholding conviction for forced accompaniment under § 2113(e) where teller drove defendant from crime scene pursuant to an instruction from bank manager to "give a customer a ride" and evidence showed she felt "compelled" to do so, even though defendant "never exhibited the weapon to the teller" or "made any threatening gestures"); *United States v. Strobehn*, 421 F.3d 1017, 1019 (9th Cir. 2005) ("[T]he statute plainly, and only, requires accompaniment that is forced and without consent.").

37.     Given that § 2113(e) does not require an intent to commit the very acts criminalized therein, the statute cannot be read to require an intent to use or threaten violent force, which is not even referenced.  As a result, it categorically fails to qualify as a "crime of violence."

**D.      Mr. Agofsky Is Entitled To A New Capital Penalty Phase.**

**1.      The legal standard.**

38.     The Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a "need for reliability in the determination that death is the appropriate punishment in a specific case."  *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976).  Accordingly, capital sentencing decisions cannot be made on "factors that are constitutionally impermissible or totally irrelevant to the sentencing process."  *Zant v. Stephens*, 462 U.S. 862, 884-885 (1983).

39.     Applying these principles, the Supreme Court held in *Johnson v. Mississippi* that a death sentence must be reversed if it was based "on a reversed conviction."  *Johnson v. Mississippi*, 486 U.S. at 585.  In that case, the defendant had been sentenced to death based, in part, on a prior conviction for assault which was overturned after the defendant was sentenced to death.  *Id.* at 581.  Even though there were aggravating circumstances unrelated to the assault conviction that remained undisturbed, the Supreme Court held that a new sentencing was constitutionally required because the jury considered the subsequently invalidated prior conviction, this conviction "provided no legitimate support for the death sentence imposed on Petitioner," and there was "a possibility that the jury's belief that petitioner had been convicted of a prior felony would be 'decisive' in the choice between a life sentence and a death sentence."  *Id.* at 586 (internal citations omitted).

21

40.     The need for a resentencing when a prior conviction is subsequently invalidated is reinforced by the sentencing package doctrine.  Under sentencing package theory, courts have recognized that convictions cannot be viewed in isolation for the purposes of sentencing, but as an entire "sentencing package."  *See, e.g.*, *United States v. Bass*, 104 F. App'x 997, 1000 (5th Cir. 2004).  Thus, as the Fifth Circuit explained in *Bass*, when one count of a multicount conviction is reversed, "the result is an 'unbundled' sentencing package."  *Id.*  This result, in turn, requires resentencing, as "the reversal of convictions underlying some, but not all, of the sentences renders the sentencing package ineffective in carrying out the. . . sentencing intent as to any one of the sentences on the affirmed convictions."  *Id.*

> **2.     The jury's consideration of Mr. Agofsky's § 924(c) convictions was not harmless.**

41.     The prosecutor not only charged Mr. Agofsky's § 924(c) conviction as an aggravating circumstance, but also repeatedly referred to the conviction in his penalty phase closing argument.  First, the prosecutor referred to the conviction in reviewing the charged aggravators, saying that Mr. Agofsky had been convicted under § 924(c) for "using a firearm in the commission of a violent crime" and reminding the jury that it had the judgment and conviction for this crime and could "look at it."  Trial transcript, 7/15/04 at 337.  The prosecutor again referred to the § 924(c) conviction in arguing to the jury that a life sentence would be an insufficient punishment for Mr. Agofsky.  *Id.* at 369.  He also referred to it as part of a "chronology" of Mr. Agofsky's "misconduct."  *Id.* at 371.  Thus, this case is similar to *Johnson v. Mississippi*, in which the Court found:

> It is apparent that the New York conviction provided no legitimate support for the death sentence imposed on petitioner.  It is equally apparent that the use of that conviction in the sentencing hearing was prejudicial.  The prosecutor repeatedly urged the jury to give it weight in connection with its assigned task of balancing aggravating and mitigating circumstances "one against the other."  Even without

22

> that express argument, there would be a possibility that the jury's belief that petitioner had been convicted of a prior felony would be "decisive" in the "choice between a life sentence and a death sentence."

*Id.* at 586 (internal citation omitted).

