UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Respondent, | ) | CAPITAL CASE |
| | ) | |
| v. | ) | No. 1:07-cv-00511 |
| | ) | |
| SHANNON WAYNE AGOFSKY, | ) | |
| Movant. | ) | |

JOINT STATUS REPORT
FILED IN COMPLIANCE WITH COURT'S ORDER

Shannon Agofsky and the government jointly submit the following status report to the

Court in compliance with its order of June 25, 2021, lifting the stay and abeyance previously

ordered, and directing the parties to provide "a progress report or explanation of the progression

of Agofsky's challenge in his murder conviction in the Oklahoma state court." *See* ECF No. 186.

1.      Mr. Agofsky's motion to vacate, pursuant to 28 U.S.C. § 2255, is pending before

this Court. ECF Nos. 38, 51, 105. The Government's response and Mr. Agofsky's reply have

been filed (ECF Nos. 124, 133), and the parties have fully briefed a motion by the Government

to strike certain claims. ECF Nos. 112, 113, 117-20.

2.      On February 14, 2012, this Court entered an order granting Mr. Agofsky's

unopposed motion to stay and hold these proceedings in abeyance to allow him to present newly

available eyewitnesses and other evidence of his innocence of a prior Oklahoma murder that had

served as a ground for several aggravating factors at the capital trial in this case. ECF No. 157.

This Court later ordered that the stay and abeyance continue. ECF Nos. 171, 173. The Court also

ordered that Mr. Agofsky file a report on the status of the Oklahoma proceedings every six

months. ECF No. 171. Mr. Agofsky has filed these periodic reports, consulting each time with the clerk of Delaware County, Oklahoma, about the status of the case before filing the report.

3.      As earlier status reports have described, Mr. Agofsky filed a petition for post-conviction relief and related motions in Oklahoma state court, and the State filed responsive pleadings. The parties are awaiting the court's rulings on the outstanding motions and, eventually, the petition. For some time, the proceedings remained pending under Docket No. CRF-92-43 (Delaware Co.) without any action by the court.

4.      In 2020, in *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020), the Supreme Court addressed the scope of the Major Crimes Act, 18 U.S.C. § 1153, which provides that state courts cannot prosecute Native Americans for serious crimes, including homicide, that take place in "Indian country"; rather, the federal courts have jurisdiction over those prosecutions. The Court held that, despite a state's history of encroachment on an exclusively federal prerogative, an established Indian reservation qualifies as Indian country unless Congress has clearly indicated its intention to disestablish it. Because Jimcy McGirt, a Native American pursuing post-conviction relief, had committed an enumerated crime on the Creek Reservation, and Congress had never disestablished that reservation, the state had no jurisdiction to try him.

5.      Shannon Agofsky has filed a motion to amend his Oklahoma post-conviction petition to include a *McGirt* claim. He has presented evidence that he is a registered member of the federally recognized Quapaw Tribe, and that the tribe has certified that he has a quantum of Indian blood. The homicide for which the state tried and convicted him took place on the Route 10 bridge over the Grand Lake O' the Cherokees, north of Grove, Oklahoma. He has presented additional evidence that the bridge lies within the Seneca-Cayuga reservation, which Congress established by treaty and has never disestablished. *See* Petitioner's Motion to Amend, *Agofsky v.*

2

*Oklahoma*, Delaware County District Court No. CRF-92-43, 43B (Okla. D. Ct) (attached as Exhibit 1)

6.      Mr. Agofsky filed his motion to amend on March 30, 2021. The state responded, and Mr. Agofsky replied. The state then moved on June 17, 2021, to stay and abate the post-conviction proceedings to await rulings in two *McGirt*-related cases. *See State's Motion to Stay and Abate* (attached as Exhibit 2). In *State ex rel. Matloff v. Wallace,* (Okla. Crim. App. No. PR-2021-366), the Oklahoma Court of Criminal Appeals was expected to consider whether *McGirt* applied retroactively to cases in post-conviction review. In *Bosse v. Oklahoma* (S. Ct. No. 21-186), the State planned to petition for certiorari on the question whether states may impose procedural or equitable bars to postconviction relief on the claim that the state lacked prosecutorial jurisdiction because the crime occurred in Indian Country. The state asked the post-conviction court to defer any action on Mr. Agofsky's *McGirt* claim "as a result of the ongoing litigation in *Bosse* and *Wallace*."

7.      Before the state post-conviction court could rule on the state's motion for stay and abatement, the Court of Criminal Appeals ruled on August 12 in *Matloff v. Wallace* that, as a matter of state law, *McGirt* does not apply retroactively to cases past direct review. 2021 WL 3578089, at *8, 2021 Ok CR at ¶ 40. Meanwhile, having obtained a stay from the Supreme Court in *Bosse*, the state filed its petition for certiorari on August 6, 2021 (attached as Exhibit 3).

8.      The state then filed a supplemental opposition to Mr. Agofsky's motion to amend, asking the court either to deny the amendment or grant the amendment and dismiss the *McGirt* claim in light of *Wallace*. Mr. Agofsky, in response, moved the state post-conviction court on August 23, 2021, for a stay until the Supreme Court has had the opportunity to act in both

*Wallace* and *Bosse* (motion attached as Exhibit 4). That motion for a stay, along with the state's motion for denial of the amendment or dismissal of the *McGirt* claim, is still pending.

9.    Mr. Agofsky also filed a protective federal habeas petition incorporating the *McGirt* claim. The United States District Court for the Western District of Oklahoma has stayed that petition to await the conclusion of the state court proceedings. See Order, *Agofsky v. Crow*, Docket No. CIV-21-670-PRW (W.D. Ok. Aug. 16, 2021) (Attached as Exhibit 5). The court ordered Mr. Agofsky to file a status report on the progress of the state court proceedings every 90 days.

10.    A petition for certiorari is pending in *Bosse* and one is likely to be filed in *Wallace*. Mr. Agofsky's Oklahoma case is active but unlikely to reach resolution for a number of months at the very earliest. The parties therefore respectfully suggest that this Court order a status report in 180 days.

11.    On August 23, 2021, Mr. Agofsky's counsel, Ms. Van Wyk, spoke by phone with Assistant United States Attorney Joseph Batte. Mr. Batte indicated that the government agrees with this status report and the proposed 180-day schedule for the next status report.

## CONCLUSION

For the reasons above, the Court should order Mr. Agofsky, or the parties, to submit a status report in 180 days.

Respectfully submitted,

Respectfully submitted,

/s/ Jennifer A. Merrigan
JENNIFER A. MERRIGAN
PA Bar No. 318243
P.O. Box 63928
Philadelphia, PA  19147
Telephone (888) 532-0897
j.merrigan@phillipsblack.org

/s/ Claudia Van Wyk
CLAUDIA VAN WYK
PA Bar # 95130
Assistant Federal Defender
Federal Community Defender Office
Capital Habeas Unit
601 Walnut Street, Suite 545W
Philadelphia, PA 19081
Telephone (215) 928-0520
Facsimile (215) 928-0826
claudia_vanwyk@fd.org

Counsel for Movant

Counsel for Movant

Dated: August 26, 2021

**CERTIFICATE OF SERVICE**

I certify that on August 26, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following: **Traci Lynne Kenner**, U.S. Attorney's Office, 110 North College, Suite 700, Tyler, TX 75702; and **Joseph Robert Batte,** U.S. Attorney's Office- Beaumont, 350 Magnolia, Suite 150, Beaumont, TX 77701.

/s/ Claudia Van Wyk
CLAUDIA VAN WYK
*Counsel for Movant*

# EXHIBIT 1

**IN THE DISTRICT COURT OF DELAWARE COUNTY**
**STATE OF OKLAHOMA**

**SUBMITTED FOR FILING UNDER SEAL[1]**

| | | |
|---|---|---|
| **SHANNON WAYNE AGOFSKY**, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | No. CRF-92-43 & 43B (Delaware Co.) |
| | ) | No. CRF-97-41 (Ottawa Co.) |
| vs. | ) | No. CF-97-383 (Payne Co.) |
| | ) | |
| **THE STATE OF OKLAHOMA** | ) | |
| | ) | |
| Respondent. | ) | |

**PETITIONER'S MOTION TO AMEND**
**APPLICATION FOR POST-CONVICTION RELIEF**

Shannon Agofsky moves to amend his application for post-conviction relief, pursuant to 22 Okla. Stat. Ann. § 1080, in light of the Supreme Court's decision in *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020). He states the following in support of his motion:

1.    Mr. Agofsky was charged with murder in this Court and convicted, following a change of venue to Payne County and a jury trial, of first-degree murder. He was sentenced to life without parole in the Payne County District Court.

2.    His application for post-conviction relief is pending in this Court under Delaware County Docket No. CRF-92-43 & 43B.

---

[1] In a series of orders, the Court required the parties to submit pleadings in this matter for filing under seal and then to confer and submit a joint notice of proposed redactions. Thereafter the Court released the redacted pleadings, as approved, for public filing. Petitioner anticipates that the parties will agree that no redactions to this motion are necessary, and will confer with the State on a joint notice to that effect.

3.      On July 9, 2020, the Supreme Court held in *McGirt* that states must honor the terms of the federal government's treaties with Native American nations and respect federal law's limitations on state jurisdiction within reservation borders.  The Major Crimes Act, 18 U.S.C. § 1153, provides that state courts cannot prosecute Native Americans for serious crimes, including homicide, that take place in "Indian country"; rather, the federal courts have jurisdiction over those prosecutions.  In *McGirt*, the Supreme Court held that, despite a state's history of encroachment on an exclusively federal prerogative, an established Indian reservation qualifies as Indian country unless Congress has clearly indicated its intention to disestablish it. 140 S. Ct. at 2468.

4.      Shannon Agofsky is a registered member of the Quapaw Tribe, and the crime for which he was convicted took place within the territorial boundaries of the Seneca-Cayuga Nation.  Congress established the Seneca-Cayuga reservation by treaties dated 1831, 1832, and 1867, and has never disestablished it.  Accordingly, Mr. Agofsky seeks permission to amend his petition to include his claim that the State of Oklahoma had no jurisdiction to try him under the Major Crimes Act.  A copy of his proposed amendment, with a Supplemental Appendix, is attached as Exhibit A.

5.      Under the law of this state, lack of subject-matter jurisdiction can be raised at any time, and, if found, results in dismissal of the action.  *See* Okla. Stat. Ann. tit. 12, § 2012(F)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction over the subject matter, the court shall dismiss the action.").  Therefore, Mr. Agofsky properly files this motion at this time.

6.      Furthermore, Mr. Agofsky's state post-conviction proceedings are already pending in this Court, giving him an even more compelling basis to litigate his *McGirt* claim by

2

amending the petition. *See* Okla. Stat. Ann. tit. 22, § 1086 ("All grounds for relief available to an applicant under this act must be raised in his original, supplemental, or *amended* application.") (emphasis added). If this Court determines, as *McGirt* requires, that the Oklahoma courts lacked jurisdiction to try Mr. Agofsky, that determination would obviate rulings on Mr. Agofsky's other pending claims.

7.      Because of the clarity of the Supreme Court's pronouncement in *McGirt*, this Court should allow him to amend the post-conviction petition to include the claim set forth in Exhibit A.

## CONCLUSION

For the reasons set forth above, this Court should grant Mr. Agofsky's motion to amend his petition for post-conviction relief, pursuant to Okla. Stat. Ann. tit. 22, § 1086, to include the claim set forth in Exhibit A.

