# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Respondent, | ) | CAPITAL CASE |
| | ) | |
| v. | ) | No. 1:07-cv-00511 |
| | ) | |
| SHANNON WAYNE AGOFSKY,<br>Movant. | ) | |

# EXHIBIT 1
# TO MOTION TO AMEND

# PROPOSED AMENDMENT

JENNIFER MERRIGAN
MO Bar # 56733
Phillips Black
1901 South 9th Street, #510
Philadelphia, PA 19148
(816) 695-2214

CLAUDIA VAN WYK
PA Bar # 95130
DAVID ZUCKERMAN
PA BAR #42885
Assistant Federal Defenders
Federal Community Defender Office
Capital Habeas Unit
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone (215) 928-0520
Facsimile (215) 928-0826

*Counsel for Shannon Wayne Agofsky*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Respondent, | ) | CAPITAL CASE |
| | ) | |
| v. | ) | No. 1:07-cv-00511 |
| | ) | |
| SHANNON WAYNE AGOFSKY, | ) | |
| Movant. | ) | |

**AMENDMENT TO SHANNON AGOFSKY'S**
**MOTION TO VACATE PURSUANT TO 28 U.S.C. § 2255**

JENNIFER MERRIGAN
MO Bar # 56733
Phillips Black
1901 South 9th Street, #510
Philadelphia, PA 19148
(816) 695-2214

CLAUDIA VAN WYK
PA Bar # 95130
DAVID ZUCKERMAN
PA BAR #42885
Assistant Federal Defenders
Federal Community Defender Office
Capital Habeas Unit
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone (215) 928-0520
Facsimile (215) 928-0826

*Counsel for Shannon Wayne Agofsky*

Dated: February 18, 2022

**TABLE OF CONTENTS**

X.   MR. AGOFSKY'S PRIOR CONVICTION UNDER 18 U.S.C. § 924(C), WHICH SERVED AS AN AGGRAVATING FACTOR IN SUPPORT OF A DEATH SENTENCE, IS INVALID BECAUSE THE UNDERLYING BANK ROBBERY IS NOT A "CRIME OF VIOLENCE."............................................................. 1

    A.   Introduction.................................................................................. 1

    B.   Procedural History ........................................................................ 2

    C.   The Residual Clause Is Void for Vagueness.................................... 5

    D.   Section 2113(a) Bank Robbery Cannot Serve as a Predicate Offense for a § 924(c) Conviction Under the Force Clause........................................................... 6

        1.   Under *Borden*, the Predicate Offense Must Require a *Mens Rea* of More Than Recklessness......................................................6

        2.   The Categorical Approach Applies Because § 2113(a) is Indivisible. ..............7

        3.   Bank Robbery By Intimidation Cannot Serve As a Predicate § 924(c) Conviction Under *Borden*. ................................................10

        4.   Section 2113(a) Fails to Qualify as a "Crime of Violence" on Additional Grounds................................................12

    E.   Sections 2113(d) and (e) Do Not Qualify as Crimes of Violence Under the Force Clause........................................................ 13

        1.   Because § 2113(a) Is Not a Crime of Violence, the Sentence Enhancements Under §§ 2113(d) and (e) Cannot Qualify as Crimes of Violence................................................13

        2.   Neither § 2113(d) Nor § 2113(e) Requires the Requisite *Mens Rea* To Qualify As a Crime Of Violence.................................................15

    F.   Mr. Agofsky Is Entitled to a New Penalty Phase..................................................... 17

        1.   The Legal Standard................................................17

        2.   The Use of Mr. Agofsky's § 924(c) Convictions in Aggravation Was Constitutional Error, Was Not Harmless, and "Unbundled" the Sentencing Package. ................................................20

CONCLUSION......................................................................... 21

i

Shannon Wayne Agofsky amends his motion pursuant to 28 U.S.C. § 2255 to state the following:

## X.    MR. AGOFSKY'S PRIOR CONVICTION UNDER 18 U.S.C. § 924(C), WHICH SERVED AS AN AGGRAVATING FACTOR IN SUPPORT OF A DEATH SENTENCE, IS INVALID BECAUSE THE UNDERLYING BANK ROBBERY IS NOT A "CRIME OF VIOLENCE."[1]

### A.    Introduction

One of the aggravating factors the jury found in Mr. Agofsky's capital case was his prior conviction under 18 U.S.C. § 924(c) for using a firearm during and in relation to a "crime of violence." *See* 18 U.S.C. § 924(c)(1)(A)(ii); *see also* Special Verdict Form, D. Ct. No. 1:03-cr-173-01 (E.D. Tex. July 16, 2004), ECF No. 177, at 8. *See* Exh. A, attached. The count of the Missouri indictment charging the § 924(c) violation (Count 3) alleged that the underlying "crime of violence" was bank robbery, in violation of 18 U.S.C. §§ 2113 (a), (d), and (e) (Count 2 of the same indictment). *See* Superseding Indictment, *United States v. Shannon Wayne Agofsky*, Crim. No. 92-05006 (W.D. Mo. April 16, 1992), at 4.  *See* Exh. B.

Chapter 18 U.S.C. § 924(c)(3) defines "crime of violence" as follows:

(3)  For purposes of this subsection, the term "crime of violence" means an offense that is a felony and –

(A)  has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B)  that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The first clause, § 924(c)(3)(A), is commonly called the "force" clause, and the second, § 924(c)(3)(B), the "residual" clause. As discussed in the sections that follow, the forms of bank

---

[1] This claim incorporates and supersedes the amendment filed, with the Court's leave, on June 23, 2016. *See* ECF No. 173.

1

robbery of which Mr. Agofsky was convicted cannot qualify as "crimes of violence" under the residual clause because that clause is void for vagueness. *See United States v. Davis*, 588 U.S. ___, 139 S. Ct. 2319 (2019); *Johnson v. United States*, 576 U.S. 591 (2015). Likewise, the relevant bank robbery offenses categorically fail to qualify as "crimes of violence" under the remaining force clause because they can be committed recklessly. *See Borden v. United States,* 141 S. Ct. 1817 (2021).

No alternative ground can sustain Mr. Agofsky's conviction. These forms of bank robbery cannot satisfy the force clause because, in addition to their lack of the necessary *mens rea*, they do not require force or intentional threat for their commission.

After *Johnson*, *Davis,* and *Borden*, Mr. Agofsky stands convicted of a non-existent crime and is entitled to acquittal on Count 3 of his Missouri indictment. Given the invalidity of the §924(c) conviction, a death sentence based in part on that conviction cannot stand. *See Johnson v. Mississippi*, 486 U.S. 578 (1988). Accordingly, Mr. Agofsky is entitled to a new capital penalty phase.

###    B.    Procedural History

On July 8, 2004, a jury convicted Mr. Agofsky of two counts of murder in the United States District Court for the Eastern District of Texas under Indictment No. 1:03-cr-173. It voted to sentence him to death on July 16, 2004. The superseding indictment on which he stood trial charged, among other aggravating factors, that Mr. Agofsky had a previous conviction for a federal offense, punishable by more than one year, involving a firearm. *United States v. Shannon Agofsky*, Superseding Indictment, D. Ct. No. 1:03-cr-173-01 (Feb. 19, 2004) (Special Finding #7), ECF No. 23, at 3. *See* Exh. C. At the close of the penalty phase, the judge instructed the jury that, as a matter of law, 18 U.S.C. § 924(c) is such an offense. Trial transcript, 7/15/04, at 300-01. The prosecution then referred to the § 924(c) conviction multiple times in penalty phase summation. *Id.* at 337,

2

369, 371. In its verdict returning a death sentence, the jury found that the § 924(c) conviction constituted an aggravating circumstance. *See* Exh. A (Special Verdict Form, at 8).

Mr. Agofsky appealed his conviction and sentence to the Court of Appeals for the Fifth Circuit under Docket No. 07-40330. That court denied relief, *United States v. Agofsky*, 516 F.3d 280 (5th Cir. 2008), and the Supreme Court denied certiorari on October 6, 2008. *Agofsky v. United States*, 555 U.S. 837 (2008). Mr. Agofsky's motion to vacate or set aside sentence, pursuant to 28 U.S.C. § 2255, is pending before this Court. ECF Nos. 38, 51, 105. The Government has filed its response, Mr. Agofsky has filed his reply (ECF. Nos. 124, 133), and the parties have fully briefed a motion by the Government to strike certain claims. ECF Nos. 112, 113, 117, 119-21. On February 14, 2012, this Court entered an order granting Mr. Agofsky's unopposed motion to stay and hold these proceedings in abeyance to allow him to present newly available eyewitnesses and other evidence of his innocence of his prior Oklahoma murder conviction in Oklahoma state court. ECF No. 157.

