**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

|  |  |
|---|---|
| **SHANNON WAYNE AGOFSKY,** | |
| Movant, | No. 1:07-cv-511 |
| **v.** | **CAPITAL CASE** |
| **UNITED STATES OF AMERICA,** | |
| Respondent. | |

## CORRECTED RESPONSE TO COURT ORDER

Mr. Agofsky respectfully submits this response to the Court's December 30, 2024, Order. *See* ECF No. 202.[1] That order acknowledged the commutation of Mr. Agofsky's death sentence and asked "which issues in his live federal habeas petition, if any, are not moot." *Id.* at 2 (citing *United States v. Surratt,* 855 F.3d 218 (4th Cir. 2017) and *Dennis v. Terris*, 927 F.3d 955, 959 (6th Cir. 2019)). As described below, live controversies remain with regard to all of Mr. Agofsky's claims that seek guilt-phase relief.

### I.    Background

Mr. Agofsky was convicted of murder and sentenced to death. Transcript of 7/16/04 penalty-phase proceedings, *United States v. Agofsky*, Case No. 1:03-cr-173,

---

[1] "ECF No." refers to docket entries in the above-captioned § 2255 proceedings. "Dkt. No." refers to docket entries in the underlying capital federal criminal proceedings. *See United States v. Agofsky*, Case No. 1:03-cr-173 (E.D. Tex.). Unless otherwise noted, all pin cites are to the page numbers reflected in the ECF-stamped header appearing at the top of the document.

Dkt. No. 215 at 393–94 (E.D. Tex.).[2] His motion for relief from judgment, filed pursuant to 28 U.S.C. § 2255, advances claims that both the underlying criminal judgment and his death sentence were secured in violation of the Constitution. ECF No. 194.

While his motion was pending, President Joseph R. Biden Jr. commuted Mr. Agofsky's death sentence to "life imprisonment without the possibility of parole." ECF No. 201. That commutation left "intact and in effect . . . all other conditions and components of the sentences previously imposed." *Id.* It did not impose any additional conditions or request Mr. Agofsky's consent. *Id.*

## II.    Argument

President Biden's commutation mooted some, but not all, of Mr. Agofsky's claims. Any claim that seeks guilt-phase relief (e.g., a new trial) continues to present a judiciable controversy. Claims that seek only penalty-phase relief (e.g., a new sentencing) are now moot.

In order to present a justiciable case or controversy, *see* U.S. Const. art. III, § 2, ¶ 1, a plaintiff must possess "a legally cognizable interest, or 'personal stake,' in the outcome of the action." *Genesis Healthcare Corp. v. Symczyk,* 569 U.S. 66, 71 (2013) (quoting *Camreta v. Greene,* 563 U.S. 692, 701 (2011)). If "an intervening circumstance deprives the plaintiff" of their "'personal stake in the outcome of the lawsuit,'" *id.* at 72 (quoting *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477–78

---

[2] This pin cite is to the page numbers on the original transcripts (i.e., the numbers appearing in black near the top right-hand corner of the document).

(1990)), such that it becomes "impossible for a court to grant 'any effectual relief whatever' to the prevailing party," *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307–08 (2012) (quoting *Erie v. Pap's A.M.,* 529 U.S. 277, 287 (2000)), the action must be "dismissed as moot." *Gensis Healthcare Corp.*, 569 U.S. at 72.

In *Dennis v. Terris,* 927 F.3d 955 (6th Cir. 2019), the Sixth Circuit held that a commutation will only moot a habeas petition if the petition sought no greater relief than that afforded by the commutation. Relying on Supreme Court precedent, it drew a key distinction between the imposition of a sentence and its implementation; the former is the province of Article III courts, while the latter falls to Article II and the executive. *Id.* at 958. When the executive commutes a sentence, he "'abridges the enforcement of the judgment,'" and "changes only how the sentence is carried out" without altering the underlying sentence or judgment. *Id.* (quoting *Nixon v. United States*, 506 U.S. 224, 232 (1993)) (citing *Biddle v. Perovich*, 274 U.S. 480, 487 (1927); *Ex parte Wells*, 59 U.S. 307 at 315 (1855)). Prisoners who receive a commutation therefore "continue[] to be bound by a judicial sentence," *id.* (citing *Duehay v. Thompson*, 223 F. 305, 307–08 (9th Cir. 1915)), and so long as they advance claims that seek to reduce that judicial sentence to a term even shorter than that the executive intends to implement, they possess "a concrete interest" in the outcome of the litigation. *Id.* at 959.