42.    Furthermore, it is reasonable to assume that the presence of this aggravating factor played a significant role in the jury's decision to return the death penalty in Mr. Agofsky's case, because the jury had expressly found that Mr. Agofsky had *not* intentionally caused the death for which he was on trial, but rather had only intentionally caused his serious bodily injury, resulting in his death. Trial transcript, 7/16/04 at 386-87. Hence, the fact that one of those aggravating factors is invalid cannot be considered harmless. *See Sawyer v. Butler*, 881 F.2d 1273, 1304-05 (5th Cir. 1989) (King, J., dissenting) ("Prejudice is assumed. . . when an aggravating factor is premised on incorrect or invalid evidence. . . .").

43.    Moreover, the universe of factors upon which the jury relied in imposing the death penalty has dramatically shifted; that is, the sentencing package that Mr. Agofsky's jury considered has unraveled. There is "a possibility that the jury's belief that petitioner had been convicted of a prior felony was 'decisive' in the 'choice between a life sentence and a death sentence.'" *Johnson v. Mississippi*, 486 U.S. at 586 (internal citations omitted). Accordingly, Mr. Agofsky is entitled to a new sentencing proceeding.

### E.    CONCLUSION

44.    Because Mr. Agofsky's conviction under § 924(c) is constitutionally invalid, the jury's reliance on the conviction in its decision to sentence Mr. Agofsky to death was impermissible.  As such, the death sentence cannot stand and Mr. Agofsky is entitled to a new penalty phase.  This Court must therefore grant relief on this ground, independently and in combination with the other claims in Mr. Agofsky's § 2255 motion.

Respectfully submitted,

 /s/  Jennifer A. Merrigan
JENNIFER A. MERRIGAN
MO Bar No. 56733
PO Box 63928
Philadelphia Pa  19147
(816) 695-2214 (Tel.)
j.merrigan@phillipsblack.org

Counsel for Petitioner


Respectfully submitted,

 /s/ Claudia Van Wyk
CLAUDIA VAN WYK
PA Bar No. 95130
Assistant Chief
Federal Community Defender Office
Capital Habeas Unit
601 Walnut Street, Suite 545W
Philadelphia, PA 19081
Telephone (215) 928-0520
Facsimile (215) 928-0826

Counsel for Petitioner


Dated: June 22, 2016

## CERTIFICATE OF SERVICE

I certify that on June 22, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following: **Traci Lynne Kenner**, U.S. Attorney's Office, 110 North College, Suite 700, Tyler, TX 75702; **Joseph Robert Batte,** U.S. Attorney's Office- Beaumont, 350 Magnolia, Suite 150, Beaumont, TX 77701, and **Jeffrey A. Zick**, Trial Attorney, U.S. Department of Justice, Criminal Division, 1331 F. Street NW, 6th Floor, Washington, D.C. 20530.

/s/ Claudia Van Wyk
CLAUDIA VAN WYK
*Counsel for Movant*

# EXHIBIT A

10:39 **FILED**
AM. July 16 20 04
DAVID J. MALAND, CLERK
U.S. DISTRICT COURT
By___BC___
DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

UNITED STATES OF AMERICA          *

           v.                     *          CRIMINAL NO. 1:03-CR-173

SHANNON WAYNE AGOFSKY            *

### SPECIAL VERDICT FORM - SECTION I
### DEFENDANT'S AGE

Instruction: Answer "YES" or "NO." Do you, the jury, unanimously find that the

Government has established beyond a reasonable doubt that:

The defendant, Shannon Wayne Agofsky, was eighteen years of age or older at the time

of the offense?

A.     As to Count I of the Superseding Indictment:

                                              YES ___✓___
                                              NO _____

_Pete Martin_
Foreperson

B.     As to Count II of the Superseding Indictment:

                                              YES ___✓___
                                              NO _____

_Pete Martin_
Foreperson

-1-

Instructions: If you answered "NO" with respect to the determination in this section, then stop your deliberations, cross out Special Verdict Forms Sections II, III, IV, V and VI, and proceed to Special Verdict Form - Section VII. Each juror should then carefully read the statement in Special Verdict From - Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision. You should then advise the court that you have reached a decision.

If you answered "YES" with respect to the determination in this Special Verdict Form - Section I, then proceed to Special Verdict Form-Section II which follows.

-2-

601

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | CRIMINAL NO. 1:03-CR-173 |
| SHANNON WAYNE AGOFSKY | * | |

## SPECIAL VERDICT FORM - SECTION II
## REQUISITE MENTAL STATE

Instructions: For each of the following, answer "YES" or "NO." You may consider and find more than one requisite mental state factor.