Respectfully submitted,

_____
CLAUDIA VAN WYK
DAVID ZUCKERMAN
Assistant Federal Defenders
Federal Community Defender Office
Eastern District of Pennsylvania
Capital Habeas Corpus Unit
601 Walnut Street, Suite 545 West
Philadelphia, PA  19106
(215) 928-0520
claudia_vanwyk@fd.org
david_zuckerman@fd.org

*Counsel for Petitioner Shannon Agofsky*

ROBERT S. JACKSON, ESQ.
925 N.W. 6th
Oklahoma City, OK 73106
(405) 232-3450
bob@bobjacksonlaw.com

*Local Counsel to Petitioner Shannon Agofsky*

Dated: March 26, 2021

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I served the pleading above on the following person by placing it in federal express, two-day delivery:

Mike Hunter
Attorney General
State of Oklahoma
313 NE 21st Street
Oklahoma City, OK 73105
(405) 521-3921
FAX: (405) 521-6246

I hereby certify that on this date I served the pleading above on the following person by placing a copy in federal express, two-day delivery, to the Clerk of Delaware County for delivery to the District Attorney:

Kenny Wright
District Attorney
Delaware and Ottawa Counties
Delaware County Courthouse
P.O. Box 528
Jay, Oklahoma 74346
(918) 253-4217
FAX: (918) 253-4183

CLAUDIA VAN WYK

Dated:  March 26, 2021

# EXHIBIT 2

## IN THE DISTRICT COURT OF DELAWARE COUNTY
## STATE OF OKLAHOMA

### SUBMITTED FOR FILING UNDER SEAL[1]

SHANNON WAYNE AGOFSKY,    )
         )
    Petitioner/Defendant,   )
         )
v.         )    Case Nos.    **CRF-92-43, 43B**
         )         **CRF-97-41 (Ottawa Co.)**
THE STATE OF OKLAHOMA,    )         **CF-97-383 (Payne Co.)**
         )
    Respondent/Plaintiff.   )

### MOTION TO STAY AND ABATE PETITIONER'S MOTION TO AMEND APPLICATION FOR POST-CONVICTION RELIEF

Comes now Respondent, by and through Dawn Cash, Acting Attorney General of the State of Oklahoma, and asks this Court to stay and abate any ruling on Petitioner's motion to amend his post-conviction application due to ongoing litigation in *Bosse v. State* and *State ex rel. District Attorney v. Wallace*. Twenty-four years after he was convicted of murdering Dan Short, Petitioner has filed a motion to amend his pending post-conviction application to raise a claim that the State lacks jurisdiction over his crime pursuant to *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020). Respondent filed an objection, arguing Petitioner's claim is waived and barred by the doctrine of laches.[2]

---

[1] As indicated in Petitioner's Motion to Amend, this Court has ordered the parties to submit pleadings under seal, and then confer and submit a joint notice of proposed redactions.

[2] Respondent also argued that Petitioner had failed to present evidence of his Indian status at the time of the murder. Petitioner has since filed a reply, to which he attached a letter from the Quapaw Nation which indicates he was enrolled as a member of that Tribe on February 16, 1979.

Respondent's objection recognized the OCCA's decision in *Bosse v State*, 2021 OK CR 3, ¶¶ 20-22, 484 P.3d 286, 293-294, wherein that court ruled that "[s]ubject-matter jurisdiction can never be waived or forfeited". However, since Respondent filed its objection in this case, the United States Supreme Court granted a stay of *Bosse*'s mandate as part of the State's certiorari appeal:

> The application to stay the mandate of the Court of Criminal Appeals of Oklahoma, case No. PCD-2019-124, presented to Justice Gorsuch and by him referred to the Court is granted pending the timely filing and disposition of a petition for a writ of certiorari. Should the petition for a writ of certiorari be denied, this stay shall terminate automatically. In the event the petition for a writ of certiorari is granted, the stay shall terminate upon the issuance of the mandate of this Court.

Order in Pending Case, *Oklahoma v. Bosse*, Case No. 20A161 (May 26, 2021) (attached as Exhibit "1"). Respondent has begun the process of asking the OCCA to stay all cases which will be affected if the Supreme Court overrules *Bosse*, as well as those cases which will be affected by a case pending in the OCCA regarding whether *McGirt* applies to convictions which were final as of July 9, 2020, *State ex. rel. District Attorney v. Wallace*, 2021 OK CR 15, ¶ 6, ___ P.3d ___.[3] The OCCA is staying cases pending review of *Bosse* and *Wallace*. *See* 6/9/2021 Order Staying Proceedings, *Logsdon v. State*, No. PC-20-867 (attached as Exhibit "2"); 5/28/2021 Order Staying Issuance of Mandates Indefinitely, *Cole v. State*, No. PCD-2020-529, *Ryder v. State*, No. PCD-2020-613, *Bench v. State*, No. PCD-2015-698 (attached as Exhibit "3"); 6/11/2021 Order Staying Evidentiary Hearing, *Hanson*

---

[3] If the OCCA concludes that those whose convictions were final before *McGirt* was decided are not entitled to post-conviction relief, then Petitioner's motion to amend must be denied.

2

*v. State*, No. PCD-2020-611 (attached as Exhibit "4"); 6/11/2021 Order Staying

Evidentiary Hearing, *Cannon v. State*, No. PCD-2020-620 (attached as Exhibit "5").

The resolution of Petitioner's proposed amended post-conviction application

depends on whether the OCCA's decision in *Bosse* is reversed by the Supreme Court, and

on whether the OCCA ultimately decides to preclude relief for those whose convictions

were final before *McGirt* was decided.  Thus, it would be a waste of judicial resources for

this Court to consider Petitioner's motion to amend at this time.  Respondent respectfully

asks this Court to stay and abate Petitioner's motion to amend his post-conviction

application until the Supreme Court denies certiorari, or rules on the merits, in *Bosse*,

and/or until the OCCA issues a decision in *State ex. rel. District Attorney v. Wallace*.

The instant motion is made in good faith and not for the purpose of delay.  For the

foregoing reasons, this Court should abate Petitioner's motion to amend his post-conviction

application as a result of the ongoing litigation in *Bosse* and *Wallace*.


Respectfully submitted,

**DAWN CASH**
**ACTING ATTORNEY GENERAL OF OKLAHOMA**

*for* **JENNIFER L. CRABB, OBA #20546**
**ASSISTANT ATTORNEY GENERAL**
313 N.E. 21st Street
Oklahoma City, Oklahoma 73105
(405) 522-4423      FAX (405) 522-4534

**ATTORNEYS FOR THE STATE**


3

## CERTIFICATE OF MAILING

On this 17th day of June 2021, a true and correct copy of the foregoing was mailed
*via* United States Postal Service to:

Claudia Van Wyk
David Zuckerman
Assistant Federal Defenders
Federal Community Defender Office
Eastern District of Pennsylvania
Capital Habeas Corpus Unit
601 Walnut Street, Suite 545 West
Philadelphia, PA  19106


Robert S. Jackson
925 N.W. 6th
Oklahoma City, OK  73106


JENNIFER L. CRABB

4

# EXHIBIT 3

**No.**

# In the Supreme Court of the United States

STATE OF OKLAHOMA, PETITIONER

*v.*

SHAUN MICHAEL BOSSE

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE OKLAHOMA COURT OF CRIMINAL APPEALS*

**PETITION FOR A WRIT OF CERTIORARI**

JOHN M. O'CONNOR
  *Attorney General*
MITHUN MANSINGHANI
  *Solicitor General*
CAROLINE HUNT
JENNIFER CRABB
  *Assistant Attorneys General*
BRYAN CLEVELAND
RANDALL YATES
  *Assistant Solicitors General*
OFFICE OF THE OKLAHOMA
  ATTORNEY GENERAL
  *313 N.E. Twenty-First Street
  Oklahoma City, OK 73105*

RYAN LEONARD
EDINGER LEONARD
 & BLAKLEY, PLLC
  *6301 N. Western Avenue,
    Suite 250
  Oklahoma City, OK 73118*

KANNON K. SHANMUGAM
  *Counsel of Record*
WILLIAM T. MARKS
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *2001 K Street, N.W.
  Washington, DC 20006
  (202) 223-7300
  kshanmugam@paulweiss.com*

JING YAN
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *1285 Avenue of the Americas
  New York, NY 10019*

**CAPITAL CASE**

**QUESTIONS PRESENTED**

1.  Whether a State may impose procedural or equitable bars to postconviction relief on the claim that the State lacked prosecutorial authority because the crime of conviction occurred in Indian country.

2.  Whether a State has authority to prosecute non-Indians who commit crimes against Indians in Indian country.

3. Whether *McGirt* v. *Oklahoma*, 140 S. Ct. 2452 (2020), should be overruled.

(I)

**RELATED PROCEEDINGS**

Oklahoma District Court (McClain County):

  *State* v. *Bosse*, No. CF-2010-213 (Dec. 18, 2012)

Oklahoma Court of Criminal Appeals:

  *Bosse* v. *State*, No. D-2012-1128 (Oct. 16, 2015)

  *Bosse* v. *State*, No. PCD-2013-360 (Dec. 16, 2015)

  *Bosse* v. *State*, No. D-2012-1128 (May 27, 2017)

  *Bosse* v. *State*, No. D-2012-1128 (July 24, 2017)

  *Bosse* v. *State*, No. PCD-2019-124 (Mar. 11, 2021)

United States District Court (W.D. Okla.):

  *Bosse* v. *Carpenter*, Civ. No. 18-204 (Apr. 2, 2019)

Supreme Court of the United States:

  *Bosse* v. *Oklahoma*, No. 15-9173 (Oct. 11, 2016)

  *Bosse* v. *Oklahoma*, No. 17-7232 (May 5, 2018)

  *Oklahoma* v. *Bosse*, No. 20A161 (May 26, 2021)

(II)

**TABLE OF CONTENTS**

Page

Opinions below ...................................................................1

Jurisdiction .......................................................................1

Statutory provisions involved .......................................1

Statement..........................................................................2

    A.  Background .........................................................4

    B.  Facts and procedural history.........................5

Reasons for granting the petition.................................8

    A.  Review is warranted regarding the application of procedural and equitable bars to postconviction relief under *McGirt* v. *Oklahoma* ...................................9

    B.  Review is warranted regarding the authority of a State to prosecute non-Indians who commit crimes against Indians in Indian country ...................15

    C.  *McGirt* v. *Oklahoma* should be overruled ...................21

Conclusion.........................................................................33

Appendix A ......................................................................1a

Appendix B .......................................................................31a

Appendix C .......................................................................33a

Appendix D .......................................................................37a

Appendix E .......................................................................49a

Appendix F .......................................................................50a

Appendix G .......................................................................52a

Appendix H.......................................................................54a

Appendix I .......................................................................56a

IV

**TABLE OF AUTHORITIES**

Page

Cases:

*Arizona* v. *Flint*, 492 U.S. 911 (1989) ................................19

*Armstrong* v. *Exceptional Child Center, Inc.*,
    575 U.S. 320 (2015)............................................11

*Booth* v. *Maryland*, 482 U.S. 496 (1987) ............................32

*City of Sherrill* v. *Oneida Indian Nation*
    *of New York*, 544 U.S. 197 (2005)...................................29

*Cotton Petroleum Corp.* v. *New Mexico*,
    490 U.S. 163 (1989)......................................................19, 20

*County of Yakima* v. *Confederated Tribes & Bands*
    *of Yakima Indian Nation*, 502 U.S. 251 (1992)......16, 19

*Davis, In re*, No. 21-7030 (10th Cir. July 6, 2021) .............11

*Department of Taxation & Finance* v. *Milhelm*
    *Attea & Brothers, Inc.*, 512 U.S. 61 (1994) ....................19

*Dollar General Corp.* v. *Mississippi Band of*
    *Choctaw Indians*, 136 S. Ct. 2159 (2016) .......................29

*Donnelly* v. *United States*, 228 U.S. 243 (1913)...........17, 18

*Dopp* v. *Martin*,
    750 Fed. Appx. 754 (10th Cir. 2018) ........................11, 18