On June 26, 2015, the Supreme Court invalidated a provision of law directly analogous to a provision § 924(c) on the ground that it violated due process because it was unconstitutionally vague. *See Johnson*, 576 U.S. 591. On April 18, 2016, in *Welch v. United States*, 578 U.S. 120 (2016), the Court held that *Johnson* established a new substantive rule of constitutional law that is retroactive to cases on collateral review. On June 23, 2016, this Court granted Mr. Agofsky's unopposed motion to suspend the stay and abeyance, allowed him to amend his § 2255 motion to add a *Johnson* claim, and then reinstated its previous order staying and administratively closing the case. ECF No. 173.

On June 25, 2021, this Court lifted the stay and abeyance and ordered the parties to submit a joint status report explaining the status of the ongoing Oklahoma litigation. *See* ECF No. 186. The parties filed the report on August 26. *See* ECF No. 187. On January 6, 2022, the Court

reinstated the stay and administratively closed the case until further order. The Court directed counsel for Mr. Agofsky to advise it within twenty days of the conclusion of the Oklahoma state court proceedings, and to file a status report no later than July 1, 2022, and every six months thereafter. ECF No. 188.

Mr. Agofsky has litigated the invalidity of his § 924(c) conviction directly. He petitioned the Eighth Circuit for authorization to file a successive § 2255 petition in light of *Johnson* and *Welch*, and again in light of *Davis*. The Court of Appeals summarily denied both petitions. *See* Judgment, *Agofsky v. United States*, No. 20-2030 (8th Cir. June 30, 2020); Judgment, *Agofsky v. United States*, No. 16-2185 (8th Cir. Oct. 11, 2016).

More recently, the Supreme Court construed the "force" clause of the ACCA. In *Borden v. United States,* 141 S. Ct. 1817 (2021)*,* the Court held that the statutory term "violent felony" covers only crimes committed knowingly or purposely and does not extend to crimes involving recklessness. Because the least culpable forms of bank robbery under the subsections on which Mr. Agofsky stands convicted, 18 U.S.C. §§ 2113(a), (d), and (e), do not require a purposeful or knowing *mens rea*—or any *mens rea* at all—they are not crimes of violence under *Borden* and cannot serve as predicates for a § 924(c) conviction. *See* 141 S. Ct. at 1822.

Mr. Agofsky has sought habeas relief in reliance on *Borden* in the United States District Court for the Southern District of Indiana, the district where he is incarcerated, pursuant to 28 U.S.C. § 2241. He argues that, because *Borden* announced a new statutory rule and not a new rule of constitutional law, § 2255 is "inadequate or ineffective to test the legality of his detention" and he may proceed under § 2241. *See* 28 U.S.C. § 2255(e). That petition is currently pending. *See* Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, ECF No. 1, *Agofsky v. Watson*, No. 22-49 (S.D. Ind. Feb. 9, 2022).

4

Mr. Agofsky has filed this amended claim in this Court to demonstrate that, in light of *Johnson*, *Davis*, and *Borden*, he stands convicted of a non-existent crime and is innocent of violating § 924(c), and that his death sentence relying in part on the § 924(c) conviction cannot stand.

### C. The Residual Clause Is Void for Vagueness.

As described above, in *Johnson*, 576 U.S. 591, the Supreme Court invalidated the residual clause of the Armed Career Criminal Act ("ACCA") because it is unconstitutionally vague in violation of the Due Process Clause. The Court then held in *Welch v. United States*, 578 U.S. 120 (2016), that *Johnson* announced a new substantive rule that applied retroactively to cases on collateral review. Next, the Court held in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), that the residual clause of 18 U.S.C. § 16(b) was unconstitutionally vague because of its strong and relevant similarities to the ACCA's residual clause (which had been invalidated in *Johnson*). The provision invalidated in *Dimaya* is relevantly identical to the residual clause contained in § 924(c). Finally, in *Davis*, 139 S. Ct. 2319, the Court held that there were "no material difference[s]" among the residual clauses contained in the ACCA, § 16, and § 924(c), and therefore that § 924(c)'s residual clause is also unconstitutionally vague. 139 S. Ct. at 2326. *Davis* thus conclusively applied *Johnson*'s holding to § 924(c)(3)(B).

This line of authority establishes that Mr. Agofsky's § 924(c) conviction cannot qualify as a crime of violence under the residual clause because the clause is void for vagueness.

5

**D.     Section 2113(a) Bank Robbery Cannot Serve as a Predicate Offense for a § 924(c) Conviction Under the Force Clause.**

**1.     Under *Borden*, the Predicate Offense Must Require a *Mens Rea* of More Than Recklessness.**

In *Borden*, the Supreme Court interpreted the portion of the force clause of the ACCA that requires three or more prior convictions for a "violent felony." To decide this question, the Court employed the "categorical approach:"

> Under that by-now-familiar method, applicable in several statutory contexts, the facts of a given case are irrelevant. The focus is instead on whether the elements of the statute of conviction meet the federal standard. Here, that means asking whether a state offense necessarily involves the defendant's "use, attempted use, or threatened use of physical force against the person of another." § 924(e)(2)(B)(i). If any—even the least culpable—of the acts criminalized do not entail that kind of force, the statute of conviction does not categorically match the federal standard, and so cannot serve as an ACCA predicate.

*Borden*, 141 S. Ct. at 1822 (case citations omitted).

Deciding a question it had previously left open, *id*. at 1825, the Court held that the statutory language did not include crimes of recklessness. Justice Kagan wrote for the plurality:

> We must decide whether the elements clause's definition of "violent felony"—an offense requiring the "use of physical force against the person of another"— includes offenses criminalizing reckless conduct. We hold that it does not. The phrase "against another," when modifying the "use of force," demands that the perpetrator direct his action at, or target, another individual. Reckless conduct is not aimed in that prescribed manner. Our reading of the relevant text finds support in its context and purpose. The treatment of reckless offenses as "violent felonies" would impose large sentencing enhancements on individuals (for example, reckless drivers) far afield from the "armed career criminals" ACCA addresses—the kind of offenders who, when armed, could well "use [the] gun deliberately to harm a victim."

*Id*. at 1825 (citation omitted).

Justice Thomas, concurring, reached the same conclusion for different reasons. In his view, "a crime that can be committed through mere recklessness does not have as an element the 'use of physical force' because that phrase 'has a well-understood meaning applying only to intentional

6

acts designed to cause harm." *Id*. at 1835. He and the plurality thus agreed on their ultimate conclusion: a conviction cannot qualify as a "violent felony" unless it has a *mens rea* of more than recklessness.

As Justice Kagan observed, the force clause of the ACCA is "relevantly identical" to the language of the force clause contained in 18 U.S.C. § 16(a). *Id*. at 1824. That language in turn is identical to the language in § 924(c), the provision at issue in this case. *See United States v. Olvera-Martinez*, No. 18-40338, 2021 WL 4166369 (5th Cir. Aug. 27, 2021) (parties agree *Borden* applies to "crime of violence" definition in § 16(a)); *see also United States v. Mejia-Quintanilla*, No. 17-15899, 2021 WL 4282628, at *1 (9th Cir. Sept. 21, 2021) (*Borden* governs question whether a conviction under California's murder statute is "crime of violence" under § 924(c)). Therefore, a conviction cannot qualify categorically as a "crime of violence" under § 924(c) if it is possible to commit the predicate offense with recklessness or some less-culpable *mens rea*. And, of necessity, the more-than-reckless *mens rea* must relate to the use of force element.

### 2.    The Categorical Approach Applies Because § 2113(a) is Indivisible.

In 1992, 18 U.S.C. § 2113 provided, in relevant part:

(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or

Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny—

Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both….

7

This statute is indivisible. When a statute is divisible, *i.e.*, when it includes alternative elements creating multiple versions of the crime, a court may use the modified categorical approach (by consulting a limited number of documents such as the charging document) to determine which of the various offenses was the offense of conviction. *See Descamps v. United States,* 570 U.S. 254, 260 (2013) (modified approach "helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction"). When, on the other hand, a statute is indivisible, *i.e.*, when it merely lists "multiple, alternative *means* of satisfying one (or more) of its elements," courts must use the categorical approach. *See Mathis*, 136 S. Ct. at 2248 (emphasis added). When a statute "enumerates various factual means of committing a single element," a court cannot inquire how the defendant committed the offense and rather must consider the least culpable conduct that can satisfy that element as a whole. *Id.* at 2249, 2255. *Mathis* contrasted elements, *i.e.*, "the things the prosecution must prove to sustain a conviction," with factual means, *i.e.*, "circumstances or events having no legal effect or consequences." *Id.* at 2248 (internal quotation marks, alterations, and citations omitted). Alternative elements "define multiple crimes[,]" while alternative factual means are "alternative methods of committing [a] single crime." *Id*. at 2249-50.