The Fifth and Eleventh Circuits have endorsed that same distinction. *See Andrews v. Warden,* 958 F.3d 1072, 1077 (11th Cir. 2020) ("When the President issues a commutation order for a judicially imposed sentence, he does not issue an executive

3

sentence, but instead reduc[es] the terms of a sentence already imposed.") (cleaned up); *Hagelberger v. United States,* 445 F.2d 279, 280 (5th Cir. 1971) ("[c]ommutation is the executive act reducing the terms of a sentence already imposed, substituting lesser for greater punishment"). The Seventh Circuit has repeatedly come to the same conclusion, albeit via abbreviated reasoning. *Madej v. Briley,* 371 F.3d 898, 899 (7th Cir. 2004) (state required to hold resentencing, despite commuting death sentence to life without parole, because "[t]he outcome of a properly conducted proceeding could have been a sentence as low as 20 years' imprisonment" under Illinois law); *Simpson v. Battaglia*, 458 F.3d 585, 595 (7th Cir. 2006) (case not moot, despite commutation of death sentence to life without parole, because it was still "possible" for Simpson to obtain a sentence as low as twenty years' imprisonment). *See also* Const. art. II, §§ 2, 3 (reserving to the executive the "Power to grant Reprieves and Pardons for Offenses against the United States)"; Const. art. III, §§ 1, 2 (reserving to Article III courts the power to hold criminal trials).

The United States has also endorsed this rule. In other recent cases in this district in which the petitioner's death sentence was commuted to life without parole by President Biden, the United States has taken the position that any claim that challenges the underlying conviction (and which, if successful, would require a new trial) presents a live controversy. *See* Government's Reply, *Cramer v. United States*, Case No. 1:23-cv-355, ECF No. 26 at 2 (E.D. Tex. Mar. 18, 2025) ("the government agrees that—to the extent the identified claims challenge [petitioner's] conviction instead of his sentence—they are not moot."); Government's Reply, *Ebron v. United*

4

*States of America*, Case No. 1:14-cv-539, ECF No. 46 at 2 (E.D. Tex. Mar. 28, 2025) (same); Government's Reply, *Fackrell v. United States*, Case No. 1:23-cv-119, ECF No. 64 at 2 (E.D. Tex. Mar. 27, 2025) (same); Government's Reply, *Garcia v. United States,* Case No. 1:13-cv-723, ECF No. 181 at 2 (E.D. Tex. Mar. 26, 2025) (same); Government's Reply, *Snarr v. United States,* Case No. 1:13-cv-724, ECF No. 181 at 2 (E.D. Tex. Mar. 27, 2025) (same).

To the extent *United States v. Surratt,* 855 F.3d 218 (4th Cir. 2017), rejects the precedent set out above, it has no bearing here. In a summary order, the en banc Fourth Circuit dismissed a petitioner's appeal because the petitioner received a presidential commutation of his life sentence. *Id.* Judge Wilkinson's concurring opinion reasoned that the commutation fully substituted for the judicial sentence and that the Fourth Circuit could not "readjust or rescind what the President, in the exercise of his pardon power, has done." *Id.* at 219.

To begin with, there is reason to doubt *Surratt*'s precedential force, *see Edelman v. Jordan*, 415 U.S. 651, 671 (1974) (summary orders "are not of the same precedential value as would be an opinion of this Court treating the question on the merits"); *Illinois State Bd. Of Elections v. Socialist Workers Party*, 440 U.S. 173, 173 (1979); *Lecates v. Just. Of Peace Ct. No. 4 of State of Del.*, 637 F.2d 898, 904 (3d Cir. 1980) ("the precedential value of a summary disposition by the Supreme Court is to be confined to the exact facts of the case and to the precise question posed in the jurisdictional statement"), especially in light of the extremely unusual procedural circumstances under which it was issued. *See* Docket, *United States v. Surratt,* Case

No. 14-6851 (4th Cir.)[3]; *Dennis,* 927 F.3d at 960 ("It's not easy to discern why the Fourth Circuit did what it did."). *See also Marks v. United States*, 430 U.S. 188, 193 (1977) (when a fragmented court decides a case, the holding is the narrowest position adopted by any member who concurred with the result). *C.f. Blount v. Clarke*, 890 F.3d 456, 462 (4th Cir. 2018) ("The majority" in *Surratt* "necessarily conclude[ed] that we could not disturb Surratt's presidentially commuted sentence"); *United States v. Yates*, 690 F. App'x 835, 836 (4th Cir. 2017).

In any event, *Surratt* is distinguishable. Mr. Surratt's petition challenged only his sentence and not his underlying criminal judgment. *See Surratt,* 855 F.3d at 219–20; *United States v. Surratt,* 797 F.3d 240, 246 (4th Cir. 2015). The rationale of Judge Wilkinson's concurrence cannot stretch to cover an instance in which the underlying criminal judgment is challenged, as it is here. *See* 28 U.S.C. § 2255(b) (instructing the court to vacate the underlying criminal judgment if the movant is successful). If this Court were to apply the logic of *Surratt* and deprive Mr. Agofsky of the opportunity to challenge the judgment that lay beneath his commuted sentence, it would effectively deny him the most basic due process protection of all: the guarantee of a constitutionally sound criminal trial.