1. Do you, the jury, unanimously find that the Government has established beyond a reasonable doubt that the defendant, Shannon Wayne Agofsky, intentionally killed the victim, Luther Plant?

A.    As to Count I of the Superseding Indictment:

YES _____

NO ___✓___

_Pete Martin_
Foreperson

B.    As to Count II of the Superseding Indictment:

YES _____

NO ___✓___

_Pete Martin_
Foreperson

-3-

601

2. Do you, the jury, unanimously find that the Government has established beyond a reasonable doubt that the defendant, Shannon Wayne Agofsky, intentionally inflicted serious bodily injury that resulted in the death of Luther Plant?

A.    As to Count I of the Superseding Indictment:

YES ____✓____
NO _____

Foreperson

B.    As to Count II of the Superseding Indictment:

YES ____✓____
NO _____

Foreperson

3. Do you, the jury, unanimously find that the Government has established beyond a reasonable doubt that the defendant, Shannon Wayne Agofsky, intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, and that the victim, Luther Plant, died as a direct result of the act?

A.    As to Count I of the Superseding Indictment:

YES ____✓____
NO _____

Foreperson

-4-

B.      As to Count II of the Superseding Indictment:

*Pete Martin*
Foreperson

YES  ✓
NO  _____

4. Do you, the jury, unanimously find that the Government has established beyond a reasonable doubt that the defendant, Shannon Wayne Agofsky, intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, such that participation in the act constituted a reckless disregard for human life and that the victim, Luther Plant, died as a direct result of the act?

A.      As to Count I of the Superseding Indictment:

*Pete Martin*
Foreperson

YES  ✓
NO  _____

B.      As to Count II of the Superseding Indictment:

*Pete Martin*
Foreperson

YES  ✓
NO  _____

Instructions:  If you answered "NO" with respect to all of the determinations in this section, then stop your deliberations, cross out Special Verdict Forms - Sections III, IV, V and VI, and proceed to Special Verdict Form -Section VII of these Instructions. Each juror should carefully read the statement in Special Verdict Form Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which you reached your decision. You

-5-

should then advise the court that you have reached a decision.

If you answered "YES" with respect to one or more of these determinations in this Special Verdict Form - Section II, then proceed to Special Verdict Form - Section III which follows.

-6-

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

UNITED STATES OF AMERICA       *

        v.                              *        CRIMINAL NO. 1:03-CR-173

SHANNON WAYNE AGOFSKY       *

## SPECIAL VERDICT FORM - SECTION III
## STATUTORY AGGRAVATING FACTORS

Instructions:  For each of the following, answer "YES" or "NO."  You may consider and find more than one statutory aggravating factor.

1.     Do you, the jury, unanimously find that the Government has established beyond a reasonable doubt that the defendant Shannon Wayne Agofsky, in committing the offense(s), the death or injury resulting in death of Luther Plant occurred during the commission of an offense under 18 U.S.C. §1118 (prisoners serving life term)?

A.     As to Count I of the Superseding Indictment:

_Pete Martin_
Foreperson

YES ✓

NO _____

B.     As to Count II of the Superseding Indictment:

_Pete Martin_
Foreperson

YES ✓

NO _____

-7-

601

2.      Do you, the jury, unanimously find that the Government has established beyond a reasonable doubt that the defendant, Shannon Wayne Agofsky, committed the offense(s) after previously being convicted of a federal offense punishable by a term of imprisonment of more than 1 year, involving the use, attempted use, or threatened use of a firearm, as defined in 18 U.S.C. §921, against another person?

   A.      As to Count I of the Superseding Indictment:


Foreperson

YES ____✓____

NO _____

   B.      As to Count II of the Superseding Indictment:


Foreperson

YES ____✓____

NO _____

3.      Do you, the jury, unanimously find that the Government has established beyond a reasonable doubt that the defendant, Shannon Wayne Agofsky, committed the offense(s) after previously being convicted of a federal offense resulting in the death of another for which a sentence of life imprisonment was authorized by statute?

   A.      As to Count I of the Superseding Indictment:


Foreperson

YES ____✓____

NO _____

-8-

B.    As to Count II of the Superseding Indictment:

YES  ✓

NO _____

_Foreperson_

4.    Do you, the jury, unanimously find that the Government has established beyond a reasonable doubt that the defendant, Shannon Wayne Agofsky, committed the offense(s) in an especially heinous, cruel, or depraved manner, in that it involved serious physical abuse to the victim, Luther Plant?