*Draper* v. *United States*, 164 U.S. 240 (1896)......................18

*Edwards* v. *Vannoy*, 141 S. Ct. 1547 (2021)..................24, 25

*Florida* v. *Powell*, 559 U.S. 50 (2010) .................................13

*Fort Bend County* v. *Davis*, 139 S. Ct. 1843 (2019)...........10

*Franchise Tax Board* v. *Hyatt*, 139 S. Ct. 1485 (2019).....31

*Gamble* v. *United States*, 139 S. Ct. 1960 (2019)................20

*Gonzalez* v. *Thaler*, 565 U.S. 134 (2012)..............7, 10, 12, 13

*Grady* v. *Corbin*, 495 U.S. 508 (1990) .................................32

*Grayson* v. *State*,
    485 P.3d 250 (Okla. Crim. App. 2021)............................23

*Hagen* v. *Utah*, 510 U.S. 399 (1994)....................................12

*Hartford Fire Insurance Co.* v. *California*,
    509 U.S. 764 (1993)............................................................10

*Hogner* v. *State*, No. F-2018-138, 2021 WL 958412
    (Okla. Crim. App. Mar. 11, 2021)...................................23

*Hugi* v. *United States*, 164 F.3d 378 (7th Cir. 1999) .........11

V

Page

Cases—continued:

*Janus* v. *State, County & Municipal Employees*, 138 S. Ct. 2448 (2018) .................................................32

*Kelly* v. *Robinson*, 479 U.S. 36 (1986) ...............................20

*Kirk* v. *Oklahoma*, Civ. No. 21-164, 2021 WL 1316075 (W.D. Okla. Apr. 8, 2021) ................12

*Marvin M. Brandt Revocable Trust* v. *United States*, 572 U.S. 93 (2014) ...............................21

*McGirt* v. *Oklahoma*, 140 S. Ct. 2452 (2020) .............*passim*

*Michigan* v. *Long*, 463 U.S. 1032 (1983) .......................13, 14

*Moe* v. *Confederated Salish & Kootenai Tribes of Flathead Reservation*, 425 U.S. 463 (1976)...................20

*Montejo* v. *Louisiana*, 556 U.S. 778 (2009) ........................32

*Morgan, In re*, No. 20-6123 (10th Cir. Sept. 18, 2020)......11

*Negonsott* v. *Samuels*, 507 U.S. 99 (1993) ...........................4

*Nevada* v. *Hicks*, 533 U.S. 353 (2001).....................15, 16, 19

*New York ex rel. Cutler* v. *Dibble*, 62 U.S. (21 How.) 366 (1859)..............................16, 17, 18

*New York ex rel. Ray* v. *Martin*, 326 U.S. 496 (1946).....................................................15, 18

*Oklahoma Tax Commission* v. *Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505 (1991).............................................................19

*Oliphant* v. *Suquamish Indian Tribe*, 435 U.S. 191 (1978)...........................................................20

*Organized Village of Kake* v. *Egan*, 369 U.S. 60 (1962)................................................................19

*Payne* v. *Tennessee*, 501 U.S. 808 (1991) ...........................32

*Ramos* v. *Louisiana*, 140 S. Ct. 1390 (2020)................31, 32

*Ross* v. *Pettigrew*, Civ. No. 20-396, 2021 WL 1535365 (N.D. Okla. Apr. 19, 2021)...............12

*Sharp* v. *Murphy*, 140 S. Ct. 2412 (2020) ..................5, 11, 29

*Sizemore* v. *State*, 485 P.3d 867 (Okla. Crim. App. 2021)............................23

*South Carolina* v. *Gathers*, 490 U.S. 805 (1989) ...............32

VI

Page

Cases—continued:

*Steel Co.* v. *Citizens for a Better Environment*,
523 U.S. 83 (1998)...............................................10
*Surplus Trading Co.* v. *Cook*, 281 U.S. 647 (1930) ............16
*Tafflin* v. *Levitt*, 493 U.S. 455 (1990).................................11
*Tehan* v. *United States ex rel. Shott*,
382 U.S. 406 (1966)............................................23
*Three Affiliated Tribes of Fort Berthold*
*Reservation* v. *Wold Engineering, P.C.*,
467 U.S. 138 (1984)................................................19, 20, 21
*United States* v. *Cooley*, 141 S. Ct. 1638 (2021) .................26
*United States* v. *Cotton*, 535 U.S. 625 (2002).......................11
*United States* v. *Dixon*, 509 U.S. 688 (1993) ......................32
*United States* v. *Garcia*,
936 F.3d 1128 (10th Cir. 2019),
cert. denied, 141 S. Ct. 139 (2020)...................................13
*United States* v. *Green*, 886 F.3d 1300 (10th Cir. 2018)....13
*United States* v. *Kwai Fun Wong*, 575 U.S. 402 (2015)....10
*United States* v. *McBratney*,
104 U.S. 621 (1882)................................................4, 17, 18
*United States* v. *McGowan*, 302 U.S. 535 (1938) ...............16
*United States* v. *Tony*,
637 F.3d 1153 (10th Cir. 2011)...................................11, 12
*United States* v. *White Horse*, 316 F.3d 769
(8th Cir.), cert. denied, 540 U.S. 84 (2003)....................10
*Wallace, Ex parte*, 162 P.2d 205
(Okla. Crim. App. 1945)....................................................14
*Washington* v. *Confederated Tribes of Colville*
*Indian Reservation*, 447 U.S. 134 (1980) ......................20
*White Mountain Apache Tribe* v. *Bracker*,
448 U.S. 136 (1980)....................................................19, 20
*Williams* v. *United States*, 327 U.S. 711 (1946).................18
*Wilson, Ex parte*, 140 U.S. 575 (1891)................................17

VII

Constitutions and statutes:

U.S. Const. Art. VI, cl. 2......................................................11
Curtis Act, ch. 504, 30 Stat. 495 (1898)...............................29
Indian General Crimes Act, 18 U.S.C. 1152 ..............*passim*
Indian Major Crimes Act, 18 U.S.C. 1153 ................*passim*
18 U.S.C. 1151......................................................................4
18 U.S.C. 3231....................................................................11
18 U.S.C. 3282(a) ...............................................................24
25 U.S.C. 1321....................................................................21
25 U.S.C. 1322....................................................................21
28 U.S.C. 141......................................................................27
28 U.S.C. 1257(a) .................................................................1
28 U.S.C. 2253(c) ...............................................................12
Okla. Const. art. VII, § 7.....................................................11
Okla. Stat., tit. 22, § 1080(b)..............................................14
Okla. Stat., tit. 22, § 1089(D)(8) ........................................14
Okla. Stat., tit. 22, § 1089(D)(9) ........................................14
Okla. Stat., tit. 22, § 1089(D)(9)(A)....................................15
Okla. Stat., tit. 68, § 2373..................................................28

Miscellaneous:

Chief Gary Batton, *Choctaw Nation Special Report
7-29*, YouTube (July 29, 2020)
<tinyurl.com/choctawreport>....................................30
Chris Casteel, *Creek, Seminole Nations Disavow
Agreement on Jurisdiction,*
Oklahoman (July 18, 2020)
<tinyurl.com/tribesdisavowagreement>.....................30
Chris Casteel, *With Oklahoma Tribes Deeply
Divided, Rep. Tom Cole's McGirt Bill Faces
Long Road*, Oklahoman (May 16, 2021)
<tinyurl.com/mcgirtbill>.............................................31
Kylee Dedmon, *Choctaw Nation Chief Opposes
Oklahoma Governor on Tribal Negotiations,*
KXII News 12 (Jan. 29, 2021)
<tinyurl.com/choctawopposition>...............................31
E.D. Okla. General Order No. 21-10 .................................27

VIII

Page

Miscellaneous—continued:

Environmental Protection Agency, *Press Release: EPA Announces Renewed Consultation and Coordination with Oklahoma Tribal Nations* (June 30, 2021)............................................................29

86 Fed. Reg. 26,941 (May 18, 2021) .....................................28

Annie Gowen & Robert Barnes, *'Complete, Dysfunctional Chaos': Oklahoma Reels After Supreme Court Ruling on Indian Tribes*, Wash. Post, July 24, 2021, at A1 ..............................25, 27

*Hearing on Federal Bureau of Investigation Budget Request for Fiscal Year 2022 Before the Subcomm. on Commerce, Science, and Related Agencies of the S. Comm. on Appropriations*, 117th Cong. (June 23, 2021).......................................25, 26

Allison Herrera, *Tribes Sharply Criticize EPA Granting Stitt Environmental Oversight of Tribal Lands*, KOSU (Oct. 7, 2020) <tinyurl.com/herreratribes> .........................................29

H.R. 3091, 117th Cong., 1st Sess. (2021)............................31

Ashely Izbicki, *Victim's Family Speaks Out After Convicted Murderer Could Get New Trial Due to Supreme Court's McGirt Decision*, News 9 (Mar. 15, 2021) <tinyurl.com/izbickifamily>.........................................25

Derrick James, *Oklahoma Tribes and AG Reach Agreement in Principle*, McAlester News-Capital (July 16, 2020) <tinyurl.com/mcgirtagmtrelease>...............................30

Sarah Roubidoux Lawson & Megan Powell, *Unsettled Consequences of the McGirt Decision*, The Regulatory Review (Apr. 1, 2021) <tinyurl.com/lawsonandpowell> ................................28

Murphy/McGirt Agreement in Principle (July 15, 2020) <tinyurl.com/mcgirtagreement>........30

IX

Page

Miscellaneous—continued:

*Oklahoma FBI Case Volume Unprecedented*,
FBI News (July 8, 2021)
<tinyurl.com/fbioklahoma> ..........................................26
Oklahoma Tax Commission, *Report of Potential
Impact of McGirt v. Oklahoma* (Sept. 30, 2020) ..........28
3 Op. Off. Legal Counsel 111 (1979) ....................................18
Mike Rogers, *Oklahoma Woman Worried Man
Who Tried to Kill Her Could Be Set Free
Following Criminal Appeals Court Ruling*,
KXII News 12 (Mar. 15, 2021)
<tinyurl.com/rogersoklahoma> ...................................24
Governor Kevin Stitt, *Press Release: Gov. Stitt
Calls for Tribes to Enter into Formal
Negotiations with the State Regarding McGirt
Ruling* (Jan. 22, 2021) .......................................................30
Governor Kevin Stitt, *Press Release: Governor Stitt
Delivers 2021 State of the State Address*
(Feb. 1, 2021) .......................................................................23
Molly Young, *Tribes, State at Odds Over McGirt;
SCOTUS Ruling Leaves Chasm Between Them*,
Oklahoman, July 18, 2021 ................................................31

# In the Supreme Court of the United States

No.

STATE OF OKLAHOMA, PETITIONER

*v.*

SHAUN MICHAEL BOSSE

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE OKLAHOMA COURT OF CRIMINAL APPEALS*

## PETITION FOR A WRIT OF CERTIORARI

### OPINIONS BELOW

The opinion of the Oklahoma Court of Criminal Appeals (App., *infra*, 1a-30a) is reported at 484 P.3d 286. The opinion of the state trial court (App., *infra*, 37a-48a) is unreported.

### JURISDICTION

The judgment of the Oklahoma Court of Criminal Appeals was entered on March 11, 2021. The jurisdiction of this Court is invoked under 28 U.S.C. 1257(a).

### STATUTORY PROVISIONS INVOLVED

Relevant provisions of Title 18 of the United States Code and the Oklahoma Statutes are reproduced in an appendix to this petition.

(1)

2

**STATEMENT**

No recent decision of this Court has had a more immediate and destabilizing effect on life in an American State than *McGirt* v. *Oklahoma*, 140 S. Ct. 2452 (2020). The Court held in *McGirt* that a large area of Oklahoma, which at one time was within the boundaries of the Creek Nation, qualifies as "Indian country" for purposes of the Major Crimes Act. The Court thereby deprived the State of authority to prosecute Indians who commit serious crimes there. The Oklahoma state courts have since held that *McGirt* compels the same conclusion with respect to the remainder of the Five Tribes in Oklahoma. As a result, almost 2 million Oklahoma residents—nearly 90% of whom are not enrolled members of a federally recognized tribe—suddenly live in Indian country for purposes of federal criminal jurisdiction.