Here, the relevant statutory language of § 2113(a) demonstrates that "force and violence," "intimidation," and "extortion" are three factual "means" of committing the single indivisible crime of bank robbery.

The statute provides a single penalty for bank robbery that does not depend on whether the defendant used "force and violence," "intimidation," or "extortion." Thus, the terms do not create "two different offenses, one more serious than the other." *Mathis*, 136 S. Ct. at 2249; *id*. at 2256 ("If statutory alternatives carry different punishments, then under *Apprendi* they must be elements."). Instead, each term defines an equally serious way of committing the offense. Section

8

2113(a)'s text also indicates that these three means are simply ways of completing an element. *See id*. at 2250 (describing "means" as different ways of "fulfilling an element"). That is, "by force and violence," "by intimidation," and "by extortion" are all methods of wrongfully obtaining money from banks.

A jury may convict a person of bank robbery under § 2113(a) even if jurors do not unanimously agree on *how* the person wrongfully obtained the money, whether (i) by force and violence inside the bank, (ii) by intimidation inside the bank, or (iii) by extortion from outside the bank. *See* H.R. Rep. No. 99-797, at § 51 (giving as an example of "extortionate conduct" the situation where "a perpetrator who, from a place outside the bank, threatens the family of a bank official in order to cause the bank official to remove money from the bank and deliver it to a specified location"). A person could make a demand for money while standing in front of a bank teller, or a person could call the bank teller and make the same demand; a jury need not unanimously decide which happened in order to convict, because the person's location is merely a factual circumstance. *Cf. Mathis*, 136 S. Ct. at 2250 ("Each of the terms serves as an alternative method of committing the single crime of burglary, so that a jury need not agree on which of the locations was actually involved.") (internal quotation marks, citations, and alteration omitted); *United States v. Dixon*, 805 F.3d 1193, 1198 (9th Cir. 2015) ("[T]he jury can return a guilty verdict even if some jurors believe the defendant took property from the victim's person and other jurors believe the defendant took the property from the victim's immediate presence[] [or if] some jurors believe the defendant used force and others believe the defendant used fear.").

Like the Iowa bank robbery statute at issue in *Mathis,* which "itemize[d] the various places that crime could occur as disjunctive factual scenarios rather than separate elements," so too does § 2113(a) itemize the various *ways* that crime could occur as disjunctive factual scenarios. *Mathis*, 136 S. Ct. at 2249. Therefore, under the categorical approach, a § 2113 conviction cannot qualify

9

as a crime of violence if any of the "factual means of committing" it, even the least culpable, does not qualify.

### 3. Bank Robbery By Intimidation Cannot Serve As a Predicate § 924(c) Conviction Under *Borden.*

Mr. Agofsky was convicted in the Eighth Circuit. That Circuit's long-standing precedent establishes that bank robbery by intimidation does not necessarily require the purposeful or knowing use of force. Rather, a range of less intentional conduct can support a conviction.

In *United States v. Yockel*, 320 F.3d 818, 821 (8th Cir. 2003), the court upheld a conviction under § 2113(a) even though there was no evidence that Yockel intended to put the teller in fear of any type of injury. Yockel made no sort of physical movement toward the teller, never presented her with a note demanding money, and never displayed a weapon or appeared to have a weapon. *Id.* The court concluded that whether or not a person "intend[s] to intimidate the teller is irrelevant in determining his guilt … the intimidation element of § 2113(a) is satisfied … *whether or not* [a person] actually intended the intimidation." *Id.* at 824 (emphasis in original) (internal quotations omitted). The court has reiterated that "whether the bank robber intended to intimidate is irrelevant"; the objective test for intimidation is satisfied if an ordinary person could infer a threat of bodily harm from a bank robber's speech or actions. *United States v. Pickar*, 616 F.3d 821, 824 (8th Cir. 2010); *accord United States v. Clark*, 695 F. App'x 999, 1000 (8th Cir. 2017) (citing and following *Pickar*); *United States v. Caldwell,* 292 F.3d 595, 596 (8th Cir. 2002) (reiterating that a person's conduct must "'constitute an intimidation to an ordinary, reasonable person'" (quoting *United States v. Smith*, 973 F.2d 603, 604 (8th Cir. 1992))).[2]

---

[2] *See also United States v. Kelley*, 412 F.3d 1240, 1244 (11th Cir. 2005) ("Whether a particular act constitutes intimidation is viewed objectively ... and a defendant can be convicted under [federal bank robbery] even if he did not intend for an act to be intimidating." (internal citation omitted)); *United States v. Woodrop*, 86 F.3d 359, 364 (4th Cir. 1996) (intimidation element satisfied if ordinary person could infer threat of harm, regardless of whether defendant intended

Despite this precedent, the Eighth Circuit held before *Borden* that the statutory language of § 2113, requiring commission of the crime by "force and violence, or by intimidation," satisfies the definition of "crime of violence" in § 924(c). For example, in 2016 the court issued companion decisions denying PFAs because "bank robbery in violation of 18 U.S.C. § 2113(a) and (e) is a 'crime of violence' under 18 U.S.C. § 924(c)(3)(A)." *Holder v. United States*, 836 F.3d 891, 892 (8th Cir. 2016); *Allen v. United States*, 836 F.3d 894, 895 (8th Cir. 2016). The petitioners in these cases had been convicted of § 2113(a) and (e) and sentenced under § 924(c). The Eighth Circuit relied on *United States v. Boman*, 810 F.3d 534, 543 (8th Cir. 2016), which held that the federal robbery statute (18 U.S.C. § 2111) satisfies the force clause under 18 U.S.C. § 924(c)(3)(A). *Holder,* 836 F.3d at 892; *Allen,* 836 F.3d at 895. The court reasoned that bank robbery must satisfy the force clause as well. *Holder,* 836 F.3d at 892, *Allen,* 836 F.3d at 895.

The Circuit has also held more specifically that, even though "intimidation" does not require intent, it can still constitute a threat of physical force. "[T]hreat, as commonly defined, 'speaks to what the statement conveys—not the mental state of the author.'" *Estell v. United States*, 924 F.3d 1291, 1293 (8th Cir. 2019) (quoting *United States v. Harper*, 869 F.3d 624, 626 (8th Cir. 2017)); *Kidd v. United States*, 929 F.3d 578, 581 (7th Cir. 2019) (following *Estell*).

*Borden* abrogates these decisions, which discount the relevance of the actor's intent. Because intimidation can be committed recklessly—or without any intent whatsoever—*Borden* compels the conclusion that bank robbery by intimidation cannot serve as a predicate crime of violence for § 924(c).

---

intimidation); *United States v. Robinson*, 527 F.2d 1170, 1172 (6th Cir.1975) (intimidation found even though defendant made no express threat and gave no "hint" of weapon; rather defendant, who wore a leather jacket and acted "somewhat nervously," kept hands on the counter, visible to the teller, when he demanded money).

**4.      Section 2113(a) Fails to Qualify as a "Crime of Violence" on Additional Grounds.**

Under the categorical approach, if bank robbery by intimidation cannot be a "crime of violence," then a § 2113(a) conviction cannot qualify as a predicate crime for a § 924(c) conviction. But even if bank robbery by intimidation does qualify, § 2113(a) fails to qualify for other reasons.

First, bank robbery by extortion, like bank robbery by intimidation, is one of the means of satisfying an element of § 2113(a). Bank robbery by extortion may be committed both without purpose or knowledge and by non-violent means that need not involve fear of physical force. *See United States v. Valdez*, 158 F.3d 1140, 1143 n.4 (10th Cir. 1998) ("an individual may be able to commit a bank robbery under the language of 18 U.S.C. § 2113(a) 'by extortion' without the threat of violence"). As the Supreme Court noted in *Johnson*, "[t]he act of making an extortionate demand … does not, in and of itself, normally cause physical injury. Rather, risk of injury arises because the extortionist might engage in violence *after* making his demand." 135 S. Ct. at 2557. Indeed, a person can commit extortion by putting another person in fear of financial or reputational loss. *See id.* at 2558 ("the typical extortionist" might "threaten his victim by mail with the revelation of embarrassing personal information" rather than threatening a victim with force); *Bouveng v. NYG Capital LLC*, 175 F. Supp. 3d 280, 320 (S.D.N.Y. Mar. 31, 2016) (extortion by wrongfully threatening to initiate lawsuit); *Azzara v. United States*, Nos. 1:10-cv-8104-CM, 02-cr-1446-CM, 2011 WL 5025010, at *3 (S.D.N.Y. Oct. 20, 2011) (extortion by threatening to give sexually explicit videotapes to employer). A person can also commit extortion by holding a bank employee's family member for ransom without directly using or threatening force against the victims of the extortionate scheme. *See United States v. Carpenter*, 611 F.2d 113, 114 (5th Cir. 1980). As the Supreme Court recognized recently, holding a person for ransom need not involve

12

any violence whatsoever. *See Torres v. Lynch*, 578 U.S. 452, 465-66 (2016) ("The 'crime of violence' provision [of 18 U.S.C. § 16] would not pick up demanding a ransom for kidnapping.").