---

[3] The en banc order, which followed a complicated thirty-two page non-unanimous panel opinion denying relief, *see United States v. Surratt,* 797 F.3d 240, 244–276 (4th Cir. 2015), was issued nearly two years after the Fourth Circuit agreed to hear the case en banc, ten months after the en banc oral argument, and very shortly after Mr. Surratt's sentence was commuted to a term of years that, with good time credit, was expected to expire in roughly eighteen months. *See* Docket, *United States v. Surratt,* Case No. 14-6851 (4th Cir.); *United States v. Gibbs*, 905 F.3d 768, 769 (4th Cir. 2018).

Even if *Surratt* applies, it is valuable only as persuasive authority, *United States v. Dawson*, 576 F.2d 656, 659 (5th Cir. 1978), and is unpersuasive. Judge Wilkinson's concurrence makes no attempt to account for the structure and text of Articles II and III, *see Surratt,* 855 F.3d at 219–20, and relies exclusively on a single case, *Schick v. Reed*, 419 U.S. 256 (1974), in which the petitioner was subject to an Article II (not Article III) sentence imposed by a court-martial (not a federal court), and who was challenging only a condition of the commuted sentence (and not the underlying judicial sentence or criminal judgment). *See id*. *See also Dennis*, 927 F.3d at 959 ("[G]ive Dennis credit. He does not challenge the commutation order. He challenges the underlying sentence."). And it is bizarre to conclude that the writ of habeas corpus is unavailable to remedy what is essentially the precise due process violation that, many centuries ago, led to the writ's creation in the first place: summary detention by executive (or royal) decree. *See Boumediene v. Bush,* 553 U.S. 723, 740–41 (2008); J. Erik Heath, Writing Off the Great Writ: Preserving Habeas Corpus in *Boumediene v. Bush* Against Strong National Security Pressures, 1 Ne. U.L.J. 9, 13 (2009).

Courts around the country—including the Fourth Circuit—have criticized *Surratt* and declined to extend it. *See, e.g., Gibbs*, 905 F.3d at 770 (the Fourth Circuit's approach to resolving Mr. Surratt's case "had the effect of prejudicing the interests of criminal defendants"); *United States v. Mitchell*, No. CR 05-00110 (EGS), 2019 WL 2647571, at *6 (D.D.C. June 27, 2019) (Judge Wilkinson's concurrence is "inconsistent with Supreme Court precedent") (citing *Nixon v. United States*, 506 U.S.

224, 232 (1993)); *United States v. Stokes*, No. 95-CR-14025, 2019 WL 9045536, at *2 (S.D. Fla. June 7, 2019) (rejecting *Surratt* in finding that commutation did not moot relief sought pursuant to the First Step Act); *United States v. Barber*, 409 F. Supp. 3d 542, 545 (W.D. Va. 2019) (same); *United States v. Stallworth*, 2019 WL 2912845 (W.D. Va. July 8, 2019) (same). *See also* Austin Moylan, *Commuted Sentences: Could You Ask for More?*, 52 Ariz. St. L.J. 1337, 1364 (2020) (the "approach is incorrect, and *Surratt* should be rejected").

The Court should apply the rule from *Dennis* and the distinction endorsed by the Fifth Circuit in *Hagelberger*, 445 F.2d at 280. Under that rule and according to that distinction, Mr. Agofsky's petition is not moot. Because his guilt-phase claims, if successful, would result in his criminal judgment being vacated and him receiving a new trial, and because that new trial could result in a not-guilty verdict and his release, his guilt-phase claims continue to present live controversies. *See Knox*, 567 U.S. at 308 (any "'concrete interest, however small,'" will suffice to prevent a claim from becoming moot). Because some of his penalty-phase claims seek only a new penalty phase hearing, and because the commutation negates the one potential outcome of such a hearing (a death sentence), some of his claims are now moot.

Specifically, justiciable controversies remain with regard to all aspects of the following claims in Mr. Agofsky's complete motion for relief from judgment, ECF No. 194:

- Ground 12.1 (trial counsel was ineffective with regard to the guilt phase);

- Ground 12.4 (jurors who indicated they would not consider mitigating evidence during the penalty phase were nonetheless seated);

8

- Ground 12.6 (the trial court erred in failing to dismiss the indictment with prejudice for pre-indictment delay);

- Ground 12.8 (Mr. Agofsky is actually innocent).