A.    As to Count I of the Superseding Indictment:

YES  ✓

NO _____

_Foreperson_

B.    As to Count II of the Superseding Indictment:

YES  ✓

NO _____

_Foreperson_

Instructions:    If you answered "NO" with respect to all of the Statutory Aggravating Factors in this Special Verdict Form - Section III, then stop your deliberations, cross out Special Verdict Forms - Sections IV, V, and VI, and proceed to Special Verdict Form - Section VII of these forms. Each juror should then carefully read the statement in Special Verdict Form -

-9-

Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision. You should then advise the court that you have reached a decision.

If you answered "YES" with respect to one or more of the aggravating factors in this Special Verdict Form - Section III, then proceed to Special Verdict Form -Section IV which follows.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

UNITED STATES OF AMERICA      *

           v.                  *       CRIMINAL NO. 1:03-CR-173

SHANNON WAYNE AGOFSKY      *

## SPECIAL VERDICT FORM - SECTION IV
## NON-STATUTORY AGGRAVATING FACTORS

Instructions:  For each of the following, answer "YES" or "NO."  You may consider and find more than one non-statutory aggravating factor.

1.      Do you, the jury, unanimously find that the Government has established beyond a reasonable doubt that the defendant, Shannon Wayne Agofsky, represents a continuing danger to lives and safety of other persons?

A.      As to Count I of the Superseding Indictment:

YES __✓__
NO _____

Foreperson

B.      As to Count II of the Superseding Indictment:

YES __✓__
NO _____

Foreperson

-11-

2.      Do you, the jury, unanimously find that the Government has established beyond a reasonable doubt that the defendant, Shannon Wayne Agofsky, has a significant history of disciplinary violations while he has been incarcerated including threatening another inmate with his fists and then stomping on the inmate's head until he was rendered unconscious, being involved in a riot among a group of inmates, and on at least two occasions prior to Luther Plant's murder being found in possession of handmade metal weapons?

A.      As to Count I of the Superseding Indictment:

*Pete Martin*
Foreperson

YES     ✓
NO      _____

B.      As to Count II of the Superseding Indictment:

*Pete Martin*
Foreperson

YES     ✓
NO      _____

3.      Do you, the jury, unanimously find that the Government has established beyond a reasonable doubt that, after commission of the offense charged in the Indictment, the defendant, Shannon Wayne Agofsky, demonstrated utter lack of remorse over having committed the offense?

-12-

601

A.    As to Count I of the Superseding Indictment:

*[signature]*
Foreperson

YES ___✓___
NO _____

B.    As to Count II of the Superseding Indictment:

*[signature]*
Foreperson

YES ___✓___
NO _____

4.    Do you, the jury, unanimously find that the Government has established beyond a reasonable doubt that the defendant, Shannon Wayne Agofsky, has prior criminal convictions for interstate transportation of stolen property?

A.    As to Count I of the Superseding Indictment:

*[signature]*
Foreperson

YES ___✓___
NO _____

B.    As to Count II of the Superseding Indictment:

*[signature]*
Foreperson

YES ___✓___
NO _____

-13-

Instructions: Regardless of whether you answered "YES" or "NO" with respect to the

Non-Statutory Aggravating Factors in this Special Verdict Form - Section IV, proceed to Special

Verdict Form-Section V which follows.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | CRIMINAL NO. 1:03-CR-173 |
| SHANNON WAYNE AGOFSKY | * | |

## SPECIAL VERDICT FORM - SECTION V

## MITIGATING FACTORS

Instructions:  For each of the following mitigating factors, you have the option to indicate, in the space provided, the number of jurors who have found the existence of that mitigating factor to be proven by a preponderance of the evidence.  Individual jurors may find and consider more than one mitigating factor.  If you choose not to make these written findings, cross out each page of Special Verdict Form - Section V with a large "X" and then continue your deliberations in accordance with the Instructions of the court.

A finding with respect to a mitigating factor may be made by one or more of the members of the jury, and any member of the jury who finds the existence of a mitigating factor may consider such a factor established in considering whether or not a sentence of death shall be imposed, regardless of the number of other jurors who agree that the factor has been established. Further, any juror may also weigh a mitigating factor found by another juror, even if he or she did not also find that factor to be mitigating.

The non-statutory mitigating factors that the defendant asserts he has proved by a preponderance of the evidence are:

-15-

1. That Defendant, Shannon Wayne Agofsky, does not represent a continuing danger to the lives and safety of others.

   Number of jurors who find _____ *0* _____.