As the Chief Justice predicted in his dissent, the results of this abrupt shift in governance have been calamitous and are worsening by the day. Before *McGirt*, the State exercised criminal jurisdiction over the historical Indian territories within its borders since admission in 1907, without question from the tribes or the federal government. The decision in *McGirt* now drives thousands of crime victims to seek justice from federal and tribal prosecutors whose offices are not equipped to handle those demands. Numerous crimes are going uninvestigated and unprosecuted, endangering public safety. Federal district courts in Oklahoma are completely overwhelmed. Thousands of state prisoners are challenging decades' worth of convictions—many of which involve crimes that cannot be reprosecuted. The effects have spilled into the civil realm as well, jeopardizing hundreds of millions of dollars in state tax revenue and calling into question the State's regulatory authority within its own borders.

3

The Governor did not mince his words earlier this year when he identified the fallout from *McGirt* as the "most pressing issue" for the future of Oklahoma.  Simply put, the fundamental sovereignty of an American State is at stake.

This case presents three exceptionally important questions that have arisen in the wake of *McGirt* and that cry out for the Court's immediate attention.  In the decision below, the Oklahoma Court of Criminal Appeals granted postconviction relief to respondent, a non-Indian convicted of brutally murdering an Indian mother and her two young children, on the ground that the crime occurred in Indian country.  In reaching that decision, the court held that federal law precluded the application of any state-law procedural or equitable bar that would prevent respondent from challenging his conviction on that ground.  The court then extended *McGirt* beyond the confines of the Major Crimes Act to all crimes committed by non-Indians against Indians in Indian country.  Both of those rulings were erroneous.  They greatly exacerbate the ongoing criminal-justice crisis in Oklahoma, and the Court has already recognized their importance by granting a stay of the mandate.

This case also presents the question whether *McGirt* should be overruled.  *McGirt* was wrongly decided for the reasons stated in the Chief Justice's dissent, and its disruptive effects in Oklahoma are unprecedented.  While the Court believed that compromise or congressional action could limit the disruption from its decision, it is now clear that neither is forthcoming.  The tribes do not agree among themselves, much less with the State, on the proper path forward, and Congress is unlikely to adopt any proposal not supported by all of the parties involved.  Only the Court can remedy the problems it has created,

4

and this case provides it with an opportunity to do so before the damage becomes irreversible. The petition for a writ of certiorari should be granted.

### A. Background

1. The authority to prosecute crimes committed in "Indian country," 18 U.S.C. 1151, is governed by a "complex patchwork of federal, state, and tribal law." *Negonsott* v. *Samuels*, 507 U.S. 99, 102 (1993). By virtue of their admission to the Union, States exercise exclusive authority to prosecute crimes committed by non-Indians against non-Indians in Indian country. See, *e.g.*, *United States* v. *McBratney*, 104 U.S. 621, 622 (1882). By contrast, the Major Crimes Act gives the federal government exclusive authority to prosecute certain enumerated felonies committed by Indians in Indian country. See 18 U.S.C. 1153.

Another federal statute, the General Crimes Act, governs the reach of other federal criminal laws in Indian country. See 18 U.S.C. 1152. Under the first paragraph of the General Crimes Act, "the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States" (except for the District of Columbia) extend to Indian country. *Ibid.* Under the second paragraph, however, those federal laws do not extend to offenses committed by one Indian against another. See *ibid.* Accordingly, the General Crimes Act provides the federal government with authority to prosecute violations of general federal criminal law where either the defendant or the victim was an Indian and the other party was not. See *ibid.* But this Court has never squarely addressed the question whether States have concurrent authority to prosecute non-Indians for state-law crimes committed against Indians in Indian country.

5

2. In 2018, the Court granted certiorari in *Sharp* v. *Murphy*, which presented the question whether the historical territory of the Creek Nation—one of the Five Tribes of Oklahoma—constitutes "Indian country" for purposes of the Major Crimes Act. After receiving briefing, hearing argument, and receiving additional briefing, the Court did not issue a decision in that case. In 2019, the Court granted certiorari in *McGirt* v. *Oklahoma*, which presented the same question as *Murphy*.

On July 9, 2020, the Court issued its decision in *McGirt*. It held that the historical Creek territory constituted Indian country for purposes of the Major Crimes Act, giving the federal government exclusive authority to prosecute the crimes enumerated in that statute. See 140 S. Ct. 2452, 2459 (2020). The Chief Justice dissented in an opinion joined in full by Justices Alito and Kavanaugh and in part by Justice Thomas. See *id.* at 2482-2502. Justice Thomas wrote a separate dissenting opinion. See *id.* at 2502-2504. On the same day, in *Murphy*, the Court issued a per curiam opinion affirming for the reasons stated in *McGirt*. See 140 S. Ct. 2412 (2020).

**B. Facts And Procedural History**

1. In 2010, respondent Shaun Michael Bosse murdered his girlfriend, Katrina Griffin, and her two children, eight-year-old Christian and six-year-old Chasity, after Ms. Griffin discovered that respondent had stolen some of her family's property. Respondent stabbed Katrina and Christian to death and then locked Chasity in a closet before setting the family's mobile home on fire, burning Chasity alive. The bodies of Katrina, Christian, and Chasity were found the next morning. See 360 P.3d 1203, 1211-1213, 1227-1229 (Okla. Crim. App. 2015).

6

Respondent was convicted of three counts of murder in Oklahoma state court and sentenced to death. The Oklahoma Court of Criminal Appeals initially affirmed, see 360 P.3d at 1236, but this Court summarily reversed, holding that the trial court erroneously admitted certain victim-impact testimony during the penalty phase of respondent's trial, see 137 S. Ct. 1, 2-3 (2016). The Court remanded so that the Court of Criminal Appeals could address whether the error affected the jury's sentencing determination. See *id.* at 2. On remand, the Court of Criminal Appeals again affirmed, holding that the admission of the victim-impact testimony was harmless beyond a reasonable doubt, see 400 P.3d 834, 855-857 (2017), and this Court denied review, see 138 S. Ct. 1264 (2018). During these direct-review proceedings, respondent never argued that the State lacked authority to prosecute him because the crimes occurred on Indian country and his victims were Indians.

2. In 2013, respondent filed an application for post-conviction relief in state court, challenging his conviction and sentence on a number of grounds. As in his direct appeal, respondent did not argue that his convictions were invalid because the crimes occurred on Indian country and his victims were Indians. The Court of Criminal Appeals denied respondent's application for relief. See No. PCD-2013-360 (Dec. 16, 2015).

3. In 2019, after this Court held oral argument in *Murphy*, respondent filed a second application for post-conviction relief in state court. For the first time, respondent argued that the State lacked authority to prosecute him because his crimes occurred within the borders of the historical Chickasaw territory and the Griffin family qualified as Indians.

After this Court issued its decision in *McGirt*, the Court of Criminal Appeals remanded the case to the trial

7

court for an evidentiary hearing. On remand, the parties stipulated that the Griffin family were members of the Chickasaw Nation, and the trial court concluded, based on *McGirt*, that the historical Chickasaw territory constituted Indian country. App., *infra*, 37a-48a.

The Court of Criminal Appeals granted postconviction relief, adopting the trial court's conclusions and holding that the federal government had exclusive authority to prosecute respondent for the crimes at issue. App., *infra*, 1a-19a. In so holding, the court rejected the State's arguments that respondent had procedurally defaulted his claim and was precluded from raising it under the doctrine of laches. Citing this Court's decision in *Gonzalez* v. *Thaler*, 565 U.S. 134 (2012), the Court of Criminal Appeals held that federal preemption of state prosecutorial authority in Indian country was jurisdictional in nature, such that the issue "can never be waived or forfeited." App., *infra*, 14a (citation omitted).

The Court of Criminal Appeals then held that the General Crimes Act preempted state prosecutions for crimes committed by non-Indians against Indians in Indian country. App., *infra*, 15a-18a. The court reached that conclusion based on its reading of the text of the General Crimes Act, *id.* at 15a-16a, and on later-enacted statutes that expressly permitted certain States to exercise broad criminal authority in Indian country—which, in the court's view, would have been unnecessary if the General Crimes Act did not otherwise preempt state jurisdiction, *id.* at 17a-18a.

Each of the other four judges wrote separate opinions. App., *infra*, 19a-30a. Judge Lumpkin concurred in the result. *Id.* at 23a-26a. He expressed the opinion that the Court's opinion in *McGirt* "contravened * * * the his-

8

tory leading to the disestablishment of the Indian reservations in Oklahoma," but concluded that he was bound to follow it. *Id.* at 24a.

Judge Hudson also concurred in the result. App., *infra*, 28a-30a. Like Judge Lumpkin, he concurred "as a matter of *stare decisis*," but he observed that *McGirt* was a "hugely destabilizing force to public safety in eastern Oklahoma." *Id.* at 28a, 29a. He noted that some crime victims and their family members "can look forward to a do-over in federal court of the criminal proceedings where *McGirt* applies," and "[s]ome cases may not be prosecuted at all by federal authorities because of issues with the statute of limitations, the loss of evidence, missing witnesses or simply the passage of time." *Id.* at 29a. "*McGirt* must seem like a cruel joke," he concluded, "for those victims and their family members who are forced to endure such extreme consequences in *their* case." *Id.* at 30a.

4. The State applied to this Court for a stay of the mandate pending a decision on a forthcoming petition for a writ of certiorari. See 20A161 Appl. 1 (Apr. 26, 2021). Justice Gorsuch referred the stay application to the full Court, and the Court granted the stay.

## REASONS FOR GRANTING THE PETITION

In the decision below, the Oklahoma Court of Criminal Appeals held that federal preemption of state prosecutorial authority in Indian country is jurisdictional in nature and thus can never be waived or forfeited. The court then expanded the holding of *McGirt* to cover all crimes committed by non-Indians against Indians in Indian country. The court's rulings were erroneous and greatly exacerbate the ongoing crisis in the criminal-justice system in Oklahoma. Both of those questions are extraordinarily important and warrant the Court's review.

9

At the same time, the foregoing issues are merely symptoms of a deeper problem. In truth, the problem is *McGirt* itself, and the reconsideration of that decision is the only realistic avenue for ending the ongoing chaos affecting every corner of daily life in Oklahoma. The State of Oklahoma respectfully requests that the Court overrule its decision in *McGirt*, which was profoundly flawed and is causing unprecedented disruption. The petition for a writ of certiorari should be granted.

**A. Review Is Warranted Regarding The Application Of Procedural And Equitable Bars To Postconviction Relief Under *McGirt* v. *Oklahoma***

The first question presented is whether a State may impose procedural or equitable bars to relief in postconviction proceedings on the claim that the State lacked prosecutorial authority because the crime of conviction occurred in Indian country. The Oklahoma Court of Criminal Appeals held that federal law precluded the application of such bars. That holding is erroneous, and the decision below conflicts in that respect with decisions of other lower courts. This Court's review is urgently needed.

1. In *McGirt*, the Court noted that defendants who attempted to challenge their state convictions in the wake of the Court's decision "may face significant procedural obstacles, thanks to well-known state and federal limitations on postconviction review in criminal proceedings." 140 S. Ct. at 2479. In the decision below, however, the Court of Criminal Appeals held that the federal preemption of state prosecutorial authority in Indian country by the General Crimes Act deprived state courts of subject-matter jurisdiction, thereby exempting a challenge on that ground from procedural or equitable bars. That holding is incorrect.

10

a. "This Court has endeavored in recent years to bring some discipline to the use of the term 'jurisdictional.'" *Gonzalez* v. *Thaler*, 565 U.S. 134, 141 (2012) (internal quotation marks and citation omitted). The word "jurisdictional" is "generally reserved" for statutory provisions "delineating the classes of cases a court may entertain (subject-matter jurisdiction)" and "the persons over whom the court may exercise adjudicatory authority (personal jurisdiction)." *Fort Bend County* v. *Davis*, 139 S. Ct. 1843, 1848 (2019) (citation omitted). As the Court has explained, a statutory provision "counts as jurisdictional" only where Congress "clearly states" that fact; otherwise, a court "should treat the restriction as nonjurisdictional in character." *Id.* at 1850 (citation omitted). While Congress need not "incant magic words" to give a statute jurisdictional effect, it usually evidences that intent by using language that speaks in terms of a "court's power." *United States* v. *Kwai Fun Wong*, 575 U.S. 402, 410 (2015).