Bank robbery by extortion does not contain "an element [necessarily involving] the use, attempted use, or threatened use of physical force[,]" 18 U.S.C. § 924(c)(3)(A), much less an element necessarily involving the *purposeful or knowing* use of force. *See Borden*, 141 S. Ct. at 1834 ("Offenses with a *mens rea* of recklessness do not require ... the active employment of force against another person") (Kagan, J.). Accordingly, the availability an extortion theory disqualifies Mr. Agofsky's § 2113(a) conviction as a crime of violence under the categorical approach, even if the availability of an intimidation theory does not.

Under the categorical approach, therefore, § 2113(a) cannot serve as a predicate "crime of violence" because the "least culpable" of the "acts criminalized" do not entail the requisite purposeful or knowing use of force. *See Borden*, 141 S. Ct. at 1822.

> ### E.    Sections 2113(d) and (e) Do Not Qualify as Crimes of Violence Under the Force Clause.
>
> #### 1.    Because § 2113(a) Is Not a Crime of Violence, the Sentence Enhancements Under §§ 2113(d) and (e) Cannot Qualify as Crimes of Violence.

Neither § 2113(d) nor § 2113(e) can independently serve as a crime of violence to support a conviction under § 924(c)(3)(A) because both sections require proof of a bank robbery under § 2113(a) or another section of § 2113. Subsections (d) and (e) of § 2113 provide as follows:

> (d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined under this title or imprisoned not more than twenty-five years, or both.
>
> (e) Whoever, in committing any offense defined in this section, or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself from arrest or confinement for such offense, kills any person, or forces any person to accompany him without the consent of

13

such person, shall be imprisoned not less than ten years, or if death results shall be punished by death or life imprisonment.

Courts have described § 2113(a) as a lesser included offense of §§ 2113 (d) and (e). *See United States v. Cobb*, 558 F.2d 486, 489 (8th Cir. 1977) ("In order to convict under s 2113(d), the jury must necessarily have found that each element of the s 2113(a) offense, which is a lesser included offense of the s 2113(d) violation, had been established."); *see also United States v. Pendegraph*, 791 F.2d 1462, 1466 (11th Cir. 1986) (referring to § 2113(a) as a lesser included offense of § 2113(d)); *United States v. Waters*, 461 F.2d 248, 252 (10th Cir. 1972) (same). Other courts have referred to these subsections as "sentencing enhancements" of bank robbery. *See, e.g., United States v. McDuffy,* 890 F.3d 796, 802 (9th Cir. 2018) ("[Section] 2113(e) is the functional equivalent of the felony-murder rule but in the form of a sentencing enhancement."); *United States v. Carr*, 761 F.3d 1068, 1078 n.2 (9th Cir. 2014) (referring to § 2113(e) as a "sentencing enhancement"); *United States v. Benson*, 918 F.2d 1, 3 (1st Cir. 1990) (referring to § 2113(d) as a "sentencing enhancement"); c*f. Allen*, 836 F.3d at 895 (determining that convictions under § 2113(a) and (e) are predicates for a "crime of violence" without separating the offenses or treating section (e) as a freestanding offense); *Holder*, 836 F.3d at 892 (same).

Because § 2113(a) lacks the necessary *mens rea* and otherwise does not meet the definition of a crime of violence, §§ 2113(d) and (e), *a priori*, cannot qualify as crimes of violence under § 924(c)(3) unless they independently require the qualifying *mens rea*. As discussed below, however, they do not.

14

**2.**      **Neither § 2113(d) Nor § 2113(e) Requires the Requisite *Mens Rea* To Qualify As a Crime Of Violence.**

**a.**      **Section 2113(d) does not require any intent to threaten or use physical force.**

A person violates § 2113(d) when he or she "assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device." The government may prove either that the defendant assaulted another person by the use of a dangerous weapon or device, or that she or he put another person's life in jeopardy by the use of a dangerous weapon or device; it need not prove both. *See* 3 L. Sand et al., Modern Federal Jury Instructions–Criminal ¶ 53.01 (2021) (Sand).

This provision cannot constitute a crime of violence under *Borden* because a defendant may violate § 2113(d) without any intent to threaten or use physical force. *See Morrow v. United States*, 408 F.2d 1390, 1391 (8th Cir. 1969) (the test under § 2113(d) "is an objective one," with the only relevant inquiry being "whether [the victim's] life was put in danger by the use of a dangerous weapon" (internal quotations omitted)). A person can violate the provision merely by carrying a gun during a bank robbery because "he feels secure with it," even without any intent to intimidate another. *United States v. Martinez-Jimenez*, 864 F.2d 664, 667 (9th Cir. 1989). Section 2113(d) requires no nexus between the weapon and the intimidation. A person convicted under that section "need not brandish" the weapon "in a threatening manner" or "make assaultive use of the device." *Id.*; *see also United States v. Bennett*, 675 F.2d 596, 599 (4th Cir. 1982) ("A weapon openly exhibited by a robber during a robbery" without more is sufficient to constitute a violation under § 2113(d).). Therefore, armed bank robbery under § 2113(d) fails to satisfy the necessary intentional *mens rea* under the force clause.

**b.      Section 2113(e) contains no *mens rea* requirement besides the state of mind required for the underlying offense of § 2113(a).**

The last subsection that served as a predicate in Count 3, 18 U.S.C. § 2113(e), requires that, in the course of committing a robbery or eluding punishment for the offense, the defendant either kill a person or force a person "to accompany him without the consent of such person." The offense contains no scienter requirement other than that required for the underlying bank robbery. *United States v. Jackson*, 736 F.3d 953, 958 (10th Cir. 2013). Thus, Courts of Appeals, including the Eighth Circuit, have repeatedly found that § 2113(e) does not require proof that the defendant intentionally or knowingly committed the act of killing or forced accompaniment criminalized by the statute. *See, e.g., Allen*, 247 F.3d at 782 ("Because the plain language of [18 U.S.C. § 2113(e)] says simply 'kills,' and not 'intentionally kills' or 'murders,' the settled principles of construction direct us to conclude that [Congress] did not intend to add an additional scienter requirement to the killing component of the crime." (quoting *United States v. Poindexter*, 44 F.3d 406, 409 (6th Cir. 1995))); *McDuffy*, 890 F.3d at 802 (holding that "Congress intended to omit a *mens rea* requirement" from § 2113(e) because it "makes no mention of a *mens rea* and even describes the killing in the passive voice"); *United States v. Vance*, 764 F.3d 667, 675 (7th Cir. 2014) ("[It is] irrelevant that Vance appears not to have intended to kill the teller in the second bank robbery. … It is reasonably clear that the language we quoted from [§ 2113(e)] dispenses with any requirement of proving intent to kill."); *United States v. Walker*, 919 F.2d 501, 502 (8th Cir. 1990) (upholding conviction for forced accompaniment under § 2113(e) where teller drove defendant from crime scene pursuant to an instruction from bank manager to "give a customer a ride" and evidence showed she felt "compelled" to do so, even though defendant "never exhibited the weapon to the teller" or "made any threatening gestures").

16

Furthermore, a number of circuits have held that § 2113(e) is the equivalent of a felony murder provision and therefore, like felony murder, has no additional *mens rea* requirement besides the *mens rea* required for the underlying offense. *See, e.g., McDuffy*, 890 F.3d at 802 (holding that "the only *mens rea* required [for conviction under § 2113(e) is the *mens rea* necessary to commit the underlying bank robbery"); *Vance*, 764 F.3d at 675 (noting that § 2113(e) "duplicates the felony murder rule"); *Allen*, 247 F.3d at 782 (determining that § 2113(e) "is like common law felony murder" and "does not require a finding of specific intent to kill").

Under *Borden*, because there is no additional *mens rea* requirement for § 2113(e) and the underlying offense of § 2113(a) does not contain the requisite *mens rea*, § 2113(e) categorically fails to qualify as a "crime of violence."