All aspects of the following claims, which exclusively seek penalty-phase relief, are moot:

- Ground 12.2 (trial counsel was ineffective with regard to the penalty phase);

- Ground 12.7 (new evidence establishes that Mr. Agofsky was convicted on the basis of inaccurate and unreliable expert testimony in a prior case that was used as an aggravating circumstance);

- Ground 12.10 (Mr. Agofsky's prior conviction under 18 U.S.C. § 924(c), which was used as an aggravating circumstance, is invalid);

The following claims are moot only to the extent described below:

- Ground 12.3 (appellate counsel was ineffective): Mr. Agofsky's claim is moot insofar as it seeks relief for any instance of appellate counsel's ineffectiveness in which appellate counsel could have, but for his deficient performance, achieved only penalty-phase relief. Specifically, Gound 12.3 asks the Court to find that appellate counsel was ineffective for failing to adequately argue that there was insufficient evidence to support the jury's penalty-phase finding that the crime was especially heinous and cruel, Complete Motion at ¶ 934; for failing to adequately argue that some of the aggravating factors at the penalty phase were duplicative, *id.*; for failing to adequately argue that the jurors did not need to be polled if they returned a life sentence, *id.* at ¶¶ 966–968; for failing to advance any argument against the exclusion of mitigating evidence from a defense expert (Dr. Roberts) report, *id.* at ¶¶ 941, 999–1002; for failing to advance any argument that the prosecutor's cross-examination of Dr. Roberts during the penalty phase was improper, *id.* at ¶¶ 941, 1003–1005; and for failing to advance any argument that the prosecutor's summation during the penalty phase was misleading, *id.* at ¶ 941. These aspects of Ground 12.3 are moot. All remaining aspects of Ground 12.3 are not moot and continue to present live controversies.

- Ground 12.5 (the government withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963)): Again, Mr. Agofsky's claim is moot insofar as it seeks relief for any *Brady* violation that affected only the penalty phase. Specifically, Ground 12.5 asks the Court to find that the

9

government suppressed material evidence pertaining to the reliability of the FBI duct tape expert who testified in two of Mr. Agofsky's prior trials. *Id.* at ¶ 1026. That aspect of Ground 12.5 is moot. All remaining aspects of Ground 12.5 are not moot and continue to present live controversies.

- Ground 12.9 (trial counsel's affidavits contain factually inaccurate and non-responsive allegations): This claim requests an evidentiary hearing with regard to the statements contained in trial counsel's affidavits. *Id.* at ¶ 1154. This claim is moot insofar as it seeks an evidentiary hearing with regard to trial counsel's failure to investigate and introduce mitigating evidence relating to Mr. Agofsky's family and childhood, *id.* at ¶ 1110–1128; trial counsel's failure to investigate and introduce mitigating evidence relating to Mr. Agofsky's positive prison adjustment, *id.* at ¶ 1129; trial counsel's failure to investigate and introduce mitigating evidence relating to Mr. Agofsky's mental health issues and potential for future dangerousness, *id.* at ¶ 1130–34; and trial counsel's conduct during the penalty phase of trial, *id.* at ¶ 1140–45. Those aspects of Ground 12.9 are moot. All remaining aspects of Ground 12.9 are not moot and continue to present live controversies.

## III.    Conclusion

For the foregoing reasons, the Court should find that Mr. Agofsky's guilt-phase claims continue to present live controversies.


/s/ Sam Welch

SAM WELCH
Assistant Federal Defender
Federal Community Defender Office
for the Eastern District of Pa.
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520
sam_welch@fd.org

*Counsel for Movant*

/s/ Claudia Van Wyk

CLAUDIA VAN WYK
Senior Staff
Capital Punishment Project
American Civil Liberties Union
201 W. Main Street, Suite 402
Durham, NC 27701
(919) 433-8533
cvanwyk@aclu.org

*Counsel for Movant*

## CERTIFICATE OF SERVICE

I certify that on April 12, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following: Traci Lynne Kenner, U.S. Attorney's Office, 110 North College, Suite 700, Tyler, TX 75702, traci.kenner@usdoj.gov; and Joseph Robert Batte, U.S. Attorney's Office- Beaumont, 350 Magnolia, Suite 150, Beaumont, TX 77701, joe.batte@usdoj.gov.

/s/ Sam Welch
SAM WELCH
*Counsel for Movant*

## CERTIFICATE OF CONFERENCE

I certify that I have complied with the meet and confer requirements in Local Rule CV-7(h) and that this filing is opposed. On March 21, 2025, I spoke with Mr. Joseph Batte, Esq., via telephone and conducted the required conference. No agreement could be reached. Discussions have concluded and there remains an open issue for the Court to resolve.

/s/ Sam Welch
SAM WELCH
*Counsel for Movant*