2. That Defendant, Shannon Wayne Agofsky, has no prior escape attempts from federal prison.

   Number of jurors who find _____ *3* _____.

3. That Defendant, Shannon Wayne Agofsky, has never assaulted a federal prison guard or corrections officer.

   Number of jurors who find _____ *6* _____.

4. That Defendant, Shannon Wayne Agofsky, has never utilized a shank or homemade metal weapon against an inmate or guard.

   Number of jurors who find _____ *7* _____.

5. That Defendant, Shannon Wayne Agofsky, has received "good conduct" Bureau of Prisons (BOP) reviews since Jan. 5, 2001.

   Number of jurors who find _____ *1* _____.

6. That Mr. Luther Plant had an extensive violent criminal record, including consistent use of firearms while committing violent acts. Mr. Plant's convictions

-16-

include robbery, aggravated robbery, delivery of a controlled substance, arson, and felon in possession of a firearm.

Number of jurors who find _____0_____.

7.  That Mr. Michael Miele has a significant history of disciplinary violations while he has been incarcerated in federal prison.

Number of jurors who find _____0_____.

8.  That Mr. Michael Miele has a significant history of criminal convictions prior to being incarcerated in federal prison.

Number of jurors who find _____0_____.

9.  That Mr. Agofsky's father died when he was (8) years old.

Number of jurors who find _____1_____.

10. That the Defendant has not had any behavior/disciplinary problems while incarcerated at the Liberty County Jail.

Number of jurors who find _____3_____.

11. That the Bureau of Prisons (BOP) can designate a location for Mr. Agofsky to serve a life sentence so that he will not have access to other inmates or guards.

Number of jurors who find _____1_____.

-17-

12.   That the fight between Mr. Plant and Mr. Agofsky was the result of a sudden quarrel.

Number of jurors who find _____ *O* .

13.   That Mr. Luther Plant was the first aggressor during the fight with Mr. Agofsky.

Number of jurors who find _____ *O* .

14.   That at least one other federal inmate that has committed murder in prison did not receive the death penalty as punishment upon conviction.

Number of jurors who find _____ *O* .

15.   Any other factors that you may find to be mitigating.

Number of jurors who find _____ *O* .

The following extra spaces are provided to write in additional mitigating factors, if any, found by any one or more jurors. If none are found, write "NONE" and line out the extra spaces with a large "X." If more space is needed, write "CONTINUED" and use the reverse side of this page.

_NONE_ _____

_____

Number of jurors who so find _____ .

-18-



Number of jurors who so find _____ .



Number of jurors who so find _____ .



Number of jurors who so find _____ .

Instructions: Regardless of whether you chose to make written findings for the Mitigating Factors in Special Verdict Form - Section V above, proceed to Special Verdict Form- Section- VI which follows.

-19-

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

UNITED STATES OF AMERICA     *

v.     *     CRIMINAL NO. 1:03-CR-173

SHANNON WAYNE AGOFSKY     *

### SPECIAL VERDICT FORM - SECTION VI - AS TO COUNT I

### DETERMINATION

Based upon consideration of whether the aggravating factors found to exist, which do not include the defendant's intent, sufficiently outweigh any mitigating factor or factors found to exist, or in the absence of any mitigating factors, whether the aggravating factors are themselves sufficient to justify a sentence of death, and whether death is therefore the appropriate sentence in this case, keeping in mind, however, that regardless of your findings with respect to aggravating and mitigating factors, you are never required to recommend a death sentence:

We determine, by unanimous vote, that a sentence of death shall be imposed.

YES ___✓___

We determine that a sentence of life without possibility of release shall be imposed.

YES _____

_Pete Martin_
Foreperson

-20-

After you complete this <u>Special Verdict Form - Section VI - As To Count I</u>, proceed to

<u>Special Verdict Form - Section VI as to Count II.</u>

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

UNITED STATES OF AMERICA          *

v.                                *          CRIMINAL NO. 1:03-CR-173

SHANNON WAYNE AGOFSKY             *

### SPECIAL VERDICT FORM - SECTION VI - AS TO COUNT II

### DETERMINATION

Based upon consideration of whether the aggravating factors found to exist, which do not include the defendant's intent, sufficiently outweigh any mitigating factor or factors found to exist, or in the absence of any mitigating factors, whether the aggravating factors are themselves sufficient to justify a sentence of death, and whether death is therefore the appropriate sentence in this case, keeping in mind, however, that regardless of your findings with respect to aggravating and mitigating factors, you are never required to recommend a death sentence:

We determine, by unanimous vote, that a sentence of death shall be imposed.