Neither the Major Crimes Act nor the General Crimes Act speaks in terms of a court's power over a particular subject matter. Instead, those statutes speak in terms of the federal government's authority to define and prosecute crimes in Indian country. See 18 U.S.C. 1152, 1153. That authority refers to the "legislative" jurisdiction of the United States, not "the courts' statutory or constitutional power to adjudicate the case." *Steel Co.* v. *Citizens for a Better Environment*, 523 U.S. 83, 89 (1998); cf. *Hartford Fire Insurance Co.* v. *California*, 509 U.S. 764, 813 (1993).

Federal courts have recognized as much. As they have explained regarding federal prosecutions for crimes committed in Indian country, the federal government's failure to prove the status of the defendant or the victim as an Indian results in acquittal for failure to prove an element

11

of the offense, not in dismissal for lack of jurisdiction. See, *e.g.*, *United States* v. *Tony*, 637 F.3d 1153, 1158-1159 (10th Cir. 2011); *United States* v. *White Horse*, 316 F.3d 769, 772 (8th Cir.), cert. denied, 540 U.S. 84 (2003). The power of the federal courts to adjudicate violations of federal criminal law is premised on a separate jurisdictional statute (18 U.S.C. 3231), not on the Major Crimes Act or the General Crimes Act. See *United States* v. *Cotton*, 535 U.S. 625, 630-631 (2002); *Hugi* v. *United States*, 164 F.3d 378, 380-381 (7th Cir. 1999).

That reasoning applies with even greater force to state courts. Unlike the federal courts, state courts exercise inherent and general adjudicatory jurisdiction, "subject only to limitations imposed by the Supremacy Clause" and their own laws. *Tafflin* v. *Levitt*, 493 U.S. 455, 458-459 (1990). Here, Oklahoma state courts have subject-matter jurisdiction over prosecutions for murder under the Oklahoma Constitution. See Okla. Const. art. VII, § 7. While federal Indian law may preempt state criminal law in particular cases, such preemption does not divest state courts of their subject-matter jurisdiction. That is because the Supremacy Clause merely "creates a rule of decision" for courts "not [to] give effect to state laws that conflict with federal laws." *Armstrong* v. *Exceptional Child Center, Inc.*, 575 U.S. 320, 324 (2015).

Notably, the Tenth Circuit—which has jurisdiction over federal district courts in Oklahoma—has specifically held (albeit in an unpublished opinion) that prisoners seeking postconviction relief under the rule of *McGirt* are subject to the procedural bars applicable to successive federal habeas petitions. See *Dopp* v. *Martin*, 750 Fed. Appx. 754, 756-757 (10th Cir. 2018) (addressing the issue after that court's decision in *Murphy*, *supra*); see also, *e.g.*, *In re Davis*, No. 21-7030, at *1-*2 (10th Cir. July 6, 2021); *In re Morgan*, No. 20-6123, at *1-*5 (10th Cir. Sept.

12

18, 2020); *Ross* v. *Pettigrew*, Civ. No. 20-396, 2021 WL 1535365, at \*3 n.5 (N.D. Okla. Apr. 19, 2021); *Kirk* v. *Oklahoma*, Civ. No. 21-164, 2021 WL 1316075, at \*2 (W.D. Okla. Apr. 8, 2021). Accordingly, the ability of an Oklahoma prisoner to obtain relief under *McGirt* through a successive application for postconviction relief may depend on whether the prisoner seeks relief in state or federal court. Similarly, the Tenth Circuit has held that postconviction challenges to the federal government's prosecutorial authority under the Major Crimes Act are subject to procedural and equitable bars. See *Tony*, 637 F.3d at 1158-1159; cf. *Hagen* v. *Utah*, 510 U.S. 399, 409 (1994) (granting review to resolve a disagreement between the Tenth Circuit and the Utah Supreme Court on a matter of federal Indian law).

b. In opposing the State's stay application, respondent did not defend the conclusion in the decision below that the State cannot impose procedural and equitable bars on state postconviction claims seeking relief under *McGirt*. And for good reason: the decision relies on a plainly erroneous reading of this Court's decision in *Gonzalez*, *supra*.

The Court of Criminal Appeals cited *Gonzalez* and two Tenth Circuit cases for the proposition that "[s]ubject-matter jurisdiction can never be waived or forfeited." App., *infra*, 14a (citation omitted). But this Court did not hold in *Gonzalez* that federal law prohibited States from applying procedural or equitable bars to challenges to state prosecutorial authority brought in applications for postconviction relief. Rather, the Court made its general statement about subject-matter jurisdiction in the context of deciding whether 28 U.S.C. 2253(c) is jurisdictional in nature. See *Gonzalez*, 565 U.S. at 141. The two Tenth Circuit cases similarly make general statements about subject-matter jurisdiction in wholly different contexts.

13

See *United States* v. *Garcia*, 936 F.3d 1128, 1140 (2019), cert. denied, 141 S. Ct. 139 (2020); *United States* v. *Green*, 886 F.3d 1300, 1304 (2018).

Nothing in those decisions supports the decision below, and nothing else in the decision below explains why the State's lack of prosecutorial authority would deprive state courts of subject-matter jurisdiction. The decision below was thus erroneous, and this Court's review is warranted to reverse that holding and resolve the conflict between the Oklahoma courts and the Tenth Circuit.

2.   Respondent also argued that the decision below relied entirely on state law in holding that the State cannot impose procedural and equitable bars on state postconviction claims seeking relief under *McGirt*. See 20A161 Opp. 7-10. That argument lacks merit.

Under *Michigan* v. *Long*, 463 U.S. 1032 (1983), this Court presumes that a state-court decision rests on federal law for purposes of the adequate-and-independent-state-ground rule when the decision "fairly appears to rest primarily on federal law, or to be interwoven with the federal law," and when "the adequacy and independence of any possible state law ground is not clear from the face of the opinion." *Id.* at 1040-1041. The Court thus has jurisdiction over a decision based in part on state law when the state court "treated state and federal law as interchangeable and interwoven." *Florida* v. *Powell*, 559 U.S. 50, 57 (2010).

The decision below rested on federal law and did not clearly rely on an independent and adequate state ground. The Court of Criminal Appeals' discussion began with citations of *Gonzalez* and two Tenth Circuit decisions for the proposition that issues of subject-matter jurisdiction cannot be waived or forfeited. The court did not purport to interpret the limitations on successive applications for postconviction relief under the governing state statute to

14

contain an exemption for jurisdictional challenges, nor does that statute contain such an exemption. Instead, the statute treats claims that "the court was without jurisdiction to impose" a sentence the same as all other grounds for postconviction relief. Okla. Stat., tit. 22, § 1080(b). All such claims are subject to state-law bars on successive applications for postconviction relief. See *id.* § 1089(D)(8)-(9).

In addition, longstanding precedent from the Court of Criminal Appeals provided that claims related to the State's prosecutorial authority in Indian country are subject to equitable doctrines such as laches. See *Ex parte Wallace*, 162 P.2d 205, 210-211 (1945). That explains why this Court, the Creek Nation, and the respondent in *Murphy* all understood Oklahoma law to subject such claims to procedural and equitable bars. See *McGirt*, 140 S. Ct. at 2479 & n.15; Br. in Opp. at 33, *Murphy, supra*; Creek Supp. Br. at 11-12, *Murphy, supra*; Resp. Supp. Reply Br. at 11, *Murphy*; Creek Br. at 42-43, *McGirt, supra*.

Even if the decision below were read to rest on state law, federal law would still be "interwoven" with the state-law ground for decision. See *Long*, 463 U.S. at 1040. For example, if the Court of Criminal Appeals is understood to have held that state law permits a question of subject-matter jurisdiction to be raised at any time—even in a successive application for postconviction relief—that ruling would necessarily be intertwined with the conclusion that federal law deprives state courts of subject-matter jurisdiction over prosecutions for crimes committed by non-Indians against Indians in Indian country. See App., *infra*, 23a (Rowland, V.P.J., concurring in the result) (interpreting the majority opinion as holding that the General Crimes Act deprives state courts of subject-matter jurisdiction); *id.* at 26a-27a (Lewis, J., specially concurring) (similar). And if the Court of Criminal Appeals is

15

understood to have applied the state statutory provision permitting a prisoner to raise a previously unavailable legal claim in a successive application for postconviction relief, the applicability of that provision would depend on the state of federal law regarding reservation disestablishment and the General Crimes Act before the decision in *McGirt*. See Okla. Stat., tit. 22, § 1089(D)(9)(A).

As to the first question presented, therefore, the decision below did not clearly rest on an adequate and independent state ground. With thousands of criminal convictions at stake, this Court's review is urgently needed to resolve the conflict between the Oklahoma Court of Criminal Appeals and the Tenth Circuit and reverse the Court of Criminal Appeals' erroneous holding.

**B. Review Is Warranted Regarding The Authority Of A State To Prosecute Non-Indians Who Commit Crimes Against Indians In Indian Country**

The second question presented is whether a State has authority to prosecute non-Indians who commit crimes against Indians in Indian country. The Oklahoma Court of Criminal Appeals held that the answer is no, extending *McGirt* beyond the confines of the Major Crimes Act. That holding is incorrect, and it is of paramount importance given the overwhelmingly non-Indian population of eastern Oklahoma. The Court's review is warranted on that question as well.

1. As the Court has explained, "[s]tate sovereignty does not end at a reservation's border." *Nevada* v. *Hicks*, 533 U.S. 353, 361 (2001). "[B]y virtue of [its] statehood," a State has the "right to exercise jurisdiction over Indian reservations within its boundaries." *New York ex rel. Ray* v. *Martin*, 326 U.S. 496, 499-500 (1946).

A State's authority does not recede when a non-Indian commits a crime against an Indian. A State's Indian citi-

16

zens are entitled to equal protection under the law, including equal access to the resources, protection, and benefits of the State's criminal-justice system. As the Court has instructed, a State has "the power of a sovereign over their persons and property" in Indian territory within state borders as necessary to "preserve the peace" and "protect [Indians] from imposition and intrusion." *New York ex rel. Cutler* v. *Dibble*, 62 U.S. (21 How.) 366, 370 (1859).

"The States' inherent jurisdiction on reservations can of course be stripped by Congress." *Hicks*, 533 U.S. at 365. But "absent a congressional prohibition," a State has the right to "exercise criminal (and, implicitly, civil) jurisdiction over non-Indians located on reservation lands." *County of Yakima* v. *Confederated Tribes & Bands of Yakima Indian Nation*, 502 U.S. 251, 257-258 (1992); see *United States* v. *McGowan*, 302 U.S. 535, 539 (1938); *Surplus Trading Co.* v. *Cook*, 281 U.S. 647, 651 (1930).

2. In the decision below, the Court of Criminal Appeals concluded that the "clear language" of the General Crimes Act confers exclusive federal prosecutorial authority over Indian country, thereby stripping Oklahoma and other States of their authority to prosecute crimes committed by non-Indians against Indians in Indian country. App., *infra*, 15a-16a. That is incorrect.

a. The General Crimes Act states that, "[e]xcept as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country." 18 U.S.C. 1152. Nothing in that text acts to relieve a State of its prosecutorial authority over non-Indians in Indian country. As the Court has explained, the phrase "sole and exclusive jurisdiction" is used to "describe the laws of the United

17

States" that extend to Indian country; it does not concern the discrete question of who has prosecutorial authority within Indian country. *Donnelly* v. *United States*, 228 U.S. 243, 268 (1913); accord *Ex parte Wilson*, 140 U.S. 575, 578 (1891).