In summary, none of the bank robbery predicates for Mr. Agofsky's § 924(c) conviction can categorically satisfy the definition of a "violent felony" announced in *Borden*, because each can be committed in a less culpable manner than the definition requires. He is therefore innocent of violating § 924(c).

### F. Mr. Agofsky Is Entitled to a New Penalty Phase.

#### 1. The Legal Standard

The Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a "need for reliability in the determination that death is the appropriate punishment in a specific case." *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976). Accordingly, capital sentencing decisions cannot rest on "factors that are constitutionally impermissible or totally irrelevant to the sentencing process." *Zant v. Stephens*, 462 U.S. 862, 884-885 (1983).

Applying these principles, the Supreme Court in *Johnson v. Mississippi* reversed a death sentence based "on a reversed conviction." *Johnson*, 486 U.S. at 585. In that case, the defendant had been sentenced to death based, in part, on a prior conviction for assault that was overturned

17

after the defendant was sentenced to death. *Id.* at 581. Even though other aggravating circumstances unrelated to the assault remained undisturbed, the Supreme Court held that a new sentencing was constitutionally required because the jury considered the subsequently invalidated prior conviction, this conviction "provided no legitimate support for the death sentence imposed on Petitioner," and there was "a possibility that the jury's belief that petitioner had been convicted of a prior felony would be 'decisive' in the choice between a life sentence and a death sentence." *Id.* at 586 (internal citations omitted). The error "extended beyond the mere invalidation of an aggravating circumstance supported by evidence that was otherwise admissible" and in fact permitted the jury "to consider evidence that [was] revealed to be materially inaccurate." *Id*. at 590.

> It is apparent that the New York conviction provided no legitimate support for the death sentence imposed on petitioner. It is equally apparent that the use of that conviction in the sentencing hearing was prejudicial. The prosecutor repeatedly urged the jury to give it weight in connection with its assigned task of balancing aggravating and mitigating circumstances "one against the other." Even without that express argument, there would be a possibility that the jury's belief that petitioner had been convicted of a prior felony would be "decisive" in the "choice between a life sentence and a death sentence."

*Id.* at 586 (internal citation omitted).

The Court clarified how reviewing courts must assess the invalidation of a sentencing factor in *Brown v. Sanders*, 546 U.S. 212 (2006):

> An invalidated sentencing factor (whether an eligibility factor or not) will render the sentence unconstitutional by reason of its adding an improper element to the aggravation scale in the weighing process *unless* one of the other sentencing factors enables the sentencer to give aggravating weight to the same facts and circumstances.
>
> . . . . The issue we confront is the skewing that could result from the jury's considering *as aggravation* properly admitted evidence that should not have weighed in favor of the death penalty. See, *e.g., Stringer,* 503 U.S., at 232, 112 S. Ct. 1130 ("[W]hen the sentencing body is told to weigh an invalid factor in its decision, a reviewing court may not assume it would have made no difference if the thumb had been removed from death's side of the scale"). As we have explained,

18

> such skewing will occur, and give rise to constitutional error, only where the jury could not have given aggravating weight to the same facts and circumstances under the rubric of some other, valid sentencing factor.

*Id.* at 220-21.

*Brown* and *Johnson* establish that an invalid aggravator gives rise to constitutional error when it allows jurors to give aggravating weight to invalid or invalidated facts and circumstances. When federal courts find such constitutional error, may then determine whether it was harmless. *See Wilson v. Mitchell*, 498 F.3d 491, 502, 508-11 (6th Cir. 2007) (citing *Brecht v. Abrahamson*, 507 U.S. 619 (1993)); *see also Duest v. Singletary*, 997 F.2d 1336 (11th Cir. 1993) (invalidation of prior conviction used as an aggravating factor required vacation of death penalty because prior conviction had substantial and injurious effect on sentence (citing *Brecht*, 507 U.S. 619)).

The sentencing package doctrine reinforces the reasons for a resentencing when a prior conviction underlying an aggravating factor is subsequently invalidated. Under the doctrine, courts have recognized that they must view counts of conviction collectively as an entire "sentencing package," not individually, for the purposes of sentencing. *See, e.g.*, *United States v. Bass*, 104 F. App'x 997, 1000 (5th Cir. 2004). Thus, as the Fifth Circuit explained in *Bass*, when one count of a multicount conviction is reversed, "the result is an 'unbundled' sentencing package." *Id.* This result, in turn, requires resentencing, as "the reversal of convictions underlying some, but not all, of the sentences renders the sentencing package ineffective in carrying out the . . . sentencing intent as to any one of the sentences on the affirmed convictions." *Id.* The same concept should require a reviewing court to grant resentencing when the invalidation of one or more aggravating factors "unbundles" the jurors' weighing process and renders the entire package "ineffective" in carrying out their intent.

19

**2.      The Use of Mr. Agofsky's § 924(c) Convictions in Aggravation Was Constitutional Error, Was Not Harmless, and "Unbundled" the Sentencing Package.**

The introduction of the statutory aggravating factor based on Mr. Agofsky's invalid § 924(c) conviction allowed the jurors to give aggravating weight to circumstances they could not otherwise consider. The other two aggravating factors that related to the Noel State Bank robbery focused on the fact that he was serving a life sentence for that offense, and that a death resulted from the offense. *See* Exh. A at 7-9. As the prosecution vividly described in summation, the cause of death had nothing to do with the use of firearms. Trial transcript, 7/15/04 at 332, 369. Introduction of the invalid firearms conviction was constitutional error because the prosecution relied on the conviction and encouraged the jurors to give aggravating weight to facts they could not otherwise have considered as aggravation.

Introduction of the invalid firearms conviction also had a substantial and injurious effect on the outcome. The prosecution not only charged the § 924(c) conviction as an aggravating circumstance, but also repeatedly relied on it. First, Assistant U.S. Attorney Batte told the jurors that they could consider Mr. Agofsky's conviction for "using a firearm in the commission of a violent crime." Trial transcript, 7/15/04 at 337. In rebuttal, Assistant U.S. Attorney Stevens again referred to the § 924(c) conviction as a reason that a life sentence would be an insufficient punishment for Mr. Agofsky. *Id.* at 369. He also referred to it as part of a "chronology" of Mr. Agofsky's "misconduct." *Id.* at 371. As in *Johnson*, the prosecutors "repeatedly urged the jury to give it weight." *Johnson*, 486 U.S. at 586. Furthermore, the jury expressly found that Mr. Agofsky had *not* intentionally caused the death for which he was on trial, but rather had only intentionally caused serious bodily injury resulting in death. Trial transcript, 7/16/04 at 386-87. The lesser culpability of the underlying crime gave particular importance to the aggravating factors. The

20

prosecution's repeated invocation of an invalid aggravating factor had a substantial and injurious effect on the outcome. *See Brecht*, 507 U.S. 619.

Moreover, the universe of factors upon which the jury relied in imposing the death penalty has dramatically shifted; the sentencing package that Mr. Agofsky's jury considered has unraveled. The conviction for using a firearm in a crime of violence was a unique facet of the government's case for death, and the weighing process would necessarily have been different without it. Accordingly, Mr. Agofsky is entitled to a new sentencing proceeding.

## CONCLUSION

Because Mr. Agofsky's conviction under § 924(c) is constitutionally invalid, the jurors' reliance on the conviction in their decision to sentence Mr. Agofsky to death was constitutional error and was not harmless. Therefore, the death sentence cannot stand, and Mr. Agofsky is entitled to a new penalty phase. This Court must accordingly grant relief on this ground, independently and in combination with the other claims in Mr. Agofsky's § 2255 motion.

Respectfully submitted,

/s/ Jennifer Merrigan
JENNIFER MERRIGAN
MO Bar # 56733
Phillips Black
1901 South 9th Street, #510
Philadelphia, PA 19148
(816) 695-2214

/s/ Claudia Van Wyk
CLAUDIA VAN WYK
PA Bar # 95130
DAVID ZUCKERMAN
PA Bar # 42885
Assistant Federal Defenders
Federal Community Defender Office
Capital Habeas Unit
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Telephone (215) 928-0520
Facsimile (215) 928-0826

*Counsel for Shannon Wayne Agofsky*

Dated:  February 18, 2022

21

**CERTIFICATE OF SERVICE**

I, Claudia Van Wyk, hereby certify that on the date of filing, I caused a copy of this petition

to be sent by First Class Mail, postage prepaid, to the following persons:

**Traci Lynne Kenner**
U.S. Attorney's Office
110 North College, Suite 700
Tyler, TX 75702

**Joseph Robert Batte**
U.S. Attorney's Office- Beaumont
350 Magnolia, Suite 150
Beaumont, TX 77701

/s/ Claudia Van Wyk
Claudia Van Wyk
*Counsel for Petitioner*

Dated: February 18, 2022

# EXHIBIT A

FILED

10:39 A.M. JULY 16 20 04

DAVID J. MALAND, CLERK

U.S. DISTRICT COURT

By_____ BC

DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

UNITED STATES OF AMERICA        *

v.                              *        CRIMINAL NO. 1:03-CR-173

SHANNON WAYNE AGOFSKY          *

## SPECIAL VERDICT FORM - SECTION I
## DEFENDANT'S AGE

Instruction:  Answer "YES" or "NO."  Do you, the jury, unanimously find that the

Government has established beyond a reasonable doubt that:

The defendant, Shannon Wayne Agofsky, was eighteen years of age or older at the time

of the offense?