YES ___✓___

We determine that a sentence of life without possibility of release shall be imposed.

YES _____

Foreperson

-22-

After you complete this <u>Special Verdict Form- Section VI as to Count II</u>, you must then proceed to <u>Special Verdict Form - Section VII</u>.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

UNITED STATES OF AMERICA      *

v.      *      CRIMINAL NO. 1:03-CR-173

SHANNON WAYNE AGOFSKY      *

## SPECIAL VERDICT FORM – SECTION VII

## CERTIFICATION

By signing below, each juror certifies that consideration of the race, color, religious beliefs, national origin, or sex of the defendant or the victim was not involved in reaching his or her individual decision as to each count of the Superseding Indictment, and that the individual juror would have made the same recommendation regarding a sentence for the crime or crimes in question regardless of the race, color, religious beliefs, national origin, or sex of the defendant or the victim.

Date: 7/16/04

FOREPERSON

-24-

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FILED - CLERK
U.S. DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

2004 FEB 19   PM 4:39

TX EASTERN-BEAUMONT

BEAUMONT DIVISION

BY___B Carter___

| | |
|---|---|
| UNITED STATES OF AMERICA    * | |
|    * | |
| V.    * | NO. 1:03-CR-173 |
|    * | |
| SHANNON WAYNE AGOFSKY    * | |

## SUPERSEDING I N D I C T M E N T

THE UNITED STATES GRAND JURY CHARGES:

### COUNT I

On or about January 5, 2001, in the Eastern District of Texas, **SHANNON WAYNE AGOFSKY,** Defendant herein, while confined in a federal correctional institution under a sentence for a term of life imprisonment, unlawfully killed Luther Plant willfully, deliberately, maliciously and under premeditation and malice aforethought, as murder is defined in Title 18, United States Code, Section 1111, all in violation of Title 18, United States Code, Section 1118.

### COUNT II

On or about January 5, 2001, in the Eastern District of Texas, SHANNON WAYNE AGOFSKY, Defendant herein, at the Federal Correctional Institution in Beaumont, a place within the special maritime and territorial jurisdiction of the United States as defined in Title 18, United States Code, Section 7(3), Defendant willfully, deliberately, maliciously and under premeditation and malice aforethought

did unlawfully kill LUTHER PLANT by striking him with Defendant's arms, hands and feet, in violation of Title 18, United States Code, Section 1111.

## NOTICE OF SPECIAL FINDINGS

The allegations of Counts I and II of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

As to Counts I and II, the Defendant, SHANNON WAYNE AGOFSKY:

1.   Was more than 18 years of age at the time of the offense(s) (18 U.S.C. §3591(a));

2.   Intentionally killed the victim (18 U.S.C. §3591(a)(2)(A));

3.   Intentionally inflicted serious bodily injury that resulted in the death of the victim (18 U.S.C. §3591(a)(2)(B));

4.   Intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than a participant in the offense, and the victim died as a result of the act (18 U.S.C. §3591 (a)(2)(C));

5.   Intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than a participant of the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act (18 U.S.C. §3591 (a)(2)(D));

2

USCA5 76

6. In committing the offense(s), the death or injury resulting in death occurred during the commission of an offense under 18 U.S.C. §1118 (prisoners serving life term) (18 U.S.C. §3592(c)(1));

7. Committed the offense(s) after previously being convicted of a federal offense punishable by a term of imprisonment of more than 1 year, involving the use or attempted or threatened use of a firearm, as defined in 18 U.S.C. §921, against another person (18 U.S.C. §3592(c)(2));

8. Committed the offense(s) after previously being convicted of a federal offense resulting in the death of another for which a sentence of life imprisonment was authorized by statute (18 U.S.C. §3592(c)(3)); and

9. Committed the offense in an especially heinous, cruel, or depraved manner in that it involved serious physical abuse to the victim (18 U.S.C. §3592 (c)(6)).

All pursuant to Title 18, United States Code, Sections 3591 and 3592.

A TRUE BILL

_____
GRAND JURY FOREMAN

MATTHEW D. ORWIG
UNITED STATES ATTORNEY

_____
JOHN B. STEVENS, JR.
ASSISTANT UNITED STATES ATTORNEY

3