The phrase "except as otherwise expressly provided by law," in turn, refers to federal laws that exempt Indian country from the reach of federal criminal law in certain circumstances. It does not mean, as the Court of Criminal Appeals concluded, that state criminal law does not apply in Indian country unless Congress expressly provides for that result. See App., *infra*, 15a-16a. The Court of Criminal Appeals erred by resting its decision on that flawed premise.

b. This Court's precedents also do not prohibit States from prosecuting crimes committed by non-Indians against Indians in Indian country. To the contrary, in *Dibble*, *supra*, the Court upheld a state law prohibiting non-Indians from trespassing on Indian lands. The Court reasoned that "a police regulation for the protection of the Indians from intrusion of the white people" was valid because the State had never "surrendered" its sovereign power "over their persons and property" for the purposes of "preserv[ing] the peace" and "protect[ing]" Indians. 62 U.S. (21 How.) at 370. In the absence of any contrary federal legislation, the Court explained, state law extended to protect "Indians and their possessions." *Id.* at 371.

In addition, in *United States* v. *McBratney*, 104 U.S. 621 (1882), the Court held that, under the predecessor statute to the General Crimes Act, the States had exclusive jurisdiction to prosecute crimes committed by non-Indians against non-Indians in Indian country. The Court reasoned that, "by its admission into the Union by Congress[] upon an equal footing with the original States," a

18

State "acquire[s] criminal jurisdiction over its own citizens and other white persons throughout the whole of the territory within its limits," including Indian country. *Id.* at 624; see *Draper* v. *United States*, 164 U.S. 240, 242-243, 247 (1896). The Court has explained that the prosecutorial authority of States recognized in *McBratney* exists "by virtue of their statehood"—in other words, the authority is inherent in States' power as sovereigns. *Martin*, 326 U.S. at 500.

Because the *McBratney* line of decisions involved crimes committed by non-Indians against non-Indians, they left open the question presented here: whether States have authority to prosecute crimes committed by non-Indians against Indians in Indian country. In *Donnelly*, *supra*, the Court addressed this type of crime—the murder of an Indian by a non-Indian in Indian country— and held that the federal government could prosecute such crimes. See 288 U.S. at 271-272. But the Court stopped there; it did not hold that federal jurisdiction was exclusive or that the predecessor statute to the General Crimes Act deprived States of their own authority to prosecute such crimes.

To be sure, the Court has suggested in dicta that States lack such jurisdiction. See *Williams* v. *United States*, 327 U.S. 711, 714 & n.10 (1946); App., *infra*, 16a. But in those cases, the Court never squarely confronted the issue, examined the text of the General Crimes Act, or explained why States would lack jurisdiction despite the holding in *Dibble* and the reasoning in *McBratney*. Accordingly, several decades ago, the Office of Legal Counsel concluded that States likely have jurisdiction over non-Indian offenders who commit crimes against Indians in Indian country. 3 Op. Off. Legal Counsel 111, 117-120 (1979); accord U.S. Br. at 15 n.8, *Martin*, *supra* (No. 45-158) (noting the possibility of "concurrent federal and

19

state jurisdiction of some offenses committed by a white against an Indian"). A decade after the OLC opinion, the Justice Department took the contrary position in a brief before this Court, but it recognized that the question was close and that, "[i]f the Court were writing on a clean slate," it might permit the exercise of state prosecutorial authority. U.S. Br. at 3, *Arizona* v. *Flint*, 492 U.S. 911 (1989) (No. 88-603).

In the wake of *McGirt*, determining the answer to that question is now more important than ever. Nearly 90% of the almost 2 million Oklahomans who suddenly live in Indian country are not Indians. The question presented here concerns the allocation of prosecutorial authority over those individuals. There could hardly be a more compelling basis for the Court's review.

3. In opposing the State's stay application, respondent defended the decision below on the ground that the "starting point" for the preemption analysis is that a State presumptively lacks authority to regulate activities involving Indians in Indian country. 20A161 Opp. 19. But this Court has roundly and repeatedly rejected that position. See *Hicks*, 533 U.S. at 361-362; *White Mountain Apache Tribe* v. *Bracker*, 448 U.S. 136, 141 (1980); *Organized Village of Kake* v. *Egan*, 369 U.S. 60, 72 (1962). Instead, the Court's modern precedents demonstrate that, in the absence of a congressional prohibition, a State's sovereign authority extends to non-Indians in Indian country—including in interactions between non-Indians and Indians. See, *e.g.*, *Department of Taxation & Finance* v. *Milhelm Attea & Brothers, Inc.*, 512 U.S. 61, 73-75 (1994); *County of Yakima*, 502 U.S. at 257-258; *Oklahoma Tax Commission* v. *Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505, 512 (1991); *Cotton Petroleum Corp.* v. *New Mexico*, 490 U.S. 163, 187 (1989); *Three Affiliated Tribes of Fort Berthold Reservation* v.

20

*Wold Engineering, P.C.*, 467 U.S. 138, 148-149 (1984); *Washington* v. *Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134, 159 (1980); *Moe* v. *Confederated Salish & Kootenai Tribes of Flathead Reservation*, 425 U.S. 463, 483 (1976).

Even when the Court has held that federal law impliedly preempts state law in Indian country, it has done so only after examining "the language of the relevant federal treaties and statutes" to determine whether, in light of "the state, federal, and tribal interests at stake," the exercise of state authority would violate federal law. *Bracker*, 448 U.S. at 144-145; see *Cotton Petroleum*, 490 U.S. at 176-177. But as discussed above, the plain text of the General Crimes Act does not reveal any congressional intent to divest States of their authority to prosecute crimes committed by non-Indians against Indians in Indian country. What is more, no tribal interest is impaired by the exercise of state jurisdiction over crimes committed by non-Indians: Indian tribes generally do not have criminal jurisdiction over non-Indians, see *Oliphant* v. *Suquamish Indian Tribe*, 435 U.S. 191, 195 (1978), and the "exercise of state jurisdiction is particularly compatible with tribal autonomy" when "the tribal court lack[s] jurisdiction over the claim." *Three Affiliated Tribes*, 467 U.S. at 149.

By contrast, a State has paramount interests in public safety and criminal justice within its borders. See, *e.g.*, *Kelly* v. *Robinson*, 479 U.S. 36, 49 (1986). Specifically, a State has legitimate interests both in protecting its Indian citizens and in enforcing its criminal laws against non-Indian citizens. And the exercise of state jurisdiction does not impair any federal interest, because a state prosecution will not bar a subsequent federal prosecution of the same defendant for the same conduct. See *Gamble* v.

21

*United States*, 139 S. Ct. 1960, 1964 (2019). To the contrary, concurrent federal and state jurisdiction would further federal and tribal interests by enhancing the protection of Indians from the crimes of non-Indians—particularly here, where Oklahoma has protected such interests for over a century and the federal government lacks the capacity and resources to take over that responsibility.

4. The Court of Criminal Appeals also erred by reasoning that certain statutes enacted over a century after the predecessor statute to the General Crimes Act demonstrate the lack of state authority to prosecute non-Indians for crimes committed against Indians in Indian country. See App., *infra*, 17a-18a. Those statutes, which purport to vest specific States with authority to try civil and criminal cases involving Indians, see, *e.g.*, 25 U.S.C. 1321, 1322, are at best overinclusive, because States already possess civil jurisdiction in cases involving non-Indian defendants. See *Three Affiliated Tribes*, 467 U.S. at 149-151. In any event, "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *Marvin M. Brandt Revocable Trust* v. *United States*, 572 U.S. 93, 109 (2014) (citation omitted).

In the end, neither the Court of Criminal Appeals nor any of the parties provides a compelling justification for claiming that federal law deprives the States of their ability to protect their Indian citizens by prosecuting crimes committed against Indians by non-Indians. This Court should also grant review on the second question presented and reverse the Court of Criminal Appeals' erroneous holding.

### C. *McGirt* v. *Oklahoma* Should Be Overruled

Aside from presenting the two questions discussed above, this case also provides the Court with an opportunity to reconsider its decision in *McGirt*. The State

22

urges the Court to take that opportunity. *McGirt* was wrongly decided, and no recent decision has spurred such instant and sweeping turmoil in an American State. *McGirt* has called into question the fundamental sovereignty of Oklahoma. While the Court identified compromise and congressional action as potential solutions, it has become clear there is no realistic prospect of either. Only this Court can stop the havoc that *McGirt* is wreaking.

1. The decision in *McGirt* was incorrect. As the Chief Justice explained in his dissent, longstanding precedent on the disestablishment of Indian territory required the Court to consider "the relevant Acts passed by Congress; the contemporaneous understanding of those Acts and the historical context surrounding their passage; and the subsequent understanding of the status of the reservation and the pattern of settlement there." 140 S. Ct. at 2485. But those precedents were "not followed by the Court." *Ibid.* Instead, the Court reasoned that "extratextual sources" may be considered in the disestablishment inquiry "only" to "clear up" statutory ambiguity. *Id.* at 2469 (majority opinion). Consideration of history is necessary, however, precisely because it is unclear whether Congress's alienation of Indian lands at the turn of the century changed the status of the land. See *id.* at 2488 (Roberts, C.J., dissenting). Under the correct framework prescribed by this Court's precedent, it is clear that Congress disestablished the Creek territory in Oklahoma, as well as the territories of the four other Oklahoma tribes.

2. As the Chief Justice predicted, the "burdens" of the *McGirt* decision on the State of Oklahoma have already proven to be "extraordinary." 140 S. Ct. at 2500. That decision vastly expanded the number of people living in Indian country for purposes of criminal jurisdiction, and the Oklahoma courts have since extended the decision to the historical territories of the rest of the Five Tribes.

23

The decision in *McGirt* now applies to approximately 43% of the territory in the State—home to almost 2 million Oklahomans. See App., *infra*, 8a (Chickasaw); *Sizemore* v. *State*, 485 P.3d 867 (Okla. Crim. App. 2021) (Choctaw); *Grayson* v. *State*, 485 P.3d 250 (Okla. Crim. App. 2021) (Seminole); *Hogner* v. *State*, No. F-2018-138, 2021 WL 958412 (Okla. Crim. App. Mar. 11, 2021) (Cherokee).

The challenges from that seismic shift in jurisdiction have rippled through every aspect of life in Oklahoma. As the Governor reported in his State of the State Address earlier this year, the "most pressing issue" for the future of Oklahoma is how to deal with the fallout from *McGirt*. Governor Kevin Stitt, *Press Release: Governor Stitt Delivers 2021 State of the State Address* (Feb. 1, 2021).

a. Most immediately, *McGirt* has pitched Oklahoma's criminal-justice system into a state of emergency.

i. According to the most recent data in the State's possession, over 3,000 applications for postconviction relief have been filed by prisoners seeking to overturn their state convictions based on *McGirt*. That volume of post-conviction proceedings will have an "impact upon the administration of [state] criminal law so devastating as to need no elaboration." *Tehan* v. *United States ex rel. Shott*, 382 U.S. 406, 418-419 (1966). The Oklahoma Department of Corrections has already released over 150 prisoners, who are the first to have successfully completed challenges to their convictions under *McGirt*. Many have been handed into federal custody, but almost half were set free because of a lack of a federal detainer or custody request from the relevant tribe. While the process has slowed in state court since the Court issued its stay in this case, those numbers are bound to increase if the decision below is allowed to stand, because no procedural or equitable bars will be available to prevent such challenges from succeeding.

24

The combination of *McGirt* and the decision below is a toxic cocktail.  It allows an untold number of prisoners to game the system by seeking postconviction relief only after the limitations period for federal reprosecution has ended.  See 18 U.S.C. 3282(a) (establishing a five-year limitations period for most federal crimes).  Early data showed that approximately a quarter of the postconviction challenges seeking relief under *McGirt* involve underlying crimes that are already beyond the federal statute of limitations; more recent numbers suggest that the proportion is greater.  And the crimes of conviction in some of those cases are chilling.  See, *e.g.*, 20A161 Appl. 13-14 (recounting, *inter alia*, the grant of postconviction relief under *McGirt* to an individual who had been convicted of multiple counts of rape, kidnapping, and robbery with a firearm).