A.      As to Count I of the Superseding Indictment:

_Pete Martin_
Foreperson

YES ___✓___
NO _____

B.      As to Count II of the Superseding Indictment:

_Pete Martin_
Foreperson

YES ___✓___
NO _____

-1-

500286

Instructions: If you answered "NO" with respect to the determination in this section, then stop your deliberations, cross out Special Verdict Forms Sections II, III, IV, V and VI, and proceed to Special Verdict Form - Section VII. Each juror should then carefully read the statement in Special Verdict From - Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision. You should then advise the court that you have reached a decision.

If you answered "YES" with respect to the determination in this Special Verdict Form - Section I, then proceed to Special Verdict Form-Section II which follows.

500287

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

UNITED STATES OF AMERICA      *

              v.                  *        CRIMINAL NO. 1:03-CR-173

SHANNON WAYNE AGOFSKY      *

**SPECIAL VERDICT FORM - SECTION II**

**REQUISITE MENTAL STATE**

Instructions: For each of the following, answer "YES" or "NO." You may consider and find more than one requisite mental state factor.

1. Do you, the jury, unanimously find that the Government has established beyond a reasonable doubt that the defendant, Shannon Wayne Agofsky, intentionally killed the victim, Luther Plant?

A.      As to Count I of the Superseding Indictment:

YES _____

NO    ✓

_Foreperson_

B.      As to Count II of the Superseding Indictment:

YES _____

NO    ✓

_Foreperson_

-3-

500288

2. Do you, the jury, unanimously find that the Government has established beyond a reasonable doubt that the defendant, Shannon Wayne Agofsky, intentionally inflicted serious bodily injury that resulted in the death of Luther Plant?

A.      As to Count I of the Superseding Indictment:


Foreperson

YES ____✓____
NO  _____

B.      As to Count II of the Superseding Indictment:

YES ____✓____
NO  _____

Foreperson

3. Do you, the jury, unanimously find that the Government has established beyond a reasonable doubt that the defendant, Shannon Wayne Agofsky, intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, and that the victim, Luther Plant, died as a direct result of the act?

A.      As to Count I of the Superseding Indictment:

YES ____✓____
NO  _____

Foreperson

-4-

500289

B. As to Count II of the Superseding Indictment:

YES ✓
NO _____

Foreperson

4. Do you, the jury, unanimously find that the Government has established beyond a reasonable doubt that the defendant, Shannon Wayne Agofsky, intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, such that participation in the act constituted a reckless disregard for human life and that the victim, Luther Plant, died as a direct result of the act?

A. As to Count I of the Superseding Indictment:

YES ✓
NO _____

Foreperson

B. As to Count II of the Superseding Indictment:

YES ✓
NO _____

Foreperson

Instructions:  If you answered "NO" with respect to all of the determinations in this section, then stop your deliberations, cross out Special Verdict Forms - Sections III, IV, V and VI, and proceed to Special Verdict Form -Section VII of these Instructions.  Each juror should carefully read the statement in Special Verdict Form Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which you reached your decision.  You

-5-

500290

should then advise the court that you have reached a decision.

If you answered "YES" with respect to one or more of these determinations in this <u>Special Verdict Form - Section II</u>, then proceed to <u>Special Verdict Form - Section III</u> which follows.

500291

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

UNITED STATES OF AMERICA          *

v.                                *        CRIMINAL NO. 1:03-CR-173

SHANNON WAYNE AGOFSKY             *

## SPECIAL VERDICT FORM - SECTION III
## STATUTORY AGGRAVATING FACTORS

Instructions: For each of the following, answer "YES" or "NO." You may consider and find more than one statutory aggravating factor.

1.      Do you, the jury, unanimously find that the Government has established beyond a reasonable doubt that the defendant Shannon Wayne Agofsky, in committing the offense(s), the death or injury resulting in death of Luther Plant occurred during the commission of an offense under 18 U.S.C. §1118 (prisoners serving life term)?

A.      As to Count I of the Superseding Indictment:

YES ___✓___
NO  _____

_____
Foreperson

B.      As to Count II of the Superseding Indictment:

YES ___✓___
NO  _____

_____
Foreperson

-7-

500292

2.    Do you, the jury, unanimously find that the Government has established beyond a reasonable doubt that the defendant, Shannon Wayne Agofsky, committed the offense(s) after previously being convicted of a federal offense punishable by a term of imprisonment of more than 1 year, involving the use, attempted use, or threatened use of a firearm, as defined in 18 U.S.C. §921, against another person?

A.    As to Count I of the Superseding Indictment:

YES ___✓___
NO _____


Foreperson

B.    As to Count II of the Superseding Indictment:

YES ___✓___
NO _____


Foreperson

3.    Do you, the jury, unanimously find that the Government has established beyond a reasonable doubt that the defendant, Shannon Wayne Agofsky, committed the offense(s) after previously being convicted of a federal offense resulting in the death of another for which a sentence of life imprisonment was authorized by statute?

A.    As to Count I of the Superseding Indictment:

YES ___✓___
NO _____


Foreperson

-8-

500293

B.    As to Count II of the Superseding Indictment:


Foreperson

YES ____✓____
NO _____

4.    Do you, the jury, unanimously find that the Government has established beyond a reasonable doubt that the defendant, Shannon Wayne Agofsky, committed the offense(s) in an especially heinous, cruel, or depraved manner, in that it involved serious physical abuse to the victim, Luther Plant?

A.    As to Count I of the Superseding Indictment:


Foreperson



YES ____✓____
NO _____

B.    As to Count II of the Superseding Indictment:


Foreperson

YES ____✓____
NO _____

Instructions:    If you answered "NO" with respect to all of the Statutory Aggravating Factors in this Special Verdict Form - Section III, then stop your deliberations, cross out Special Verdict Forms - Sections IV, V, and VI, and proceed to Special Verdict Form - Section VII of these forms. Each juror should then carefully read the statement in Special Verdict Form -

-9-

500294

Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision. You should then advise the court that you have reached a decision.

If you answered "YES" with respect to one or more of the aggravating factors in this Special Verdict Form - Section III, then proceed to Special Verdict Form -Section IV which follows.

-10-

500295

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

UNITED STATES OF AMERICA      *

v.      *      CRIMINAL NO. 1:03-CR-173

SHANNON WAYNE AGOFSKY      *

## SPECIAL VERDICT FORM - SECTION IV

## NON-STATUTORY AGGRAVATING FACTORS

Instructions: For each of the following, answer "YES" or "NO." You may consider and find more than one non-statutory aggravating factor.

1.      Do you, the jury, unanimously find that the Government has established beyond a reasonable doubt that the defendant, Shannon Wayne Agofsky, represents a continuing danger to lives and safety of other persons?

A.      As to Count I of the Superseding Indictment:

<br>

YES    ✓
NO    _____

_____
Foreperson

B.      As to Count II of the Superseding Indictment:

<br>

YES    ✓
NO    _____

_____
Foreperson

-11-

500296

2.    Do you, the jury, unanimously find that the Government has established beyond a reasonable doubt that the defendant, Shannon Wayne Agofsky, has a significant history of disciplinary violations while he has been incarcerated including threatening another inmate with his fists and then stomping on the inmate's head until he was rendered unconscious, being involved in a riot among a group of inmates, and on at least two occasions prior to Luther Plant's murder being found in possession of handmade metal weapons?

A.    As to Count I of the Superseding Indictment:

_Pete Marton_
Foreperson

YES  ✓
NO  _____

B.    As to Count II of the Superseding Indictment:

_Pete Martin_
Foreperson

YES  ✓
NO  _____

3.    Do you, the jury, unanimously find that the Government has established beyond a reasonable doubt that, after commission of the offense charged in the Indictment, the defendant, Shannon Wayne Agofsky, demonstrated utter lack of remorse over having committed the offense?