If any of the released individuals reoffend, the cost to society will be great and the trauma to the victims incalculable.  See *Edwards* v. *Vannoy*, 141 S. Ct. 1547, 1554 (2021).  As one Oklahoma woman has explained, she "lives in fear to this day" that her ex-boyfriend, who shot her twice, will harm her now that his conviction and 18-year sentence have been overturned under *McGirt*.  Mike Rogers, *Oklahoma Woman Worried Man Who Tried to Kill Her Could Be Set Free Following Criminal Appeals Court Ruling*, KXII News 12 (Mar. 15, 2021) <tinyurl. com/rogersoklahoma>.  He has now been released, and the federal statute of limitations bars his reprosecution.

Even in cases within the applicable limitations period, successful reprosecution by federal or tribal authorities will not be easy.  As this Court recently recognized, "conducting scores of retrials years after the crimes occurred would require significant  *  *  *  resources." *Edwards*, 141 S. Ct. at 1554.  And reprosecution may be impossible

25

because of "lost evidence, faulty memory, and missing witnesses." *Ibid.* (citation omitted).  For example, in the case of Clarence Rozell Goode, Jr.—who murdered a couple and their 10-year-old daughter in a family dispute—a lead detective has died, as well as several witnesses (including a victim's mother, who found the victims' bodies).  See Annie Gowen & Robert Barnes, *'Complete, Dysfunctional Chaos': Oklahoma Reels After Supreme Court Ruling on Indian Tribes*, Wash. Post, July 24, 2021, at A1.

Where reprosecution is even possible, conducting retrials will "inflict[] substantial pain on crime victims who must testify again and endure new trials." *Edwards*, 141 S. Ct. at 1554-1555.  In the words of one mother who is "devastated" at the prospect of a retrial for her daughter's murderer:  "[i]t's an awful feeling that we have to go through this  *  *  *  again," and "it's not just me, it's all these families."  Ashely Izbicki, *Victim's Family Speaks Out After Convicted Murderer Could Get New Trial Due to Supreme Court's McGirt Decision*, News 9 (Mar. 15, 2021) <tinyurl.com/izbickifamily>.

ii.  As the federal and tribal prosecutors are flooded with old cases, they cannot keep up with new ones because of severe resource constraints.  The State estimates that defendants in approximately 6,000 pending criminal cases are seeking dismissal under *McGirt*.  For its part, the Federal Bureau of Investigation estimates that it will have 7,500 additional cases in 2022 alone because of the decision in *McGirt*.  See *Hearing on Federal Bureau of Investigation Budget Request for Fiscal Year 2022 Before the Subcomm. on Commerce, Science, and Related Agencies of the S. Comm. on Appropriations*, 117th Cong. 13 (June 23, 2021) (statement of FBI Director Wray).  And the trend is likely to continue:  Oklahoma district attorneys have determined that, since 2005, at least 76,000 of the non-traffic criminal cases filed in Oklahoma state

26

court have involved an Indian perpetrator or victim. Yet the Bureau has stated that it is already in a "constant scramble" in Oklahoma, with the "staggering volume" of new cases creating a "daunting" task at "every federal level" that "poses significant and long-term operational and public safety risks." *Ibid.*; *Oklahoma FBI Case Volume Unprecedented*, FBI News (July 8, 2021) <tinyurl.com/fbioklahoma>.

The tragic consequence is that some crimes are going unprosecuted, with a significant share committed by non-Indians against Indians. After all, "most of those who live on Indian reservations are non-Indians." *United States* v. *Cooley*, 141 S. Ct. 1638, 1645 (2021). The United States Attorneys' Offices in Oklahoma are resorting to unprecedented triage: for example, the Eastern District of Oklahoma has prioritized prosecuting crimes involving serious bodily injury, leaving almost all other crimes unindicted. The State understands that, of the thousands of felonies referred to that office in the last year, only approximately 10% have thus far resulted in federal indictment. Making matters worse, tribes lack the authority to prosecute almost all non-Indian offenders. The combined result is that essentially every non-Indian who victimizes an Indian in the Eastern District—unless the crime involves death or serious bodily injury—remains free and uncharged.

As to non-major crimes committed by Indians in newly recognized Indian country, it is unknown how many of the thousands of cases dismissed from state court in light of *McGirt* are being reprosecuted by tribal authorities. The Creek Nation has declined the State's repeated requests to share a list of criminal cases it is prosecuting. And newly committed crimes are being referred directly to tribal prosecutors; the State is unaware of how many such crimes exist. The full effect of *McGirt* on criminal justice

27

in Oklahoma could therefore be significantly worse than even the current data show.

Meanwhile, the United States District Court for the Eastern District of Oklahoma has declared a judicial emergency due to the "unprecedented increase in criminal filings" after *McGirt*, invoking the same provision ordinarily used by federal courts in the wake of hurricanes and other natural disasters. See General Order No. 21-10 (invoking 28 U.S.C. 141). As a result, trials have been delayed, and parties in the Eastern District are having to travel to the Western District to litigate their cases. See *ibid.* Similarly, in the Northern District, the combined impact of the COVID-19 pandemic and *McGirt* on criminal trials has meant that "civil cases will most likely not be tried before a district judge in the foreseeable future." *Feenstra* v. *Sigler*, Civ. No. 19-234 (N.D. Okla. July 28, 2021) (minute order).

*McGirt* is also affecting first responders. As one emergency-response dispatcher in the Creek territory has explained, callers to 911 are now asked if they are members of a federally recognized tribe; if they are, callers are transferred to the Creek Nation, where they are "sometimes met with a hold tone and music because the call volume is so high." Gowen & Barnes A1. The Creek Nation includes much of the Tulsa metropolitan area, including downtown.

b. The effects of *McGirt* on Oklahoma's criminal-justice system are catastrophic enough. But they sweep far more broadly than that. As predicted, the decision has "create[d] significant uncertainty for the State's continuing authority over any area that touches Indian affairs, ranging from zoning and taxation to family and environmental law" in eastern Oklahoma. *McGirt*, 140 S. Ct. at 2482 (Roberts, C.J., dissenting). Questions involving the

28

effect of *McGirt* on the State's civil authority have already arisen in a range of contexts.

One example is that some businesses and individuals in Indian country in Oklahoma are now refusing to pay income and sales taxes—and seeking refunds of prior payments of those taxes within the three-year appeal period. See Okla. Stat., tit. 68, § 2373. Thousands of tribal citizens have filed tax protests or exemption applications. The State estimates that those protests and applications, if successful, could require the payment of hundreds of millions of dollars in refunds. See Oklahoma Tax Commission, *Report of Potential Impact of McGirt v. Oklahoma* 2 (Sept. 30, 2020). And that does not include future lost revenue—potentially amounting to billions of dollars—on which state agencies and programs rely. State property taxes have been challenged as well. See, *e.g.*, *Oneta Power, LLC* v. *Hodges*, No. CJ-2020-193 (Okla. Dist. Ct. Wagoner Cty.).

Other issues potentially affecting the State's civil authority abound. The State's power to regulate oil and gas matters has been challenged. See *Canaan Resources X* v. *Calyx Energy III, LLC*, No. 119,245 (Okla.). Even simple matters such as title insurance and underwriting have been cast into uncertainty. See Sarah Roubidoux Lawson & Megan Powell, *Unsettled Consequences of the McGirt Decision*, The Regulatory Review (Apr. 1, 2021) <tinyurl. com/lawsonandpowell>. Title exceptions are now routinely being placed on title policies in real-estate transactions throughout eastern Oklahoma.

The State's authority under cooperative-federalism programs is also under attack. Citing *McGirt*, the Department of the Interior has moved to seize control over surface coal mining and reclamation in the State. See 86 Fed. Reg. 26,941 (May 18, 2021); *Oklahoma* v. *Depart-*

29

*ment of Interior*, Civ. No. 21-719 (W.D. Okla.).  And despite the tribes' assurance that the State could retain regulatory primacy over environmental matters, see Boren Br. at 23-24, *Murphy*, *supra* (joined by the Chickasaw and Choctaw Nations); Creek Br. at 33-34, *Murphy*, *supra*, the Environmental Protection Agency appears to be reconsidering the State's authority under pressure from tribal leaders.  See, *e.g.*, EPA, *Press Release: EPA Announces Renewed Consultation and Coordination with Oklahoma Tribal Nations* (June 30, 2021); Allison Herrera, *Tribes Sharply Criticize EPA Granting Stitt Environmental Oversight of Tribal Lands*, KOSU (Oct. 7, 2020) <tinyurl.com/herreratribes>.

Questions involving the local court systems are looming too.  Some involve the civil jurisdiction of non-Indian municipal courts in eastern Oklahoma under the Curtis Act, ch. 504, § 14, 30 Stat. 499-500 (1898), and the new exercise of long-dormant tribal jurisdiction over civil matters.  See *Hooper* v. *City of Tulsa*, Civ. No. 21-165 (N.D. Okla.); cf. *City of Sherrill* v. *Oneida Indian Nation of New York*, 544 U.S. 197, 214 (2005).  Others involve the authority of tribal courts to adjudicate civil claims against nonmembers—a question that remains unresolved by this Court.  See *Dollar General Corp.* v. *Mississippi Band of Choctaw Indians*, 136 S. Ct. 2159 (2016) (per curiam opinion affirming by an equally divided Court).

Civil litigation regarding the collateral consequences of criminal activity has arisen as well.  Former prisoners have filed class actions seeking return of the criminal fines, court fees, and restitution paid to victims as a result of conviction, threatening the financial health of the state-court system.  See *Pickup* v. *District Court of Nowata County*, Civ. No. 20-346 (N.D. Okla.); *Nicholson* v. *Stitt*, No. 119,270 (Okla.).  Individuals convicted of driving while impaired are seeking to recover their driving privileges,

30

and individuals stripped of their professional licenses are seeking to restore their privilege to practice.

3.  As the Court urged in *McGirt*, see 140 S. Ct. at 2481, the State has attempted to reach an agreement with the Five Tribes regarding a solution to the myriad problems discussed above.  But negotiations have not borne fruit, and there is no realistic likelihood of success in the foreseeable future.

A week after the decision in *McGirt*, then-Attorney General Hunter and the Five Tribes released an agreement in principle providing recommendations to Oklahoma's congressional delegation for federal legislation to clarify state and tribal prosecutorial authority in the Five Tribes' territories.  See Murphy/McGirt Agreement in Principle (July 15, 2020) <tinyurl.com/mcgirtagreement>; Derrick James, *Oklahoma Tribes and AG Reach Agreement in Principle*, McAlester News-Capital (July 16, 2020) <tinyurl.com/mcgirtagmtrelease>.  The following day, however, two of the tribes reversed course and announced their opposition to the agreement.  See Chris Casteel, *Creek, Seminole Nations Disavow Agreement on Jurisdiction*, Oklahoman (July 18, 2020) <tinyurl.com/tribesdisavowagreement>.  A third tribe then declared that "there is no reason to rush" into legislation to resolve the issues created by *McGirt*.  Chief Gary Batton, *Choctaw Nation Special Report 7-29*, YouTube (July 29, 2020) <tinyurl.com/choctawreport>.  None of those tribes has changed its position over the last year.

In January 2021, the Governor called on the Five Tribes to enter into formal negotiations to address *McGirt*.  See Governor Kevin Stitt, *Press Release: Gov. Stitt Calls for Tribes to Enter into Formal Negotiations with the State Regarding McGirt Ruling* (Jan. 22, 2021).  But one tribe quickly announced its opposition to such negotiations, and no progress has been made since.  See

31

Kylee Dedmon, *Choctaw Nation Chief Opposes Oklahoma Governor on Tribal Negotiations*, KXII News 12 (Jan. 29, 2021) <tinyurl.com/choctawopposition>.