-12-

500297

A.    As to Count I of the Superseding Indictment:

YES ___✓___
NO _____

Foreperson

B.    As to Count II of the Superseding Indictment:

YES ___✓___
NO _____

Foreperson

4.    Do you, the jury, unanimously find that the Government has established beyond a reasonable doubt that the defendant, Shannon Wayne Agofsky, has prior criminal convictions for interstate transportation of stolen property?

A.    As to Count I of the Superseding Indictment:

YES ___✓___
NO _____

Foreperson

B.    As to Count II of the Superseding Indictment:

YES ___✓___
NO _____

Foreperson

-13-

500298

Instructions:  Regardless of whether you answered "YES" or "NO" with respect to the Non-Statutory Aggravating Factors in this Special Verdict Form - Section IV, proceed to Special Verdict Form-Section V which follows.

-14-

500299

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

UNITED STATES OF AMERICA          *

v.                                *          CRIMINAL NO. 1:03-CR-173

SHANNON WAYNE AGOFSKY             *

**SPECIAL VERDICT FORM - SECTION V**

**MITIGATING FACTORS**

Instructions:  For each of the following mitigating factors, you have the option to indicate, in the space provided, the number of jurors who have found the existence of that mitigating factor to be proven by a preponderance of the evidence.  Individual jurors may find and consider more than one mitigating factor.  If you choose not to make these written findings, cross out each page of Special Verdict Form - Section V with a large "X" and then continue your deliberations in accordance with the Instructions of the court.

A finding with respect to a mitigating factor may be made by one or more of the members of the jury, and any member of the jury who finds the existence of a mitigating factor may consider such a factor established in considering whether or not a sentence of death shall be imposed, regardless of the number of other jurors who agree that the factor has been established. Further, any juror may also weigh a mitigating factor found by another juror, even if he or she did not also find that factor to be mitigating.

The non-statutory mitigating factors that the defendant asserts he has proved by a preponderance of the evidence are:

-15-

500300

1.  That Defendant, Shannon Wayne Agofsky, does not represent a continuing danger to the lives and safety of others.

    Number of jurors who find _____ 0 _____.

2.  That Defendant, Shannon Wayne Agofsky, has no prior escape attempts from federal prison.

    Number of jurors who find _____ 3 _____.

3.  That Defendant, Shannon Wayne Agofsky, has never assaulted a federal prison guard or corrections officer.

    Number of jurors who find _____ 6 _____.

4.  That Defendant, Shannon Wayne Agofsky, has never utilized a shank or homemade metal weapon against an inmate or guard.

    Number of jurors who find _____ 7 _____.

5.  That Defendant, Shannon Wayne Agofsky, has received "good conduct" Bureau of Prisons (BOP) reviews since Jan. 5, 2001.

    Number of jurors who find _____ 1 _____.

6.  That Mr. Luther Plant had an extensive violent criminal record, including consistent use of firearms while committing violent acts.  Mr. Plant's convictions

-16-

500301

include robbery, aggravated robbery, delivery of a controlled substance, arson, and felon in possession of a firearm.

Number of jurors who find _____ *0* _____.

7.    That Mr. Michael Miele has a significant history of disciplinary violations while he has been incarcerated in federal prison.

Number of jurors who find _____ *0* _____.

8.    That Mr. Michael Miele has a significant history of criminal convictions prior to being incarcerated in federal prison.

Number of jurors who find _____ *0* _____.

9.    That Mr. Agofsky's father died when he was (8) years old.

Number of jurors who find _____ *1* _____.

10.    That the Defendant has not had any behavior/disciplinary problems while incarcerated at the Liberty County Jail.

Number of jurors who find _____ *3* _____.

11.    That the Bureau of Prisons (BOP) can designate a location for Mr. Agofsky to serve a life sentence so that he will not have access to other inmates or guards.

Number of jurors who find _____ *1* _____.

-17-

500302

12.    That the fight between Mr. Plant and Mr. Agofsky was the result of a sudden quarrel.

Number of jurors who find _____ *O* _____.

13.    That Mr. Luther Plant was the first aggressor during the fight with Mr. Agofsky.

Number of jurors who find _____ *O* _____.

14.    That at least one other federal inmate that has committed murder in prison did not receive the death penalty as punishment upon conviction.

Number of jurors who find _____ *O* _____.

15.    Any other factors that you may find to be mitigating.

Number of jurors who find _____ *O* _____.

The following extra spaces are provided to write in additional mitigating factors, if any, found by any one or more jurors. If none are found, write "NONE" and line out the extra spaces with a large "X." If more space is needed, write "CONTINUED" and use the reverse side of this page.