In May 2021, Representative Tom Cole introduced a bill in the House to clarify the exercise of criminal jurisdiction in the wake of the *McGirt* decision. See H.R. 3091, 117th Cong., 1st Sess. (2021). But that too has stalled: the tribes are deeply divided over the legislation, and Representative Cole has conceded that "a consensus inside of Oklahoma" is necessary for any legislation to proceed. See Chris Casteel, *With Oklahoma Tribes Deeply Divided, Rep. Tom Cole's McGirt Bill Faces Long Road*, Oklahoman (May 16, 2021) <tinyurl.com/mcgirtbill>; Molly Young, *Tribes, State at Odds Over McGirt; SCOTUS Ruling Leaves Chasm Between Them*, Oklahoman, July 18, 2021, at A1. In the absence of any ameliorative legislation, the problems created by *McGirt* are multiplying by the day.

4. This Court has the power to bring an end to the chaos in Oklahoma by overruling *McGirt*. It should do so in this case.

As the Court is well aware, stare decisis is "not an inexorable command." *Franchise Tax Board* v. *Hyatt*, 139 S. Ct. 1485, 1499 (2019) (citation omitted). And the situation created by *McGirt* is a paradigmatic example of when stare decisis must yield to the better interpretation of the law. The majority opinion in *McGirt* did not itself adhere to the Court's prior precedents on congressional disestablishment of Indian reservations. See 140 S. Ct. at 2485-2489 (Roberts, C.J., dissenting); cf. *Ramos* v. *Louisiana*, 140 S. Ct. 1390, 1405 (2020). Developments since *McGirt* have proven the decision fundamentally unworkable. See *Ramos*, 140 S. Ct. at 1405. Any reliance interests that have developed in the short time since *McGirt* pale in

32

comparison to the century of reliance interests that *Mc-Girt* upset.  See *ibid.*; *Janus* v. *State, County & Municipal Employees*, 138 S. Ct. 2448, 2485-2486 (2018).  The case was decided by "the narrowest of margins," over a "spirited dissent[] challenging the basic underpinnings" of the majority opinion.  *Payne* v. *Tennessee*, 501 U.S. 808, 829 (1991).  And the recent nature of the decision entitles it to less stare decisis weight.  See *Montejo* v. *Louisiana*, 556 U.S. 778, 793 (2009); cf., *e.g.*, *Payne*, 501 U.S. at 829-830 (overruling, in 1991, *South Carolina* v. *Gathers*, 490 U.S. 805 (1989), and *Booth* v. *Maryland*, 482 U.S. 496 (1987)); *United States* v. *Dixon*, 509 U.S. 688, 704 (1993) (overruling *Grady* v. *Corbin*, 495 U.S. 508 (1990)).

To stop the damage and save the people of Oklahoma from years of hardship to come, the Court should consider overruling *McGirt* in this case.  The stakes are simply too high to leave that option off the table.  For that reason, the Court should grant review on the third question presented, in addition to the questions regarding procedural and equitable bars to postconviction relief under *McGirt* and the State's authority to prosecute non-Indians who commit crimes against Indians in Indian country.

It is hard to imagine a case in which this Court's review is more desperately needed.  The State of Oklahoma respectfully requests that the Court grant certiorari and set this case for oral argument as soon as possible.

33

**CONCLUSION**

The petition for a writ of certiorari should be granted.

Respectfully submitted.

JOHN M. O'CONNOR
  *Attorney General*
MITHUN MANSINGHANI
  *Solicitor General*
CAROLINE HUNT
JENNIFER CRABB
  *Assistant Attorneys General*
BRYAN CLEVELAND
RANDALL YATES
  *Assistant Solicitors General*
OFFICE OF THE OKLAHOMA
  ATTORNEY GENERAL
  *313 N.E. Twenty-First Street*
  *Oklahoma City, OK 73105*

RYAN LEONARD
EDINGER LEONARD
  & BLAKLEY, PLLC
  *6301 N. Western Avenue,*
    *Suite 250*
  *Oklahoma City, OK 73118*

AUGUST 2021

KANNON K. SHANMUGAM
WILLIAM T. MARKS
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *2001 K Street, N.W.*
  *Washington, DC 20006*
  *(202) 223-7300*
  *kshanmugam@paulweiss.com*

JING YAN
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *1285 Avenue of the Americas*
  *New York, NY 10019*

# EXHIBIT 4

**IN THE DISTRICT COURT OF DELAWARE COUNTY**
**STATE OF OKLAHOMA**

**SUBMITTED FOR FILING UNDER SEAL[1]**

| | | |
|---|---|---|
| SHANNON WAYNE AGOFSKY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | No. CRF-92-43 & 43B (Delaware Co.) |
| | ) | No. CRF-97-41 (Ottawa Co.) |
| vs. | ) | No. CF-97-383 (Payne Co.) |
| | ) | |
| THE STATE OF OKLAHOMA | ) | |
| | ) | |
| Respondent. | ) | |

**PETITIONER'S MOTION TO STAY PROCEEDINGS**
**AND HOLD THEM IN ABEYANCE**
**PENDING FURTHER LITIGATION IN *MATLOFF V. WALLACE***

Shannon Agofsky moves for a stay and abeyance of proceedings in this matter and states

the following in support:

1.    The State has filed a supplemental opposition to Mr. Agofsky's motion to amend

his application for post-conviction relief, pursuant to 22 Okla. Stat. Ann. § 1080, in light of the

Supreme Court's decision in *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020).  The State cites the

recent decision of the Court of Criminal Appeals in *State ex rel. Matloff v. Wallace,* 2021 OK CR

21, ___ P.3d ___, which held as a matter of state law that *McGirt* does not apply retroactively to

---

[1] In a series of orders, the Court required the parties to submit pleadings in this matter for filing under seal and then to confer and submit a joint notice of proposed redactions.  Thereafter the Court released the redacted pleadings, as approved, for public filing.  Petitioner anticipates that the parties will agree that no redactions to this motion are necessary, and will confer with the State on a joint notice to that effect.

cases that were final at the time it was decided.  The State asks the Court either to deny the amendment in light of *Wallace* or grant the amendment and deny the *McGirt* claim.

2.    Mr. Agofsky moves the Court instead to stay further proceedings on this petition until either the time to petition for certiorari in *Wallace* has expired or, if certiorari is sought, until the Supreme Court has ruled on either the petition or the merits. *Wallace* addressed a question of public importance and will have broad impacts in Oklahoma courts.  The case attracted national attention, and both sides garnered support from amici curiae in the Court of Criminal Appeals.  That court's holding—that state law and not federal law would govern the retroactivity of the federal-law decision in *McGirt*—may present a question that the Supreme Court will feel compelled to resolve.  A petition for certiorari is very likely and grant of review also likely.

3.    The State has also previously requested a stay pending resolution of its petition for *certiorari* in *Bosse v State,* 2021 OK CR 3, ¶¶ 20-22, 484 P.3d 286, 293–294 (Okla. Crim. App. 2021), which held that "[s]ubject-matter ... jurisdiction can never be waived or forfeited."  The Supreme Court has stayed the mandate of the Court of Criminal Appeals in *Bosse* pending resolution of the petition for certiorari.  *Bosse* presents another question that could affect the resolution of this case: whether states may impose procedural or equitable bars to postconviction relief on the claim that the state lacked prosecutorial jurisdiction because the crime occurred in Indian Country. *See* Petition for Certiorari, *Bosse v. Oklahoma*, No. 21-186 (S. Ct. Aug. 6, 2021).

4.    Under these circumstances, a ruling on the motion to amend or the merits of the *McGirt* claim would be premature.  The prudent course is for this Court to grant a stay of these proceedings to give the Supreme Court an opportunity to speak in both *Wallace* and *Bosse*.

2

5.      On August 20, counsel Mr. Agofsky's counsel, Claudia Van Wyk, exchanged email messages with Assistant Attorney General Jennifer L. Crabb.  Ms. Crabb indicated that the State opposes Mr. Agofsky's motion for stay and abeyance, but would not object if the Court ultimately denies relief *without prejudice* to Mr. Agofsky's refiling his *McGirt* claim if *Wallace* is reversed.

**CONCLUSION**

For these reasons, this Court should stay these proceedings until the latest of the following:

1. the time for a petition for certiorari in *Wallace* expires without either party having filed a petition;

2. the Supreme Court denies a petition for certiorari in both *Wallace* and *Bosse*; or

3. the Supreme Court, having granted certiorari in *Wallace* or *Bosse* or both, issues a ruling in either or both.

Alternatively, if this Court denies a stay and denies relief, the Court should issue its order without prejudice to Mr. Agofsky's refiling an application for relief if *Wallace* is reversed.

Respectfully submitted,

/s/ Claudia Van Wyk
CLAUDIA VAN WYK
DAVID ZUCKERMAN
Assistant Federal Defenders
Federal Community Defender Office
    Eastern District of Pennsylvania
Capital Habeas Corpus Unit
601 Walnut Street, Suite 545 West
Philadelphia, PA  19106
(215) 928-0520
claudia_vanwyk@fd.org
david_zuckerman@fd.org

*Counsel for Petitioner Shannon Agofsky*

ROBERT S. JACKSON, ESQ.
925 N.W. 6th
Oklahoma City, OK 73106
(405) 232-3450
bob@bobjacksonlaw.com

*Local Counsel to Petitioner Shannon Agofsky*

Dated: August 23, 2021

4

## CERTIFICATE OF SERVICE

I hereby certify that on this date I served the pleading above on the following person by placing it in federal express, two-day delivery:

Jennifer L. Crabb
Assistant Attorney General
State of Oklahoma
313 NE 21st Street
Oklahoma City, OK 73105
(405) 522-4423
FAX: (405) 522-4534

I hereby certify that on this date I served the pleading above on the following person by placing a copy in federal express, two-day delivery, to the Clerk of Delaware County for delivery to the District Attorney:

Kenny Wright
District Attorney
Delaware and Ottawa Counties
Delaware County Courthouse
P.O. Box 528
Jay, Oklahoma 74346
(918) 253-4217
FAX: (918) 253-4183

/s/ Claudia Van Wyk
CLAUDIA VAN WYK

Dated: August 23, 2021

# EXHIBIT 5

# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

SHANNON WAYNE AGOFSKY, )
)
Petitioner, )
)
v. ) Case No. CIV-21-670-PRW
)
SCOTT CROW, et al., )
)
Respondents. )

## ORDER

Before the Court is Petitioner's motion to stay the proceedings and hold them in abeyance while he exhausts his claims in state court. Doc. 10.[1] Respondents do not oppose the motion. *Id.* at 4. The Court **GRANTS** Petitioner's unopposed motion for stay and abeyance.

The Court orders Petitioner to file a motion to lift the stay within thirty (30) days of his finally exhausting his state remedies. If Petitioner fails to timely comply with this requirement, the undersigned will recommend the dismissal of this case without prejudice.

Petitioner shall keep the Court updated on the status of his state court exhaustion efforts by filing a status report with the Court every ninety (90) days, until Court lifts the stay.

---

[1] Petitioner states he already has a post-conviction proceeding pending in state court. Doc. 10, at 2.

Claudia Van Wyk, Esq.
Federal Community Defender Office
601 Walnut Street, Suite 545W
Philadelphia, PA  19106

Please use the following address to ensure mailings are delivered:

William J. Holloway, Jr. U.S. Courthouse
200 N.W. 4th Street, **Suite 1210**
Oklahoma City, OK  73102

The suite number **<u>must</u>** be included for delivery.

CLERK, U.S. DISTRICT COURT
WILLIAM J. HOLLOWAY, JR. UNITED STATES COURTHOUSE
200 N.W. 4TH STREET
OKLAHOMA CITY, OKLAHOMA 73102-3092

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE $300



OKLAHOMA CITY, OK 730

16 AUG 2021 PM

02 7H         $ 000.51⁰
0006009216    AUG 16 2021
MAILED FROM ZIP CODE 73102



RECEIVED
AUG 2 3 2021

19106-333243