_NONE_ ~~~~~~~~~~~~~~~~

~~~~~~~~~~~~~~~~~~~~~~~~

Number of jurors who so find _____.

-18-

500303



Number of jurors who so find _____ .



Number of jurors who so find _____ .



Number of jurors who so find _____ .

Instructions:  Regardless of whether you chose to make written findings for the

Mitigating Factors in Special Verdict Form - Section V above, proceed to Special Verdict Form-

Section- VI which follows.

-19-

500304

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

UNITED STATES OF AMERICA　　　*

v.　　　　　　　　　　　　　　*　　　CRIMINAL NO. 1:03-CR-173

SHANNON WAYNE AGOFSKY　　　*

### SPECIAL VERDICT FORM - SECTION VI - AS TO COUNT I

### DETERMINATION

Based upon consideration of whether the aggravating factors found to exist, which do not include the defendant's intent, sufficiently outweigh any mitigating factor or factors found to exist, or in the absence of any mitigating factors, whether the aggravating factors are themselves sufficient to justify a sentence of death, and whether death is therefore the appropriate sentence in this case, keeping in mind, however, that regardless of your findings with respect to aggravating and mitigating factors, you are never required to recommend a death sentence:

We determine, by unanimous vote, that a sentence of death shall be imposed.

YES ____✓____

We determine that a sentence of life without possibility of release shall be imposed.

YES _____

_Pete Martin_
Foreperson

-20-

500305

After you complete this <u>Special Verdict Form - Section VI - As To Count I</u>, proceed to

<u>Special Verdict Form - Section VI as to Count II.</u>

500306

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

UNITED STATES OF AMERICA       *

       v.                *       CRIMINAL NO. 1:03-CR-173

SHANNON WAYNE AGOFSKY      *

### SPECIAL VERDICT FORM - SECTION VI - AS TO COUNT II

### DETERMINATION

Based upon consideration of whether the aggravating factors found to exist, which do not include the defendant's intent, sufficiently outweigh any mitigating factor or factors found to exist, or in the absence of any mitigating factors, whether the aggravating factors are themselves sufficient to justify a sentence of death, and whether death is therefore the appropriate sentence in this case, keeping in mind, however, that regardless of your findings with respect to aggravating and mitigating factors, you are never required to recommend a death sentence:

We determine, by unanimous vote, that a sentence of death shall be imposed.

YES ___✓___

We determine that a sentence of life without possibility of release shall be imposed.

YES _____

_____
Foreperson

-22-

500307

After you complete this <u>Special Verdict Form- Section VI as to Count II</u>, you must then proceed to <u>Special Verdict Form - Section VII</u>.

500308

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | CRIMINAL NO. 1:03-CR-173 |
| SHANNON WAYNE AGOFSKY | * | |

### SPECIAL VERDICT FORM – SECTION VII

### CERTIFICATION

By signing below, each juror certifies that consideration of the race, color, religious beliefs, national origin, or sex of the defendant or the victim was not involved in reaching his or her individual decision as to each count of the Superseding Indictment, and that the individual juror would have made the same recommendation regarding a sentence for the crime or crimes in question regardless of the race, color, religious beliefs, national origin, or sex of the defendant or the victim.

_____        _____
                                        Lesley R. Hansen

_____        _____
Frank Reffel                             Louise A. Reynolds

_____        _____
Lance Lane                               Karol Litchfield

_____        _____

_____        _____
                                        Reginald C. Bennett

_____        _____
Jennifer Chura                          Pete Martinez
                                        FOREPERSON

Date: ___7/16/04___

-24-

500309

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHWESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal No. 92-05006-01/02-CR-SW-4 |
| ) | |
| vs. ) | |
| ) | **Count One:** 18 U.S.C. § 371 |
| SHANNON WAYNE AGOFSKY, ) | NMT:5 years and/or $250,000 |
| [DOB:  3/11/71] ) | Supervised Release: NMT 3 Years |
| ) | [Class D Felony] |
| ) | |
| ) | **Count Two:** 18 U.S.C. § 2113(a),(d) |
| ) | and (e) |
| ) | NLT: 10 years |
| ) | Supervised Release:  NMT 5 Years |
| ) | [Class A Felony] |
| JOSEPH ANTHONY AGOFSKY, ) | |
| [DOB:  7/23/66] ) | **Count Three:** 18 U.S.C. § 924(c) |
| ) | Mandatory 5 year term consecutive |
| Defendants. ) | to any other sentence |
| ) | Supervised Release:  NMT 3 years |
| ) | [Class D Felony] |
| ) | |
| ) | $50 Mandatory Penalty Assessment |
| ) | on each Count |

## S U P E R S E D I N G    I N D I C T M E N T

THE GRAND JURY CHARGES THAT:

### Count One

From on or about June 13, 1989, to October 6, 1989, in McDonald County, in the Western District of Missouri, and elsewhere, **SHANNON WAYNE AGOFSKY** and **JOSEPH ANTHONY AGOFSKY,** the defendants, herein, along with another unknown to the Grand Jury, willfully and knowingly did combine, conspire and agree together, to commit the following offense against the United States, that is, to rob, by use of a firearm, the State Bank of Noel, the deposits of which then were insured by the Federal Deposit Insurance Corporation, in violation of Title 18, United States Code, Section 2113(a) and (d), and in committing the aforesaid offense, and in

ORIGINAL

avoiding and attempting to avoid apprehension for such robbery, did force Dan Lee Short, against his consent, to accompany them from the State of Arkansas into the State of Missouri and then into the state of Oklahoma where **SHANNON WAYNE AGOFSKY** and **JOSEPH ANTHONY AGOFSKY** did kill Dan Lee Short by drowning him, in violation of Title 18, United States Code, Section 2113(e).

### OVERT ACTS

In furtherance of the said conspiracy, and to effect the objects thereof, the conspirators performed the following overt acts:

1. On or about June 13, 1989, **JOSEPH ANTHONY AGOFSKY** did make inquiry of an officer and employee of The State Bank of Noel as to where bank president Dan Lee Short lived.

2. During September, 1989, **SHANNON WAYNE AGOFSKY** and **JOSEPH ANTHONY AGOFSKY** did attempt to obtain a floor plan or blueprint of The State Bank of Noel.

3. On or about October 1, 1989, **SHANNON WAYNE AGOFSKY** did take, from near a tree at his residence, a chain hoist set and did take from adjacent rental property of his mother a concrete cinder block.

4. During the early morning hours of October 6, 1989, **SHANNON WAYNE AGOFSKY** and **JOSEPH ANTHONY AGOFSKY** did travel to the home of Dan Lee Short in Benton County, Arkansas.

5. During the early morning hours of October 6, 1989, **SHANNON WAYNE AGOFSKY** and **JOSEPH ANTHONY**

**AGOFSKY** did take Dan Lee Short's Dodge pick up truck and use it in transporting Dan Lee Short from his home to The State Bank of Noel.

6. Then, **SHANNON WAYNE AGOFSKY** and **JOSEPH ANTHONY AGOFSKY** did force Dan Lee Short to admit them to The State Bank of Noel, from which they stole about $71,562.25.

7. Thereafter, still during the early morning hours of October 6, 1989, Dan Lee Short was taped by **SHANNON WAYNE AGOFSKY** onto a wooden chair, to which the chain hoist set and the concrete cinder block were added as weight.

8. Then, using their mother's 1978 Ford Van, **SHANNON WAYNE AGOFSKY** and **JOSEPH ANTHONY AGOFSKY** drove Dan Lee Short to the Cowskin Bridge in Delaware County, Oklahoma, and dropped him over the side of the bridge and into Grand Lake.

All in violation of Title 18, United States Code, Section 371.

### Count Two

On or about October 6, 1989, in McDonald County, in the Western District of Missouri, **SHANNON WAYNE AGOFSKY** and **JOSEPH ANTHONY AGOFSKY**, by force and violence and by intimidation, did take from the person and presence of Dan Lee Short, money belonging to and in the care, custody, control, management and possession of the State Bank of Noel, the deposits of which then were insured by

3

the Federal Deposit Insurance Corporation, and **SHANNON WAYNE AGOFSKY** and **JOSEPH ANTHONY AGOFSKY**, in committing the aforesaid offense, did assault Dan Lee Short by means of a dangerous weapon, that is, a firearm, and further, in committing such offense **SHANNON WAYNE AGOFSKY** and **JOSEPH ANTHONY AGOFSKY** did force Dan Lee Short, against his consent, to accompany them from Benton County, Arkansas into Noel, Missouri, and, finally, in avoiding and attempting to avoid apprehension for such offense, **SHANNON WAYNE AGOFSKY** and **JOSEPH ANTHONY AGOFSKY** did force Dan Lee Short, against his consent, to accompany them from Noel, Missouri, into Delaware County, Oklahoma, where **SHANNON WAYNE AGOFSKY** and **JOSEPH ANTHONY AGOFSKY** did kill Dan Lee Short by drowning him; all in violation of Title 18, United States Code, Section 2113(a),(d) and (e) and Section 2.

### Count Three

On or about October 6, 1989, in McDonald County, in the Western District of Missouri, **SHANNON WAYNE AGOFSKY** and **JOSEPH ANTHONY AGOFSKY**, during and in relation to a felony crime of violence for which they could be prosecuted in a court of the United States, that is, robbery of a federally insured bank, as charged in **Count Two** above, knowingly did use and carry a firearm, that is, a .45 caliber handgun; all in violation of Title 18, United States Code, Section 924(c)(1) and Section 2.

FOREPERSON

**MICHAEL A. JONES**
Assistant United States Attorney

4

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT

~~FILED - CLERK~~
U.S. DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

2004 FEB 19  PM 4: 39

TX EASTERN-BEAUMONT

BEAUMONT DIVISION

BY _B Carter_

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| V. | * | NO. 1:03-CR-173 |
| | * | |
| SHANNON WAYNE AGOFSKY | * | |

## SUPERSEDING I N D I C T M E N T

THE UNITED STATES GRAND JURY CHARGES:

### COUNT I

On or about January 5, 2001, in the Eastern District of Texas, **SHANNON WAYNE AGOFSKY,** Defendant herein, while confined in a federal correctional institution under a sentence for a term of life imprisonment, unlawfully killed Luther Plant willfully, deliberately, maliciously and under premeditation and malice aforethought, as murder is defined in Title 18, United States Code, Section 1111, all in violation of Title 18, United States Code, Section 1118.

### COUNT II

On or about January 5, 2001, in the Eastern District of Texas, SHANNON WAYNE AGOFSKY, Defendant herein, at the Federal Correctional Institution in Beaumont, a place within the special maritime and territorial jurisdiction of the United States as defined in Title 18, United States Code, Section 7(3), Defendant willfully, deliberately, maliciously and under premeditation and malice aforethought

did unlawfully kill LUTHER PLANT by striking him with Defendant's arms, hands and feet, in violation of Title 18, United States Code, Section 1111.

## NOTICE OF SPECIAL FINDINGS

The allegations of Counts I and II of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

As to Counts I and II, the Defendant, SHANNON WAYNE AGOFSKY:

1.    Was more than 18 years of age at the time of the offense(s) (18 U.S.C. §3591(a));

2.    Intentionally killed the victim (18 U.S.C. §3591(a)(2)(A));

3.    Intentionally inflicted serious bodily injury that resulted in the death of the victim (18 U.S.C. §3591(a)(2)(B));

4.    Intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than a participant in the offense, and the victim died as a result of the act (18 U.S.C. §3591 (a)(2)(C));

5.    Intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than a participant of the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act (18 U.S.C. §3591 (a)(2)(D));

USCA5 76    500280

6. In committing the offense(s), the death or injury resulting in death occurred during the commission of an offense under 18 U.S.C. §1118 (prisoners serving life term) (18 U.S.C. §3592(c)(1));

7. Committed the offense(s) after previously being convicted of a federal offense punishable by a term of imprisonment of more than 1 year, involving the use or attempted or threatened use of a firearm, as defined in 18 U.S.C. §921, against another person (18 U.S.C. §3592(c)(2));

8. Committed the offense(s) after previously being convicted of a federal offense resulting in the death of another for which a sentence of life imprisonment was authorized by statute (18 U.S.C. §3592(c)(3)); and

9. Committed the offense in an especially heinous, cruel, or depraved manner in that it involved serious physical abuse to the victim (18 U.S.C. §3592 (c)(6)).

All pursuant to Title 18, United States Code, Sections 3591 and 3592.

A TRUE BILL

_____
GRAND JURY FOREMAN

MATTHEW D. ORWIG
UNITED STATES ATTORNEY

_____
JOHN B. STEVENS, JR.
ASSISTANT UNITED STATES ATTORNEY

3

USCA5 77

500281